UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

Plaintiff,

v.

GEMINI TRUST COMPANY, LLC,

Defendant.

22-cv-4563 (AKH)

Hon. Alvin K. Hellerstein

**PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR A PROTECTIVE ORDER</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT BACKGROUND AND PROCEDURAL HISTORY ................................... 3

ARGUMENT ...................................................................................................................... 6

I.      The Court Should Bar a Rule 30(b)(6) Deposition of a CFTC Representative Because Defendant Failed to Describe Each Topic with Reasonable Particularity or Account for Non-Rule 30(b)(6) Witness Testimony ............................................................ 7

II.     The Court Should Strike Rule 30(b)(6) Topics 3, 5, 9, 11, 12, 13, 14, 15, 21, 26, 28, 29 and 30 Because They Seek Irrelevant Testimony .............................................. 9

        A.   Defendant's Rule 30(b)(6) Topics 3, 5, 9, 13, 14, 15, 26, 28 and 29 Seek Irrelevant Testimony About the CFTC's Subjective Understanding ..................... 9

        B.   Defendant's Rule 30(b)(6) Topics 11, 12, 21 and 30 Seek Irrelevant Testimony that Cannot Support a Defense to the Asserted Claim ......................... 11

III.    The Court Should Strike Rule 30(b)(6) Topics 3, 7, 9, 13, 14, 15 and 20 Because They Seek Testimony About Legal Issues ................................................................. 13

IV.     The Court Should Strike Rule 30(b)(6) Topics 17, 18, 19, 20, 21, 22, 23, 24, 25, 27 and 30 Because They Seek Contention Discovery ................................................. 16

V.      The Court Should Strike Rule 30(b)(6) Topics 4 and 6 Because They Seek Testimony About the CFTC's Internal Policies and Procedures ......................................... 18

VI.     The Court Should Strike Rule 30(b)(6) Topics 31 through 39 Because They Seek to Invade the Investigatory Files and Work Product of the CFTC ..................................... 20

CERTIFICATION AND CONCLUSION ....................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*BAT LLC v. TD Bank, N.A.*,
  2019 WL 13236131 (E.D.N.Y. Sept. 24, 2019) ................................................................ 7, 8, 9

*Bellinger v. Astrue*,
  2011 WL 4529602 (E.D.N.Y. Sept. 28, 2011) ......................................................................... 8

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*,
  2017 WL 9400671 (S.D.N.Y. Apr. 27, 2017)................................................................. 6, 8, 18

*CFTC v. eFloorTrade, LLC*,
  2020 WL 2216660 (S.D.N.Y. May 7, 2020)............................................................................18

*CFTC v. Gramalegui*,
  2018 WL 4610953 (D. Colo. Sept. 26, 2018)........................................................................ 11

*CFTC v. Royal Bank of Canada*,
  2014 WL 2933232 (S.D.N.Y. June 27, 2014)........................................................................ 12

*CFTC v. Royal Bank of Canada*,
  2013 WL 1932120 (S.D.N.Y. May 8, 2013) ...........................................................................14

*City of Almaty, Kazakhstan v. Ablyazov*,
  2021 WL 4846366 (S.D.N.Y. Oct. 18, 2021) .........................................................................22

*City of Almaty, Kazakhstan v. Sater*,
  2022 WL 10374082 (S.D.N.Y. Oct. 18, 2022) .................................................................... 7, 9

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
  2022 WL 2702378 (E.D.N.Y. Feb. 11, 2022).......................................................................6, 7

*Fung-Schwartz v. Cerner Corp.*,
  2020 WL 5253224 (S.D.N.Y. Sept. 2, 2020) ......................................................................... 6

*Great N. Ins. Co. v. NGL Warehouse, LLC*,
  2016 WL 11691161 (D. Colo. Sept. 21, 2016) ..................................................................... 14

*Gov't Emps Ins. Co. v. Lenex Servs., Inc.*,
  2018 WL 1368024 (March 16, 2018)...............................................................................12, 16

*Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*,
  929 F.2d 81 (2d Cir. 1991)...................................................................................................19

*In re Lifetrade Litig.*,
    2023 WL 3244517 (S.D.N.Y. May 4, 2023) ...................................................... 11

*JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*,
    209 F.R.D. 361 (S.D.N.Y. 2002) ............................................................... 12, 16

*loanDepot.com, LLC v. CrossCountry Mortgage, LLC*,
    2023 WL 2263243 (S.D.N.Y. Feb. 28, 2023) ................................................ 6, 8

*Liveperson, Inc. v. 24/7 Customer, Inc.*,
    2015 WL 4597546 (S.D.N.Y. July 30, 2015) .............................................. 16, 18

*Mendez v. City of Chicago*,
    2020 WL 11647822 (N.D. Ill. Dec. 14, 2020) ................................................ 14

*Sanofi-Synthelabo v. Apotex Inc.*,
    2009 WL 5247497 (S.D.N.Y. Dec. 30, 2009) ................................................ 12

*SEC v. Bank of Am. Corp.*,
    2009 WL 4797741 (S.D.N.Y. Dec. 8, 2009) .................................................. 20

*SEC v. Contrarian Press, LLC*,
    2020 WL 7079484 (S.D.N.Y. Dec. 2, 2020) .................................................. 21

*SEC v. Contrarian Press, LLC*,
    2020 WL 3317190 (S.D.N.Y. June 17, 2020) ................................................ 21

*SEC v. Morelli*,
    143 F.R.D. 42 (S.D.N.Y. 1992) .................................................................... 16

*SEC v. Nacchio*,
    2009 WL 211511 (D. Colo. Jan. 29, 2009) ................................................... 14

*SEC v. Rosenfeld*,
    1997 WL 576021 (S.D.N.Y. 1997) ............................................................... 21

*Wilmington Trust, N.A. v. Samcom 48 (DE), LLC*,
    2022 WL 17977499 (E.D.N.Y. Dec. 28, 2022) ............................................... 8

*United States v. Ballistrea*,
    101 F.3d 827 (2d Cir. 1996) ........................................................................ 15

*United States v. Gaudin*,
    515 U.S. 506 (1995) ................................................................................... 15

*United States v. Klausner*,
    80 F.3d 55 (2d Cir. 1996) ............................................................................... 15

*United States v. Rigas*,
    490 F.3d 208 (2d Cir. 2007) ............................................................................ 15

*United States v. Santiago*,
    2014 WL 4827883 (S.D.N.Y. Sept. 26, 2014) ............................................ 10, 11

*United States v. Scali*,
    2018 WL 604852 (S.D.N.Y. Jan. 29, 2018) ................................................... 10

*United States v. Sabbeth*,
    125 F. Supp. 2d 33 (S.D.N.Y. 2000) ............................................................. 18

**Statutes**

7 U.S.C. § 9(2) ...........................................................................................3, 9, 17

18 U.S.C. § 1001 ..............................................................................................15

**Rules**

Fed. R. Civ. P. 26 ..................................................................................... *passim*

Fed R. Civ. P. 30 ...................................................................................... *passim*

**Regulations**

17 C.F.R. § 144 ..................................................................................................4

**Other Authorities**

Provisions Common to Registered Entities,
    76 FR 44,776, 44,779 (July 27, 2011) ...........................................................13

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiff Commodity Futures Trading Commissions ("CFTC" or "Commission") submits this memorandum of law in support of its motion for a protective order barring a deposition of a CFTC representative designated under Federal Rule of Civil Procedure 30(b)(6) or, in the alternative, striking certain of the deposition topics set forth in Defendant Gemini Trust Co., LLC's ("Defendant" or "Gemini") Notice of 30(b)(6) Deposition to be held on September 11, 2023.[1]

## PRELIMINARY STATEMENT

This dispute centers on Defendant's refusal to abide the Court's prior rulings and well-recognized discovery limitations imposed on parties by the Federal Rules of Civil Procedure. Defendant noticed a Rule 30(b)(6) deposition of the CFTC scheduled for September 11, 2023, with forty compound, broadly-worded, and, in most cases, facially improper topics that included matters that the Court has already ruled are irrelevant or otherwise not at issue in this case. The CFTC responded to the Rule 30(b)(6) notice with its objections to each of the topics, and where a topic included elements that were not wholly improper, the CFTC stated—consistent with applicable law—that it would confer with Defendant about the need for Rule 30(b)(6) testimony after Defendant deposed the CFTC witnesses that the CFTC identified in a Court-ordered preliminary trial witness list. During a final meet and confer held on August 31, 2023, after Defendant had already deposed the two CFTC witnesses identified in the CFTC's preliminary witness list, Defendant informed the CFTC it was not prepared to narrow or withdraw any of the Rule 30(b)(6) topics on the basis of testimony that had already been obtained.

The Court should swiftly reject Defendant's misguided approach and strike each of the Rule 30(b)(6) topics. As a threshold matter, Defendant made no attempt to abide by the

---

[1] Unless otherwise defined, the CFTC adopts the naming conventions set forth in the Complaint, ECF. No. 1.

specificity requirements set forth in Rule 30(b)(6) or tailor the deposition topics to the testimony it has obtained or will obtain from other fact witnesses.  Rule 30(b)(6) mandates "painstaking specificity" and depositions are not intended to be used to force a party to identify and prepare witnesses to answer cumulative and duplicative questions.  Proportionality and the express limitations set forth in Rule 26(b) prevent this outcome.  Defendant has not identified, and cannot identify, what additional relevant testimony it needs from the CFTC that it has not already obtained from the two CFTC percipient witnesses who each sat for a day of testimony.  This, alone, weighs in favor of barring a Rule 30(b)(6) deposition.  (*Infra*, Section I)

Even if Defendant could seek duplicative testimony, Defendant's Rule 30(b)(6) topics openly flout the basic principles that govern the scope of Rule 30(b)(6) depositions.  Defendant seeks testimony that:

- is irrelevant and contrary to the Court's prior orders (*infra*, Section II);

- improperly seeks testimony about legal issues from a Rule 30(b)(6) witness (*infra*, Section III);

- improperly seeks contention discovery under the guise of Rule 30(b)(6) topics (*infra*, Section IV); and

- improperly seeks information that the Court previously ruled, in connection with Defendant's prior discovery requests, was either privileged or irrelevant, including information about the CFTC's internal policies and procedures (*infra*, Section V) as well as the CFTC's interactions with a former Gemini employee who provided information during the CFTC's investigation (*infra*, Section VI).

2

At bottom, Defendant's Rule 30(b)(6) notice serves no purpose other than to burden the CFTC and bog the parties down in needless, and repeated, conferrals and motion practice.  The Rule 30(b)(6) deposition of a CFTC representative should be barred in its entirety.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The CFTC filed the Complaint in this action on June 2, 2022.  (ECF No. 1.)  The Complaint asserts one cause of action under Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2), based on false and misleading statements of material fact that Defendant made to the Commission in connection with the self-certification of the Bitcoin Futures Contract.  A key component of the Bitcoin Futures Contract was the cash settlement price, which was determined based on an auction held on Defendant's digital asset trading platform.

Defendant answered the Complaint on August 8, 2022, and the parties commenced written discovery pursuant to the Court's October 7, 2022 Order Regulating Proceedings, ECF No. 23.  On February 13, 2023 and March 22, 2023, the Court held two hearings to address the parties' disputes related to written discovery.  (*See generally* Feb. 13, 2023 Hr'g Tr., ECF No. 38; March 22, 2023 Hr'g Tr., ECF No. 42.)  During those hearings, the Court made the following rulings that bear on this motion:

- That an objective standard applies to determine whether Defendant's statements were materially misleading.[2]

- That determining falsity and materiality is a question of law.[3]

---

[2] *See* Feb. 13 Hr'g Tr. at 14:21-25 ("That makes it an objective standard and we don't get into how the particular individual was or was not influenced.  That's my ruling."); *see also id.* at 5:19-20, 6:2-11; March 22, Hr'g Tr. at 18:18-21 ("I said that the issue of materiality is an objective one, and it's not a matter for the person receiving the representation to say whether it's material or not.").

[3] *See* Feb. 13 Hr'g Tr. at 12:20-13:5 ("[M]y proposition is that this has to be judged by the [words] themselves and it becomes a matter of law whether it will not affect someone.  Whether, in fact it did affect someone or did influence someone is not relevant."), 17:6-12 ("So, again, we have to say, what is relevant here is what was said to the other side." "The objective expectations of the parties that govern in a contract, same here."), 28:5-9 ("[M]ateriality, misstatements, they are all measured by what the defendant[] said . . . .").

- That the CFTC is entitled to claim the deliberative process privilege over documents and communications reflecting advisory opinions, recommendations, and deliberations about the self-certification of the Bitcoin Futures Contract.[4]

- That Defendant was not entitled to the privileged information the CFTC obtained from a former employee of the Defendant.[5]

In addition to these rulings, the Court also instructed the CFTC to provide Defendant with the CFTC's preliminary trial witness list for the purpose of facilitating depositions.  (*See* March 22 Hr'g Tr. at 20:7-21:6, 22:6-12, 33:22-34:2, 34:23-35:2.)  On April 14, 2023, the CFTC provided Defendant with a letter as instructed by the Court.  (Ex. 1.)[6]  The preliminary witness list included, among other potential witnesses, a current CFTC employee and a former CFTC employee.  (*Id.*)  Accordingly, the CFTC directed Defendant to the Commission Regulations that address the procedures Defendant needed to follow to obtain Commission approval to depose current and former employees of the CFTC.  *See generally* 17 C.F.R. Part 144 (2022).  Regulation 144.5 requires the party seeking the testimony of current or former CFTC employees to submit a signed statement to the Secretary of the Commission "setting forth with particularity a summary of the testimony sought and its relevance to the proceeding."  17 C.F.R. § 144.5.

On May 5, 2023, Defendant submitted a letter request from counsel addressed to the Secretary of the Commission.  (Ex. 2.)  The letter included a request to depose the CFTC witnesses identified in the preliminary witness list as well as CFTC witnesses designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Rather than particularize the

---

[4] *See* Feb. 13 Hr'g Tr. 21:11-13, 22:6-24; March 22 Hr'g Tr. at 23:17-19 ("I am not going to invade . . . whatever privileges [the CFTC] invokes.").

[5] *See* Feb. 13 Hr'g Tr. at 34:3-19 (finding that Defendant was not entitled to notes of witness interviews and that Defendant could not "encroach on what [the CFTC] found" in its investigation); March 22 Hr'g Tr. at 27:3-5 (denying Defendant's request for discovery from the CFTC related to a former employee and stating that the Court "will not order [the CFTC] to tell you what [it] did in this case" and that Defendant is not "going to be able to ask and get an answer to the question of [the former employee's] talks with [the CFTC]").

[6] Reference to "Ex. __" refers to the exhibits attached and filed contemporaneously hereto.

testimony it intended to seek from each requested witness, Defendant listed eighty all-encompassing topics that covered every aspect of the case plus evidence related to a former employee of Defendant.  In response, the CFTC's Office of General Counsel provided some preliminary objections to the proposed overlapping testimony from the fact and Rule 30(b)(6) witnesses, including that, among other objections, the request included the same topics for multiple witnesses and did not identify to whom each topic applies.  (Ex. 3.)  Defendant then, on June 14, 2023, submitted an amended request that simply restated all topics for each witness with minor adjustments to reflect that Defendant was seeking firsthand knowledge and not testimony about the CFTC's collective knowledge from the non-Rule 30(b)(6) witnesses.  (Ex. 4.)  On June 27, 2023, the CFTC's Office of General Counsel informed Defendant that the Commission would consider the amended request and proposed that Defendant serve a formal notice of Rule 30(b)(6) deposition to allow the parties to confer regarding the scope of proposed topics.  (Ex. 5.)

On July 14, 2023, Defendant noticed a Rule 30(b)(6) deposition for September 11, 2023. (Ex. 6.)  The deposition notice set forth forty topics including a catchall topic that incorporated "[a]ll matters identified in the May 5, 2023 Letter" to the Secretary of the Commission.  (*Id.*) The CFTC provided responses and objections to the topics on August 1, 2023.  (Ex. 7.)  The CFTC stated in its objections that it would not designate a witness to testify about thirty-one of the proposed topics that were wholly improper.  (*Id.*)  In response to the remaining nine topics, the CFTC stated that it would confer with Defendant after Defendant deposed the CFTC witnesses identified in the preliminary witness list.  (*Id.*)  The parties conferred on August 4, 2023, and were unable to reach a resolution on any of the topics in Defendant's Rule 30(b)(6) notice.  On August 23, 2023, and August 25, 2023, Defendant deposed the former and current CFTC employee fact witnesses identified on the CFTC's preliminary witness list.

Following the depositions of the CFTC witnesses identified in the CFTC's preliminary witness list, the parties conferred again on August 31, 2023.  While Defendant was willing to adjourn the date of the scheduled Rule 30(b)(6) deposition, Defendant relayed that it was unwilling to narrow or withdraw any of the noticed topics based on the information already obtained.  Defendant also maintained that it was appropriate to ask a Rule 30(b)(6) representative the same questions that were addressed during the prior depositions of the current and former CFTC employees.

## ARGUMENT

"It is well established that courts have the discretion to limit discovery or issue a protective order, if the order is necessary to protect a party from 'annoyance, embarrassment, oppression, or undue burden or expense.'"  *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 2022 WL 2702378, at *2 (E.D.N.Y. Feb. 11, 2022) (quoting Fed. R. Civ. P. 26(c)(1)).  "[A]s with other forms of discovery, the court has the discretion to issue a protective order or limit the scope of a Rule 30(b)(6) deposition notice."  *Id.* (citing *Fung-Schwartz v. Cerner Corp.*, 2020 WL 5253224, at *1 (S.D.N.Y. Sept. 2, 2020)).  Accordingly, "a Rule 30(b)(6) deposition notice is subject to the limitations under Federal Rule 26—deposition topics should be proportional to the needs of the case, not unduly burdensome or duplicative, and described with 'reasonable particularity.'"  *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017).  "Reasonable particularity" means that the noticing party must describe the noticed topics with "painstaking specificity" as to subject areas that are relevant to the dispute at issue.  *DDK Hotels*, 2022 WL 2702378, at *2 (collecting cases).  Moreover, "Rule 30(b)(6) is supposed to streamline discovery, not provide a 'club' to wield against an opponent" to impose excessive burdens.  *loanDepot.com, LLC v.*

*CrossCountry Mortgage, LLC*, 2023 WL 2263243, at *2 (S.D.N.Y. Feb. 28, 2023).

"Where the topics are vaguely worded, seek irrelevant information, or are so overly broad as to make it impossible for the responding party to prepare its witness, courts may strike the topics." *DDK Hotels*, 2022 WL 2702378, at *2. "Similarly, topics inquiring into the mental processes and strategies of the noticed party or seeking to access privileged information are improper." *Id.* Each of the Defendant's Rule 30(b)(6) topics is defective on numerous, overlapping grounds, and the Rule 30(b)(6) deposition can be barred based on the objections the CFTC already interposed (Ex. 7) and the reasons set forth below.

**I.     The Court Should Bar a Rule 30(b)(6) Deposition of a CFTC Representative Because Defendant Failed to Describe Each Topic with Reasonable Particularity or Account for Non-Rule 30(b)(6) Witness Testimony**

Rather than tailor its topics to specific subject areas that have discernable boundaries, Defendant interposed facially improper and overly broad topics that seek unparticularized testimony about the "self-certification process," "communications with any other governmental entity," "[a]ll statements Gemini made to the CFTC" concerning information that was not disclosed to the CFTC,  and "[a]ll matters identified in the May 5, 2013 Letter."  (Topics 1, 10, 16, 40.)  Topic 40 is particularly egregious since it incorporates by reference the May 5, 2023 Letter, which itself contains, among eighty others, such topics as "[a]ll matters in the Complaint" and "[a]ll matters described in Gemini's Answer" or "Requests for Admission."  (Ex. 2 at 3.)

Courts have declined to burden a party with preparing a witness to answer questions about "virtually every possible subject that could be raised in th[e] litigation."  *BAT LLC v. TD Bank, N.A.*, 2019 WL 13236131, at *5 (E.D.N.Y. Sept. 24, 2019); *DDK Hotels*, 2022 WL 2702378, at *14 (finding overly broad and improper 30(b)(6) topics that request testimony about "'all facts and circumstances' underlying the plaintiffs' claims" and "encompass[] every possible fact relevant to the litigation"); *City of Almaty, Kazakhstan v. Sater*, 2022 WL 10374082, at *3

(S.D.N.Y. Oct. 18, 2022) ("'Reasonable particularity' requires the topics listed to be specific as to subject area and to have discernible boundaries."); *Wilmington Trust, N.A. v. Samcom 48 (DE), LLC*, 2022 WL 17977499, at *2 (E.D.N.Y. Dec. 28, 2022) (striking proposed Rule 30(b)(6) topics seeking testimony about "all discussions" or "all measures" on a topic as overbroad); *Blackrock Allocation Target Shares*, 2017 WL 9400671, at *1 ("[T]opics that generally seek testimony as to every fact that supports a legal claim will likely fail the reasonable particularity requirement.").

Defendant's refusal to curtail its Rule 30(b)(6) topics to account for testimony it already obtained from the current and former CFTC employees lacks any justification and conflicts with the principled approach taken by courts in this Circuit. *See BAT LLC*, 2019 WL 13236131, at *5 ("[A] Rule 30(b)(6) deposition is not to be used to re-ask all the questions a party has previously explored with multiple witnesses."); *see also Bellinger v. Astrue*, 2011 WL 4529602, at *6 (E.D.N.Y. Sept. 28, 2011) (finding that "the discovery sought by plaintiff would be unreasonably cumulative" because "plaintiff . . . had ample opportunity to obtain the information she seeks" from "individuals involved in the events giving rise to her claims"). Defendant has not offered a valid basis to seek duplicative testimony that it has already obtained from the CFTC witnesses directly involved in the self-certification despite being provided during the conferral process with the authority that requires Defendant to justify and tailor its Rule 30(b)(6) requests. *See loanDepot.com, LLC*, 2023 WL 2263243, at *2 ("The proponent of [a Rule 30(b)(6)] deposition bears the burden of justifying its requests for testimony."). Indeed, the refusal to withdraw facially inappropriate topics, like topic 40, telegraphs Defendant's intention to ask redundant and cumulative questions. As such, Defendant's approach is patently improper and runs afoul of the proportionality standard set forth in Rule 26. *BAT LLC*, 2019 WL 13236131, at *3 ("Courts

have held that the proportionality standard set out in the revised Rule 26 was added 'in part, in order to encourage judges to be more aggressive in identifying and discouraging discovery overuse' by emphasizing the need to analyze proportionality before ordering production of relevant information.'"); *City of Almaty, Kazakhstan*, 2022 WL 10374082, at *3 ("Courts must scrutinize Rule 30(b)(6) deposition topics to ensure they are not a tool for abuse of the discovery process.").

## II.    The Court Should Strike Rule 30(b)(6) Topics 3, 5, 9, 11, 12, 13, 14, 15, 21, 26, 28, 29 and 30 Because They Seek Irrelevant Testimony

Even if Defendant were permitted to ask repetitive questions that it has covered with other fact witnesses, Defendant's compound and unparticularized Rule 30(b)(6) topics suffer from many additional deficiencies that warrant issuance of a protective order.  In particular, many of Defendant's Rule 30(b)(6) topics seek testimony that is irrelevant to any of the parties' claims or defenses.

### A.    Defendant's Rule 30(b)(6) Topics 3, 5, 9, 13, 14, 15, 26, 28 and 29 Seek Irrelevant Testimony About the CFTC's Subjective Understanding

This Court ruled that the standard for determining liability under Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2), for making false and misleading statements of material fact to the CFTC is objective and "measured by the words themselves."  (Feb. 13, 2023 Hr'g Tr. at 9:4-17; *see also id.* at 6:2-11 ("And the individual administrator, whether he relies on a misstatement or not, is not an issue, it's whether the words themselves are capable of influencing the decision.  And that is an objective standard"), 28:5-7 ("Materiality, misstatements, they are all measured by what the defendant[] said, not by what others said about what the defendant[] said.").)  The Court's determination aligns with how other courts have interpreted the materiality standard in cases involving false statements made to the Government

or during official Government proceedings.  *See United States v. Scali*, 2018 WL 604852, at \*3 (S.D.N.Y. Jan. 29, 2018) (citing materiality standard and observing that "[t]he logical consequence of this objective inquiry is the insignificance of a statement's actual effect on the adjudicating or investigatory body") (emphasis added); *United States v. Santiago*, 2014 WL 4827883, at \*5 (S.D.N.Y. Sept. 26, 2014) ("[T]he test of materiality is objective, not subjective; that is, a statement is material if it is capable of influencing a decision by a decision-making body even if the body did not in fact rely on the statement.").

Yet, despite this Court's prior ruling and well-established precedent, Defendant listed the following Rule 30(b)(6) topics, which seek testimony that implicates the CFTC's subjective understanding or belief about various aspects of the case.  For example:

- **Topic 3**:  When and how the CFTC requested the information that it alleges should have been disclosed by Cboe or Gemini, and what the CFTC would or would not have done if it received such information.

- **Topic 5**:  Any public guidance the CFTC has provided about the self-certification process, including but not limited to, what information it believes is relevant to CFTC Core Principle 3 or how it evaluates Core Principle 3.

- **Topic 9**:  Whether any alleged misstatement or omission by Gemini would have been or was in fact relevant, important, material, capable of misleading, or actually misleading to the CFTC, or influenced the CFTC's evaluation of the Bitcoin Futures Contract in connection with the Self-Certification.

- **Topic 13**:  The identity and roles of any individuals who witnessed Gemini's purportedly false or misleading statements or omissions, who determined that any statements or omissions were false or misleading, and who considered those misstatements or omissions to be "material" to the CFTC's evaluation.

- **Topic 14**:  The CFTC's understanding of Gemini's prefunding requirements on the Bitcoin Auction.

- **Topic 15**:  The CFTC's understanding of the Pearl Street Loans, Operational Advances, Rebates, and Self-Trading and their purported effect on Gemini's prefunding requirements, or on the trading volume, liquidity, and number of participants in the Bitcoin Auction.

- **Topic 26**:  The CFTC's understanding of the effectiveness of Gemini's self-trade prevention and whether any Self-Trading occurred either before or after Gemini implemented self-trade prevention.

- **Topic 28**:  The CFTC's understanding of Gemini's fee schedule, internal policies, "market maker" program, purportedly undisclosed arrangements for Rebates, and the nature of the Rebates.

- **Topic 29**:  The CFTC's understanding of the rebate fraud that Gemini was a victim of around August 2017.

As the Court has already ruled, the CFTC's subjective understanding—or what the CFTC would or would not have done had Defendant disclosed the omitted information—is irrelevant to whether Defendant made false statements to the CFTC during the self-certification process. Simply put, "it does not matter whether the CFTC knew the statement was false at the time it was made, or conversely, whether it did not discover the falsity until later." *CFTC v. Gramalegui*, 2018 WL 4610953, at *24 (D. Colo. Sept. 26, 2018).  "The only question is whether the statement was capable of influencing a reasonable decision-maker." *Santiago*, 2014 WL 4827883, at *5.  Because these topics seek information that is irrelevant to any material issue in this case, the Court should grant a protective order striking the offending topics. *See In re Lifetrade Litig.*, 2023 WL 3244517, at *2 (S.D.N.Y. May 4, 2023) ("All 30(b)(6) deposition topics are constrained by Rule 26(b)(3)—meaning that they must seek information relevant to the claims and defenses that is proportional to the needs of the case.").

## B.    Defendant's Rule 30(b)(6) Topics 11, 12, 21 and 30 Seek Irrelevant Testimony that Cannot Support a Defense to the Asserted Claim

Defendant seeks deposition testimony about harm to market participants that flowed from Defendant's false statements (topics 12, 21) or evidence that the custom trading fee arrangements that Defendant offered to priority users negatively affected the Bitcoin Futures Contract (topic 30).  But testimony on these topics has no bearing on whether Defendant made

false statements in connection with the Bitcoin Futures Contract.  In fact, the lack of harm to third parties or evidence that the undisclosed trading rebates impacted the Bitcoin Futures Contract would not change the importance of the statements Defendant made prior to the self-certification or render those statements any less material or misleading.  *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 363 (S.D.N.Y. 2002) (denying motion to compel party to produce a witness to testify about topics that were "irrelevant to any material fact issue in th[e] case").  Moreover, the CFTC is not seeking relief based on harms to market participants or the impact Defendant's false statements had on the Bitcoin Futures Contract once it was self-certified.

Similarly irrelevant, and improper, is the topic that seeks testimony concerning the CFTC's "monitoring, oversight, and investigation of the Bitcoin Futures Contract after the Self-Certification."  (Topic 11.)  Not only has the Court previously rejected Defendant's request for documents on this subject matter (*see* Feb. 13 Hr'g Tr. at 21:11:13, 26:3-11, 28:4-9, 32:12-14, 34:24-25; March 22 Hr'g Tr. at 27:18-23), but the testimony about events that happened after the self-certification also cannot "exculpate" Defendant from allegations that it misled the CFTC while it was attempting to self-certify the contract.  *See CFTC v. Royal Bank of Canada*, 2014 WL 2933232, at *1 (S.D.N.Y. June 27, 2014) (Hellerstein, J.) (denying motion to compel based on the adequacy of a Rule 30(b)(6) witness where much of the testimony sought was not relevant); *Gov't Emps Ins. Co. v. Lenex Servs., Inc.*, 2018 WL 1368024, at *3 (E.D.N.Y. March 16, 2018) (finding Rule 30(b)(6) deposition topics "patently improper" where they "seek testimony on matters not at issue in th[e] case"); *Sanofi-Synthelabo v. Apotex Inc.*, 2009 WL 5247497, at *2 (S.D.N.Y. Dec. 30, 2009) (granting protective order because the Rule 30(b)(6) deposition notice "addresse[d] topics that [were] not relevant to the current damages phase . . .

and thus pose[d] an undue burden").  The Court should not permit Defendant to defy its prior

rulings and should grant a protective order striking the topics that are unmoored from any viable

defense to the asserted claim, including the topics that the Court has already deemed to be

irrelevant.

### III.    The Court Should Strike Rule 30(b)(6) Topics 3, 7, 9, 13, 14, 15 and 20 Because They Seek Testimony About Legal Issues

Several of the topics, including topics 3, 7, 9, 13, 14, 15, and 20, seek testimony about

legal issues.  Specifically, topic 7 seeks testimony about the "decisions that the CFTC could have

made in connection with the Self-Certification and whether any such decisions were made."  The

decisions the CFTC can make in connection with a self-certification is a legal issue that is

governed by the Commodity Exchange Act and Commission Regulations.  The CFTC has set

forth the applicable statutes, regulations, and guidance that apply to the self-certification in,

among other places, the Complaint (ECF No. 1), in the parties' joint letter to the Court (ECF No.

32 at 5), and during the Court hearing held on March 22, 2023 (Hr'g Tr. at 4:16-5:9, 9:17-12:5).

It is unclear what additional testimony the CFTC could provide on this point given the public

availability of the information sought and the Commission's public recognition of its oversight

function and duty to examine support for self-certifications.  *See* Provisions Common to

Registered Entities, 76 FR 44,776, 44,779 (July 27, 2011) (rejecting interpretation of self-

certification provision that would "ignore[] the Commission's product oversight function and its

duty to examine support for certifications of compliance with core principles, including

certifications that new products are not susceptible to manipulation").[7]

---

[7] Topic 7 is objectionable on numerous other grounds, including that it lacks the required specificity by failing to identify a specific, nonprivileged determination about which Defendant intends to inquire.  Additionally, as worded, the topic would appear to encompass preliminary or pre-decisional determinations and deliberations, which are plainly privileged.  *See CFTC v. Royal Bank of Canada*, 2013 WL 1932120, at *1 (S.D.N.Y. May 8, 2013) (Hellerstein, J.) ("For the deliberative process privilege to apply, the information must be inter- or intra-agency, pre-

(continued on next page)

Equally problematic are the topics that seek legal conclusions—namely, whether the misstatements or omissions were "material," "capable of misleading" the CFTC, or "influenced the CFTC's evaluation of the Bitcoin Futures Contract" in connection with the self-certification. (*E.g.*, topic 9; *see also* topic 3 (inquiring into Defendant's legal duty to disclose material information by asking "[w]hen and how the CFTC requested the information that it alleges should have been disclosed"); topic 13 (seeking to inquire about, among other things, "who considered th[e] misstatements and omissions to be 'material' to the CFTC's evaluation").) Likewise, certain topics seek to explore the CFTC's interpretation of Defendant's own misstatement or omissions (*see, e.g.*, topics 14 & 15) or otherwise seek testimony about whether those misstatements or omissions "could make the Bitcoin Futures Contract readily susceptible to manipulation"  (topic 20).  This testimony, along with any testimony concerning the interpretation of the applicable statutory and regulatory scheme that applies to self-certifications, improperly seeks testimony on legal issues.  *See Mendez v. City of Chicago*, 2020 WL 11647822, at *2 (N.D. Ill. Dec. 14, 2020) ("[T]he questions sought to be asked . . . request the witness's opinion on an ultimate legal issue . . . , which is also off-limits in a Rule 30(b)(6) deposition."); *cf. Great N. Ins. Co. v. NGL Warehouse, LLC*, 2016 WL 11691161, at *7 (D. Colo. Sept. 21, 2016) (observing that "contract interpretation is generally a question of law for the Court" and therefore "prohibited in a Rule 30(b)(6) deposition").

The Court has recognized that determinations of whether Defendant's statements were materially misleading is a legal question.  (Feb. 13 Hr'g Tr. at 13:2-5 ("[M]y proposition is that

---

decisional, and deliberative.").  To the extent Defendant is attempting to forward the ill-conceived argument that the deliberative process does not apply to self-certifications because there was no official action on the part of the Commission, such an argument would be wrong.  *See SEC v. Nacchio*, 2009 WL 211511, at *6 (D. Colo. Jan. 29, 2009) ("To properly claim the privilege, an agency is not required to demonstrate a specific final decision, but simply establish what deliberative process was involved and the role played by the contested evidence in the course of that process.").

14

this is to be judged by the [words] themselves and it becomes a matter of law whether it will not affect someone.  Whether, in fact, it did affect someone or did influence someone is not relevant."), 14:21-25 ("That's how I understand the law . . . .  [I]t's an objective standard, and we don't get into the question of how the particular individual was or was not influenced.  That's my ruling."), 17:6-10 ("So, again, we have to say, what is relevant here is what was said to the other side.  Not what a person thought to say or not what a person planned to say, what a person actually said, just like a contract.  The objective expectations of the parties that govern in a contract, same here."), 28:5-7 ("Materiality, misstatements, they are all measured by what the Defendant said, not by what others said about what the defendant[] said.").)

And, Second Circuit authority supports the Court's view that the determination of materiality is a question of law.  *United States v. Klausner*, 80 F.3d 55, 60 (2d Cir. 1996) ("[T]he determination of materiality in the present case involved purely a question of law and was suitable for resolution by the district court"); *see also United States v. Rigas*, 490 F.3d 208, 231 n.29 (2d Cir. 2007) (recognizing that "a statement's materiality may present a question of law resolvable by an appellate court in some contexts").[8]  Defendant also appears to agree with the Court's ruling—and applicable precedent—by arguing that "any evidence of how, when, where, under what circumstances anyone at the CFTC considered the[] [false] statements" is "entirely off the record" and "100 percent out of the case."  (Feb. 13 Hr'g Tr. at 15:4-13.)  Yet, Defendant seeks testimony on the precise issues it admitted in open court were not appropriate topics for the

---

[8] By contrast, in criminal prosecutions, the Second Circuit recognizes that charges brought pursuant to 18 U.S.C. § 1001 are the exception to the rule that "the issue of materiality in many statutes is a question of law for the judge" because materiality is "an element of the crime that must be determined by the jury."  *United States v. Ballistrea*, 101 F.3d 827, 834 n.4 (2d Cir. 1996).  In the criminal context, the Fifth Amendment and Sixth Amendment "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."  *United States v. Gaudin*, 515 U.S. 506,  510 (1995).  None of the Constitutional concerns that underpin the Court's decision in *Gaudin* are implicated in this civil action.

purposes of depositions.  Accordingly, the Court should grant a protective order striking the Rule 30(b)(6) deposition topics that improperly seek testimony about legal issues.

IV.     **The Court Should Strike Rule 30(b)(6) Topics 17, 18, 19, 20, 21, 22, 23, 24, 25, 27 and 30 Because They Seek Contention Discovery**

"The case law is clear that Rule 30(b)(6) depositions are intended to discover the facts, and it is improper to use a Rule 30(b)(6) deposition to ascertain how a party intends to marshal the facts and support its legal theories." *Gov't Emps Ins. Co.*, 2018 WL 1368024, at *3; *see also Liveperson, Inc. v. 24/7 Customer, Inc.*, 2015 WL 4597546, at *7 (S.D.N.Y. July 30, 2015); *SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992).  Court's routinely strike Rule 30(b)(6) topics that constitute contention discovery, where, as here, the topics "improperly require Plaintiff to 'collect and synthesize all of the information in [its] possession; . . . that [it] then impart that body of knowledge to [the deponent]; and . . . that [the deponent], in turn, feed it back to defendant[] in response to [its] deposition questions."  *Liveperson, Inc.*, 2015 WL 4597546, at *7; *see also JPMorgan Chase Bank*, 209 F.R.D. at 362 ("[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means.")

Ignoring this well-settled body of law, Defendant's 30(b)(6) notice includes numerous instances of contention discovery disguised as deposition topics, including the following:

- **Topic 17**:  All statements concerning the Pearl Street Loans, Operational Advances, Rebates, and Self-Trading that the CFTC contends were false or misleading.

- **Topic 18**:  All information concerning the Pearl Street Loans, Operational Advances, Rebates, and Self-Trading that the CFTC contends was omitted and what statements such omitted information rendered misleading.

- **Topic 19**:  The CFTC's basis for attributing to Gemini any statement about or omission of information about the Pearl Street Loans, Operational Advances, Rebates, and Self-Trading.

- **Topic 20**:  The CFTC's basis for asserting that the Pearl Street Loans, Operational Advances, Rebates, and Self-Trading could make the Bitcoin Futures Contract readily susceptible to manipulation.

- **Topic 21**:  The CFTC's evidence that price manipulation or other harm, including but not limited to harm to market participants or the derivatives markets subject to the CFTC's oversight, occurred because of statements or omissions concerning the Pearl Street Loans, Operational Advances, Rebates, and Self-Trading.

- **Topic 22**:  The CFTC's basis for alleging that the Pearl Street Loans were unsecured or provided at low or below-market rates.

- **Topic 23**:  Any basis for the CFTC to contend that the Pearl Street Loans were illegal or improper in any way.

- **Topic 24**:  The CFTC's basis for alleging that any Operational Advances were significant in size or duration.

- **Topic 25**:  Any basis for the CFTC to contend that the Operational Advances were illegal, improper, undisclosed, or inconsistent with Gemini's prefunding requirements.

- **Topic 27**:  Any basis for the CFTC to contend that Gemini's self-trade prevention was improper or ineffective.

- **Topic 30**:  The CFTC's evidence that the Rebates were exploited by customers in a way that affected the Bitcoin Futures Contract.

For starters, many of these topics seek information that is irrelevant to the claims and defenses, or otherwise misconstrues the CFTC's allegations and the legal standard for liability under Section 6(c)(2) of the Act, 7 U.S.C. § 9(2).  For example, topics 20 and 21 seek a basis for and evidence of price manipulation, harm to market participants, or that market participants exploited the undisclosed fee agreements.  But, as explained above, actual price manipulation and harm to market participants as well as actual exploitation of the undisclosed fee agreements cannot alter the fact that Defendant omitted information that was capable of influencing the CFTC in connection with the self-certification of the Bitcoin Futures Contract.  *See CFTC v. eFloorTrade, LLC*, 2020 WL 2216660, at *5 (S.D.N.Y. May 7, 2020) ("Whether [defendant's]

false testimony actually influenced the CFTC's investigation is not the test."); *United States v. Sabbeth*, 125 F. Supp. 2d 33, 44 (S.D.N.Y. 2000) (finding materiality element in a false statement case is "readily established" and does not require proof that victims of misstatements "were harmed[] or misled by the false statements").  Likewise, whether the "Pearl Street Loans" were illegal or improper (topic 23) does not alter the fact they were not disclosed to the CFTC even though the loans only went to priority users on Defendant's exchange, were funded by Defendant's principals, and were facilitated exclusively by Defendant's personnel to bolster volume and liquidity on the exchange and in the bitcoin auctions.

In any event, the court in *Liveperson* rejected almost analogous contention topics and observed that "[t]o the extent that Defendant is not after contention discovery, [it] is free to depose the witnesses identified by Plaintiff" because these "depositions will be more practicable and less burdensome than requiring one or more general 30(b)(6) deponents to synthesize and familiarize themselves with the facts and contentions responsive to every one of Defendant's 40 deposition topics."  2015 WL 4597546, at *7.  Defendant has done just that by deposing the CFTC witnesses identified on the preliminary witness list.  There is no valid basis for contention discovery given the information already provided and readily available to Defendant.  *See Blackrock Allocation Target Shares*, 2017 WL 9400671, at *2 ("A court should strike notice topics that would result in a witness merely testifying to information readily available through document production.").

## V.     The Court Should Strike Rule 30(b)(6) Topics 4 and 6 Because They Seek Testimony About the CFTC's Internal Policies and Procedures

Two of the Rule 30(b)(6) topics seek testimony about the CFTC's internal policies and procedures.  In particular, topic 4 seeks information about "[a]ny CFTC policies, procedures, or internal guidance for evaluating statements made in connection with the self-certification

process."  Similarly, topic 6 seeks the "CFTC's process for discussing self-certifications with DCMs and third parties working with DCMs to list a futures contract through the self-certification."  The issue of the CFTC's internal policies and procedures has already been briefed and decided in this case.  (*See* Feb. 3, 2023 Joint Discovery Dispute Ltr. at 1-5, ECF No. 32 (Defendant's briefing seeking production of the CFTC's internal policies and procedures); Feb. 13 Hr'g Tr. at 17:5-25 (rejecting Defendant's arguments regarding the applicable materiality standard, which was the basis for arguing for access to internal CFTC policies and procedures); March 22 Hr'g Tr. at 24:8-13 (reiterating that "the policies" were not "applicable here").)

As the CFTC explained in prior briefing, the inquiries into the CFTC's internal processes are protected by the deliberative process privilege and are an irrelevant diversion from the core issues in this case.  (ECF No. 32 at 5-7.)  Topics that call for testimony about internal policies and processes would reveal the CFTC's internal deliberative process of whether, and how, decisions will be made by the CFTC staff in evaluating self-certifications.  This falls squarely within the deliberative process privilege.  *See Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*, 929 F.2d 81, 84 (2d Cir. 1991) (a document is "deliberative" if it is "actually . . . related to the process by which policies are formulated") (internal citations omitted).  And, even if the internal policies and processes were not privileged, they are irrelevant in determining whether Defendant omitted information that was "capable of influencing" the CFTC's review of the self-certification.  As noted, that determination turns on an objective inquiry, which renders irrelevant the CFTC's internal processes for evaluating self-certifications.  *See SEC v. Bank of Am. Corp.*, 2009 WL 4797741, at *1 (S.D.N.Y. Dec. 8, 2009) (denying request for internal SEC policies and practices and noting that "[b]ecause the documents sought are internal SEC communications, [defendant] cannot claim to have relied on them in preparing the Joint Proxy Statement").

As the Court recognized, "factual discovery goes into how the record was made up, not why the record was made up."  (Feb. 13, 2023 Hr'g Tr. at 17:11-12.)  Defendant appears to agree with the Court's ruling by affirming that "any evidence of how, when, where, under what circumstances anyone at the CFTC considered the[] [false] statements" is not relevant to the case.  (*Id.* at 15:4-13.)  Yet, despite this apparent agreement, Defendant seeks testimony about the CFTC's internal policies and processes for evaluating self-certifications.  Defendant has no basis to argue that it is entitled to pierce the deliberative process privilege since, as the Court acknowledged, "the policies" are not "applicable here."  (March 22, 2023 Hr'g Tr. at 24:8-13.)  While the Court also observed that, "if [the CFTC witnesses] talk about policies, then [the Court] may be likely to cause [the CFTC] to produce those policies," *id.*, Defendant cannot point to any such testimony because none exists.

## VI.    The Court Should Strike Rule 30(b)(6) Topics 31 through 39 Because They Seek to Invade the Investigatory Files and Work Product of the CFTC

Eight of the forty deposition topics (topics 31-39) focus on a former Gemini employee who provided information to the CFTC in the course of its investigation.  During discovery, the CFTC produced the non-privileged information about the former employee and logged any information that was withheld.  Nevertheless, Defendant continues to seek additional, and in most cases, non-existent information from a CFTC Rule 30(b)(6) witness about the former employee as part of its retribution campaign.[9]  Courts uniformly reject attempts by defendants to

---

[9] Defendant will no doubt seek, once again, to assail the former employee's character because it obtained a judgment against him for legal fees in a separate matter involving allegations of wrongful termination.  (*See*, *e.g.*, ECF No. 13 at 2, 4-5; ECF No. 32 at 29-30; ECF No. 40 at 5.)  Defendant's fondness for cherry picking favorable quotes to attack a potential witness in public filings is a transparent diversionary tactic to obscure what really matters.  Defendant does not, because it cannot, dispute that the former employee provided information about an undisclosed affiliated loan program backed by Defendant's principals, the existence of which showed that a multitude of Defendant's self-certification statements about the bona fides of Defendant's exchange and auction were false and misleading.  No amount of mudslinging can cover up Defendant's own misconduct.

depose government agencies about their investigative efforts, and this Court has twice denied Defendant's prior requests to invade the CFTC's investigative files and work product.

In *SEC v. Contrarian Press, LLC*, 2020 WL 7079484 (S.D.N.Y. Dec. 2, 2020), the court upheld a magistrate judge's ruling that granted the SEC's request for a protective order barring a Rule 30(b)(6) deposition that sought testimony "regarding the facts and evidence underlying the SEC's contentions in th[e] lawsuit." *SEC v. Contrarian Press, LLC*, 2020 WL 3317190, at *1 (S.D.N.Y. June 17, 2020). The 30(b)(6) topics from *Contrarian Press* sought testimony about the SEC's investigation and the evidence the SEC obtained. *Id.* at *2. The court ruled that attempts to probe for information related to the SEC's investigation constituted "an impermissible attempt by [Defendants] to inquire into the mental processes and strategies of the SEC, " which "comes close to 'an attempt to depose the attorney for the other side.'" *Contrarian Press*, 2020 WL 7079484, at *3 (quoting *SEC v. Rosenfeld*, 1997 WL 576021, at *2 (S.D.N.Y. 1997) (cleaned up); *see also Contrarian Press*, 2020 WL 3317190, at *2 (collecting cases denying Rule 30(b)(6) depositions seeking information about an agency's investigative efforts). This reasoning applies with equal force here since the topics related to Defendant's former employee plainly seek information about the CFTC's investigation. (*See, e.g.*, topic 31 (seeking testimony about "[e]vidence obtained by the CFTC from [the former employee] in any way").)

Consistent with the developed body of law within this Circuit, the Court has rejected Defendant's prior attempts to obtain discovery from the CFTC about its investigation into Defendant. During the February 13, 2023 hearing, the Court stated "you're not getting that" in response to Defendant's request for notes from witness interviews conducted during the investigation and cautioned Defendant that it "can't encroach on what [the CFTC] found" during its investigation. (Feb. 13 Hr'g Tr. at 34:6-19.) Then, during the March 22, 2023 hearing, the

Court instructed Defendant that it "will not order [the CFTC] to tell you what [it] did in this case" and that Defendant was "not going to be able to ask and get an answer to questions of [the former employee's] talks with [the CFTC]."  (March 22 Hr'g Tr. at 27:1-23.)  The Court told Defendant that, if it "want[ed] to take [the former employee's] deposition," Defendant should "take it."  (March 22 Hr'g Tr. at 27:3-5.)  Defendant has taken no steps of which the CFTC is aware to depose the former employee and has instead elected to notice knowingly inappropriate Rule 30(b)(6) deposition topics that ignore this Court's express instructions.  The Court should not countenance Defendant's refusal to abide by its prior rulings.  *See City of Almaty, Kazakhstan v. Ablyazov*, 2021 WL 4846366, at *3 (S.D.N.Y. Oct. 18, 2021) ("Federal Rule of Civil Procedure 37 authorizes a court to impose sanctions for conduct in discovery, including . . . when a party violates an express discovery order . . . .").

## CERTIFICATION AND CONCLUSION

Pursuant to Federal Rule of Civil Procedure 26(c)(1), the Commission hereby certifies that, on August 4 and August 31, 2023, the Commission conferred in good faith with Defendant in order to resolve the parties' disputes regarding Defendant's Rule 30(b)(6) deposition topics.  As explained above, the Commission has been unable to do so.

Accordingly, the Commission respectfully requests that the Court grant the CFTC's motion for a protective order barring the deposition of a CFTC representative designated pursuant to Rule 30(b)(6) or, in the alternative, strike certain of the topics set forth in Defendant's Rule 30(b)(6) deposition notice.

Dated:  September 6, 2023

Respectfully submitted,

*/s/ Andrew J. Rodgers*
K. Brent Tomer, Chief Trial Attorney
Alejandra de Urioste, Chief Trial Attorney
David Oakland, Senior Trial Attorney
Katherine Rasor, Trial Attorney
Diana Wang, Trial Attorney
Andrew J. Rodgers, Trial Attorney
Manal M. Sultan, Deputy Director

COMMODITY FUTURES
TRADING COMMISSION
Division of Enforcement
290 Broadway, Suite 600
New York, NY 10007
Phone: (646) 746-9700
Fax: (646) 746-9888