**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COMMODITY FUTURES TRADING
COMMISSION,

Plaintiff,

v.

GEMINI TRUST CO., LLC,

Defendant.

No. 22-cv-4563-AKH

## MEMORANDUM OF LAW IN SUPPORT OF
## GEMINI'S MOTION TO COMPEL

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 4

ARGUMENT ................................................................................................................. 9

I.    PLAINTIFF'S WITNESSES SHOULD BE COMPELLED TO ANSWER
      GEMINI'S QUESTIONS ....................................................................................... 9

      A.    The Deliberative Process Privilege Does Not Apply to CFTC's Review
            of the Self-Certification ......................................................................... 10

      B.    Plaintiff Has Improperly Invoked the Deliberative Process Privilege
            to Deny Gemini Discovery on Critical Issues ........................................ 13

      C.    CFTC Has Waived the Deliberative Process Privilege with Respect to
            its Review of the Self-Certification ....................................................... 16

            1.    Waiver Through Selective Testimony at Depositions .............................. 17

            2.    Waiver Through Disclosure of Deliberation During Investigation .......... 18

            3.    Waiver Through Publication ................................................................. 19

II.   IN THE ALTERNATIVE, PLAINTIFF SHOULD BE PRECLUDED FROM
      INTRODUCING EVIDENCE AS TO ANY MATTER ABOUT WHICH IT HAS
      INVOKED THE DELIBERATIVE PROCESS PRIVILEGE ........................................ 20

CONCLUSION ............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arista Records, LLC v. Lime Grp. LLC*,
  2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011)...................................................................21-22

*Bahena v. City of Chicago*,
  2018 WL 2905747, (N.D. Ill. June 11, 2018)........................................................................17

*Burbar v. Garden City*,
  303 F.R.D. 9 (E.D.N.Y. Sept. 22, 2014)...............................................................................14

*Children First Found., Inc. v. Martinez*,
  2007 WL 4344915 (N.D.N.Y. Dec. 10, 2007)...................................................................13–14

*Condit v. Dunne*,
  225 F.R.D. 100 (S.D.N.Y. 2004) ...........................................................................................9

*DeLeon-Reyes v. Guevara*,
  2021 WL 3109662 (N.D. Ill. July 22, 2021)..........................................................................19

*Dobyns v. United States*,
  123 Fed. Cl. 481 (Fed. Cl. 2015) ..........................................................................................10

*E.G.I. Gem Lab Ltd. v. Gem Quality Institute, Inc.*,
  90 F. Supp. 2d 277 (S.D.N.Y. 2000),
  *aff'd*, 4 F. App'x 81 (2d Cir. 2001)......................................................................................21

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
  314 F.R.D. 85 (S.D.N.Y. 2016) ..............................................................................................9

*Henry v. County of Nassau*,
  2022 WL 16965006 (E.D.N.Y. Nov. 16, 2022).....................................................................18

*Hickman v. Taylor*,
  329 U.S. 495 (1947)................................................................................................................22

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
  2019 WL 1649983 (S.D.N.Y. Mar. 28, 2019) .......................................................................21

*In re Grand Jury Subpoena dated August 9, 2000*,
  218 F. Supp. 2d 544 (S.D.N.Y. 2002)....................................................................................10

*John Doe Co. v. United States*,
  350 F.3d 299 (2d Cir. 2003)...................................................................................................21

*Khan v. Midland Funding LLC*,
   956 F. Supp. 2d 515 (S.D.N.Y. 2013) ....................................................................11

*Lawrence v. Suffolk Cnty.*,
   2022 WL 855380 (E.D.N.Y. Mar. 23, 2022) ...................................................10, 17

*MacNamara v. City of New York*,
   249 F.R.D. 70 (S.D.N.Y. 2008) ...........................................................................10

*Mitchell v. Fishbein*,
   227 F.R.D. 239 (S.D.N.Y. 2005) .........................................................................10

*Nat'l Res. Defense Counsel, Inc. v. Fox*,
   1998 WL 158671 (S.D.N.Y. Apr. 6, 1998) ...........................................................13

*S.E.C. v. Benson*,
   657 F. Supp. 1122 (S.D.N.Y. 1987) ......................................................................22

*S.E.C. v. Cymaticolor Corp.*,
   106 F.R.D. 545 (S.D.N.Y. 1985) .....................................................................21–22

*Torres v. City Univ. of New York*,
   1992 WL 380561 (S.D.N.Y. Dec. 3, 1992) ...........................................................10

*United States v. Gramins*,
   939 F.3d 429 (2d Cir. 2019) .................................................................................14

*United States v. Landesman*,
   17 F.4th 298 (2d Cir. 2021) .................................................................................14

*United States v. Litvak*,
   808 F.3d 160 (2d Cir. 2015) ..............................................................7–8, 14, 15

*United States v. Raza*,
   876 F.3d 604 (4th Cir. 2017) ...............................................................................14

*United States v. Serv. Deli Inc.*,
   151 F.3d 938 (9th Cir. 1998) ...............................................................................14

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   141 S. Ct. 777 (2021) ..........................................................................................12

*Velez v. City of New York*,
   2010 WL 2265443 (E.D.N.Y. June 2, 2010) .........................................................10

*Walls v. City of New York*,
   502 F. Supp. 3d 686 (E.D.N.Y. 2000) ..............................................................11, 13

*Weiss v. Chrysler Motors Corp.*,
    515 F.2d 449 (2d Cir. 1975)..................................................................................21

**Rules & Statutes**

Fed. R. Civ. P. 26(b)(1)..............................................................................................9

**Other Authorities**

Order on Mot. to Quash, *Hood v. City of Chicago*,
    No. 16-cv-01970 (N.D. Ill. Mar. 19, 2019), ECF No. 247 ....................................19

Defendant Gemini Trust Co., LLC ("Gemini") respectfully submits this memorandum of law in support of its motion to compel former CFTC employee Gregory Kuserk and current CFTC employee Christopher Goodman to answer questions posed to them during their depositions and to compel any future CFTC witnesses to answer any questions of the same nature or, in the alternative, to preclude Plaintiff from offering evidence as to any matter on which it has invoked the deliberative process privilege as a bar to discovery.

## PRELIMINARY STATEMENT

The way this case has proceeded is fundamentally unfair and implicates serious due process concerns.  The government has sued Gemini but seeks to deny Gemini a full and fair opportunity to defend itself.

Plaintiff's theory in this case is that Gemini made material false and misleading statements and omitted material information in connection with a 2017 self-certification filed by the Cboe Futures Exchange ("CFE").  While Gemini has repeatedly sought discovery that will underscore the myriad flaws in this baseless claim, Plaintiff has used its status as a governmental agency to stymie Gemini's efforts at every turn.  Gemini brings this motion to seek relief from Plaintiff's obstruction or, in the alternative, to ensure that this case is litigated on a level playing field.

Gemini first addressed Plaintiff's interference with the discovery process—including its improper invocation of the deliberative process privilege as a near-total bar to discovery of substantive internal CFTC communications or documents—in joint letters submitted in February and March of this year.  While the Court declined to "invade" the privilege "*at [that] point in time*," it also noted that "*as we get into the depositions, things may come up, and in the interest of fairness, I can invade the privilege*."  Gemini has now deposed two CFTC witnesses: former CFTC employee Gregory Kuserk and current CFTC employee Christopher Goodman, both of whom CFTC has identified as potential trial witnesses.  During these depositions, CFTC invoked the

deliberative process privilege as a basis to instruct the witnesses not to answer nearly 200 questions regarding core issues in this case.

The evidence Plaintiff has denied Gemini through these instructions is critical.  Plaintiff claims Gemini's statements were false or misleading—but blocked Gemini from obtaining evidence about whether statements to CFTC were false or misleading.  Plaintiff claims Gemini omitted facts—but blocked Gemini from obtaining evidence about whether CFTC was aware that many of those facts were disclosed.  And Plaintiff claims these purported misstatements and omissions were material—but has blocked Gemini from obtaining evidence about what it thought at the time and why CFTC never asked about many of the things it complains about here.  Even if this evidence is not dispositive, Plaintiffs cannot credibly dispute that it would tend to make Plaintiff's factual allegations more or less probable than they would be without it.

Plaintiff's deployment of the deliberative process privilege to deny Gemini this critical discovery cannot stand.  *First*, the deliberative process privilege does not apply.  The deliberative process privilege protects only confidential communications relating to policy making at the higher levels of government.  But both Mr. Kuserk and Mr. Goodman testified that they were not policy makers at CFTC and that their review and analysis of the CFE self-certification did not involve any policy making.  Moreover, Plaintiff instructed both witnesses not to answer questions that go to the heart of whether the deliberative process privilege applies to *any* work CFTC did in connection with the CFE self-certification, including whether anything CFTC did or decided would have any impact on any other application before or decision by CFTC.  In so doing, CFTC has made it impossible for it to prove that the privilege applies at all in this case, as is its burden.

*Second*, the deliberative process privilege is a qualified privilege that cannot prevent Gemini from obtaining critical discovery.  But that is precisely what Plaintiff seeks to do here.

Plaintiff has instructed its witnesses not to answer questions about foundational issues like whether Gemini made any false or misleading statements, whether purportedly omitted information was disclosed to CFTC, and whether CFTC could or did make any decisions regarding the self-certification.  That this evidence may not dispose of Plaintiff's claims under the governing objective standard does not mean it is not highly probative.  Incredibly, though, even when Gemini attempted to litigate this case on Plaintiff's terms by focusing on the types of evidence Plaintiff has said it will present regarding materiality, Plaintiff again instructed the witnesses not to answer.

*Third*, CFTC has waived the deliberative process privilege by repeatedly disclosing the very information that it now professes is privileged.  Relevant disclosures include, *inter alia*, self-serving testimony that Plaintiff selectively permitted Mr. Kuserk and Mr. Goodman to give, open discussions with the Department of Justice during an investigation into Gemini, and CFTC's statements regarding the CFE self-certification.  Having previously disclosed this information, Plaintiff cannot now deploy the deliberative process privilege to deny Gemini discovery.

*Finally*, an alternate form of relief is appropriate if the Court upholds Plaintiffs' invocation of the deliberative process privilege.  It is well-established that a party cannot invoke a privilege as a defense to discovery—only to later introduce evidence relevant to the issues on which discovery has been prevented.  For good reason: to permit otherwise invites strategic invocations of privilege and risks unbalancing the scales of justice.  Thus, as an alternate form of relief, the Court should enter an order precluding Plaintiff from introducing *any evidence* concerning *any matter* about which Gemini has been denied discovery based on the deliberative process privilege.

## STATEMENT OF FACTS

In December 2017, CFE introduced a new bitcoin futures product for trading on its exchange. Ex. 1.[1] As a CFTC-regulated exchange, CFE was required to demonstrate that this new product complied with CFTC's "Core Principles" before it offered the product for trading. Compl. ¶ 16.[2] CFE could make this showing in two ways: a formal application for CFTC's approval or a "self-certification" in which CFE attested that it had reviewed the product, conducted appropriate due diligence, and concluded that it complied with the Core Principles. Compl. ¶¶ 18–19. CFE elected to self-certify, which it did in a December 1, 2017 filing (the "Self-Certification"). Ex. 1.

CFE's filing of the Self-Certification was the culmination of a months-long process. Beginning in April, CFE and CFTC engaged in an iterative dialogue in which CFE provided extensive information to CFTC, which in turn asked questions and requested additional information where it desired to do so. *See, e.g.*, Ex. 2, Ex. 3. One topic during that conversation was the Gemini exchange, as CFE had decided to use a daily bitcoin auction on Gemini's exchange to set the settlement price for its new product. Ex. 1 at 1. To ensure CFTC understood its proposed product, CFE provided extensive information about Gemini—which was not subject to CFTC regulation—including its policies and procedures manual, extensive trade data, and detailed descriptions of how Gemini's auction worked. *See, e.g.*, Ex. 2. Gemini also answered questions from CFTC and made senior executives available for meetings with its staff. *See, e.g.*, Ex. 3.

In November 2017—weeks before CFE filed the Self-Certification—a disgruntled former Gemini employee who wanted to "destroy" the company in retaliation for firing him after his gross negligence was discovered filed a purported whistleblower submission with the CFTC. Ans. at 3;

---

[1]   "Ex." refers to exhibits to the Declaration of John F. Baughman filed with this motion.

[2]   CFTC's Core Principles are rules designated contract markets (*i.e.*, exchanges or DCMs) must follow "as a condition of obtaining and maintaining designation as a contract market." Ex. 4.

Ex. 5 ¶ 21.  Over the following five years, Plaintiff and the U.S. Attorney for the Southern District of New York investigated these "whistleblower" claims, including by interviewing CFTC employees who reviewed the Self-Certification and related information that was provided to them. The FBI Form 302s summarizing these interviews demonstrate that these CFTC employees were asked questions about their internal deliberations, thought processes, and subjective beliefs regarding the Self-Certification.  Critically, the Form 302s do not indicate that CFTC—which was represented at these interviews by its litigation counsel in this case—instructed its employees not to answer these questions or advised them not to disclose information based on the deliberative process privilege.  *See generally*, Exs. 6, 7, 8, 9, 10, 11.[3]

Consistent with Plaintiff and the U.S. Attorney's approach during their investigation, and based on the governing law, Gemini has sought (and believes it is entitled to) discovery on key questions concerning whether Gemini made any false or misleading statements, whether Gemini omitted any facts, and whether the alleged misstatements and omissions were material to any decision by the CFTC.  Notwithstanding its stance with respect to its internal deliberations during the investigation—specifically, that such deliberations and the thoughts and opinions of its individual employees were relevant and not privileged—Plaintiff has taken extreme positions to deprive Gemini of evidence that is relevant and likely exculpatory.

Plaintiff's attempts to deny Gemini discovery began when CFTC employed the deliberative process privilege as a complete bar to *any* production of *any* documents reflecting its internal communications, analyses, or thought processes.  Indeed, while CFTC purports not to have applied the deliberative process privilege categorically, *see* Ex. 12 at 5, the facts on the ground demonstrate the opposite, as Plaintiff has produced essentially no substantive internal documents. Gemini

---

[3]    While CFTC initiated this action, the U.S. Attorney's office declined to bring charges.

previously raised this issue with the Court in joint letters dated February 3, 2023, ECF #32, and March 20, 2023, ECF #40, and during conferences on February 13, 2023, Ex. 20, and March 22, 2023, Ex. 13.  While the Court did not "invade" the deliberative process privilege "*at th[at] point in time*," it stated that "*as we get into the depositions*, things may come up, and *in the interest of fairness, I can invade that privilege*."  Ex. 13 at 23:17–23 (emphasis added).[4]  During that same hearing, the Court made clear that its prior evaluation of the parties' arguments concerning the types of evidence that can be used to prove materiality were "more an observation than a rule" and that the Court "ha[d] not made any study of" the issue.  *Id.* at 21:18–22:2.

During the week of August 21, Gemini deposed Gregory Kuserk, who in 2017 was the Deputy Director of Product Review at the CFTC's Division of Market Oversight, and Christopher Goodman, who in 2017 was a CFTC Economist in the Product Review Group.  Gemini attempted to examine these witnesses—whom Plaintiff has identified as potential trial witnesses, Ex. 14— concerning key factual disputes, but Plaintiff again invoked the deliberative process privilege as a near-total bar to discovery.  Three particularly egregious examples are highlighted below:

***Did Gemini Make Any False or Misleading Statements?***  Because Plaintiff alleges Gemini made false or misleading statements to CFTC, Compl. ¶ 1, Gemini asked Mr. Kuserk and Mr. Goodman if they could testify from personal knowledge that certain statements referenced in the Complaint were false or misleading.  Each and every time, Plaintiff objected and instructed the witness not to answer on the basis of the deliberative process privilege.  For example:

- Gemini asked if any statement in a July 25, 2017 written submission or made during a meeting on that same date (referred to in the Complaint at paragraph 36) was false

---

[4]   Gemini does not seek to revisit the Court's ruling with respect to the documents Plaintiff has withheld on the basis of the deliberative process privilege at this time.  Gemini may, however, seek relief with respect to those documents after examining CFTC's witnesses.

or misleading; CFTC instructed the witnesses not to answer.  Ex. 15 at 185:7–13; Ex. 16 at 127:14–128:8.

- Gemini asked if any statement in an August 25, 2017 written submission or made during an August 28, 2017 meeting regarding the same (referred to in the Complaint at paragraph 36) was false; CFTC instructed the witnesses not to answer.  Ex. 15 at 210:24–211:4, 237:20–25, 238:6–10; Ex. 16 at 182:16–20.

- Gemini asked if any statement in the Self-Certification (referred to throughout the Complaint) was false or misleading; CFTC instructed the witnesses not to answer. Ex. 15 at 307:5–9; Ex. 16 at 62:3–10.

The effect of these denials is substantial.  Mr. Kuserk and Mr. Goodman are Plaintiff's trial witnesses, but Plaintiff denied Gemini the opportunity to determine if either witness has obviously pertinent—and potentially exculpatory—knowledge or what the witness can testify to at trial.

*Did Gemini Omit Material Information?*   Because CFTC also claims Gemini omitted material information, *see, e.g.*, Compl. ¶¶ 35–119, Gemini asked Mr. Kuserk and Mr. Goodman if they or their colleagues had reviewed, analyzed, or discussed documents and data provided to the CFTC that disclosed some of the purportedly omitted information.  To take two examples, in 2017 CFTC received copies of Gemini's Policies & Procedures, which disclosed purportedly omitted information regarding incentives Gemini provided to some customers, and data regarding the Gemini auction, which disclosed purportedly omitted information regarding historic instances of self-trading.  Ex. 16 at 184:15–186:4; Ex. 15 at 199:7–19.  When Gemini attempted to examine Mr. Kuserk and Mr. Goodman about their review, analysis, and understanding of these documents, however, Plaintiff instructed the witnesses not to answer.  Ex. 16 at 186:13–19; Ex. 15 at 196:19–197:5, 199:23–200:17.

*What Decisions Did CFTC Make in Connection with the Self-Certification?*   Plaintiff also alleges Gemini's purported misstatements and omissions were "material."  A statement or omission can only be material "if it has a natural tendency to influence, or be capable of influencing, the *decision* of the decisionmaking body to which it was addressed."  *United States v.*

*Litvak*, 808 F.3d 160, 170 (2d Cir. 2015) (emphasis added).   For this reason, Gemini asked Mr. Goodman what decisions, if any, CFTC could or did make in connection with the Self-Certification.   This is critical information, because materiality can only be assessed against a specific CFTC decision.   But Plaintiff refused to let the witnesses answer.   *See* Ex. 15 at 36:21–37:12, 38:16–24, 117:17–27, 64:9–11, 263:13–21, 285:22–286:4 (instructing witness not to answer questions about what decisions CFTC can make regarding self-certifications, generally, or did make regarding the Self-Certification, specifically).

These examples are illustrative only.   Over and over and over again, Plaintiff instructed Mr. Kuserk and Mr. Goodman not to testify about *anything* having to do with their understanding, thoughts, impressions, beliefs, or conversations concerning the Self-Certification—even where the testimony is directly relevant to Plaintiff's allegations.   To wit, Plaintiff instructed Mr. Kuserk and Mr. Goodman not to answer questions about:

- The meaning of "readily susceptible to manipulation"—a phrase that appears 13 times in the Complaint and forms a crucial component of Plaintiff's claims.  Ex. 15 at 75:24–77:7; Ex. 16 at 85:19–86:13.

- The meaning of "prefunding"—a term that appears seven times in the Complaint and which Plaintiff claims was misleading.  Ex. 16 at 190:8–12, 192:2–14, 194:3–13, 198:6–14, 218:19–219:7, 262:11–20; Ex. 15 at 151:1–8, 244:14–245:8.

- Whether rebates and incentives—which form a critical component of Plaintiff's allegations—make an exchange susceptible to manipulation.  Ex. 16 at 141:20–142:5.

- Whether the Gemini auction was relevant in any way to CFTC's analysis of whether the CFE bitcoin futures product complied with CFTC's Core Principles.  Ex. 15 at 55:6–56:9.

- Whether Gemini's prefunding requirement could affect CFTCs analysis of whether the CFE bitcoin futures contract was readily susceptible to manipulation.  Ex. 16 at 219:15–20.

- Whether certain core principles are relevant to any final decision by CFTC concerning self-certifications.  Ex. 15 at 63:12–19.

Notwithstanding its generally obstructionist approach, Plaintiff did selectively permit Mr. Kuserk and Mr. Goodman to testify about their thoughts, understandings, and impressions when that testimony was potentially helpful to Plaintiff's case.  For example:

- Plaintiff represented to the Court that guidance regarding Core Principle 3, which says that a product cannot be "readily susceptible to manipulation," can be found in 17 C.F.R. § 38, Appendix C ("Appendix C").  Ex. 13 at 10:19–23.  On its face, Appendix C says *nothing* about many of the purportedly material issues Plaintiff raised in its Complaint.  Ex. 17.  During Mr. Goodman's deposition, CFTC permitted the witness to testify at length about why Appendix C should be construed to apply to Plaintiff's allegations here.  Ex. 15 at 89:10–91:17.  At other times, however, Plaintiff invoked the deliberative process privilege to prevent Mr. Goodman from testifying about Core Principle 3.  *See, e.g.*, *id.* at 62:21–64:8, 70:14–71:2, 75:23–76:4.

- Plaintiff alleges Gemini's statements that its exchange was "prefunded" were false and misleading.  Compl. ¶ 40.  At times, Plaintiff permitted its witnesses to testify about their understanding of what prefunding meant.  Ex. 16 at 212:2–18; Ex. 15 at 149:8–23.  But the witnesses were instructed not to answer when presented with evidence demonstrating that their definitions of prefunding were inconsistent with the definition Gemini gave CFTC in 2017.  *E.g.*, Ex. 15 at 244:5–245:25; Ex. 16 at 197:19–198:14.

- Notwithstanding Plaintiff's instruction to Mr. Goodman not to answer questions about whether he or his colleagues analyzed data disclosing historic instances of self-trading in the Gemini auction, *supra* 7, Plaintiff *affirmatively asked* Mr. Goodman and Mr. Kuserk if Gemini disclosed that exact fact, Ex. 15 at 334:12–20; Ex. 16 at 277:6–20.

## ARGUMENT

## I.   PLAINTIFF'S WITNESSES SHOULD BE COMPELLED TO ANSWER GEMINI'S QUESTIONS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004).   As the party opposing discovery, CFTC has the burden of showing why the discovery Gemini seeks should be denied.  *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 314 F.R.D. 85, 87–88 (S.D.N.Y. 2016).  Plaintiff cannot meet this burden.

**A.      The Deliberative Process Privilege Does Not Apply to CFTC's Review of the Self-Certification**

Plaintiff's use of the deliberative process privilege to deny Gemini discovery fails because CFTC cannot prove that the privilege applies.  The deliberative process privilege "does not operate indiscriminately to shield all decision-making by public officials." *Velez v. City of New York*, 2010 WL 2265443, at *4 (E.D.N.Y. June 2, 2010) (quoting *Scott v. Bd. of Educ.*, 219 F.R.D. 333, 337 (D.N.J. 2004)).  The privilege only protects communications surrounding the "formulat[ion of] important public policy," *Torres v. City Univ. of New York*, 1992 WL 380561, at *7 (S.D.N.Y. Dec. 3, 1992), particularly "communications relating to policy formulation at the higher levels of government," *Velez*, 2010 WL 2265443, at *4.

Discrete decisions concerning individual cases or applications do not constitute policy making for purposes of the deliberative process privilege.  *See, e.g.*, *Lawrence v. Suffolk Cnty.*, 2022 WL 855380, at *10 (E.D.N.Y. Mar. 23, 2022) ("[f]act-bound" decisions that "affect only the case in which they are made" are not policy decisions because they are not "office-wide and do not affect" anyone other than the subject of the decision).[5]  Given its limited scope, the privilege is "confined within the narrowest possible limits consistent with the logic of its principle," *In re Grand Jury Subpoena dated August 9, 2000*, 218 F. Supp. 2d 544, 553 (S.D.N.Y. 2002) (quoting *United States v. Int'l Bd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997)), and documents that are "peripheral" to the high-level policy making process are not protected, *MacNamara v. City of New York*, 249 F.R.D. 70, 78 (S.D.N.Y. 2008) (citation omitted).

---

[5]      *See also Dobyns v. United States*, 123 Fed. Cl. 481, 488–89 (Fed. Cl. 2015) (documents "relate[d] to the collection of facts pertaining to a single occurrence" were not "recommendations or analyses which speak to the adoption or rejection of a policy" and thus could not "possibly lead to the adoption or rejection of a policy"); *Mitchell v. Fishbein*, 227 F.R.D. 239, 251 (S.D.N.Y. 2005) (reviews of discrete applications or submissions are "'routine' decisions . . . and thus cannot qualify for the deliberative process privilege").

As the party invoking the privilege, Plaintiff bears the burden of proving that it applies. *Walls v. City of New York*, 502 F. Supp. 3d 686, 696 (E.D.N.Y. 2000).  To meet this burden, CFTC must "show by affidavit or other competent evidence sufficient facts to bring the disputed documents within the confines of the privilege." *Khan v. Midland Funding LLC*, 956 F. Supp. 2d 515, 516 (S.D.N.Y. 2013) (quoting *United States v. Davis*, 131 F.R.D. 391, 402 (S.D.N.Y. 1990)). "[M]ere conclusory or *ipse dixit* assertions" are not sufficient. *Id.* (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 225 (2d Cir. 1984)).

Plaintiff cannot make this showing.  Mr. Kuserk and Mr. Goodman both testified during their depositions that they were not policy makers at CFTC.  *See, e.g.*, Ex. 16 at 25:3–6 ("Q.  In or around 2017, did you make any policy or policy decisions regarding self-certifications?  A.  No, I didn't."); Ex. 15 at 32:6–15 ("Q.  In 2017, did your job responsibilities as an economist in the product review group of the division of market oversight involve making policy with respect to self certifications?  [Objection omitted]  A.  Okay.  I would not consider myself to be in a policy making role necessarily.").  When Gemini asked the witnesses if they made any policy in connection with the Self-Certification, Plaintiff instructed them not to answer:

> Q.  Okay.  Did you make any policy recommendations in connection with the CBOE self certification?
>
> MR. RODGERS: I'm going to instruct the witness not to answer on the basis of the deliberative process privilege.

Ex. 15 at 32:17–22; *see also* Ex. 16 at 271:15–273:3 (instructing Mr. Kuserk not to answer questions about whether he or CFTC made policy when analyzing the Gemini auction).  Plaintiff also instructed the witnesses not to answer when Gemini asked if CFTC's review of the Self-Certification was the type of office-wide or general policy-making that the deliberative process privilege protects:

> Q. Did anything you did in connection with the CBOE self certification affect

11

CFTC policy with respect to any other self certification?

MR. RODGERS: Same objection.  Same instruction [not to answer based on the deliberative process privilege].

Q. Did anything you did in connection with the CBOE self certification affect CFTC decisions with respect to any other self certification?

MR. RODGERS: Same objection.  Same instruction.

Q. Did anything you did in connection with the CBOE self certification affect any other matter for the CFTC?

MR. RODGERS: Same instruction. Same objection.

Ex. 15 at 32:23–33:14.

The witnesses testified that they did not make policy in 2017, and Plaintiff directed them not to give evidence needed to answer the threshold question of whether CFTC's review of the Self-Certification was a discrete analysis that only affected CFE's bitcoin futures contract or a broader decision that had a wider application or policy effect.  Therefore, Plaintiff cannot make the evidentiary showing necessary to establish that the privilege applies to the work Mr. Kuserk, Mr. Goodman, or any other CFTC employee did in connection with the Self-Certification.  As a result, the Court should order Mr. Goodman and Mr. Kuserk to answer all questions Plaintiff instructed them not to answer (along with reasonable follow-up questions), and Plaintiff should not be permitted to invoke the deliberative process privilege in any future CFTC deposition.

At minimum, Plaintiff has improperly prevented Gemini from obtaining testimony from Mr. Goodman and Mr. Kuserk about the basis for any final decision by the CFTC regarding the Self-Certification.   The deliberative process privilege "distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not."  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785–86 (2021).  For this reason, Gemini repeatedly sought to obtain

testimony from Mr. Goodman and Mr. Kuserk about what (if any) final decision CFTC made concerning the Self-Certification and the reasons supporting it; here again, Plaintiff repeatedly objected and instructed the witness not to answer.  *See, e.g.*, Ex. 15 at 116:17–117:16 (instructing witness not to answer if he or anyone else at the CFTC made "any final decision with respect to the CBOE Bitcoin futures contract that depended on a determination as to whether the CBOE Bitcoin futures contract complied with core principle 3"); Ex. 16 at 232:9–22 (instructing witness not to answer if changes Gemini made to its auction were relevant to a final decision by the CFTC).  In explaining the basis for one such instruction not to answer, CFTC's counsel stated that the question "implicated the internal thought process that goes into making final decisions."  Ex. 15 at 285:22–286:16.  This explanation is directly contrary to the Supreme Court's instruction in *U.S. Fish & Wildlife* that the privilege does not prevent disclosure of "the reasons supporting" a final decision, and the instruction not to answer cannot be sustained for this reason.

**B.      Plaintiff Has Improperly Invoked the Deliberative Process Privilege to Deny Gemini Discovery on Critical Issues**

Plaintiff's deployment of the deliberative process privilege also fails because Plaintiff has used it to deny Gemini discovery on critical disputed issues.  The deliberative process privilege is a qualified privilege.  *Nat'l Res. Defense Counsel, Inc. v. Fox*, 1998 WL 158671, at *5 (S.D.N.Y. Apr. 6, 1998).  Thus, even where it could apply, courts "balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information."  *Walls*, 502 F. Supp. 3d at 698 (E.D.N.Y. 2000) (quoting *Kunstler v. City of New York*, 439 F. Supp. 327, 328 (S.D.N.Y. 2006)).  Where, as here, the government's decision-making process is at issue in the case, courts routinely find that the privilege cannot bar disclosure.  *See, e.g.*, *Children First Found., Inc. v. Martinez*, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007) ("The historical and overwhelming consensus and body of law within the Second Circuit is that when the decision-

making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery."); *Burbar v. Garden City*, 303 F.R.D. 9, 13 (E.D.N.Y.) (deliberative process privilege "may be inapplicable where the deliberations are among the central issues in the case").

CFTC's understanding of statements made in connection with the Self-Certification is critical evidence in this case. Though the materiality standard is nominally objective, it must be measured by reference to "the decisionmaking body to which it was addressed." *Litvak*, 808 F.3d at 170 (quoting *United States v. Coplan*, 703 F.3d 46, 78 (2d Cir. 2012)). Subjective evidence of what decisionmakers actually do or consider is routinely deemed to be relevant to materiality. *See, e.g.*, *United States v. Gramins*, 939 F.3d 429, 446 (2d Cir. 2019) (affirming conviction for wire and securities fraud based in part on evidence of materiality that included "direct testimony from several of [defendant's employers'] counterparties" who "testified that they considered the defendants' lies important to them in the context of the price negotiations in which they occurred"); *United States v. Landesman*, 17 F.4th 298, 341 (2d Cir. 2021) (affirming conviction for securities fraud based in part on finding that testimony from investors about what they would have done if they had received accurate information was probative of whether misstatements were objectively material); *United States v. Serv. Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998) (affirming false statements conviction based, *inter alia*, on testimony from government employee that she actually relied on false statement). Here, the standard is more specific:

> [W]hen the victim is the government, the *prosecution must prove materiality by reference to the particular government agency or public officials that were targeted*. . . . [E]ven if the false misrepresentation might influence a reasonable person, a fraud conviction was not warranted unless the governmental decisionmaking body considered the false representation to be material.

*United States v. Raza*, 876 F.3d 604, 617 (4th Cir. 2017) (emphasis added). Thus, so long as there is "evidence of a nexus" between the witnesses' testimony and the hypothetical reasonable CFTC

14

employee, subjective evidence from Mr. Kuserk, Mr. Goodman, and other CFTC witnesses is relevant and discoverable. *Litvak*, 889 F.3d at 65–66.

The evidence Gemini seeks from Mr. Kuserk and Mr. Goodman that Plaintiff has blocked through the deliberative process privilege is clearly relevant and likely exculpatory. Though CFTC asked numerous questions about the bitcoin futures contract before CFE filed the Self-Certification, it never asked for the information it alleges Gemini wrongfully omitted. Gemini submits the reason CFTC did not ask questions on these issues is they were not material. But every time Gemini asked about the information Mr. Kuserk or Mr. Goodman reviewed in connection with the Self-Certification, whether the allegedly omitted information was relevant to their assessment of the Self-Certification, or what decision CFTC was making and how the omitted information affected it, Plaintiff instructed the witnesses not to answer. When Gemini asked about the witness's understanding of key terms Plaintiff claims were false or misleading (*e.g.*, prefunding) or whether the witnesses believed Gemini made any false or misleading statements, Plaintiff instructed the witness not to answer. These questions are fundamental to Plaintiff's claim—which, to reiterate, is that Gemini made false and misleading statements and omitted information that were material to a decision it made. It cannot be the case that Plaintiff can levy these claims against Gemini and then assert a governmental immunity to discovery on those issues.

Similarly, during the March 22 conference, Plaintiff explained that it intends to attempt to prove materiality "through those witnesses who can testify about what the decision was that had to be made, the factors that the CFTC considers, and the elements that are considered in connection with the self-certification." Ex. 13 at 19:14–22. Yet Plaintiff has repeatedly prevented Gemini from obtaining discovery on precisely those issues. For example, notwithstanding that Plaintiff has indicated that it will seek to prove materiality though testimony about, *inter alia*, "what the

decision was that had to be made," Mr. Goodman was instructed not to answer questions like "what decisions can the CFTC make in connection with a self certification?"  Ex. 15 at 64:9–12, 263:13–21.  Similarly, notwithstanding its representation that it will attempt to prove materiality through "the factors that the CFTC considers, and the elements that are considered in connection with the self-certification," CFTC instructed Mr. Goodman not to answer when Gemini asked if compliance with certain CFTC "Core Principles" is relevant to a decision the CFTC can make concerning self-certifications.  *Id.* at 63:12–64:8, 82:8–83:7.

This point cannot be overstated.  Plaintiff represented to the Court that it intends to put on "witnesses" to testify about the critical issue of materiality and identified the types of things about which those witnesses will testify.  But when Gemini attempted to ask *Plaintiff's own trial witnesses* about the precise factual matters about which *Plaintiff has said it will put on evidence at trial*, Plaintiff invoked a governmental privilege to prevent that examination.  There is no definition of justice, fairness, or equity that could permit such a result.

## C.  CFTC Has Waived the Deliberative Process Privilege with Respect to its Review of the Self-Certification

Plaintiff's invocation of the deliberative process privilege also fails because it has waived the privilege over most or all topics in this case.  Plaintiff has waived this privilege in three ways: (i) by selectively allowing Mr. Kuserk and Mr. Goodman to give, and in some cases affirmatively soliciting, self-serving testimony on the very topics about which it did not permit Gemini to examine the witnesses; (ii) permitting its employees to discuss with the Department of Justice the very matters it now claims are privileged; and (iii) publicly disclosing information about its decisions and decision-making process (or lack thereof) it now claims is privileged.  Each of these prior disclosures provides an independent basis for the waiver of any otherwise applicable

deliberative process privilege; collectively, they put beyond question CFTC's flawed contention that its internal deliberations, communications, and decision making are privileged.

### 1.    Waiver Through Selective Testimony at Depositions

No privilege can be used as a sword and shield.    Thus, as with any privilege, the government may not invoke the deliberative process privilege selectively or strategically.    Courts have deemed the privileged waived where the government permits its witnesses to testify about some matters protected by the deliberative process privilege.    *See, e.g.*, *Lawrence v. Suffolk Cnty.*, 2022 WL 855380 (holding there was "no deliberative process privilege to assert" where a witness has already "testified at length about" the same topics); *id.*, at *10 (finding deliberative process claim "arbitrary and not justified" where witness has already "testified about some of these matters" both "as a matter of completeness [and] fairness"); *Bahena v. City of Chicago*, 2018 WL 2905747, at *3–4 (N.D. Ill. June 11, 2018) (holding government had "waived its ability to assert the deliberative process privilege" where witness "testified at her deposition about her assessment of the evidence, the process she went through to come to her conclusion, and the ultimate decision").

Plaintiff's strategic invocation of the privilege warrants a finding of waiver here.    Plaintiff selectively permitted and solicited testimony from Mr. Kuserk and Mr. Goodman about the same purportedly privileged topics it asserted were privileged when instructing the same witnesses not to answer Gemini's questions.    These topics include:

- The meaning of Appendix C and its importance to CFTC's review of self-certifications.    *Compare* Ex. 15 at 83:10–18, 88:20–89:1,89:10–22, 92:21–93:18, 96:23–97:15, 100:3–101:3, 103:2–103:7, 122:16–123:13, 137:8–138:2 (permitting testimony); *id*. at 60:1–12 (instructing witness not to answer).

- What final decision, if any, CFTC made regarding the Self-Certification.    *Compare* Ex. 15 at 35:25–36:19, 81:10–20 (permitting testimony) *with id.* 36:21–37:12, 81:24–82:5 (instructing witness not to answer).

- The meaning of "prefunding" and whether that meaning is different than the definition Gemini gave to the CFTC. *Compare* Ex. 15 at 149:8–23 (permitting testimony) *with id.* at 92:12–19, 151:1–8 (instructing witness instructed not to answer); Ex. 16 at 212:2–18 (permitting testimony) *with id.* at 190:8–12, 192:5–14, 198:10–14 (instructing witness not to answer).

- Whether data provided to CFTC disclosed instances where the same party was both a buyer and a seller in a transaction. *Compare* Ex. 15 at 326:15–23 (question from CFTC eliciting testimony about whether self-trading was disclosed to the CFTC) *with id.* at 199:23–200:7 (instructing witness not to answer regarding same).

In many instances, the only apparent difference between the testimony Plaintiff permitted and the testimony Plaintiff blocked is whether it would help Plaintiff's case. The guidance in Appendix C says *nothing* about many of the issues in this case, so Plaintiff permitted Mr. Goodman to testify about why it should be read expansively. Gemini specifically defined what it meant by prefunded, but that definition does not support Plaintiff's claims, so Plaintiff permitted its witnesses to provide alternate interpretations. Historic instances of self-trading *were* disclosed, but that fact is inconvenient to Plaintiff's claims, so Plaintiff affirmatively solicited testimony to the contrary. Having repeatedly allowed, and even elicited, testimony on topics that might otherwise have been privileged, Plaintiff has waived any deliberative process privilege that might otherwise have applied with respect to such topics and lines of questioning.

## 2. Waiver Through Disclosure of Deliberation During Investigation

Plaintiff also waived the deliberative process privilege by disclosing purportedly privileged information outside the agency. "[V]oluntary disclosure of a document to an individual outside of the agency . . . waives deliberative process privilege." *Henry v. County of Nassau*, 2022 WL 16965006, at *3–4 (E.D.N.Y. Nov. 16, 2022). Here, Plaintiff permitted its employees to disclose their deliberations and thought process at length during multiple interviews with the U.S. Attorney's office during its investigation. *See*, *e.g.*, Ex. 6 (disclosing internal concerns and thinking regarding volume, prefunding, affiliate loans, fee rebates, and wash trading, among other

18

things); Exs. 7, 8 (same).  This disclosure was not part of any CFTC decision-making process concerning the Self-Certification, but a separate process surrounding a separate decision: whether to sue Gemini for making false statements and omissions.  Plaintiff's litigation counsel attended those interviews, but the available documents do not indicate that they ever asserted the topics discussed were privileged.  In so doing, Plaintiff waived any claim that the deliberative process privilege applies to its deliberations concerning the Self-Certification.

### 3.  Waiver Through Publication

Plaintiff also waived the deliberative process privilege through public disclosures concerning the Self-Certification.  A governmental entity or employee who makes public statements or disclosures on an issue cannot later invoke the deliberative process privilege with respect to those issues.  *See DeLeon-Reyes v. Guevara*, 2021 WL 3109662, at *5 (N.D. Ill. July 22, 2021) (holding deliberative process privilege was waived where government's "public statement . . . revealed predecisional and deliberative elements to the [relevant] decision"); Order on Mot. to Quash at 5, 7–8, *Hood v. City of Chicago*, No. 16-cv-01970 (N.D. Ill. Mar. 19, 2019), ECF No. 247 (holding statement by government official "to shed light on what he considered" in making decision waived "ability to hide behind the deliberative process privilege").  Here, after the Self-Certification was filed, CFTC issued press releases that detailed, *inter alia*, the concerns it had sought to address in connection with the Self-Certification and how it would monitor the CFE product going forward.  Ex. 18; Ex. 19.  For example, CFTC disclosed:

- CFE "provided Commission staff with advanced draft contract terms and conditions for their bitcoin contracts.  *Commission staff reviewed this information*, engaged in many discussions with the DCMs and the derivatives clearing organizations (DCOs) that will be clearing the contracts for CME and CFE, *and evaluated whether any aspects of the contracts raise questions regarding compliance with the CEA and Commission regulations*."  Ex. 18 (emphasis added).

- "There are concerns about the price volatility and trading practices in" cash market for bitcoin.  Ex. 19 at 1.

- CFE "agreed to significant enhancements to contract design and settlement . . . as well as more information sharing with the underlying cash bitcoin exchanges." *Id.* at 1.

- "[T]he Commission will continue to assess whether further changes are required to the contract design and settlement processes . . . ." *Id.* at 1.

- "Once the contracts are launched, Commission staff will engage in a variety of risk-monitoring activities." *Id.* at 1.

Notwithstanding these prior statements about what it did, could, and would do, Plaintiff instructed its witnesses not to answer when asked questions on many of these same topics. *See supra* 6–9.

*        *        *

Plaintiff's disclosure of purportedly privileged information over many years and in disparate contexts supports a ruling that Plaintiff waived whatever privilege could apply with respect to Plaintiff's deliberations. At minimum, however, Plaintiff has waived any privilege that might apply with respect to each of the specific topics and subject matter areas discussed above, including: (i) whether Plaintiff believed the Gemini auction was readily susceptible to manipulation; (ii) any final decision CFTC made regarding the Self-Certification; (iii) concerns regarding volume on the Gemini auction; (iv) any public guidance on the topics CFTC typically assesses when evaluating susceptibility to manipulation (including Appendix C); (v) the meaning of the term "prefunded"; (vi) the extent to which self-trading was disclosed; (vii) any information, assessment, or discussion of items or subject matters that the CFTC has elicited testimony about, including all topics the CFTC has alleged were not disclosed to the CFTC; and (viii) matters discussed or disclosed during the Department of Justice interviews.

## II.   IN THE ALTERNATIVE, PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE AS TO ANY MATTER ABOUT WHICH IT HAS INVOKED THE DELIBERATIVE PROCESS PRIVILEGE

Should the Court affirm Plaintiff's invocation of the deliberative process privilege, an alternate form of relief is necessary in the interest of fairness: an order precluding CFTC from

introducing any evidence on any matters as to which it has prevented Gemini from taking discovery.  The Second Circuit has repeatedly held that a party that uses a privilege to stop its adversary from taking discovery on an issue may not later introduce evidence on that issue.  In *E.G.I. Gem Lab Ltd. v. Gem Quality Institute, Inc.*, 90 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2000), *aff'd,* 4 F. App'x 81 (2d Cir. 2001), for example, the Second Circuit affirmed a district court order holding that a party that had "blocked his adversary from conducting discovery on [an] issue" could not later introduce evidence relevant to that issue.  The Second Circuit reached a similar conclusion in *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456 (2d Cir. 1975), when it affirmed a court order precluding defendant, which had not disclosed certain evidence in response to plaintiff's discovery requests, from "putting in any evidence on the trial as to" the matters in question.  "Forfeiture of this nature is justified by considerations of fairness to the adversary. . . . [I]t would be unfair for a party asserting contentions to an adjudicating authority to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions."  *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003).

Trial courts in this district have applied this rule in a variety of contexts.  *See, e.g.*, *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 2019 WL 1649983, at *18 (S.D.N.Y. Mar. 28, 2019) (holding defendant that invoked attorney-client privilege to stop examination about its state of mind during deposition could not submit evidence on that issue on summary judgment); *Arista Records, LLC v. Lime Grp. LLC*, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) (granting motion to preclude defendant from introducing evidence about communications with counsel as part of advice of counsel defense because it did not "make a full disclosure [of those communications] during discovery"); *S.E.C. v. Cymaticolor Corp.*, 106 F.R.D. 545, 549 (S.D.N.Y. 1985) (precluding defendant from introducing any evidence as to any matter regarding which it

had invoked Fifth Amendment to avoid discovery); *S.E.C. v. Benson*, 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987) ("Defendant has . . . chosen the tactic of seeking to bar plaintiff's access to the evidence. At least to the extent of pleading the Fifth Amendment, that is his right. But, in a civil case, he cannot have it both ways.  By hiding behind the protection of the Fifth Amendment as to his contentions, he gives up the right to prove them. By his initial obstruction of discovery and his subsequent assertion of the privilege, defendant has forfeited the right to offer evidence disputing the plaintiff's evidence or supporting his own denials.").

Preclusion is an entirely appropriate remedy here.  Throughout discovery, Gemini has diligently sought to obtain discovery that is critical to its defense.  As demonstrated above, however, Plaintiff has blocked Gemini from obtaining this discovery, even where the matters in question are foundational to this case—including on matters that CFTC specifically alleged in the Complaint and put at issue through its representations to the Court.  Plaintiff should not be permitted to invoke special governmental privileges as a basis to deny Gemini this critical discovery and then introduce evidence as to those issues at trial.  Indeed, such a result would run completely afoul of the foundational maxim, recognized for nearly a century, that "[m]utual knowledge of all relevant facts gathered by the parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

For this reason, Plaintiff should be precluded from introducing any evidence as to any issue on which it has invoked the deliberative process privilege to prevent Gemini from obtaining discovery—including any issues about which CFTC selectively permitted Mr. Kuserk and Mr. Goodman to provide partial answers.  These issues include, but are not limited to:

- What decisions, including final decisions, CFTC could or did make concerning the Self-Certification;

- Whether any statements made to CFTC were false or misleading;

- Whether historical auction volume data provided to CFTC disclosed that there had been auctions in which a single party transacted with itself;

- CFTC's policies or procedures for evaluating statements made in connection with a self-certification;

- Public guidance from CFTC about the self-certification process, including the meaning of Appendix C;

- Whether any purported misstatements or omissions by Gemini were relevant, important, material, capable of misleading, or actually misleading to CFTC;

- Whether any purported misstatement or omission by Gemini influenced CFTC's evaluation of the CFE bitcoin futures contract;

- The meaning "readily susceptible to manipulation";

- The meaning of "prefunding";

- The meaning of any other words used in any written submission or oral discussions concerning the Self-Certification or Gemini exchange or auction;

- Whether the Gemini auction was relevant to CFTC's analysis of whether the CFE bitcoin futures contract was readily susceptible to manipulation;

- Whether Gemini's prefunding requirement could affect whether CFE's bitcoin futures contract was readily susceptible to manipulation; and

- Whether offering rebates and incentives makes an exchange readily susceptible to manipulation.

## CONCLUSION

Plaintiff, an arm of the federal government, has publicly accused Gemini of wrongdoing, seeks millions of dollars in monetary penalties and punitive injunctive relief—but has invoked a privilege only available to the government to comprehensively deny Gemini critical discovery on matters *Plaintiff* raised in its Complaint and to the Court. At the same time, Plaintiff has permitted its witnesses to testify where doing so could help to its case. Plaintiff's strategic invocation of governmental privileges to deny Gemini a fair trial cannot stand. Gemini respectfully requests that the Court order Mr. Kuserk and Mr. Goodman to answer all questions CFTC instructed them

not to answer and compel any future CFTC witnesses to answer any questions of the same nature.

In the alternative, the Court should enter an order precluding Plaintiff from offering evidence as

to the matters on which it has invoked the deliberative process privilege as a bar to discovery.

Dated:  New York, New York
        September 12, 2023

JFB LEGAL, PLLC

By: /s/ John F. Baughman

    John F. Baughman
    Daniel A. Schwartz
    Elizabeth Lee
    299 Broadway, Suite 1816
    New York, NY 10007
    Telephone: (212) 528-3212
    jbaughman@jfblegal.com
    dschwartz@jfblegal.com
    elee@jfblegal.com

    *- and -*

SHEARMAN & STERLING LLP

    John Nathanson
    Christopher LaVigne
    Randall Martin
    599 Lexington Avenue
    New York, NY 10022
    Telephone: 212-848-4000
    Facsimile: 212-848-7179
    john.nathanson@shearman.com
    christopher.lavigne@shearman.com
    randall.martin@shearman.com

    *Attorneys for Defendant*
    *Gemini Trust Company, LLC*