# EXHIBIT 12



**COMMODITY FUTURES TRADING COMMISSION**
Ted Weiss Federal Office Building
290 Broadway, Suite 600
New York, NY 10007
Telephone: (646) 746-9700
www.cftc.gov

Division of
Enforcement

November 16, 2022

**VIA Email**

Christopher LaVigne (christopher.lavigne@shearman.com)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022

Re: **CFTC v. Gemini Trust Co., LLC, Case No 22-cv-4563 (AKH)**

Dear Mr. LaVigne:

We are writing in response to Defendant's second discovery letter dated November 4, 2022 ("Def.'s Second Discovery Ltr."), which you sent after four hour-long meet-and-confers that the parties conducted on an almost weekly basis in the month of October. As we have stated from the beginning of our discussions, many of the issues that you have raised require time to address because the CFTC is in the process of collecting and reviewing documents in response to Defendant's broadly worded and far-reaching document requests. We have acted diligently in response to Defendant's discovery requests and subsequent oral demands made during the parties' meet-and-confers. Indeed, immediately following the entry of the Protective Order (ECF No. 25), we made two productions to Defendant, on October 20 and 27, 2022. Each production explained the material that was being produced and provided detailed Bates ranges. We are in the process of preparing a third production, and will continue rolling productions as we identify and review potentially responsive documents. We also provided you with oral updates on our document collection and review efforts, and provided a written search protocol in a letter dated November 4, 2022 that set forth the custodians, date ranges, and search terms being used to review electronic communications.

Your suggestion that the CFTC has refused to produce relevant information and failed to provide information necessary for a meaningful conferral process is belied by this record. Such accusations are unproductive and cast doubt on whether there is a sincere interest in resolving the issues raised during the conferral process, which commenced before the entry of a protective order or a scheduling order. In fact, in the first meet-and-confer your co-counsel suggested that the CFTC was "slow walking" the case even though we never requested an extension and timely responded to Defendant's prematurely served discovery requests. Regardless, the CFTC continues to work with Defendant to understand and narrow the overbreadth of Defendant's document requests, and to address the evolving questions you have posed. Consistent with this approach, we have tried to address most of the issues in your letter. If there are outstanding items that require further clarification, please let us know and we will continue to work cooperatively to address further inquiries.

November 16, 2022
Page 2 of 7

Finally, we have only recently received Defendant's responses and objections to the CFTC's October 12, 2022 requests for production, which did not include any indication when Defendant will commence document production or provide the search protocol referenced in the response. As such, we briefly address some of the issues we raised with you during the conferral process for which we have yet to receive a response. We will follow up separately with you on Defendant's responses and objections to the CFTC's document requests.

### *Search Protocol*

As you acknowledge, discussion of the search protocol is premature since you now have the written protocol that you requested and have yet to provide your comments. As you will see, and as we have explained orally, the protocol is a work-in-progress and we will continue to refine the process and search terms as we complete the document collection phase. Since you indicated that you will send a separate letter addressing the search protocol, we will await that letter before responding in full. That said, there are a few points worth clarifying based on your initial remarks.

*First*, in terms of the materials received from third parties during the course of the investigation into Defendant's false and misleading statements to the CFTC, we have provided a substantial initial production of material that was readily available. We anticipate a follow-on production that includes additional email correspondence with third parties. Once complete, we will provide you with the details of the production in the production cover letter. We are also continuing to review our files for additional potentially responsive materials received from third parties.

*Second*, your request that the CFTC provide an itemized list for each request that includes the custodians, date ranges, search terms, and document repositories searched is unreasonable and unduly burdensome. In essence, you are asking us to take information already provided to you in a clear and concise format and reproduce it to you in a repetitious and confusing format. As we have discussed, there is considerable overlap between your requests, and subject to the CFTC's September 16, 2022 objections and responses, the searches outlined in our November 4 letter are being used to respond to each of Gemini's requests for production. In addition, we note that it would be impossible to comply with your demand with respect to certain of the document requests that are worded as contention interrogatories and seek documents concerning the CFTC's subjective understanding of specific terms or topics (*e.g.*, Requests 4 & 19). We have made clear what search parameters we have used, and currently plan to use, to search for responsive documents. We are not aware of any requirement under the applicable rules to provide the level of detail or format you have requested. However, we remain open to discussing any items you believe are not covered by the searches we have disclosed.

*Third*, you have requested that we disclose the materials beyond email communications that are being searched. (Def.'s Second Discovery Ltr. at 2, 3.) It bears noting that your oral and written demands are procedurally defective and should have been interposed in Defendant's Interrogatories. *See* Local Civil Rule 33.3 ("[A]t the commencement of discovery, interrogatories will be restricted to those seeking . . . the existence, custodian, location and general description of relevant documents . . . ."). Notwithstanding this procedural defect, the CFTC will identify the non-electronic communication repositories that are being searched, or are expected to be searched, and we can confirm that we are identifying and searching such sources in response to the requests. The updated protocol will identify the non-electronic communication repositories being searched.

November 16, 2022
Page 3 of 7

### *Requests for Production*

As a general matter, we disagree with your characterization of our meet-and-confers and the positions you have attributed to us. Our declination to address any such editorializing of the conferral process should not be construed as an admission. We outline below, in turn, some clarifying points:

- *Request 7*

You never "made clear" that this request could be satisfied "in the first instance" by producing documents reflecting the questions the CFTC posed and the answers received in other, unrelated self-certifications. Your attempt to narrow the request was tied to the production of the internal communications related to other self-certifications involving bitcoin. In any event, Request 7, even as amended, seeks documents and communications that are unrelated to the self-certification at issue in this matter. Defendant has not claimed to have relied on any statements from other self-certifications of bitcoin futures contracts in making statements to the CFTC. Nor has Defendant claimed that the other exchanges are similarly situated such that questions from other self-certifications have any bearing on the statements Defendant made to the CFTC. Absent these particulars, it is wrong to suggest that questions and responses in other self-certifications have any impact on the materiality of the statements Defendant made to the CFTC. Indeed, courts have rejected similar requests for information from government entities about unrelated agency decisions. *See, e.g.*, *Nat'l Rifle Ass'n of Am. v. Cuomo*, 332 F.R.D. 420, 439 (N.D.N.Y. 2019) (denying plaintiff's motion to compel materials or communications related to referrals to government agencies of matters not connected with the plaintiff NRA).

- *Requests 8 & 9*

Given the considerable overlap in the requests, documents responsive to Requests 8 and 9 are being collected. As noted in the protocol provided on November 4, we are in the process of refining search terms to determine a relevant review population that is proportional to the needs of the case. As we have throughout the meet-and-confer process, we will update you accordingly.

- *Requests 11 & 17*

The CFTC stands on its objections to Request 11. Internal CFTC documents, as you observe, implicate several privileges. For Request 11, it is difficult to see how compliance with internal policies regarding information sharing with other government entities has any bearing on the claims or defenses of this case or why such compliance would be an appropriate subject to explore at depositions or trial. You have no articulated basis for believing that there was any misconduct on the part of the CFTC in bringing this enforcement action. Your ungrounded speculation that you will find some evidence of misconduct smacks of a fishing expedition that we doubt a court would authorize. *See SEC v. Am. Growth Funding II, LLC*, 2016 WL 8314623, at *7 (S.D.N.Y. Dec. 30, 2016) (declining to allow discovery on unclean hands defense "based on nothing more than speculation that [defendants] *may* have suffered prejudice as a result of the misconduct they describe"). Your request that we search for and log "[a]ll versions" of "all" internal policies and procedures runs afoul of the proportionality limit on discovery given that the material is undoubtedly privileged and the relevancy of the information is tied to the mere hope of uncovering potential misconduct.

November 16, 2022
Page 4 of 7

      Likewise, the CFTC stands on its objections to Request 17.  There is no serious dispute about the actions the CFTC could or could not take with respect to the listing of the bitcoin futures contract given that Defendant and the Cboe engaged with the CFTC for months before submitting the self-certification letter.  Defendant has not argued that it relied on the internal policies and procedures or that the statutes and regulations that applied to the self-certification were ambiguous.  In similar circumstances, courts have taken a dim view on requests for internal agency policies and procedures.  *See SEC v. Bank of Am. Corp.*, 2009 WL 4797741, at *1 (S.D.N.Y. Dec. 8, 2009) (denying request for internal SEC policies and practices); *SEC v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661, 668 (S.D. Fla. 2012) (finding "the SEC's internal policies and investigations of other entities have no bearing on the issue of scienter").  If you still intend to move to compel on this issue, please set forth your arguments in a joint letter in accordance with the Judge's Individual Rules.

- *Request 13*

      As we informed you, Defendant's disclosure of a specific SAR and request for CFTC information about it raises serious questions about your compliance with the regulations promulgated by the Office of the Comptroller of the Currency, which prohibits the *disclosure* of information that would reveal the existence of a particular SAR.  *See* 12 C.F.R. § 21.11(k)(1)(i).  In your letter, you suggest that the disclosure of the SAR and request for information are appropriate because there is an exemption that allows for disclosure to Federal law enforcement agencies.  (Def.'s Second Discovery Ltr. at 4.)  However, that exception applies to the report of suspicious activity, not to the ability to obtain information in civil discovery from a Federal agency.

      Indeed, your letter fails to address 31 C.F.R. § 1020.320(e)(2), which expressly prohibits a "Federal, State, local, territorial, or Tribal government authority, or any director, officer, employee, or agent of any of the foregoing" from "disclos[ing] a SAR, or any information that would reveal the existence of a SAR, except as necessary to fulfill official duties consistent with Title II of the Bank Secrecy Act."  *Id.*  And, contrary to your argument that disclosure in civil litigation is permitted because the "animating concerns for SARs rules" will not be violated (Def.'s Second Discovery Ltr. at 4), the regulations specifically state that "[f]or purposes of this section, 'official duties' shall not include the disclosure of a SAR, or any information that would reveal the existence of a SAR, in response to a request for disclosure of non-public information or a request for use in a *private legal proceeding*."  31 C.F.R. § 1020.320(e)(2) (emphasis added).  In short, Defendant's disclosure of the existence of a SAR violates applicable regulations, and the subsequent request for information from the CFTC about that very same SAR is wholly inappropriate and should be withdrawn.

      Lastly, it also bears noting that Defendant failed to share any findings that could form the basis of a SAR filing with the DMO staff during the self-certification process, and we are not aware of any authority that sanitizes false statements to government agencies because a SAR had been filed with a separate government agency or filed on a belated, *post hoc* basis.  In fact, the law is the opposite.  *See CFTC v. Gramalegui*, 2019 WL 4610953, at *24 (D. Colo. Sept. 26, 2018) ("[I]t does not matter whether the CFTC knew the statement was false at the time it was made, or conversely, whether it did not discover the falsity until later.") (citation omitted).  Your contention that Defendant filed a SAR concerning fraudulent and/or manipulative conduct on its trading platform during the self-certification process—but elected to withhold that information from the DMO staff it was communicating with

during the self-certification process—is also difficult to square with Defendant's professed commitment of openness and transparency with regulators. (Answer at 8, ECF No. 13.)[1]

### *Privileges*

Many of the requests, as we have discussed, seek internal CFTC documents and communications, which implicate several privileges including the deliberative process privilege. Unfortunately, our discussions around this issue have not been productive based on our disagreements about the law and the issues that are at the center of this case. Despite our request for authority to support the positions you have articulated, you have declined to do so. Your letter is similarly devoid of relevant authority. As we have stated, understanding the basis for your position would help further the conversation.

Rather than engage in a substantive discussion, you have made statements that are inconsistent with settled law. For example, you made the blanket claim that the deliberative process privilege is an either-or proposition, i.e., all internal communications are going to be subject to the deliberative process privilege or none of them will be. This is plainly not the case. *See In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) ("[T]his all-or-nothing approach has not been adopted with regard to executive privileges generally, or to the deliberative process privilege in particular."). Based on this authority, we have adopted the prudent approach of reviewing the material before making a privilege determination and plan to provide a privilege log detailing any of the documents over which the CFTC asserts the deliberative process privilege. It is for this reason that any motion seeking "prompt resolution from the Court" would be premature.

It is also not the case that the materiality element of the charged offense places the CFTC's own deliberations at the center of the case. It is well understood that an "ordinary enforcement action in no way implicates the [agency's] subjective motivations," *Landry v. FDIC*, 204 F.3d 1125, 1137 (D.C. Cir. 2000), even when a defendant places the agency's intent and decision-making processes at issue. *FTC v. Meta Platforms, Inc.*, 2022 WL 4078930, at *6 (D.D.C. Sept. 6, 2022) (rejecting argument that FTC's failure to block past transactions "puts squarely at issue the FTC's intent and decision-making processes in 2012 and 2014"); *see also CFTC v. Royal Bank of Canada*, 2013 WL 1932120, at *2 (S.D.N.Y. May 8, 2013) (rejecting argument that "the Commission waived the deliberative process privilege by putting the Commission's knowledge of RBC's trading strategies 'at issue' in its Amended Complaint") (Hellerstein, J.).

We have explained, and you appear to agree, that the test for materiality is whether the statement or omission had "a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995). This broad standard can be reached by objective evidence and testimony that does not implicate the CFTC's internal deliberation. Indeed, as noted above, a defendant can be liable under Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2), even if the CFTC knows that the defendant is lying. *See Gramalegui*, 2019 WL 4610953, at *24; *see also United States v. Santiago*, 2014 WL 4827883, at *5 (S.D.N.Y. Sept. 26, 2014) ("The particular decisionmaker can even have

---

[1] The position outlined for Request 14 does not merit a response except to clarify that the initial objection was not overbroad given that Defendant's requests for production were served before there was a protective order in place to address the CFTC's confidentiality obligations.

thought that the statement was false at the time it was made, as was indubitably the case here. His subjective belief in the particular circumstances of a particular case is irrelevant. The only question is whether the statement was capable of influencing a reasonable decision-maker.") (citation omitted). This makes sense since it would undermine the purpose of the statute to encourage truthful statements and deter and punish lying if liability turned on the persuasiveness of the liar. *See Brogan v. United States*, 522 U.S. 398, 402 (1998).

At bottom, the focus on the CFTC's internal deliberations distracts from the core issues in this case, which are the statements Defendant made to the Commission and whether Defendant knew or should have known those statements were false or misleading. *See* 7 U.S.C. § 9(2). On this issue, you have remained silent and, as noted below, you have declined to provide your position on the *mens rea* element of the offense except to say that negligence is not the standard. We encourage you to reevaluate your position and calibrate your discovery demands in accordance with the statutory language and applicable case law. *Gramalegui*, 2019 WL 4610953, at *24-25.[2]

### *Defendant's Responses to the CFTC's Questions*

As you will recall, we raised certain issues with you to which you have yet to respond. Answers to these questions would help inform the scope of discovery, including the need for third-party discovery or additional document requests. Set forth below are the questions we asked and the responses you provided. Please let us know if we have captured your position on these issues.

*First*, we asked for an update on the status of the third-party subpoenas issued by Defendant. You declined to provide the contact information for the attorneys representing the parties who were served with the third-party subpoenas because you were not obligated to. We believe that it is helpful to recipients of third-party subpoenas to have contact information for the parties should there be any questions about the claims or defenses. It also poses ethical issues to contact parties who are known to have legal representation. We repeat our request for the contact information of the attorneys representing the parties served with third-party subpoenas.

*Second*, you were unable to confirm whether Defendant will be searching messaging applications such as Slack and did not believe that additional productions were necessary to fix imaging issues with the Slack messages that have already been produced. You believe that the prior production of Slack messages is sufficient despite the fact that Defendant used Slack messages in the arbitration involving a former employee that were appropriately formatted. You also resisted reproducing drafts of documents that included statements to the CFTC with the proper metadata that would identify the author of the draft and the specific edits.

---

[2] As noted during the meet-and-confer on October 28, 2022, Defendant's Requests for Admission were served prematurely, before the Court issued a Scheduling Order pursuant to Rule 16 of the Federal Rules of Civil Procedure. The Court's Scheduling Order contemplates that the "first stage" of discovery "will be combined under Federal Rule of Civil Procedure 33 and 34." Oct. 7, 2022 Order Regulating Proceedings, ECF No. 23. Your continued pursuit of discovery under Rule 36 violates the Court's Scheduling Order. Should you continue to pursue discovery under Rule 36, we will be forced to raise this issue with the Court and seek appropriate remedies to discourage further discovery abuses. *See City of Almaty, Kazakhstan v. Ablyazov*, 2021 WL 4846366, at *3 (S.D.N.Y. Oct. 18, 2021) ("Federal Rule of Civil Procedure 37 authorizes a court to impose sanctions for conduct in discovery, including . . . when a party violates an express discovery order . . . .").

November 16, 2022
Page 7 of 7

*Third*, you were unable to confirm whether Defendant was asserting a good faith defense, either as an affirmative defense or as a defense to the *mens rea* element of the charged offense. You were unable to state what the *mens rea* element was except to say that it was not negligence. If Defendant intends to invoke good faith as a defense to the charged offense, it should be disclosed without delay since there are issues that need to be addressed in written discovery, including whether the good faith defense implicates the advice received from counsel.

*Finally*, you agreed to confirm whether there was material that had been produced to the United States Attorney's Office for the Southern District of New York that had not been provided to the CFTC. To the extent you believe that the CFTC's document requests do not cover this material, please consider this letter a demand under Rule 34 for all documents produced to United States Attorney's Office for the Southern District of New York.

Should you wish to discuss these matters further, please do not hesitate to contact me.

        Sincerely,

        */s/ Andrew J. Rodgers*
        Andrew J. Rodgers
        Trial Attorney
        Commodity Futures Trading Commission

cc (via email):   Counsel of record