# EXHIBIT 13

N3m3cftc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

COMMODITY FUTURES TRADING
COMMISSION,

            Plaintiff,

        v.                  22 Civ. 4563 (AKH)

GEMINI TRUST COMPANY, LLC,

            Defendant.

------------------------------x

                        New York, N.Y.
                        March 22, 2023
                        12:15 p.m.

Before:

              HON. ALVIN K. HELLERSTEIN,

                        District Judge

                  APPEARANCES

U.S. COMMODITY FUTURES TRADING COMMISSION
     Attorneys for Plaintiff
BY:  ANDREW J. RODGERS
     K. BRENT TOMER
     ALEJANDRA de URIOSTE
     KATHERINE E. RASOR
     DAVID W. OAKLAND

JFB LEGAL
     Attorneys for Defendant
BY:  JOHN F. BAUGHMAN
     DANIEL A. SCHWARTZ
     LIVIA FINE

SHEARMAN & STERLING LLP
     Attorneys for Defendant
BY:  CHRISTOPHER L. LAVIGNE

N3m3cftc

| | |
|---|---|
| 1 | THE DEPUTY CLERK:  This is Commodity Futures Trading |
| 2 | Commission v. Gemini Trust Company. |
| 3 | Counsel, please state your appearances for the record. |
| 4 | MR. RODGERS:  Good afternoon, your Honor -- |
| 5 | THE COURT:  Let me just mention.  Do stay seated but |
| 6 | take off your masks when you speak. |
| 7 | MR. RODGERS:  No problem, your Honor.  Good afternoon. |
| 8 | Andrew Rodgers for the Commodity Futures Trading Commission. |
| 9 | I'm joined today by my colleagues Brett Tomer, Alejandra de |
| 10 | Urioste, David Oakland, and Katherine Rasor. |
| 11 | THE COURT:  Good afternoon all. |
| 12 | MR. BAUGHMAN:  Good afternoon, your Honor.  I'm Jack |
| 13 | Baughman for the defendant.  Along with me as counsel are to my |
| 14 | right, Livia Fine, Daniel Schwartz, Chris LaVigne from the |
| 15 | Shearman & Sterling firm, and in the back behind me is |
| 16 | Elizabeth Lee.  Good afternoon. |
| 17 | THE COURT:  Good afternoon. |
| 18 | Mr. Rodgers, before we get into the problems today, |
| 19 | give me some background.  What is an exchange for the trading |
| 20 | of cryptocurrency?  What is the regulations that provide for |
| 21 | it?  What is required to obtain whatever rights or obligations |
| 22 | you get? |
| 23 | Give me a little education on what it is we're talking |
| 24 | about. |
| 25 | MR. RODGERS:  No problem, your Honor. |

N3m3cftc

1          So this case is about false and misleading statements

2     that Gemini, the defendant, made to the CFTC in connection with

3     a Bitcoin futures contract that was to be settled in reference

4     to an auction held on the Gemini Exchange.

5          The CFTC regulates designated contract markets, or

6     DCMs, and Gemini partnered with a DCM to submit a

7     self-certification of the futures contract.

8          THE COURT:  You are going too fast.

9          MR. RODGERS:  No problem, your Honor.  So I can back

10    up.

11         THE COURT:  Start from the beginning.

12         MR. RODGERS:  This case is about --

13         THE COURT:  Let me ask you.  The regulations provide

14    for an exchange for the trading of cryptocurrency.

15         MR. RODGERS:  Your Honor, the CFTC does not regulate

16    spot markets.  The CFTC regulates futures exchanges and

17    participants that list contracts for trading.  In this case --

18         THE COURT:  Is there an exchange for futures

19    contracts?

20         MR. RODGERS:  There is, your Honor, and that's the

21    Chicago Board of Trade -- sorry.  The Chicago Board of Options

22    Exchange Futures Exchange, which I know that's a lot of words,

23    but to unpack that --

24         THE COURT:  I'm familiar with that.

25         MR. RODGERS:  Okay.

N3m3cftc

1          THE COURT:  Now, when Gemini wants to say I want to be

2     an exchange, what does that mean?

3          MR. RODGERS:  They did not come to the CFTC asking to

4     be an exchange.  They came to the CFTC asking to list a futures

5     product on the futures exchange.

6          THE COURT:  You are in charge of that, CFTC?

7          MR. RODGERS:  They have to register the product, and

8     in doing so, in combination with the DCM or the Chicago Board

9     of Options Exchange, they made certain representations pursuant

10    to the regulations that govern the listing of a futures

11    contract.

12         THE COURT:  Are those regulations issued by the CFTC

13    or by the Chicago Board of Trade?

14         MR. RODGERS:  Those regulations are issued by the CFTC

15    pursuant to their authority under the Commodities Exchange Act.

16         THE COURT:  Where do I find those regulations?

17         MR. RODGERS:  Those regulations, your Honor, if you

18    stand by, I do have them available.

19         THE COURT:  Give me a reference to them.

20         MR. RODGERS:  So the registration requirements are

21    found in 17 C.F.R. Section 40.2.  That's the self-certification

22    provision, and that governs the information that must be

23    provided in connection with a self-certification of a new

24    Bitcoin -- of a new futures product.

25         The listing of a contract is governed by core

N3m3cftc

1    principles, so one of the core principles, which is 17 C.F.R.

2    Section 38.200, is states that a board of trade shall not

3    list -- sorry.  Let me reread that.

4           The board of trade shall list on the contract market

5    only contracts that are not readily susceptible to

6    manipulation.

7           So susceptibility to manipulation is Core Principle 3.

8    And the DCM is not permitted to list a product that is

9    susceptible to manipulation.

10          THE COURT:  The exchange is the Chicago Board?

11          MR. RODGERS:  That's correct.

12          THE COURT:  So what is the function that Gemini

13   aspired to obtain?

14          MR. RODGERS:  They conducted a daily auction at

15   4 o'clock every day, and that was the price by which the

16   futures contract would settle.  This is a cash settled futures

17   contract.

18          THE COURT:  What are they auctioning?

19          MR. RODGERS:  They're auctioning Bitcoin, your Honor.

20          THE COURT:  As a commodity?

21          MR. RODGERS:  As a commodity.

22          THE COURT:  How is this auction manifested?  It's not

23   like an auction house and people come and bid.

24          How does it work?

25          MR. RODGERS:  It is a very technical question, and

N3m3cftc

1   perhaps beyond my expertise, but I'll do my best to explain.

2          THE COURT:  Maybe Mr. Baughman can.

3          MR. RODGERS:  Excuse me?

4          MR. BAUGHMAN:  Mr. Jack Baughman, your Honor.

5          THE COURT:  Maybe Mr. Baughman can help.

6          MR. BAUGHMAN:  Roughly speaking, it's not an auction

7   your Honor might be familiar with where they bring in the

8   painting and you say yes.

9          What you do is there is a period of 10 minutes at

10  4 p.m. where people put in orders, and you can say I'm willing

11  to buy X amount and pay up to Y price.  And then the computer

12  runs an algorithm that figures out, taking in all the bids and

13  offers, what would be the transaction price at which the most

14  commodity would trade.  And then that settles the auction price

15  for everyone who participates.

16         THE COURT:  Does trading go on all day?

17         MR. BAUGHMAN:  The auction is only at 4 o'clock in the

18  afternoon.  But the exchange is open all day, yes.

19         THE COURT:  By exchange, you mean what?

20         MR. BAUGHMAN:  As my colleague from the CFTC was

21  saying, that's the spot market.  In the spot market, you can

22  just go buy and sell on an exchange all day long, like you do

23  stocks.

24         THE COURT:  At the Chicago Board?

25         MR. BAUGHMAN:  No.  Gemini has an exchange where, if

N3m3cftc

| | |
|---|---|
| 1 | you wish to purchase a Bitcoin, you could go on it right now, |
| 2 | and it would get a price of $27,000, and you could buy a |
| 3 | Bitcoin. |
| 4 | THE COURT:  Does it issue its own or is it putting |
| 5 | together by buyers and sellers? |
| 6 | MR. BAUGHMAN:  It is putting together buyers and |
| 7 | sellers.  It is a pure exchange.  Gemini does not take |
| 8 | positions nor -- and Bitcoin by its nature, it's not issued by |
| 9 | anyone. |
| 10 | THE COURT:  It charges a fee for the transaction? |
| 11 | MR. BAUGHMAN:  Same as Nasdaq.  There is a small fee |
| 12 | if you transact, yes.  I would like to clarify -- |
| 13 | THE COURT:  This case is about representations made in |
| 14 | order to what, obtain a self-certification? |
| 15 | MR. RODGERS:  That's correct your Honor.  There were |
| 16 | statements that were made in connection with the |
| 17 | self-certification. |
| 18 | THE COURT:  What is a self-certification? |
| 19 | MR. RODGERS:  The method by which contracts or new |
| 20 | contracts, futures contracts, are listed for trading on the |
| 21 | futures exchange.  Not the Gemini exchange, but the futures |
| 22 | exchange.  Two separate exchanges.  This is a future contracts |
| 23 | that's traded on a futures exchange. |
| 24 | MR. BAUGHMAN:  Could I make a comment, your Honor, to |
| 25 | clarify one point? |

N3m3cftc

1          THE COURT:  Yes.

2          MR. BAUGHMAN:  I think it's a fundamental issue that

3     your Honor will need to be aware of as we go forward.

4          Counsel was describing the self-certification process,

5     and he referred to the self-certification is done by an entity

6     called the DCM, the Designated Contract Market.

7          When the DCM makes the self-certification, the DCM

8     must comply with the so-called core principles.  Counsel

9     referred to Core Principle Number 3.

10         The thing that your Honor needs to be aware of, and it

11    is a fundamental flaw we will submit in this case, Gemini is

12    not a DCM.  Gemini did not do the self-certification.  The

13    Chicago Board of --

14         THE COURT:  You have to take a position to be a

15    designated market maker.

16         MR. BAUGHMAN:  No.  CBOE, the Chicago Board of Trade,

17    they are actually the one who did the certificate certifying,

18    okay.  And one of our big defenses in the case is, you're

19    complaining about statements we didn't make.  The Chicago Board

20    of Options and Exchange made them, and they're not a defendant.

21    Okay.

22         So we are not a DCM, nor is Gemini required to comply

23    with the core principles which were referred to.  It is a very

24    important point.

25         THE COURT:  What's the connection with the

N3m3cftc

1    self-certification -- let me get it from the CFTC.

2                Mr. Rodgers, what is this self-certification and how

3    does it fit into what we just learned about this auction?

4                MR. RODGERS:  Your Honor, we disagree with the

5    characterization of Gemini's role in the self-certification --

6                THE COURT:  I don't care.  I'm not interested in the

7    particular facts.  I'm interested in understanding the business

8    fundamentals that go into this.

9                So I just learned that Gemini does not take positions.

10   It does not issue cryptocurrency.  It buys and sells

11               MR. BAUGHMAN:  It doesn't buy and sell.  It allows

12   people --

13               THE COURT:  It allows people to buy and sell.  Just

14   stopping there.  And at 4 o'clock it holds an auction and

15   establishes a price, where historically that day the most buys

16   and sells are taking place.

17               MR. RODGERS:  Your Honor, maybe it will be helpful to

18   give a little background of how the self-certification process

19   works, which I think is what you are getting at.

20               This is the process by which contracts are listed.

21   Before the DCM, in conjunction with Gemini, submit the

22   self-certification, they have a back and forth with the CFTC.

23   They come in and they give presentations about the product,

24   they make statements to the CFTC about the product, and they

25   make statements about the compliance with the listing

1   requirements which are set forth in the regulations.

2          So, that process played out in this case from summer

3   July 2017 to December 2017.  When they get the green light from

4   the CFTC that the CFTC has no further questions, they submit a

5   certificate certification.  Ten days after the

6   self-certification it's listed for trading.  Unless the CFTC --

7          THE COURT:  Is the form prescribed in the regulations?

8          MR. RODGERS:  I missed that question.

9          THE COURT:  The self-certification, is it on a form

10  that is prescribed by regulation?

11         MR. RODGERS:  The regulations describe the contents of

12  what must be included in a self-certification.  But typically,

13  it is a letter, and the letter must lay out the background of

14  the product and state affirmatively why it complies with the

15  core principles, and it must attach supporting evidence, or

16  reference publicly available information to justify the listing

17  of the product.

18         THE COURT:  That's prescribed at 17 C.F.R. 40.2.

19         MR. RODGERS:  That's right, your Honor.  And there is

20  also -- it references the core principles, and the sort of the

21  whole ball of wax in this case is Core Principle 3 which is

22  susceptible of manipulation, which is 17 C.F.R. Section 38.200.

23  That also references a guidance in Appendix C to part 38.  And

24  that addresses what the CFTC looks at when determining whether

25  a contract is susceptible to manipulation, and that would all

N3m3cftc

1  be encompassed within what --

2          THE COURT:  So at some part of the process, the Board

3  of Trade gives approval or the CFTC gives approval?  Which one?

4          MR. RODGERS:  The CFTC has an obligation to review the

5  self-certification.  And if they don't take action after the

6  self-certification letter is submitted, within 10 business

7  days -- or within 10 days, your Honor, it can be listed for

8  trading.

9          THE COURT:  So we're talking about a product that's

10  registered.

11          MR. RODGERS:  A product; that's right, your Honor.

12          THE COURT:  But when I was questioning Mr. Baughman,

13  he was talking about an exchange in answering my questions.  So

14  do we have both a product and an exchange?

15          MR. RODGERS:  Your Honor, the product looks to the

16  Gemini auction to determine the settlement price.  So the

17  Gemini auction is a core feature of the product, because it

18  determines what the settlement price is.

19          And the issue in this case is whether that auction,

20  and the Gemini Exchange generally, was sufficient to determine

21  the price at which these products would settle.  If the auction

22  was insufficient, i.e., subject to manipulation, or Gemini

23  misrepresented the nature of its auction.

24          THE COURT:  Is it the product that is being traded on

25  the auction?

N3m3cftc

1          MR. RODGERS:  The product is traded on the futures

2     exchange.  And it's settled in reference to the auction on the

3     spot exchange, which is Gemini.

4          THE COURT:  Okay.  All right.  I think if I can

5     remember this, it will be useful.

6          Let's go into the case itself.  So far you are doing

7     paper discovery, right?

8          MR. RODGERS:  That's correct, your Honor.

9          THE COURT:  No depositions have been taken.

10         MR. RODGERS:  They have not been scheduled, your

11     Honor.

12         THE COURT:  Okay.  So I have your letter of March 20

13     and we'll follow it.

14         MR. RODGERS:  Sure, your Honor.

15         THE COURT:  The first issue is whether on a particular

16     laptop computer --

17         MR. RODGERS:  Sure, your Honor.  So there are --

18         THE COURT:  On a particular laptop computer, Gemini

19     should be required to do a search according to your search

20     words.

21         MR. RODGERS:  Correct, your Honor.

22         THE COURT:  And you've represented to me that Gemini

23     refuses to do that.

24         MR. RODGERS:  Yes, your Honor.

25         THE COURT:  So let me hear Mr. Baughman's position.

N3m3cftc

<table>
<tbody>
<tr><td>1</td><td>MR. BAUGHMAN:  Thank you, your Honor.  Because we've</td></tr>
<tr><td>2</td><td>done something better.  We've given them more than they would</td></tr>
<tr><td>3</td><td>get with search terms.</td></tr>
<tr><td>4</td><td>And there is an important context here.  You are going</td></tr>
<tr><td>5</td><td>to hear about two computers today.  These were computers that</td></tr>
<tr><td>6</td><td>were in the possession of the United States Attorney's Office</td></tr>
<tr><td>7</td><td>and the CFTC for more than four years.  They had access to</td></tr>
<tr><td>8</td><td>these computers.  They were given to them, and they were part</td></tr>
<tr><td>9</td><td>of this investigation.</td></tr>
<tr><td>10</td><td>THE COURT:  I don't care about that, Mr. Baughman.</td></tr>
<tr><td>11</td><td>The question is will you do a search according to the</td></tr>
<tr><td>12</td><td>search terms?</td></tr>
<tr><td>13</td><td>MR. BAUGHMAN:  We don't need to, your Honor.</td></tr>
<tr><td>14</td><td>THE COURT:  I didn't ask that question.</td></tr>
<tr><td>15</td><td>Will you?</td></tr>
<tr><td>16</td><td>MR. BAUGHMAN:  It's unnecessary, your Honor.</td></tr>
<tr><td>17</td><td>THE COURT:  Will you?</td></tr>
<tr><td>18</td><td>MR. BAUGHMAN:  If your Honor requires it, of course we</td></tr>
<tr><td>19</td><td>will do that but --</td></tr>
<tr><td>20</td><td>THE COURT:  I order it.</td></tr>
<tr><td>21</td><td>MR. BAUGHMAN:  Okay.</td></tr>
<tr><td>22</td><td>THE COURT:  It's not an excuse in discovery that</td></tr>
<tr><td>23</td><td>you've already done it or you'll produce it in some other form.</td></tr>
<tr><td>24</td><td>You must produce it according to how you keep your books and</td></tr>
<tr><td>25</td><td>records, or according to the requests made for production.</td></tr>
</tbody>
</table>

1          MR. BAUGHMAN:  I hope that --

2          THE COURT:  So you'll do it and produce.

3          What about the second one, where you can't get in?

4          MR. BAUGHMAN:  We're not trying to hide anything.  We

5     just don't have the password.  We simply do not have it.

6          THE COURT:  You have the laptop but not the --

7          MR. BAUGHMAN:  Correct.  The laptop was turned over to

8     the U.S. Attorney's Office in 2017.  I do not dispute that.  In

9     2017, there was a password, and it was given to the U.S.

10    Attorney's Office.  But we don't have a record of it.  We've

11    asked everyone we can think to ask.  If we had the password, we

12    would give it to them.  We just don't have it.

13         THE COURT:  Well, Mr. Rodgers, he can't give you

14    something he doesn't have.

15         MR. RODGERS:  And therein lies the problem, your

16    Honor, because they did have that information when they turned

17    the material over to the federal prosecutors in hopes of

18    instigating an investigation.  So when it helped them, they had

19    the password.  Now they don't have the password.

20         We flagged this issue because this raises clear

21    spoliation concerns on our part.  And we may be back in front

22    of you discussing this issue and requesting additional

23    discovery.  Because they had the information, they have lost

24    it.  We haven't gotten a better explanation than we've heard

25    today or I just articulated to you.

N3m3cftc

1           MR. BAUGHMAN:  Your Honor, may I make two points?

2           THE COURT:  Why don't you subpoena the particular

3    individual?

4           MR. RODGERS:  Excuse me, your Honor?

5           THE COURT:  Why don't you subpoena the particular

6    individual?

7           MR. RODGERS:  We did, your Honor.  They refused to

8    produce any material to us, stating that we should get the

9    information directly from Gemini.

10          THE COURT:  Who is they?

11          MR. RODGERS:  Mr. Molidor is a former employee of

12   Gemini who was let go in the fall of 2017, based on suspicion

13   of involvement with potential manipulative trading practices,

14   which were not disclosed to the CFTC.  And that -- and in

15   connection with that manipulative trading practices, Gemini

16   made the decision to turn Mr. Molidor's laptop over to federal

17   prosecutors with the password.

18          MR. BAUGHMAN:  Your Honor, could I make a suggestion?

19          THE COURT:  Yes.

20          MR. BAUGHMAN:  Could you direct the plaintiff to ask

21   the U.S. Attorney's Office for the password?

22          THE COURT:  The U.S. Attorney's Office won't give it.

23          MR. BAUGHMAN:  They had the computer for four years

24   with the password.  They may have a record of it.

25          THE COURT:  They won't respond I believe.  We can

N3m3cftc

1    perhaps do that.

2            The other thing I was thinking about is to subpoena

3    the employee, have him come to the court, and you ask him what

4    is the password to this computer.

5            MR. RODGERS:  Is that directed to us or to defendants?

6            THE COURT:  To you.

7            MR. RODGERS:  Your Honor, we don't have the document

8    preservation obligations in this circumstance, so that's an

9    additional burden.

10           THE COURT:  They can't give you what they don't have.

11   They don't have the password.  You want the password, so you

12   get it.  You know how to get it.  You take a 30(b)(5) and

13   30(b)(6) deposition, you ask him to produce the records that

14   have the password, and you ask him what is the password.  And

15   he'll answer you or do something else.  That's how to do it.

16           What else do you have?

17           MR. RODGERS:  The last issue in our letter is the

18   number of depositions for the next phase of discovery.  Our

19   point is quite simple.  There is no reason the parties can't

20   abide by the federal rules and the presumptive limit of 10

21   depositions.  There is no need for more in this case.  And the

22   parties are free to discuss or come back to the Court if there

23   is a need for more.

24           THE COURT:  What do you need, what testimony do you

25   need to elicit?

N3m3cftc

1          MR. RODGERS:  Well, that we need to elicit?

2          THE COURT:  Right.

3          MR. RODGERS:  We would talk with Gemini, and their

4     representatives.  The CBOE, as we've discussed, is another

5     witness to the issues in this case.

6          THE COURT:  Say that again?

7          MR. RODGERS:  The CBOE, the futures exchange that was

8     involved with Gemini in making the submission.

9          THE COURT:  Would you get an official from the futures

10     exchange to come give his deposition?

11          MR. RODGERS:  Excuse me, your Honor?

12          THE COURT:  You intend to get an individual from the

13     futures exchange to come and testify?

14          MR. RODGERS:  We're considering that in the context of

15     depositions.

16          I'm not sure if you are talking about trial testimony

17     or --

18          THE COURT:  Depositions.

19          MR. RODGERS:  -- depositions.

20          That is a witness that we are considering deposing,

21     yes.

22          THE COURT:  Who else?

23          MR. RODGERS:  The former employees, I expect that

24     Gemini would also wish to speak with those folks.  And we would

25     want to speak to the related party that provided the

N3m3cftc

1   undisclosed loans to market makers, which is Pearl Street.  And

2   I don't know if that's an exhaustive list, but that's certainly

3   a list I've come up with.

4           And then there's the market makers as well the folks

5   that received the sweetheart loan deals so they'll trade on the

6   platform.  Those are additional folks we would be interested in

7   speaking with.

8           THE COURT:  What would you like, Mr. Baughman?

9           MR. BAUGHMAN:  Your Honor, important context, as you

10  may recall, at the last hearing your Honor said that the next

11  step here was for them to identify their witnesses, and you

12  said that we would be entitled to depositions of every witness

13  that the CFTC wanted to call.

14          THE COURT:  There was an issue whether there had to be

15  witnesses with regard to the issue of materiality.

16          MR. BAUGHMAN:  That was in the context that this came

17  up.

18          THE COURT:  And I said that the issue of materiality

19  is an objective one, and it's not a matter for the person

20  receiving the representation to say whether it's material or

21  not.

22          MR. BAUGHMAN:  I understand, your Honor.

23          THE COURT:  You can say it's important in whatever.

24  So I don't know what the CFTC wants to do with that,

25  Mr. Rodgers.

N3m3cftc

1          MR. RODGERS:  With respect to the materiality issue?

2          THE COURT:  Yes.

3          MR. RODGERS:  We don't see the need to revisit it.  We

4    understand your Honor's ruling.

5          THE COURT:  I am asking you a question.  Why don't you

6    answer my question.

7          MR. RODGERS:  I must have misunderstood your Honor.

8          THE COURT:  What did I ask?

9          MR. RODGERS:  What we intend to do about materiality.

10          THE COURT:  Right.

11          MR. RODGERS:  I understood you to be asking the

12   questions in connection with the letters we received.  So

13   apologies.

14          THE COURT:  I am asking what you intend to do about

15   materiality.  Is it going to be an expert witness, is it going

16   to be someone in the CFTC, is it going to be in the Chicago

17   board?

18          MR. RODGERS:  So I think the issues of materiality

19   will be developed through those witnesses who can testify about

20   what the decision was that had to be made, the factors that the

21   CFTC considers, and the elements that are considered in

22   connection with the self-certification.

23          THE COURT:  So you know who those people are, don't

24   you?

25          MR. RODGERS:  Well, and as do the defendants, your

N3m3cftc

1    Honor.  They're in our initial disclosures.  The defendants

2    have -- the defendant has --

3            THE COURT:  Can you answer my question directly.

4            MR. RODGERS:  We have a general understanding of who

5    the witnesses are and have disclosed that in our initial

6    disclosures, your Honor.

7            THE COURT:  Why don't you give Mr. Baughman a letter

8    which says to the effect that our present thinking is that the

9    following people will be testifying as to what representations

10   they received, and I don't know the significance -- what would

11   you do here?  What would you say?  That it was significant,

12   that it was not significant?

13           MR. RODGERS:  Understanding your Honor's ruling, the

14   witnesses can testify under Second Circuit precedent about the

15   factors that are considered in connection with the

16   self-certification, the nature of the inquiry, the purpose of

17   the decision that had to be made.

18           THE COURT:  So you will have witnesses for that.

19   Those are the things you want, those are the people you want to

20   identify.

21           MR. RODGERS:  Correct, your Honor.

22           THE COURT:  I'm not going to make it preclusive.  If

23   you miss somebody, you can always supplement and say add this

24   and this to the list.  I want you to do the list.

25           MR. RODGERS:  Just briefly, that list has been

N3m3cftc

| | |
|---|---|
| 1 | provided.  It's in the initial disclosures and they have -- |
| 2 | THE COURT:  I told Mr. Baughman that I don't want to |
| 3 | hear what you've done.  I want to hear what you will do.  I |
| 4 | want you to do a list. |
| 5 | Understood? |
| 6 | MR. RODGERS:  Understood, your Honor.  Thank you. |
| 7 | THE COURT:  Okay.  Anything else that I need to deal |
| 8 | with? |
| 9 | MR. BAUGHMAN:  We had an issue, your Honor. |
| 10 | THE COURT:  Pardon? |
| 11 | MR. BAUGHMAN:  I don't believe the CFTC had anymore -- |
| 12 | THE COURT:  I'm not going to rule on 10 or 25.  It may |
| 13 | be that you need more than 10, it may be that you need fewer |
| 14 | than 10.  We need to have a status conference so you can tell |
| 15 | me what you've done and what you need to do, and then we'll |
| 16 | worry about how many. |
| 17 | What's your issue, Mr. Baughman? |
| 18 | MR. BAUGHMAN:  I want to note that I have two issues, |
| 19 | actually.  I'm a little concerned by the statements that have |
| 20 | just been made about what they intend to offer evidence.  They |
| 21 | will say they want to talk about factors that are considered, I |
| 22 | think that's a backdoor way of trying to get around the ruling |
| 23 | your Honor already made on materiality, which is law of the |
| 24 | case.  But I will reserve on that until we see their list. |
| 25 | THE COURT:  It's more an observation than a rule.  I |

N3m3cftc

1    have not made any study of it.  We're in an early phase of the

2    case.

3            MR. BAUGHMAN:  But it's important, your Honor, because

4    your Honor put them to a choice.  Your Honor said that they

5    have to give us the discovery.

6            THE COURT:  Mr. Baughman, my knowledge is evolving.

7    I'm the least informed person in this room.  So as I see the

8    situation now, if Mr. Rodgers thinks he needs to do something

9    or other to prove his case, I'm not going to stand in his way.

10   I just want to make sure the proceedings are fair.  And that's

11   why I tell him he has to identify the people, so that if you

12   wish to take a deposition, you may.

13           MR. BAUGHMAN:  I agree, your Honor.  But the issue is

14   the documents.  There are documents that at the CFTC that bear

15   on the factors considered.  The way the factors are considered,

16   how they're considered important, and they're refusing to turn

17   them over.

18           It would be an extreme disadvantage for us to for them

19   to have witnesses who could talk about how factors are applied

20   and to not give us documents about it.  That's the choice your

21   Honor put to them in February.  And all we are asking is that

22   ruling be --

23           THE COURT:  Are these, I suppose these criteria are in

24   the regulations?

25           MR. RODGERS:  Generally speaking, yes, your Honor,

N3m3cftc

1   they are.

2              THE COURT:  So is an official entitled to use anything

3   but the prescribed criteria?

4              MR. RODGERS:  To the extent there is some level of

5   industry practice, that might be relevant.

6              I can't predict what the testimony is, but I've cited

7   regulations in court today that govern the application process

8   for a self-certification, and the analysis of whether a product

9   is susceptible to manipulation.

10             MR. BAUGHMAN:  Your Honor.

11             MR. RODGERS:  I would also note, you know, obviously,

12  counsel's trying to reopen the door to an issue that has been

13  decided.  They have yet to --

14             THE COURT:  Can you stop talking about what was done.

15  I'm interested in what will be done.

16             MR. RODGERS:  Yes, your Honor.

17             THE COURT:  So, Mr. Baughman, I am not going to invade

18  the investigative privilege at this point in time.  Work

19  product privilege or whatever privileges Mr. Rodgers invokes.

20             MR. BAUGHMAN:  I understand, your Honor.

21             THE COURT:  But as we get into the depositions, things

22  may come up, and in the interest of fairness, I can invade that

23  privilege.

24             MR. BAUGHMAN:  Understood.

25             THE COURT:  You will be able to work that way.

N3m3cftc

1          Look, the important thing is, I believe, is to

2     identify exactly what criteria are used, and what is this issue

3     that we are talking about?  Is it the susceptible to

4     manipulation that we are talking about, Mr. Rodgers?

5          MR. RODGERS:  Yes, your Honor.  That's Core Principle

6     3, and it comes up in the context of a registration of a new

7     product.

8          THE COURT:  So, I think that both you and Mr. Baughman

9     are going to be interested in the same thing.  Why did you

10    think this was or was not manipulative.  But the policies, I

11    don't know are applicable here.  You'll find out in the

12    deposition.  If they talk about policies, then I may be likely

13    to cause you to produce those policies.

14          What else do I have to do today?

15          MR. BAUGHMAN:  Very simple thing.  We are asking that

16    you instruct the plaintiff to answer a question yes or no.

17          The laptop which your Honor has said we need to do the

18    search terms on, which we're happy to do, is a laptop that

19    belonged to a former employee named Benjamin Small.  For

20    whatever reason, the plaintiff has a very close relationship

21    with Benjamin Small, and has made representations about

22    Benjamin Small.

23          In the hearing in February, the representation was

24    made that Mr. Small was "deeply involved" in these so-called

25    loans.

N3m3cftc

1          Mr. Small, since that representation was made in this

2     court, filed an affidavit in a proceeding in London that

3     contradicts fundamentally the representation made here.

4     Mr. Small said that he had very little responsibility.

5     Mr. Small also --

6          THE COURT:  What is this loan?  Tell me about the

7     loan.

8          MR. BAUGHMAN:  Well, from our point of view, the loans

9     are commercial loans that were made by a Gemini affiliate

10    called Pearl Street, and there is nothing wrong with them.

11    They're not illegal.  The government has never said there is

12    anything wrong with it.

13         THE COURT:  To whom did Pearl Street lend?

14         MR. BAUGHMAN:  There were four borrowers, players in

15    the cryptocurrency world.  A, B, C, and D for purpose of

16    discussion today.  They were just borrowers.

17         THE COURT:  What's Small's role?

18         MR. BAUGHMAN:  Well, this is an interesting thing.

19    The representation was made to this Court by counsel for the

20    plaintiff that Small was "deeply involved."  Small has filed an

21    affidavit in London in which he says the opposite.  He says

22    that these loans were "not within the scope of my work

23    responsibilities."

24         THE COURT:  Small is an employee of Pearl Street?

25         MR. BAUGHMAN:  He was an employee of yet another

1   Gemini affiliate called Winklevoss Capital.

2            THE COURT:  Mr. Rodgers, do you intend to call

3   Mr. Small?

4            MR. RODGERS:  We intend -- both parties intend to

5   depose Mr. Small.

6            But I would just like to take a step here and maybe

7   clarify the remarks from the last hearing.  I think my language

8   might have been imprecise.  The issue of Mr. Small's

9   involvement with Pearl Street, which was formerly known as

10  Gemini Financial, is subject to dispute, and there might be --

11  it's unclear what his role was.

12           But there is no confusion that Mr. Small reported to

13  the CFTC that Gemini had concealed these Pearl Street loans,

14  and I think that Mr. Baughman might have misspoke when he said

15  they were general loan recipients, commercial loans, because

16  these loans went only to traders on the Gemini Exchange.  So,

17  there is very little daylight between the exchange and Pearl

18  Street.  And if that's the case, Pearl Street was not

19  permitted -- excuse me -- Gemini was not permitted to give

20  loans to traders.  So in that sense, they would be

21  impermissible.

22           MR. BAUGHMAN:  Your Honor, counsel just brought up --

23           THE COURT:  Folks, what is your request?

24           MR. BAUGHMAN:  He just said --

25           THE COURT:  Mr. Baughman, what is your request?

1          MR. BAUGHMAN:  I want them to answer this question yes

2    or no.  Did they meet with Mr. Small on November 1, 2017?

3          THE COURT:  I will not order Mr. Rodgers to tell you

4    what he did in this case.  You want to take Mr. Small's

5    deposition, take it.

6          MR. BAUGHMAN:  Your Honor, it is a materially

7    important question in this case, that whether Mr. Small has

8    stated he met with these people on November 1st, 2017.  It is a

9    yes or no question.  They refuse to answer, and they won't give

10   an answer for their refusal to provide information.

11         THE COURT:  I decline to issue the order you request.

12         MR. BAUGHMAN:  I don't understand why they refuse.

13         THE COURT:  The issue of the case has to do with the

14   representations.  I don't understand how Small is involved,

15   except if he were involved in a loan to someone who was buying

16   or selling crypto affecting the price of the exchange.

17         MR. BAUGHMAN:  I can answer that question.

18         THE COURT:  I don't need to have the answer.  I'm not

19   the trier of fact, at this point, anyhow.

20         All right.  You are taking his deposition, you ask him

21   what you want.  But, I don't know that you are going to be able

22   to ask and get an answer to the question of his talks with

23   Mr. Rodgers.

24         MR. BAUGHMAN:  It's relevant to the case, your Honor.

25         THE COURT:  We'll see.

1          What else?

2          MR. BAUGHMAN:  I have one other application which I

3     concede was not in the letter, but I don't think it will be

4     objectionable for me to make it.

5          I'm starting to prepare for trial.  I read your

6     Honor's individual practices, and your Honor's individual

7     practices state that plaintiff's exhibits use numbers and

8     defendant's exhibits use letters.  And I'm asking as the

9     defendant for relief from that rule and permission to have

10    Defendant's 1, 2, 3, 4, 5.  Because I think there will be

11    hundreds of exhibits in this case, and using letters gets quite

12    complicated.

13         THE COURT:  I don't care what you do in depositions.

14    That's for trial.  And use of an exhibit in a deposition

15    doesn't mean necessarily that it's usable at trial.

16         MR. BAUGHMAN:  Of course not, your Honor.  But I like

17    to use the same numbers if I can.

18         THE COURT:  Do whatever you want.

19         MR. BAUGHMAN:  Okay.  Thank you, your Honor.

20         THE COURT:  It doesn't make a difference who is the

21    source of the exhibit anyhow.

22         MR. BAUGHMAN:  Of course.

23         THE COURT:  Anything else?

24         MR. RODGERS:  Just I don't know if we are getting to

25    that, but the schedule.

N3m3cftc

```
 1              THE COURT:  Let's look at the schedule.
 2              MR. BAUGHMAN:  I think it's actually agreed, the
 3     dates.  The only area of disagreement being the number of
 4     depositions.  It would at the bottom.
 5              THE COURT:  I'm not going to rule.
 6              MR. BAUGHMAN:  Correct.  So I think we're in
 7     agreement.
 8              THE COURT:  Let me discuss it with you.  I want to
 9     see.
10              MR. BAUGHMAN:  At the bottom of page 7 of the letter,
11     your Honor.
12              THE COURT:  Okay.  You still have some paper
13     discovery, right?
14              MR. RODGERS:  Defendants do, yes.
15              THE COURT:  You have to do that search, Mr. Baughman.
16              MR. BAUGHMAN:  I think there's minimal clean up, yes,
17     whatever that is, and if there is any other clean up, but it's
18     minimal.
19              THE COURT:  Two weeks?
20              MR. BAUGHMAN:  That would be fine, your Honor.
21              MR. RODGERS:  Does that capture also the potential
22     that we discover the password for the second laptop?
23              THE COURT:  Look, you can ask the U.S. Attorney.  If
24     he gives you an answer, it's fine.
25              MR. RODGERS:  I believe we are going to subpoena
```

N3m3cftc

1    Mr. Molidor who is the owner of the laptop.

2              THE COURT:  Do it as part of the depositions.

3              Okay.  I don't think you are going to finish your fact

4    depositions in six months, unless you are going to sacrifice

5    family life and vacations and other things like that.  Why

6    don't we do it until the end of the year.

7              Mr. Baughman?

8              MR. BAUGHMAN:  That's fine, your Honor.

9              THE COURT:  Would your client be prejudiced?

10             MR. BAUGHMAN:  No.

11             THE COURT:  All right.  Then do it to the end of the

12   year, and then let's see each other.  We'll see where we are

13   for the next step.

14             MR. BAUGHMAN:  Meaning sort of beginning of January,

15   something like that?

16             THE COURT:  Yes.  I don't believe in managing cases

17   and imagine dates way out in the future, because they change

18   too many things.  But what we should do is that you should do

19   all your depositions.  You finish December 31, including all

20   rulings you need to get on those depositions.

21             MR. BAUGHMAN:  Could I ask one clarifying question,

22   your Honor?

23             THE COURT:  Yes.

24             MR. BAUGHMAN:  If you look at the schedule, the

25   parties had proposed, there was a date there for last date to

N3m3cftc

1    serve requests for admission and interrogatories.

2              THE COURT:  I don't think we'll need that.

3              MR. BAUGHMAN:  Meaning we don't need a deadline?

4              THE COURT:  Pardon?

5              MR. BAUGHMAN:  Meaning we don't need a deadline?

6              THE COURT:  No, I don't think you need that phase,

7    that activity.  It doesn't, my experience it doesn't serve any

8    useful purpose.  But we can talk about it.

9              I'd like to meet with you on January 4 at 10:30.

10             MR. BAUGHMAN:  We would like to serve RFAs, your

11   Honor.

12             THE COURT:  You mean you want to serve it before you

13   finish the depositions?

14             MR. BAUGHMAN:  I mean, they can have utility.

15             MR. RODGERS:  I find in my experience they're a tool

16   of oppression so we're okay with that request for admission.

17             THE COURT:  We'll talk about it January 4.  10:30.

18             So, you will complete your depositions.  I don't think

19   you are going to need 25, either side.  But if you need more

20   people, we'll talk about it January 4.  But all the people that

21   should be, those to be deposed, get it done by December 31.

22             MR. RODGERS:  Just to clarify, we are operating under

23   the 10 deposition rule and we'll come back to you if we need

24   more?

25             MR. BAUGHMAN:  I think that was not the ruling.  The

N3m3cftc

1      ruling was that you weren't going to rule on 10.

2                  THE COURT:  No, we're not operating on the 10

3      deposition rule.  It seems to me you need more depositions than

4      Mr. Baughman does.

5                  MR. RODGERS:  Your Honor, we don't anticipate taking

6      more than 10.

7                  THE COURT:  So do it.  Do it efficiently.  Whatever

8      you have, finish it by December 31.  If you want to take more

9      than 10, it will have to be by application.

10                 MR. RODGERS:  That's correct.

11                 MR. BAUGHMAN:  More than 10 by application?

12                 THE COURT:  If you want to do more than 10, it's by

13     application.

14                 MR. BAUGHMAN:  Well, then, that's effectively imposing

15     the 10 rule that they have asked for.  I really think --

16                 THE COURT:  I do not see the need in this case for

17     more.

18                 MR. BAUGHMAN:  They have identified 132 witnesses,

19     your Honor.  That's how many there are identified in all the

20     documents.  There is 132 people named.  And putting us to have

21     to --

22                 THE COURT:  That's an extraordinary burden to impose

23     on you, to have 132 potential witnesses.

24                 MR. RODGERS:  We haven't identified 132 witnesses.

25                 THE COURT:  How many have you identified?

N3m3cftc

1          MR. RODGERS:  In the initial disclosures?  There is 10

2     CFTC witnesses, and that was what we discussed earlier, and

3     then I don't have the specific number.  I don't have the

4     initial disclosures.  But certainly a subset of that, and we're

5     telling you today that --

6          THE COURT:  I don't want Mr. Baughman to have to

7     guess.

8          MR. BAUGHMAN:  There are at least 18 CFTC witnesses,

9     not 10.  And --

10          THE COURT:  There is not going to be 18 at trial.

11          MR. BAUGHMAN:  Let me clarify.  There are 132 people

12     total, of which 20 are under the control of Gemini.  I believe

13     there are over 100 witnesses identified who are either CFTC

14     people or third parties, over 100.

15          MR. RODGERS:  We don't think that the issues in this

16     case even come close to justifying 132 witness interviews,

17     depositions, or what have you.

18          We're giving them a witness list as instructed by your

19     Honor.  We've said we don't need more than 10.  I can't fathom

20     why, given this case spans -- the issues in this case span a

21     three-month period --

22          THE COURT:  Mr. Rodgers will give you a list of

23     witnesses.  If they're not on that list, they are not going to

24     be used at trial.  If Mr. Rodgers wants to expand the list or

25     modify it, he may do so.  And if that opens up more people, you

N3m3cftc

1    can take their depositions.  But I don't want you to have the

2    burden of guessing which of 132 you need to depose.

3              MR. BAUGHMAN:  Could we have a deadline for that

4    letter, your Honor?

5              THE COURT:  Yes.  When would be a good deadline?

6              MR. BAUGHMAN:  Two weeks, your Honor.

7              THE COURT:  Mr. Rodgers?

8              MR. RODGERS:  I think we would like a little bit more

9    time than that.

10             THE COURT:  When would you be a good deadline?

11             MR. RODGERS:  Can we take a month to do that and be

12   more precise, and there won't be an issue of having to modify

13   it as much.

14             THE COURT:  Sounds good to me.

15             A month, Mr. Baughman?

16             MR. BAUGHMAN:  I think that's a little --

17             THE COURT:  Too much?

18             MR. BAUGHMAN:  Yes, your Honor.  Can we compromise on

19   three weeks?

20             THE COURT:  Three weeks.

21             MR. BAUGHMAN:  Thank you.

22             THE COURT:  April 14 is the deadline for the letter.

23             MR. RODGERS:  And just so I have it clear.  This is

24   not just CFTC witnesses.  This is witnesses, excluding experts,

25   just fact witnesses as a preliminary matter that the CFTC

N3m3cftc

1    intends to call as trial witnesses.

2            THE COURT:  Yes.

3            MR. RODGERS:  Okay.

4            THE COURT:  Isn't that what Mr. Baughman wants,

5    Mr. Baughman?

6            MR. BAUGHMAN:  Yes, your Honor.  Thank you.

7            THE COURT:  Okay.  January 4, 10:30.  We'll have a

8    summary order issued with the relevant dates.

9            MR. BAUGHMAN:  Thank you, your Honor.

10           THE COURT:  Thank you.

11           (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25