# EXHIBIT 20

N2DsCOMc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

COMMODITY FUTURES TRADING COMMISSION,

                    Plaintiff,

          v.                              22 Civ. 4563 (AKH)

GEMINI TRUST COMPANY, LLC,

                    Defendant.

------------------------------x
                                          New York, N.Y.
                                          February 13, 2023
                                          2:45 p.m.

Before:

                    HON. ALVIN K. HELLERSTEIN,

                                          District Judge

                              APPEARANCES

U.S. COMMODITY FUTURES TRADING COMMISSION
     Attorneys for Plaintiff
BY:  ANDREW J. RODGERS
     K. BRENT TOMER
     ALEJANDRA de URIOSTE
     KATHERINE E. RASOR
     DAVID W. OAKLAND

JFB LEGAL
     Attorneys for Defendant
BY:  JOHN F. BAUGHMAN
     DANIEL A. SCHWARTZ
     LIVIA FINE

SHEARMAN & STERLING LLP
     Attorneys for Defendant
BY:  CHRISTOPHER L. LAVIGNE
     ANDREW C. BOSSE

N2DsCOMc

1              (Case called)

2              THE COURT:  I think the defendant is making the first

3     request for production that has been objected to.  The

4     defendant will go first.

5              Let me announce the appearances.

6              For the plaintiff, Andrew Rodgers?

7              MR. RODGERS:  Good afternoon, your Honor.

8              THE COURT:  Brent Tomer.

9              MR. TOMER:  Good afternoon, your Honor.

10             THE COURT:  Alejandra de Urioste.

11             MS. DE URIOSTE:  Good afternoon, your Honor.

12             THE COURT:  David Oakland.

13             MR. OAKLAND:  Good afternoon, your Honor.

14             THE COURT:  Katherine Rasor.

15             MS. RASOR:  Good afternoon, your Honor.

16             THE COURT:  Anybody left in CFTC Washington?

17             That was a joke.  Sorry.

18             The defendant, John Baughman.

19             MR. BAUGHMAN:  Good afternoon, your Honor.

20             THE COURT:  Andrew Bosse.

21             MR. BOSSE:  Good afternoon, your Honor.

22             THE COURT:  Daniel Schwartz.

23             MR. SCHWARTZ:  Good afternoon, your Honor.

24             THE COURT:  Vivian Fine.

25             MS. FINE:  Good afternoon, your Honor.

N2DsCOMc

1          THE COURT:  Christopher LaVigne.

2          MR. LAVIGNE:  Good afternoon, your Honor.

3          THE COURT:  Mr. Baughman, you're up.

4          MR. BAUGHMAN:  Good afternoon, your Honor.

5     I'm going to address all but the last item that the

6  defendants raised.  My colleague, Mr. LaVigne, will deal with

7  the last one which concerns search terms.

8          I'm going to talk about the major issues here which

9  are a dispute whereby the CFTC is not producing significant

10  information, and we are moving to compel and would like to

11  order them to produce all the information they have withheld.

12          To explain, if I may, I want to take a moment and step

13  back a little bit and explain what the case is about and why

14  the information we seek is so important.  The CFTC's claim in

15  this case was that during something called a self-certification

16  process in 2017, our client Gemini made false statements to the

17  CFTC and that those false statements had the capacity and, in

18  fact, did influence the CFTC's decision-making process.  That's

19  their theory and they pleaded it in the complaint.

20          I direct your Honor to multiple paragraphs in the

21  complaint, such as 39, 60, 71, 78, 92.  But in particular, I

22  would like to draw your Honor's attention to paragraph 124 of

23  the complaint, where they plead that the alleged false

24  statements, "prevented the Commission from having a true

25  picture from which to evaluate the product during this

1  self-certification."

2      Well that is their burden.  They need to prove that

3  there were false statements and they will need to prove that

4  those false statements were material.  So a core issue in the

5  case that the jury will have to decide, your Honor, is what

6  constitutes a material misstatement to the government.

7      But the good news, your Honor, is that the Supreme

8  Court has defined it for us, and it is undisputed what the

9  standard is in a case called *Neder v. United States*, N-e-d-e-r,

10 which both parties cite, in both cites parties recite the

11 standard numerous times.  The standard is this, a false

12 statement is material if it "has a natural tendency to

13 influence or is capable of influencing the decision of the

14 decision-making body to which it is addressed."

15     THE COURT:  Is that any different from *Basic v.*

16 *Levinson*?

17     MR. BAUGHMAN:  Well, yes.  *Basic v. Levinson* would be

18 whether something is material to a reasonable investor.

19     The key difference here in cases with statements to

20 the government is to which it is addressed, and what the cases

21 very clearly hold, your Honor, is that materiality is addressed

22 from the perspective of the listener.

23     Let me read to you from the case *United States v.*

24 *Raza*, where the court held, when the victim is the government,

25 materiality is evaluated "by reference to the particular

N2DsCOMc

1   government agency or public official that was targeted."

2            I'll give you another example in a well-known case in

3   this courthouse, *United States v. Litvak*.  Mr. Litvak was

4   convicted of making a false statement to the treasury

5   department.  The Second Circuit reversed finding that "there

6   was no evidence that Litvak's misstatements were reasonably

7   capable of influencing a decision of the treasury."

8            So this is important.  Materiality depends on the

9   audience.  It's not what a reasonable Uber driver thinks.  It's

10  not what a reasonable investor thinks.  It's not what a

11  reasonable juror thinks.  The question is what would the CFTC

12  in this circumstance thinks is important.

13           THE COURT:  So you're arguing that materiality is not

14  an objective concept?

15           MR. BAUGHMAN:  That is incorrect, sir, we are not.

16  There is a bit of a miscommunication.  I agree that it is

17  objective.  The question is objectively were the statements

18  capable of influencing the CFTC.

19           THE COURT:  And if that's an objective standard, that

20  must be judged by the words alone.

21           MR. BAUGHMAN:  I disagree, your Honor.  Completely not

22  true.  What matters is what is the evidence that would go to

23  this question, and there are many, many cases --

24           THE COURT:  We're not talking about relevance.  We're

25  talking about materiality.

N2DsCOMc

1              MR. BAUGHMAN:  Correct.

2              THE COURT:  We are talking the level.  If it's

3      objective, it's measured by the words themselves.

4              MR. BAUGHMAN:  I do not believe that --

5              THE COURT:  May I finish my comment, please?

6              MR. BAUGHMAN:  Of course.

7              THE COURT:  If it has to do with the effect on the

8      individual, we're talking about reliance.  And the individual

9      administrator, whether he relies on a misstatement or not, is

10     not an issue, it's whether the words themselves are capable of

11     influencing the decision.  And that is an objective standard.

12             MR. BAUGHMAN:  I agree it's an objective standard,

13     your Honor, but this is critical to our case.  We must be able

14     to present evidence that goes to that question.  They are going

15     to call witnesses and they are going to come in and say, well,

16     I'm the CFTC, and it would have been very important for us to

17     know this, that, or the other thing.

18             THE COURT:  I don't think so.

19             MR. BAUGHMAN:  If they --

20             THE COURT:  I don't think they can call witnesses on

21     that issue.

22             MR. BAUGHMAN:  Well, they have done that through the

23     investigation that they brought and that is what they pled.

24             THE COURT:  But the investigation is not what's before

25     me.

1          MR. BAUGHMAN:  Your Honor, there is very good case law

2     holding that if the question is whether or not something can

3     influence the decision-maker, evidence that it did or did not

4     is relevant to the question of whether or not it can.

5          I'll cite to you, for example, the *United States v.*

6     *Gerrans* case, which we cited in our papers, which puts this

7     very simply.  In that case, the question was whether a false

8     statement to an FBI agent was capable of influencing the FBI.

9     And the court held, well, obviously it was capable of

10    influencing the FBI because it did.  There was evidence that it

11    did.

12         And right now, your Honor, we have absolutely no

13    evidence, we have been denied entirely all evidence --

14         THE COURT:  Let's not get to that point yet.  I'm

15    still dealing with the standard.

16         MR. BAUGHMAN:  OK.

17         THE COURT:  Let me hear what the CFTC says about that.

18         Mr. Rodgers.

19         MR. RODGERS:  Thank you, your Honor.

20         The cases are uniform that the standard is objective.

21    They are uniform in the cases that we cited and they are

22    uniform in the cases that defendants cited.  They are trying --

23         THE COURT:  What does it mean by the statement that

24    they must prove materiality by reference to the particular

25    government agency or public officials that were targeted?

1          MR. RODGERS:  Your Honor, that is easily satisfied

2     here because defendants made the statements that they made in

3     connection with the self-certification to the CFTC.  That is

4     not a loophole to graft on some subjective element to

5     materiality.

6          THE COURT:  But, in other words, is it a different

7     standard as to the CFTC than it is to, say, somebody else?

8          The SEC, for example?

9          MR. RODGERS:  Well, the statute is slightly different.

10    You know, the statute that we are bringing these charges under

11    requires that the defendant know or should have known that

12    their statements were false and misleading at the time that

13    they made them.

14         THE COURT:  Now how do you intend to prove that?

15         Are you going to bring witnesses, or is there going to

16    be an examination of the words that were used?

17         MR. RODGERS:  I think it's both, your Honor.  There

18    are the words that the defendants stated to the CFTC, and then

19    there is what --

20         THE COURT:  Are they in writing or oral?

21         MR. RODGERS:  Both, your Honor.  But --

22         THE COURT:  So the oral words won't necessarily

23    require a witness, but will the witness go on to say why he or

24    she was misled?

25         MR. RODGERS:  The witness would articulate whether

1    that specific statement, you know, had an impact on their

2    evaluation of the bitcoin futures contract.  There is no

3    question really that the statement that was made --

4              THE COURT:  I don't know.  I don't think so.

5              If you say yes, that the government allowed discovery,

6    but I don't think that's true.  I don't think you're going to

7    be able to prove that that way.  I don't know that I would

8    allow it.  If it's subjective measurement, it's measured by the

9    words themselves.

10             Now if it's written, we don't need any testimony.  But

11   if it's oral, we will need testimony as to what was said,

12   examination and cross-examination and maybe several witnesses.

13   But those witnesses will not be allowed to say whether he or

14   she was influenced or not or why.

15             If you tell me otherwise -- I haven't examined this

16   issue, but if you tell me otherwise, I'm going to allow the

17   discovery.

18             MR. RODGERS:  Your Honor, our understanding is that

19   the materiality turns on what defendants -- the statements that

20   defendants made in the context of the self-certification.  The

21   internal thinking of the CFTC is completely irrelevant to that

22   determination.

23             THE COURT:  I agree, but you're dodging what I'm

24   saying.

25             If anybody is going to be offered for the proposition

N2DsCOMc

1    that I was influenced and this is why, I will allow the

2    discovery to the defendants.  If I'm going to make that

3    determination from the words themselves, I will not.

4              MR. RODGERS:  Understood, your Honor.

5              THE COURT:  You tell me.

6              MR. RODGERS:  It's a little difficult to parse in the

7    abstract, but what I would say --

8              THE COURT:  No, it's not.  Not at all.

9              MR. RODGERS:  I mean, for the purposes of the

10   standard, our position is that it's an objective standard and

11   that, you know, witnesses can talk about, you know, how the

12   statements were relayed.

13             THE COURT:  That's correct, and discovery will be

14   limited to that.  But I will not allow the witnesses to go on

15   to say why I was influenced or what influenced me.

16             MR. RODGERS:  Understood, your Honor.

17             THE COURT:  OK.  With that understanding, what's the

18   defendants' position?

19             MR. BAUGHMAN:  Your Honor, do you have a copy of the

20   complaint with you?

21             THE COURT:  Yes, I do.

22             MR. BAUGHMAN:  Could I actually ask you to look at it?

23             THE COURT:  I'm looking at it.

24             MR. BAUGHMAN:  OK, because --

25             THE COURT:  I'm looking at it.  I read very carefully

N2DsCOMc

```
 1   what you read out to me.
 2               MR. BAUGHMAN:  I would just give you, for example,
 3   another example.
 4               THE COURT:  That does not mean that every allegation
 5   in the complaint is relevant.
 6               MR. BAUGHMAN:  Understood, your Honor.
 7               I just want to give one further example.  Paragraph
 8   71, for example.  OK.  Such false and misleading statements and
 9   omission to the commission --
10               THE COURT:  If you want me to follow you, let me get
11   it.
12               MR. BAUGHMAN:  Of course, your Honor.
13               THE COURT:  I have it.
14               MR. BAUGHMAN:  Paragraph 71 reads, such false or
15   misleading statements and omissions to the commission staff
16   were material, including to the evaluation of the compliance
17   with acting commission regulations of the bitcoin futures
18   contractor.
19               I respectfully submit, your Honor, that under the
20   ruling that you have just said, they can't prove that.  I do
21   not think they should be allowed to call a witness to say
22   whether they considered this statement, if the statement had
23   any impact at all.
24               THE COURT:  I just said that.
25               MR. BAUGHMAN:  OK.  As long as it's clear that there
```

1    will be no evidence of the impact of the statement on the CFTC.

2              THE COURT:  Well, probably you may need an expert on

3    this issue, because if it's an objective standard, I must judge

4    it according to the words that were said.

5              MR. BAUGHMAN:  Respectfully, your Honor, might I be

6    given two minutes to try to persuade you otherwise?

7              THE COURT:  Where do you want to go?

8              MR. BAUGHMAN:  Here's the thing.  The 55-mile-an-hour

9    speed limit is an objective standard, but whether or not it has

10   been breached requires evidence.  And in this case they will

11   need, to meet their burden, they are going to need to produce

12   evidence that the statements were capable of influencing the

13   CFTC.

14             THE COURT:  I don't agree.

15             MR. BAUGHMAN:  I do believe that's what they will have

16   to prove in order to prevail in their case, your Honor.  If

17   that is so, I'm entitled to present a defense.

18             I feel odd arguing for my adversary, but if they can't

19   prove materiality, then the case is over.

20             THE COURT:  The letter to me says there is little case

21   law dealing with materiality.  Federal courts have reached

22   uniform understanding of the materiality concept.  You cite

23   *Raza*, and there is no problem with that.

24             Then you say their burden is to prove materiality by

25   reference to the particular government agency or public

N2DsCOMc

```
1    officials that were targeted.  That was my discussion with

2    Mr. Rodgers, and my proposition is that this has to be judged

3    by the ones themselves and it becomes a matter of law whether

4    it will not affect someone.  Whether, in fact, it did affect

5    someone or did influence someone is not relevant.

6              MR. BAUGHMAN:  Respectfully, your Honor, I believe the

7    Supreme Court has held that materiality is a mixed question of

8    law in fact, and it is not whether or not the statements were

9    material, your Honor, I respectfully submit is not something to

10   decide on summary judgment.  I believe it is a matter that must

11   go to the jury.

12             THE COURT:  Well, it's true if the Supreme Court has

13   said that.

14             MR. BAUGHMAN:  Pardon me?

15             THE COURT:  It's true that the Supreme Court has said

16   that, but I don't know about the application.

17             MR. RODGERS:  Your Honor, I would just note here --

18             THE COURT:  Mr. Rodgers, what do you say?

19             MR. RODGERS:  -- the Supreme Court has squarely

20   addressed this issue of materiality in *U.S. v. Gaudin*.  That's

21   the case that I know we at least cited.

22             THE COURT:  Where is it?

23             MR. RODGERS:  Well, it's 515 U.S. 507.

24             THE COURT:  Where is it in your papers?

25             MR. RODGERS:  If we did cite it, it's from *Neder*.
```

N2DsCOMc

1          I want to direct your attention to --

2          MR. BAUGHMAN:  I don't believe that's in the letter,

3   your Honor.

4          THE COURT:  Could you hold yourself there?

5          MR. RODGERS:  If it's not in the letter, your Honor, I

6   would ask request that I can read to you this brief comment

7   because it squarely addresses this issue of what it takes to

8   demonstrate materiality in the context --

9          THE COURT:  What's the name of the case?

10         MR. RODGERS:  United States v. G-a-u-d-i-n.  That's

11  515 U.S. 506.  I'm quoting from page 509.  The court held

12  deciding whether a statement is material requires the

13  determination of at least two subsidiary questions of purely

14  historical fact.  What statement was made and what decision the

15  agency was trying to make --

16         MR. BAUGHMAN:  Exactly.

17         MR. RODGERS:  -- that is how materiality is

18  determined.  It's historical facts.  It has nothing to do with

19  the internal machinations of the CFTC and how the material did

20  or did not affect that decision.

21         THE COURT:  That's how I understand the law that is

22  stated and I was trying to state in my discussion with you.

23  That makes it an objective standard, and we don't get into the

24  question how the particular individual was or was not

25  influenced.  That's my ruling.

N2DsCOMc

1          MR. BAUGHMAN:  Your Honor, respectfully, you are

2     making it impossible for us to defend ourselves in this case.

3          THE COURT:  Maybe you don't have a defense.

4          MR. BAUGHMAN:  Your Honor, we do.

5          Look, both sides have said in their papers that they

6     would like, perhaps, the opportunity to address this further,

7     but it needs to be absolutely clear your Honor's ruling is, if

8     you're denying the discovery, they are not allowed to present

9     any evidence of how, when, where, under what circumstances

10    anyone at the CFTC considered these statements.  That has to be

11    entirely off the record.  They cannot even call someone to say

12    I listened carefully.  It has to be 100 percent out of the

13    case.

14         THE COURT:  I haven't examined all the different

15    phrases that you've made, but I think that's probably so.

16    That's probably so.

17         Now let's put it a different way.  A statement is

18    made.  What is self-certification, Mr. Rodgers?

19         MR. RODGERS:  It's the process by which a designated

20    contract markets list new products.  It's one of two methods,

21    and they provide a detailed summary of the product after

22    considerable back and forth within the division of market

23    oversight within the CFTC, and ultimately they submit a letter

24    to the CFTC certifying that it complies with the Commodities

25    Exchange Act, including the core principals that govern the

N2DsCOMc

```
1    appropriateness of listing of those contracts and ten days

2    after the self-certification.  Unless the CTFC moves to stay or

3    request additional information, that contract is then listed

4    for trading.

5          THE COURT:  Now tell me about how you prove that.

6          MR. RODGERS:  Those are --

7          THE COURT:  I guess you prove what was asked and what

8    was answered.

9          MR. RODGERS:  Your Honor, the record of the back and

10   forth with the defendant and the designated contract market are

11   a matter of historical record with re-mails and submissions and

12   the like.

13         THE COURT:  Right, right.  And beyond that, there

14   would be no testimony.

15         MR. RODGERS:  I mean, it will take a second to unpack

16   that, but what I would say there needs to be testimony on, you

17   know, I think, like your Honor referenced, expert testimony on

18   the statutes and regulations that apply.

19         THE COURT:  No, that's for me.  I'm the judge.  I'm

20   supposed to know that stuff.  You can all make-believe that I

21   know this stuff, but it's my job to know this stuff, and I

22   don't take an expert to tell me what the law is.  This is all

23   in the Code of Federal Regulations.

24         MR. RODGERS:  Yes, I would agree with that.  It's a

25   matter --
```

N2DsCOMc

1          THE COURT:  So public rules and regulations, so the

2     letters, are there oral requests here too, oral conversations,

3     or just written?

4          MR. RODGERS:  There was both, your Honor.

5          THE COURT:  Both oral and written.

6          So, again, we have to say, what is relevant here is

7     what was said to the other side.  Not what a person thought to

8     say or not what a person planned to say, what a person actually

9     said, just like in a contract.  The objective expectations of

10    the parties that govern in a contract, same here.

11         So the element of factual discovery goes into how the

12    record was made up, not why the record was made up.

13         MR. RODGERS:  I would agree, your Honor.

14         THE COURT:  Good.  Given that, where are we,

15    Mr. Baughman?

16         MR. BAUGHMAN:  Well, the next item in the letter

17    related --

18         THE COURT:  Am I finished with one?

19         MR. BAUGHMAN:  Item one was the materiality.

20         THE COURT:  We're finished with that.  OK.

21         MR. BAUGHMAN:  I mean, I would just like to say,

22    obviously I disagree with your Honor's ruling.  I think I

23    understand --

24         THE COURT:  I imagine that, yes.  You're pretty clear

25    you disagree.

N2DsCOMc

```
 1              MR. BAUGHMAN:  We will respect the court and proceed
 2        and figure it out as we go.
 3              THE COURT:  Let's put it this way.
 4              MR. BAUGHMAN:  It's a jury trial.  This is a jury
 5        trial.
 6              THE COURT:  I know you've asked for a jury and the law
 7        provides for a jury, but there are no facts for a jury.  There
 8        may not be a jury trial.  It depends how it works out.  I don't
 9        know.
10              MR. BAUGHMAN:  Of course.
11              THE COURT:  If there is a dispute as to who said what
12        and when, that's a jury issue.
13              MR. BAUGHMAN:  Understood, your Honor.
14              The next item in our letter concerned the so-called
15        assertion of two privileges, the deliberative process privilege
16        and the investigative files privilege.
17              THE COURT:  Do we get into that with what I said
18        before?
19              MR. BAUGHMAN:  I don't know, your Honor.  I can't tell
20        because the privilege log that they have given us is a page and
21        a half, so I can't really understand whether there are
22        documents that would go beyond the materiality point.  I just
23        don't know.
24              MR. RODGERS:  Your Honor, the privilege log is more
25        than a page and a half.
```

N2DsCOMc

| | |
|---|---|
| 1 | THE COURT:  Mr. Rodgers, I think you need to wait. |
| 2 | MR. RODGERS:  Sorry, your Honor. |
| 3 | MR. BAUGHMAN:  Your Honor, here is my point.  They |
| 4 | have the burden of establishing these privileges, the |
| 5 | deliberative process privilege and -- |
| 6 | THE COURT:  I understand your point about privilege |
| 7 | log.  Let's see what Mr. Rodgers has to say. |
| 8 | MR. BAUGHMAN:  But there is an additional point. |
| 9 | MR. RODGERS:  I'm sorry, your Honor.  I didn't mean to |
| 10 | rudely interrupt. |
| 11 | THE COURT:  Why don't you make that in a minute. |
| 12 | Go ahead, Mr. Rodgers. |
| 13 | MR. RODGERS:  I'm sorry about that. |
| 14 | In any event, our privilege log is not a page and a |
| 15 | half.  It's several pages.  We detailed -- |
| 16 | THE COURT:  It doesn't matter how long it is.  The |
| 17 | question is whether it's complete. |
| 18 | MR. RODGERS:  Fair enough.  There is no question -- |
| 19 | THE COURT:  Is it complete? |
| 20 | MR. RODGERS:  It's complete with respect to the |
| 21 | communications in connection with the self-certification, and |
| 22 | then we did also do a categorical log for certain |
| 23 | communications within the department, you know, the division of |
| 24 | enforcement in connection with the investigation. |
| 25 | So the short answer -- and I apologize for rambling -- |

1    is that yes, our privilege log is complete.  We have detailed

2    all of the internal communications that we are withholding on

3    the basis of the deliberative process privilege.

4              MR. BAUGHMAN:  May I, your Honor?

5              THE COURT:  Mr. Baughman.

6              MR. BAUGHMAN:  They have not complied with the law.

7    Both sides have cited cases.  For example, *In Re Sealed Case*,

8    856 F.2d --

9              THE COURT:  We're not talking about the law.  We're

10   talking about a privilege log.

11             MR. BAUGHMAN:  Your Honor --

12             THE COURT:  And in what respects is a privilege log

13   not adequate?

14             MR. BAUGHMAN:  In order to assert the deliberative

15   process privilege and the investigative files privilege, there

16   is a prerequisite before you get to the log, it is this.  The

17   law is absolutely clear that there are three requirements that

18   must be met.  The head of the department having control over

19   the requested information must make the assertion of privilege

20   personally based on an individual personal review of each of

21   the requested items and they have to submit a statement to the

22   court as to why the privilege is claimed with an explanation of

23   why it is properly asserted.

24             They have not done that.  They admit they did not do

25   it.  They have a footnote in their letter saying, well, if the

N2DsCOMc

1    order asks us to do it, we want more time to do it.  There was

2    a discovery schedule, your Honor.  They have a burden of

3    asserting privileges.  They admit that this is the law.  They

4    cite the cases and admit it's the law, and they didn't follow

5    it.

6            In my view, your Honor, they have waived the right to

7    assert the deliberative process privilege and the investigative

8    files privilege.  I will cite to your Honor the case of

9    *DJM Investments, Inc. v. New York Futures Exchange, Inc.*,

10   224 F.R.D. 133.

11           THE COURT:  I'm not prepared, in a 227 case, to rule

12   there is any waivers.  If there is a waiver, something missing,

13   it can be corrected.

14           MR. BAUGHMAN:  OK, your Honor, but they didn't follow

15   the law and they've asked for further briefing.

16           THE COURT:  All right.  Let me ask Mr. Rodgers.  It's

17   true that the head of agency has to assert the privilege,

18   right?

19           MR. RODGERS:  Your Honor, there are procedural

20   requirements that, you know, would be followed if we were

21   asserting this in connection with a briefing on the matter.  We

22   can get the certification in a matter of three days.

23           THE COURT:  This was a briefing.  This was supposed to

24   be done.  What do you need to do?

25           MR. RODGERS:  We would request sufficient time --

N2DsCOMc

1           THE COURT:  What do you need to do?

2           MR. RODGERS:  We need to submit it to the commissioner

3    for approval.

4           THE COURT:  What else?

5           MR. RODGERS:  That's it, your Honor.

6           THE COURT:  So the commissioner, in effect, has to

7    call the privilege?

8           MR. RODGERS:  Well, they --

9           THE COURT:  Invoke the privilege?

10          MR. RODGERS:  That's correct.

11          THE COURT:  OK.

12          MR. RODGERS:  Or somebody delegated by him.

13          THE COURT:  How long would it take?

14          MR. RODGERS:  We would request sufficient time, but we

15   could do it in three days, your Honor.

16          THE COURT:  Three days?

17          MR. RODGERS:  I'm sorry.  A couple weeks, your Honor.

18   I apologize.  I misinterpreted what my colleague said.

19          THE COURT:  How much time do you want?

20          MR. RODGERS:  Three weeks, your Honor.

21          THE COURT:  Three weeks.

22          What's three weeks from now, Alexander?

23          LAW CLERK:  March 6.

24          THE COURT:  March 6, 2023.

25          Next.

1          MR. BAUGHMAN:  Your Honor, I have other points on the

2     privilege.  I will reserve them until we get the log.  It will

3     make more sense.

4          THE COURT:  Let's see what we can finish today.  That

5     will be coming soon.

6          MR. BAUGHMAN:  I agree.  That's what I'm saying.

7          I will not argue further on the privilege point until

8     we get the log.  So with that, I will pass to Mr. LaVigne,

9     which is our other item which had to do with search terms and

10    custodians.

11         THE COURT:  We are finished with two then?

12         MR. BAUGHMAN:  And three as well, your Honor, because

13    they are both privileges.  It's different privileges but the

14    same.

15         THE COURT:  I agree with you.

16         Now we're with plaintiff's positions, right?

17         MR. BAUGHMAN:  No, your Honor.  Not quite, we had one

18    more.

19         THE COURT:  What page?

20         MR. LAVIGNE:  Your Honor, it's page 18.

21         MR. BAUGHMAN:  Page 18 of the letter, your Honor.

22    It's issue five on page 19 to 23 of the joint letter.

23         THE COURT:  OK.

24         MR. LAVIGNE:  Your Honor, the issue here, and we're

25    raising a search term dispute with your Honor because we've

1    been asking the CFTC for weeks, if not months, to run certain

2    search terms and to negotiate about them in good faith.  They

3    have not done so.

4          Candidly, your Honor, it's emblematic of something we

5    have been dealing with in connection with this case where they

6    are asking us to produce scores and scores and scores of

7    documents, go back to the well, and in exchange they are not

8    giving us what we're entitled to.

9          I'll just briefly summarize for your Honor.  We filed

10   our request for production in early August 2022.  Two months

11   later they sent us back a search protocol.

12         THE COURT:  Let's cut to the quick.  I take it the two

13   bullet points on the bottom of page 20 are what's at issue?

14         MR. LAVIGNE:  Not exactly, your Honor.  There are two

15   different issues.  Number one is we have asked them to run

16   about 50 search terms or so, and that is Exhibit G in our

17   letter.  The search terms, I can give your Honor a little bit

18   of a flavor, but they focus on key parties that are involved in

19   the case, key players involved in the case, and also key terms.

20         The CFTC says, for example, that the statement Gemini

21   made about this being a prefunded exchange or a fully reserved

22   exchange is misleading.

23         THE COURT:  Haven't you mind what I held in the

24   earlier part of our discussion, how many of these search terms

25   would you still push to pursue, assuming I make consistent

N2DsCOMc

1    rulings?

2           MR. LAVIGNE:  I'm sorry, your Honor.  I didn't quite

3    catch that.

4           THE COURT:  Having in mind the rulings I made earlier

5    and what is material and what's not, how many of these search

6    terms would you pursue, assuming I rule consistently?

7           MR. LAVIGNE:  Your Honor, I would like to pursue all

8    of them.  The issue, frankly, is they are relevant because they

9    go to the statements that the CFTC claims we made were false

10   and misleading.  Their position is they have run certain terms

11   like Gemini, bitcoin futures, that suffices.

12          I don't believe that's right.  The issue is relevance.

13   They are relevant in terms of burden, your Honor.  We have been

14   asking them to run these terms and to provide us with

15   essentially a parse search term report so we can see what, if

16   any, of these terms are actually driving a number of the hits,

17   and they have never done that.

18          It's three months since we've submitted our request

19   and they have not given us back a search term hit report.

20          THE COURT:  Maybe there is a difference in law.

21          MR. LAVIGNE:  I don't believe it's a difference in

22   law, your Honor, because our terms are narrowly tailored to the

23   issues in the case.

24          THE COURT:  Well, what do you say, Mr. Rodgers?

25          MR. RODGERS:  Well, I guess it won't be surprising, we

1    disagree with that perspective.

2              THE COURT:  I can't hear you.

3              MR. RODGERS:  Your Honor, we disagree with that

4    perspective.  I think in the letter that they sent to us with

5    the discovery terms, as well as in the letter to your Honor,

6    it's pretty clear they are seeking material outside the

7    confines of this specific self-certification.  They are looking

8    for information relevant to other self-certifications that may

9    have occurred at the same time.

10             THE COURT:  Yeah, that's what I said.  That's not

11   going to be relevant.

12             MR. LAVIGNE:  Your Honor, respectfully, that's not

13   accurate.  If you look at Exhibit I, which is our letter, the

14   terms we're using are people who are involved in this

15   certification, terms related to this certification that they

16   claim --

17             THE COURT:  I have to get to the particular points

18   that you're making.  I want to get the document up.

19             Exhibit G?

20             MR. LAVIGNE:  It is Exhibit G, your Honor.

21             THE COURT:  All right.  What in Exhibit G shall I look

22   at?

23             MR. LAVIGNE:  Sure.  If you look at page eight out of

24   nine, appendix A.

25             THE COURT:  I'm at page eight.

N2DsCOMc

| | |
|---|---|
| 1 | MR. LAVIGNE:  If you look at these parties, it lists |
| 2 | CBOE, OCC.  These are all parties that were involved in this |
| 3 | specific certification.  The names are individuals from CBOE, |
| 4 | who actually interacted with the CFTC in connection -- |
| 5 | THE COURT:  Who is CBOE? |
| 6 | MR. LAVIGNE:  CBOE is the Chicago Board of Options |
| 7 | Exchange.  That's the entity that listed this contract. |
| 8 | THE COURT:  What's the relevance of all their |
| 9 | interactions? |
| 10 | MR. LAVIGNE:  All these interactions, the CFTC is |
| 11 | claiming that false statements were made during the course of |
| 12 | this back and forth, and we want to see what the CFTC |
| 13 | actually -- |
| 14 | THE COURT:  Statements can only be made by something |
| 15 | you said, not by something somebody else said.  So what |
| 16 | Reinstein said to Deters is of no value whatsoever. |
| 17 | MR. LAVIGNE:  Your Honor, I do think there is value in |
| 18 | it. |
| 19 | THE COURT:  No.  Complete hearsay. |
| 20 | MR. LAVIGNE:  What, your Honor? |
| 21 | THE COURT:  Hearsay. |
| 22 | MR. BAUGHMAN:  Hearsay. |
| 23 | THE COURT:  Have you ever heard of hearsay? |
| 24 | MR. LAVIGNE:  Yes.  I don't believe it's hearsay, your |
| 25 | Honor.  I believe part of that does go to materiality and does |

N2DsCOMc

```
 1   go to the overall evaluation --
 2              THE COURT:  No, it does not.
 3              MR. LAVIGNE:  -- of the self-certification process.
 4              THE COURT:  It does not.
 5          Materiality, misstatements, they are all measured by
 6   what the defendants said, not by what others said about what
 7   the defendants said.
 8              I rule in favor of the CFTC.  Anything else you want
 9   me to rule on?
10              MR. LAVIGNE:  Well, your Honor, there were also
11   additional custodians in connection with this, you know, back
12   and forth over search terms.  There was a member of the
13   investigative team from the CFTC enforcement side.  We think he
14   should be a custodian.
15              THE COURT:  Why?
16              MR. LAVIGNE:  Well, from my perspective, FBI agents
17   frequently interact with witnesses on the procedure points of
18   contacts with the witnesses.  And this CFTC investigator, we
19   have the same concerns about not including him.
20              THE COURT:  You don't know of any managed like that.
21              And who is going to be a witness here?
22              I mean, just cut down the scope of witnesses.
23              MR. LAVIGNE:  Well --
24              THE COURT:  I don't see it.
25              MR. LAVIGNE:  -- your Honor, in order for the CFTC to
```

N2DsCOMc

1    establish that certain of the statements were false -- I mean,

2    if I can just elaborate for a second.  They say our statement

3    that the exchange was prefunded was false.  In order to

4    establish that as false, they are going to try to introduce

5    evidence and testimony from third parties who were involved in

6    a lending program, for example.  That's going to require

7    witnesses who contest --

8              THE COURT:  Is that right, Mr. Rodgers?

9              MR. RODGERS:  I don't think that third-party testimony

10   would dispute the existence of a related party lending program

11   that was undisclosed.

12             THE COURT:  You're not speaking clearly.

13             MR. RODGERS:  I apologize, your Honor.

14             The third-party lending program is not subject to

15   dispute.  It existed.  It was a related entity to Gemini.  All

16   of Gemini's employees are aware of it.  They have told us that,

17   so the idea that that would require --

18             THE COURT:  Are you going to produce these witnesses?

19             Are you going to use these witnesses?

20             MR. RODGERS:  Well, the witnesses, you know, the

21   standard here does turn on what the Gemini knew or should have

22   known when they made the statements to the CFTC.  We would be

23   entitled to information related to that under the charged

24   offense.

25             THE COURT:  Yes.

1          MR. LAVIGNE:  Your Honor, for them to prove their case

2     and your Honor asked about hearsay, if they want to share that

3     a statement about a prefunded exchange was somehow misleading,

4     they are going to have to introduce testimony from percipient

5     witnesses talking about the alternative lending programs that

6     were utilized.  And they have already interviewed witnesses, I

7     will submit, they likely will intend to call.

8          THE COURT:  Tell me what these witnesses would say.

9          MR. LAVIGNE:  I think the witnesses would say, for

10    example, that there was -- I mean, you would have to ask the

11    CFTC.  But the CFTC may have witnesses come in and say that

12    there was a third-party affiliate.  The third-party affiliate

13    lended bitcoin and lended to certain entities that were then

14    encouraged to trade bitcoin on the exchange.  From our

15    perspective, that in no way, shape, or form is inconsistent

16    with prefunding.

17         THE COURT:  They are saying that involvement of an

18    affiliated company doesn't show the reliability of the

19    exchange.  They are saying that if you want to prove that there

20    is financial responsibility, you can't use one party's

21    transactions with a related party.

22         MR. LAVIGNE:  Your Honor, from our perspective --

23         THE COURT:  It's not the same thing you're saying.

24         Am I right, Mr. Rodgers?

25         MR. RODGERS:  I have to admit, I'm a little lost on

N2DsCOMc

```
 1   this thread.  This is so far afield of the search terms we're
 2   talking about.  I'm a little --
 3              THE COURT:  It's not far afield.  This is a
 4   justification.  Mr. LaVigne says that in order to prove
 5   falsity, you've got to prove what one third party did with
 6   another because they are related, and I understand from the
 7   papers that that is the case because you want to show that
 8   there is no reliability, no financial liability to an
 9   interparty transaction.  I don't see the point of testimony on
10   this.
11              MR. LAVIGNE:  Your Honor, that's for the CFTC.  If
12   they want to --
13              THE COURT:  No, it's for me.  It's for me.
14              MR. LAVIGNE:  Your Honor, from my perspective, if the
15   CFTC comes up here and tries to prove their case with one
16   agent, like the U.S. Attorney's office would with an FBI agent,
17   and have that agent summarize everything in the case --
18              THE COURT:  That's not happening.
19              MR. LAVIGNE:  It's not happening.  If they want to
20   show --
21              THE COURT:  It's not happening here.
22              MR. LAVIGNE:  I understand that.  If they want to
23   show --
24              THE COURT:  That's what happens in investigations.  It
25   doesn't happen here.
```

N2DsCOMc

1          MR. LAVIGNE:  OK.  I respect that.

2          I don't know if -- I hope my adversary appreciates

3     that, but if they --

4          THE COURT:  I don't care if he does or not.  I make

5     the rulings.

6          MR. LAVIGNE:  I understand that, your Honor.  My point

7     is this:  They conferred with a lot of third parties in

8     connection with this case.

9          THE COURT:  I would think so.

10          MR. LAVIGNE:  They did all this.  We want to ensure we

11     have the universe of that.

12          THE COURT:  So you can't get the universe of what they

13     did in their investigations.  You can get the universe of what

14     is relevant to the case.

15          MR. LAVIGNE:  Well, I want --

16          MR. RODGERS:  If it's helpful, your Honor, we produced

17     all third parties materials to the defendant, all parties that

18     we received from third parties in connection --

19          THE COURT:  Talk to Mr. LaVigne.

20          MR. RODGERS:  I'm sorry.

21          THE COURT:  I'm talking to Mr. LaVigne.  I don't see

22     the point here.

23          MR. LAVIGNE:  OK.  Your Honor, I understand that.  But

24     we have had extensive back and forth with the CFTC.  I have

25     concerns that there are third-party witnesses who they are

N2DsCOMc

1   going to call, and oftentimes an investigator --

2          THE COURT:  I will guarantee you this.  There will not

3   be a single witness who will be called who you will not have a

4   chance to depose on the potential subjects of his testimony.

5          MR. LAVIGNE:  I appreciate that, your Honor.

6          We also want to make sure we have the witness's

7   documents.

8          THE COURT:  You want what?

9          MR. LAVIGNE:  The witness' documents

10  contemporaneous --

11         THE COURT:  The witness' documents are the same

12  subject, bounded by relevance.  You get it all.  You're

13  entitled to it all.  If the CFTC wants to use a witness, you

14  have to know about that, and you are entitled to take the

15  witness's deposition and get the documents related to his

16  testimony.

17         MR. LAVIGNE:  I understand that, your Honor.

18         A big thing --

19         THE COURT:  What is needed to be done is for the CFTC

20  to tell you who are its witnesses.

21         MR. LAVIGNE:  Right.  That hasn't happened and we

22  also --

23         THE COURT:  I know it hasn't happened.  Maybe that's

24  the next step.

25         I think you're finished with discovery.  It was

1    supposed to be finished January 23.  We're ready for the next

2    step.

3              MR. LAVIGNE:  I think understanding who the CTFC's

4    witnesses are would be a very important first step, frankly.

5              THE COURT:  I agree.

6              MR. LAVIGNE:  We also want the notice of the witness

7    interviews they had with those witnesses.

8              THE COURT:  No.  No, you're not getting that.

9              MR. LAVIGNE:  Your Honor, the government also turns

10   that over in criminal cases.

11             THE COURT:  Well, this is not a criminal case.  You

12   can take discovery of these people.

13             MR. LAVIGNE:  I understand that, your Honor.  We think

14   given who some of the potential witnesses may be, it's very

15   critical that we get that.

16             THE COURT:  Well, you will know who the witnesses are

17   and you can take discovery of those witnesses, but you can't

18   encroach on what they found out.  You have to ask your own

19   questions.

20             All right.  What are you saying, Mr. Rodgers?

21             MR. RODGERS:  Nothing to add on that point other than

22   the three points that we raised in our letter, if we're ready

23   to move on to that.

24             THE COURT:  All right.  We're finished with that.  I

25   finished.  I rule against the additional search terms.

1          All right.  Let's take up your points, Mr. Rodgers.

2          MR. RODGERS:  No problem, your Honor.  The first issue

3   in our joint letter is that --

4          THE COURT:  Where am I?  What page?

5          MR. RODGERS:  Let me get that for you.  It starts on

6   page 23.

7          THE COURT:  OK.  Give me a minute, please.

8          OK.  Thank you.

9          MR. RODGERS:  Your Honor, around the time of writing

10  the letter, we did not have a status update on defendant's

11  production.  On February 9th last week we received a letter

12  from defendant along with a list of search terms that they

13  agreed to produce.  We're reviewing that at the moment, and

14  our request here is that we have leave to bring any further

15  disputes with respect to the search terms that were run in the

16  previous --

17         THE COURT:  You have leave.  I want discovery

18  finished.  It was supposed to be finished last month.

19         MR. RODGERS:  Understood, your Honor.

20         We were precluded from being able to do that because

21  we did not receive the final production or an update on where

22  things stood on that production until last Thursday.

23         THE COURT:  In other words, you've got nothing to tend

24  to me now?

25         MR. RODGERS:  There are a couple.  One, I think, main

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

N2DsCOMc

```
1    issue with respect to the search terms that were run and the

2    productions that were made is that defendants agreed to run a

3    searches across two key custodians, key witnesses, and that

4    does not appear to be the case.

5           We haven't had an opportunity to meet and confer on

6    this issue.  That is one primary issue, and we understood that

7    these two individuals would be custodians.

8           THE COURT:  All right.  How long will it take to

9    finish discovery?

10          MR. RODGERS:  Your Honor, we would need, just back of

11   the envelope, two weeks to understand what has happened with

12   respect to the letter and potentially meet and confer.

13          THE COURT:  Two weeks to learn what happened with the

14   letter?

15          MR. RODGERS:  I'm sorry.  I apologize, your Honor.  We

16   would request two weeks in which time we can meet and confer to

17   get any questions answered with respect to the final production

18   that we received.

19          THE COURT:  Then you'll produce a letter to me?

20          MR. RODGERS:  If there was an issue that needed

21   resolving, your Honor.

22          THE COURT:  OK.  Do we have any further conferences

23   scheduled?

24          Do we have one for Friday?

25          MR. RODGERS:  Your Honor, I think the anticipation was
```

N2DsCOMc

1    we would discuss that at the end of this hearing.

2              THE COURT:  Yeah, I don't think we're ready.  What I

3    would like to do is move on to the next stage and define what

4    that's going to be.

5              Are you planning to use any experts?

6              MR. RODGERS:  Yes, your Honor.

7              THE COURT:  So we need to get involved in that.

8              So you should talk to defendants about experts and

9    they should talk with you about experts, and we should define

10   how many experts there are going to be because I'm going to cut

11   them down.

12             MR. RODGERS:  Yes, your Honor.  We can do that.

13             THE COURT:  It may be that you want to have experts on

14   materials that are not really materials for an expert.

15             MR. RODGERS:  Understood, your Honor.

16             THE COURT:  When should I meet with you again?

17             MR. BAUGHMAN:  Your Honor, might I make a suggestion?

18             THE COURT:  Yes, Mr. Baughman?

19             MR. BAUGHMAN:  I think it might be beneficial if,

20   following the rulings today, we meet and confer.  We can

21   propose a joint letter to you, a joint status proposed schedule

22   agreed between the parties, or if you want to put us on the

23   calendar for this Friday or next Friday, we can come back.

24             THE COURT:  No, I don't want to put you on the

25   calendar until you're ready.

N2DsCOMc

1          MR. BAUGHMAN:  Why don't we confer and agree to submit

2     a --

3          THE COURT:  I need another date for control purposes

4     on my calendar.

5          MR. BAUGHMAN:  There was discussion earlier of March 6

6     for them to comply with the requirements of doing the privilege

7     log, the assertion of the privilege.  I believe that would be a

8     Monday.

9          Why don't you put us on the calendar for the following

10    Friday, which I think would be March 10.  Does that make sense?

11         MR. RODGERS:  We think that makes sense, your Honor.

12         In terms of discovery-related, we have two other

13    discovery-related issues that may be helpful.

14         MR. BAUGHMAN:  Actually, your Honor, I just realized

15    my wife booked a vacation that week.  Could we have the

16    following Friday so I don't run and need a lawyer for other

17    purposes?

18         THE COURT:  Let me have the calendar here.

19         What day would you like?

20         MR. BAUGHMAN:  I'm proposing maybe it would be

21    March 17 would be the following Friday, your Honor.

22    Information would be provided on the 6th and then two Fridays

23    later would be the 17th, I believe.

24         THE COURT:  I would rather keep it during the week.  I

25    want this on the record, and what I do on Fridays is not on the

N2DsCOMc

1   record.

2           MR. BAUGHMAN:  Then the following Monday or Tuesday.

3           THE COURT:  Yes.  Let's see.

4       March 22 at 11, is that OK?

5           MR. BAUGHMAN:  Yes, your Honor.

6           MR. RODGERS:  That will work for us, your Honor.

7           THE COURT:  All right.  March 22 at 11.  March 22 at

8   noon.

9           OK.  Anything else I can do for you?

10          MR. RODGERS:  Your Honor, there were two other

11  outstanding discovery issues that we raised in our letter.  One

12  involves laptops of two former employees.  These are the same

13  witnesses that were supposed to be custodians.  These laptops

14  were turned over to the SDNY in connection with a potential

15  prosecution.

16          We're asking that they be turned over to us so we can

17  image them.  The defendant has declined to do that.

18          THE COURT:  Do you need a new order?

19          MR. RODGERS:  I'm sorry, your Honor?

20          THE COURT:  What do you want?

21          You want the U.S. Attorney to give you --

22          MR. RODGERS:  No.  We would like the defendants to

23  turn over the laptops.  They disclosed that they possessed them

24  at the end of discovery.

25          THE COURT:  Why?

1          MR. RODGERS:  They relate to two of the key witnesses

2     in this case.  There is no basis for privilege information and

3     they are custodians that have not been reviewed and searched.

4          THE COURT:  I'm not going to give you a laptop.  This

5     is not a criminal case.

6          MR. RODGERS:  Well, we would like the material on the

7     laptop, your Honor.

8          THE COURT:  You're not going to get a laptop.

9          MR. RODGERS:  Can we get an order requiring that the

10     materials be reviewed and turned over on the laptop?

11          THE COURT:  By you?

12          MR. RODGERS:  That would be our preference.

13          THE COURT:  You can ask for what is relevant, and if

14     it's in the laptop, there's an obligation to turn it over.

15          MR. RODGERS:  Well, your Honor, that is what we would,

16     you know, request in the first instance, at the very least, is

17     that we get the relevant material from the laptops.

18          MR. BAUGHMAN:  Your Honor, two points.

19          Counsel maybe hasn't had a chance to digest.  He keeps

20     saying these two witnesses are not custodians.  They are.  We

21     have agreed to produce the witnesses' documents.

22          And what your Honor has just proposed, we offered to

23     them.  We offered to run their search terms on the computers

24          THE COURT:  That's sufficient, Mr. Rodgers?

25          MR. RODGERS:  If they are willing to do that, we'll

N2DsCOMc

```
1    accept that.

2              THE COURT:  OK.

3              MR. RODGERS:  Hopefully that will be done before the

4    next deadline.

5              MR. BAUGHMAN:  With one caveat, your Honor, I just

6    want to get on the record, which is at least one of the

7    computers is encrypted and we don't have the password.  We're

8    trying to find it.  But if we can get access, we will do it.  I

9    will undertake to do it.

10             THE COURT:  Next.

11             MR. RODGERS:  The final issue, your Honor, is we

12   requested a privileged log for settlement communications

13   related to the same two witnesses.  We understand that

14   defendants have engaged in settlement communications related to

15   a separate matter with one of the two witnesses.

16             THE COURT:  This bears on credibility?

17             MR. RODGERS:  It bears on his credibility as well as

18   potential bias and prejudice.  And there is at least two

19   instances of settlement-linked affidavits that were either --

20   that are going to be used or were potentially going to be used

21   in this matter.  We flagged for your Honor some of our concerns

22   around these settlement discussions.

23             THE COURT:  Can we make this less abstract?

24             What are these witnesses to going to say?

25             MR. RODGERS:  These witnesses are former employees of
```

N2DsCOMc

1    Gemini, one of which I want to be careful here because the

2    witness is subject to certain protections within the CFTC based

3    on their status as -- I want to be careful -- a whistleblower.

4    We can't really come out and name them in open court.

5            THE COURT:  Well, how are you going to deal with the

6    problems of discovery?

7            MR. RODGERS:  Excuse me?

8            THE COURT:  How are you going to deal with the

9    problems of discovery?

10           MR. RODGERS:  There is a protective order and the name

11   has been relayed and, you know, frankly, it's been published by

12   defendant.  We want to be respectful and mindful of the program

13   that we have at the CFTC.  This individual was deeply involved

14   in the related-party loans as well as the rebate programs that

15   were not disclosed, so they are -- and the other individual who

16   reported to him -- both key witnesses in this case, both of

17   which have been --

18           THE COURT:  Who made the settlement?

19           MR. RODGERS:  Defendants have settled with one of the

20   individuals, and the individual who I'm not going to name did

21   not execute an affidavit, even though he was offered a monetary

22   component to the settlement in exchange for the affidavit.

23           THE COURT:  He did not produce an affidavit?

24           MR. RODGERS:  The affidavit was drafted by counsel and

25   sent to him.  He declined to sign it.

N2DsCOMc

```
 1           THE COURT:  All right.  Which counsel sent him an

 2    affidavit?

 3           MR. RODGERS:  Counsel at counsel's table, your Honor.

 4           THE COURT:  He declined to sign it, so why is it

 5    relevant?

 6           MR. RODGERS:  Well, your Honor, the statements -- we

 7    think it's relevant because it potentially raises issues with

 8    respect to engagement with a witness.

 9           THE COURT:  We're not dealing with obstruction of

10    justice, are we?

11           MR. RODGERS:  Your Honor, there is a potential that,

12    you know, that -- I'll just say it.  There's a potential

13    witness tampering concern on our part.

14           THE COURT:  Well, it's not before me, is it?

15           MR. RODGERS:  Your Honor, it doesn't have to be in

16    connection with this specific --

17           THE COURT:  This is not a motion to recuse defense

18    counsel.  If demanded and the man didn't sign it, it's not

19    relevant.

20           MR. RODGERS:  I'm not going to argue with you on that

21    point, your Honor.  We understand your ruling.

22           THE COURT:  Anything else?

23           MR. RODGERS:  No, your Honor.

24           THE COURT:  Anything else, Mr. Baughman?

25           MR. BAUGHMAN:  No, your Honor.  Thank you very much.
```

N2DsCOMc

```
 1              THE COURT:  All right.  So I'll see you guys March 22,
 2      noon.  Can we stay on the record a few more minutes, please?
 3      What is it that the CFTC wants in the end?  What's the remedy
 4      it wants?
 5              MR. RODGERS:  Your Honor, we're seeking injunctive
 6      relief, but also a civil monetary penalty in connection with
 7      false statements that were made.
 8              THE COURT:  How is this penalty measured?
 9              MR. RODGERS:  It's per statement, your Honor, is my
10      understanding.
11              THE COURT:  Is this criminal or civil?
12              MR. RODGERS:  It is civil, your Honor.
13              THE COURT:  Supreme Court said something about this,
14      hasn't it, about civil monetary penalties?
15              MR. TOMER:  Your Honor, if I may, that was with
16      respect to discouragement under the SEC's statute.  The civil
17      monetary penalty remains a civil penalty.  It is a penalty,
18      however.
19              THE COURT:  I guess is there a standard of proof of
20      preponderance?
21              MR. TOMER:  Correct, your Honor.
22              THE COURT:  Any comment, Mr. Baughman?
23              MR. POSNER:  No, your Honor.
24              THE COURT:  OK.  Thank you.
25              (Adjourned)
```