UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

                Plaintiff,

    v.

GEMINI TRUST COMPANY, LLC,

                Defendant.

22-cv-4563

Hon. Alvin K. Hellerstein

**PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S
MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT .......................................................................................... 1

RELEVANT BACKGROUND AND PROCEDURAL HISTORY............................................... 3

      A.  Defendant's Motion Conceals Its Involvement in the Self-Certification of the Bitcoin Futures Contract...........................................................................3

      B.  Defendant's Motion Ignores the Court's Prior Discovery Rulings and the Declaration the CFTC Provided to Invoke the Deliberative Process Privilege.............4

      C.  Defendant's Motion Concedes that Defendant Deliberately and Repeatedly Tried to Invade the Deliberative Process Privilege During the Deposition of CFTC Witnesses ........................................................................................8

      D.  Defendant's Motion Overlooks the Testimony Defendant Obtained on Key Issues...10

ARGUMENT ................................................................................................................ 12

I.    Defendant's Motion Misrepresents the Application of the Deliberative Process Privilege .............................................................................................................13

      A.  The Deliberative Process Privilege Applies to Self-Certifications............................13

      B.  The CFTC Witnesses Do Not Have To Be Policymakers for the Deliberative Process Privilege to Apply ...............................................................................15

      C.  A Final Agency Decision Is Not Required for the Deliberative Process Privilege to Apply ..................................................................................................16

II.   The CFTC's Decisionmaking Is Not a Factor in Evaluating the Materiality of Defendant's Misstatements and Omissions .........................................................19

III.  The CFTC Has Not Waived the Deliberative Process Privilege .......................................23

IV.  Defendant's Request to Preclude Evidence Is Overbroad and Lacks the Required Specificity ..........................................................................................................28

CONCLUSION.............................................................................................................. 31

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Nat'l Sec. Agency*,
  925 F.3d 576 (2d Cir. 2019) ...................................................................................15, 27

*Arista Recs. LLC v. Lime Grp. LLC*,
  2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) ...........................................................30

*Arugu v. City of Plantation*,
  2010 WL 2609394 (S.D. Fla. June 27, 2010)............................................................26

*Bahena v. City of Chicago*,
  2018 WL 2905747 (N.D. Ill. June 11, 2018) .............................................................25

*Burbar v. Garden City*,
  303 F.R.D. 9 (E.D.N.Y. 2014) ...................................................................................20

*CFTC v. eFloorTrade, LLC*,
  2020 WL 2216660 (S.D.N.Y. May 7, 2020)...............................................................20

*CFTC v. Royal Bank of Ca.*,
  2014 WL 2933232 (S.D.N.Y. June 27, 2014)............................................................ 29

*CFTC v. Royal Bank of Ca.*,
  2013 WL 1932120 (S.D.N.Y. May 8, 2013) .........................................................1, 12, 16, 26

*Child. First Found., Inc. v. Martinez*,
  2007 WL 4344915 (N.D.N.Y. Dec. 10, 2007) ...........................................................20

*DeLeon-Reyes v. Guevara*,
  2021 WL 3109662 (N.D. Ill. July 22, 2021) ..............................................................27

*E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*,
  90 F. Supp. 2d 277 (S.D.N.Y. 2000) ..........................................................................30

*FHFA v. JPMorgan Chase & Co.*,
  978 F. Supp. 2d 267 (S.D.N.Y. 2013) ........................................................................15

*FHFA v. HSBC N. Am. Holdings Inc.*,
  2014 WL 1909446 (S.D.N.Y. May 13, 2014).............................................................23

*Gen. Elec. Co. v. Johnson*,
  2006 WL 2616187 (D.D.C. Sept. 12, 2006)...............................................................30

*Grand Cent. P'ship, Inc. v. Cuomo*,
   166 F.3d 473 (2d Cir. 1999) ..............................................................................13, 23

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
   2019 WL 1649983 (S.D.N.Y. Mar. 28, 2019) ...........................................................30

*In re World Trade Ctr. Disaster Site Litig.*,
   2009 WL 4722250 (S.D.N.Y. Dec. 9, 2009) ............................................... 12, 14, 16

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ................................................................................23

*John Doe Co. v. United States*,
   350 F.3d 299 (2d Cir. 2003) ...................................................................................30

*Judicial Watch, Inc. v. Clinton*,
   880 F. Supp. 1 (D.D.C. 1995) ...............................................................................18

*Lawrence v. Suffolk Cnty.*,
   2022 WL 855380 (E.D.N.Y. Mar. 23, 2022) ....................................................14, 25

*MacNamara v. City of New York*,
   249 F.R.D. 70 (S.D.N.Y. 2008) ..............................................................................15

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp. 3d 558 (S.D.N.Y. 2017) ....................................................................31

*Mitchell v. Fishbein*,
   227 F.R.D. 239 (S.D.N.Y. 2005) ............................................................................14

*Nat. Res. Def. Council v. EPA*,
   19 F.4th 177 (2d Cir. 2021) ............................................................... 12, 13, 15, 18

*Nat'l Union Fire Ins. Co. v. L.E. Myers Co.*,
   937 F. Supp. 276 (S.D.N.Y. 1996) .........................................................................29

*Rodriguez v. Delta Air Lines, Inc.*,
   2005 WL 8165155 (D.N.J. July 22, 2005) ..............................................................26

*SEC v. Benson*,
   657 F. Supp. 1122 (S.D.N.Y. 1987) .......................................................................31

*SEC v. Cymaticolor Corp.*,
   106 F.R.D. 545 (S.D.N.Y. 1985) ............................................................................31

*SEC v. Nacchio*,
   2009 WL 211511 (D. Colo. Jan. 29, 2009) ...........................................................................17

*SEC v. Sentinel Mgmt. Grp., Inc.*,
   2010 WL 4977220 (N.D. Ill. Dec. 2, 2010) ........................................................................24

*SEC v. Suman*,
   684 F. Supp. 2d 378 (S.D.N.Y. 2010) ................................................................................31

*Spadaro v. United States Customs & Border Prot.*,
   2019 WL 1368786 (S.D.N.Y. Mar. 25, 2019) ....................................................................24

*Thomas v. West*,
   2019 WL 1206696 (S.D.N.Y. Mar. 14, 2019) ....................................................................29

*Tigue v. United States Dep't of Justice*,
   312 F.3d 70 (2d Cir.2002)...........................................................................1, 12, 13, 26

*Torres v. City Univ. of New York*,
   1992 WL 380561 (S.D.N.Y. Dec. 3, 1992) .......................................................................14

*United States v. Adekanbi*,
   675 F.3d 178 (2d Cir. 2012).................................................................................................22

*United States v. Gaudin*,
   515 U.S. 506 (1995)..........................................................................................19, 21, 26

*United States v. Gramins*,
   939 F.3d 429 (2d Cir. 2019).................................................................................................21

*United States v. Landesman*,
   17 F.4th 298 (2d Cir. 2021).................................................................................................21

*United States v. Litvak*,
   808 F.3d 160 (2d Cir. 2015).................................................................................................20

*United States v. Litvak*,
   889 F.3d 56 (2d Cir. 2018)...................................................................................................21

*United States v. Raza*,
   876 F.3d 604 (4th Cir. 2017)...............................................................................................21

*United States v. Regan*,
   103 F.3d 1072 (2d Cir. 1997)..............................................................................................22

*United States v. Rigas,*
   490 F.3d 208 (2d Cir. 2007) ............................................................................... 22

*United States v. Santiago,*
   2014 WL 4827883 (S.D.N.Y. Sept. 26, 2014) ..................................................... 20

*United States v. Scali,*
   2018 WL 604852 (S.D.N.Y. Jan. 29, 2018) ........................................................ 20

*United States v. Serv. Deli Inc.,*
   151 F.3d 938 (9th Cir. 1998) ..............................................................................21

*United States v. Smith,*
   54 F.4th 775 (4th Cir. 2022) ...............................................................................21

*United States v. US Airways Grp., Inc.,*
   2013 WL 12341599 (D.D.C. Oct. 10, 2013) ................................................24, 27

*United States v. Wells Fargo Bank, N.A.,*
   2015 WL 6395917 (S.D.N.Y. Oct. 22, 2015) .......................................12, 16, 25, 30

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.,*
   141 S. Ct. 777 (2021) ..........................................................................................17

*Velez v. City of New York,*
   2010 WL 2265443 (E.D.N.Y. June 2, 2010) .......................................................14

*Vincent v. Reyes,*
   2021 WL 4262289 (N.D. Cal. Sept. 20, 2021) ....................................................29

*Walia v. Napolitano,*
   2017 WL 10378189 (E.D.N.Y. Dec. 4, 2017) .....................................................31

*Wechsler v. Hunt Health Sys., Ltd.,*
   381 F. Supp. 2d 135 (S.D.N.Y. 2003) .................................................................29

*Weiss v. Chrysler Motors Corp.,*
   515 F.2d 449 (2d Cir. 1975) ...............................................................................31

*Weiss v. La Suisse, Societe D'Assurances Sur La Vie,*
   293 F. Supp. 2d 397 (S.D.N.Y. 2003) .................................................................29

**Statutes**

7 U.S.C. § 9(2) ..........................................................................................................3, 4

18 U.S.C. § 1001 ................................................................................................................ 19

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................. 12

## PRELIMINARY STATEMENT

The Court can swiftly reject Defendant's motion, which seeks to compel two CFTC witnesses who were already deposed, as well as any future CFTC witnesses, to answer questions that are purposefully designed to invade the deliberative process privilege, or in the alternative, preclude evidence on a sweeping list of non-exclusive topics.  Defendant's motion primarily rests on two arguments that the Court has already rejected (*infra* Sections I & II)—namely, that the deliberative process privilege does not apply to the CFTC staff's review of the self-certified Bitcoin Futures Contract and that the subjective thoughts and opinions of CFTC staff are relevant to the evaluation of Defendant's culpability.[1]  First of all, there is no doubt that the CFTC—a federal agency charged with administering and enforcing the Commodity Exchange Act (the "Act")—is entitled to invoke the deliberative process privilege in connection with its staff's review of self-certified new product listings.  Citing binding precedent, this Court has made clear that the deliberative process privilege covers "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *CFTC v. Royal Bank of Ca.*, 2013 WL 1932120, at *1 (S.D.N.Y. May 2013) (Hellerstein, J.) (quoting *Tigue v. United States Dep't of Justice*, 312 F.3d 70, 76 (2d Cir.2002)).  By rehashing its previously rejected arguments, Defendant offers no reason for the Court to depart from its prior ruling on the ability of the CFTC to invoke the deliberative process privilege.

Similarly meritless is Defendant's contention that the Commission staff's subjective understanding of Defendant's misstatements is "critical evidence."  The Court previously

---

[1] Unless otherwise defined, capitalized terms have the meaning ascribed to them in the Complaint, ECF No. 1. Reference to "Mot. __" refers to Defendant's Memorandum of Law in Support of its Motion to Compel, ECF No. 54.

rejected this same argument during document discovery when it unambiguously ruled that the materiality of Defendant's misstatements and omissions are measured by the words themselves, not by the subjective thoughts and opinions of CFTC witnesses. The Court should reject Defendant's renewed attempt to distract from the core issues in this case, which focus on the statements Defendant made to the CFTC, not the internal deliberations of Commission staff.

Unable to meaningfully dispute the application of the deliberative process privilege, Defendant pivots to another frivolous claim that there has been a subject matter waiver of the privilege (*infra* Section III). No such concept exists under the deliberative process privilege jurisprudence, and Defendant has no grounds to argue a selective, let alone subject matter, waiver based on the testimony from the CFTC witnesses, the sharing of information with another government agency, or the press releases the CFTC issued in conjunction with the self-certification.

Finally, Defendant's request for alternative relief—in the form of a categorical exclusion of evidence on a non-exhaustive list of topics—should be denied outright (*infra* Section IV). Courts routinely refuse to exclude broad categories of evidence especially where, as here, Defendant does not identify any actual evidence it purports to exclude.

At bottom, there is nothing improper about asserting the deliberative process privilege in the context of depositions where questions are aimed, not at objective facts, but at the subjective pre-decisional thoughts and opinions of the CFTC witness. Defendant's motion is a product of its dissatisfaction with the evidence it actually adduced from the CFTC witnesses on the core issues in this case. The Court should deny Defendant's request for a do-over.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.    Defendant's Motion Conceals Its Involvement in the Self-Certification of the Bitcoin Futures Contract

The CFTC filed the Complaint in this action on June 2, 2022.  (ECF No. 1.)  The Complaint asserts one cause of action under Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2), based on Defendant making false and misleading statements of material fact, or omitting to state material facts, to Commission staff in connection with Commission staff's evaluation of a potential self-certification of a bitcoin futures contract (the "Bitcoin Futures Contract").  A key component of the proposed Bitcoin Futures Contract was its cash settlement price, which was to be determined based on an auction held on Defendant's digital asset trading platform.

Defendant's statement of facts tries to minimize Defendant's involvement in the self-certification of the Bitcoin Futures Contract that was filed with the Commission on December 1, 2017.  (Mot. at 4.)  Defendant misleadingly suggests that the Cboe Futures Exchange ("CFE"), which was the designated contract market on which the futures contract would trade, was solely responsible for all statements made in connection with the self-certification because it was the CFTC-regulated exchange.  (*Id.*)  But, Defendant made false and misleading statements and omissions to Commission staff "directly and through others" about the operations of Defendant's exchange and its daily auction, which Defendant admitted was "an important component to the Bitcoin Futures Contract."  (Compl. ¶¶ 2, 28; Ans. ¶ 28, ECF No. 13.)  As Defendant's own Answer acknowledges, the CFTC "was principally interested" in Defendant's "auction[] mechanics and how [the auction's mechanics] would serve to ensure the reliability of the auction price once the contract started trading."  (Ans. at 6.)

Defendant also marginalizes its involvement in the "iterative dialogue" that preceded the

filing of the self-certification letter with the CFTC.  (Mot. at 4.)  Defendant states that the "CFE provided extensive information to the CFTC, which in turn asked questions and requested additional information."  (Mot. at 4.)  Here, again, Defendant ignores that its Answer—and the undisputed record—shows that Defendant was deeply involved in the "months-long process" (*id.*) that preceded the self-certification as Defendant purports (correctly) to have engaged in direct communications "with the CFTC's Division of Market Oversight . . . and others at the CFTC dozens of times," and to have "responded" to questions the CFTC posed.  (Ans. at 2.)  In fact, Defendant confirmed that it, not the CFE, "produced hundreds of documents" to the CFTC and "gave the CFTC access to reams of [Defendant's] trading data."  (*Id.*)

Defendant's claim that it was a mere bystander that had no obligation to tell the truth because it "was not subject to CFTC regulation" (Mot. at 4) is at odds with its own admission that it was an active participant in—and central focus of—the self-certification process.  And, regardless of whether Defendant now disavows its prior admissions, Section 6(c)(2) of the Act does not distinguish between registrants and non-registrants for the purpose of imposing liability for making false and misleading statements.  *See* 7 U.S.C. § 9(2) ("It shall be unlawful for *any person* to make any false or misleading statement of a material fact to the Commission . . . .") (emphasis added).

## B.   Defendant's Motion Ignores the Court's Prior Discovery Rulings and the Declaration the CFTC Provided to Invoke the Deliberative Process Privilege

### i.   The February 13, 2023 Hearing

On February 13, 2023, the Court held a hearing to address the parties' disputes related to written discovery.  (*See generally* Feb. 13, 2023 Hr'g Tr., ECF No. 38.)  During written discovery, Defendant sought internal CFTC documents and communications, to which the CFTC objected on the basis of the deliberative process privilege, among other objections.   Defendant

then sought to compel production of documents that the CFTC withheld or redacted based on the misconception that the deliberative process privilege did not apply to self-certified new product listings.  (*See* Feb. 3, 2023 Joint Discovery Dispute Ltr. ("Joint Ltr.") at 7-11, ECF No. 32.)

During the hearing, the Court made plain that the CFTC's internal deliberations in connection with the self-certification of the Bitcoin Futures Contract were irrelevant based on the objective standard courts apply to evaluate the materiality of Defendant's misstatements and omissions.  (*See* Feb. 13 Hr'g Tr. at 5:19-20 ("And if that's an objective standard, that must be judged by the words alone."), 6:2-3 ("If it's objective, it's measured by the words themselves."), 12:20-13:5 ("[M]y proposition is that this has to be judged by the [words] themselves and it becomes a matter of law whether it will not affect someone.  Whether, in fact it did affect someone or did influence someone is not relevant."), 14:21-25 ("That makes it an objective standard and we don't get into how the particular individual was or was not influenced.  That's my ruling."), 17:6-12 ("So, again, we have to say, what is relevant here is what was said to the other side." "The objective expectations of the parties that govern in a contract, same here."), 28:5-9 ("[M]ateriality, misstatements, they are all measured by what the defendant[] said . . . .").)

During the same hearing, Defendant also argued that the CFTC had waived the deliberative process privilege because the head of the department had not formally asserted the privilege.  (Feb. 13 Hr'g Tr. at 20:6-7.)  The Court declined to "rule there [were] any waivers," and permitted the CFTC to obtain a declaration formally asserting the privilege and deliver it to Defendant by March 6, 2023.  (*Id.* at 21:11-13, 22:6-24.)

## ii.    The Declaration of Vincent McGonagle

In accordance with the Court's instructions, the CFTC provided Defendant with the Declaration of Vincent McGonagle ("McGonagle Decl.") on March 6, 2023.  (*See generally* the

McGonagle Declaration attached hereto as Ex. 1.)  The McGonagle Declaration invoked the deliberative process privilege in connection with the documents that had been withheld or redacted on the basis of the deliberative process privilege.  (*Id.* ¶ 2.)  Mr. McGonagle is the Director of the Division of Market Oversight ("DMO") who had been delegated the authority by the Commission to invoke the deliberative process privilege.  (*Id.* ¶¶ 1-2.)

The McGonagle Declaration explained that the Commission and its staff, "including staff members from DMO and other divisions (including the Division of Clearing and Risk and the Division of Enforcement), exchanged emails and prepared memoranda, notes, and other documents that reflect[ed] the staff's confidential deliberations, commentary, and opinions concerning" the self-certification of the Bitcoin Futures Contract.  (*Id.* ¶ 4.)  These documents and communications, which related to "one or more aspects of the proposed self-certification," also reflected the process by which the Commission established "public policy towards the new bitcoin futures contract."  (*Id.* ¶ 12.)  The McGonagle Declaration also explained that, while "[t]he deliberations, commentary, and opinions developed by the staff were preliminary, and did not reflect any final decisions or determinations by DMO or the Commission," "the deliberations, commentary and opinions were prepared to assist DMO's review of and oversight over the new product listing, which sought, in part, to evaluate, as required by Core Principle 3 of the Act, whether the new product listing was readily susceptible to manipulation."  (*Id.* ¶ 5.)  In terms of the decision facing the Commission, the McGonagle Declaration clarified that the Commission staff's pre-decisional documents and communications were prepared "in order to assist the Commission" in determining "whether to take any action with respect to the new product listing."  (*Id*. ¶ 9.)

Notwithstanding Defendant's position during the February 13 hearing that it "had other

points on the [deliberative process] privilege" that it planned to raise following receipt of the declaration (Feb. 13 Hr'g Tr. at 23:1-3), Defendant never challenged the sufficiency of the declaration or a single entry on the CFTC's privilege logs.

  **iii.**    **The March 22, 2023 Hearing**

  The Court held a second hearing on March 22, 2023, to address Defendant's refusal to comply with certain of the Court's instructions from the February 13, 2023 hearing as well as to discuss the next phase of discovery.  (*See generally* March 20, 2023 Joint Ltr., ECF No. 40.) While addressing the number of depositions for the next phase of discovery, the Court revisited whether the CFTC would call a witness to testify about the issue of materiality.  (March 22, 2023 Hr'g Tr. at 18:8-23, ECF No. 42.)  The Court repeated that "the issue of materiality is an objective one, and it's not a matter for the person receiving the representation to say whether it's material or not."  (*Id.* at 18:18-21.)  The Court then asked the CFTC what it "intended to do about materiality" and whether it was going to be developed through "someone in the CFTC." (*Id.* at 19:14-17.)  The CFTC stated that "the issues of materiality will be developed through those witnesses who can testify about what the decision was that had to be made, the factors that the CFTC considers, and the elements that are considered in connection with the self-certification."  (*Id.* at 19:18-22.)  The Court then instructed the CFTC to provide Defendant with a letter "which says to the effect that our present thinking is that the following people will be testifying as to what representations they received" and then asked "what would you say?  That it was significant, that it was not significant?"  (*Id.* at 20:7-12.)

  The CFTC responded:  "Understanding your Honor's ruling, the witnesses can testify under Second Circuit precedent about the factors that are considered in connection with the self-certification, the nature of the inquiry, [and] the purpose of the decision that had to be made."

(*Id.* at 20:13-17.)  The Court asked the CFTC if the "criteria" for evaluating self-certifications was "in the regulations" and whether "an official was entitled to use anything but the prescribed criteria."  (*Id.* at 22:23-23:3.)  The CFTC confirmed that the information about the nature of the decision and factors to be considered when examining a self-certification for compliance with the CFTC's core principles, including whether the new product is susceptible to manipulation, was contained in the CFTC's regulations and public guidance.  (*Id.* at 22:25-23:1, 23:4-9.)

Contrary to Defendant's apparent interpretation of the Court's ruling, the Court did not grant Defendant free reign to ask questions in depositions that were purposely designed to invade the deliberative process privilege or seek testimony about the CFTC's internal deliberations and pre-decisional opinions.  Rather, the Court observed that it was "not going to invade" whatever "privileges [the CFTC] invokes" but "as we get into depositions, things may come up, and in the interest of fairness, [the Court] can invade that privilege."  (*Id.* at 23:17-23.)  The Court recognized that "the important thing is . . . to identify exactly what criteria are used" to evaluate whether a self-certified product complies with the core principles that govern the listing of new contracts.  (*Id.* at 24:1-4.)  That criteria, as noted during the hearing and confirmed during the testimony of the CFTC witnesses, is based on publicly available CFTC regulations and guidance that does not turn on any internal, subjective factors.

### C.  Defendant's Motion Concedes that Defendant Deliberately and Repeatedly Tried to Invade the Deliberative Process Privilege During the Deposition of CFTC Witnesses

On August 23, 2023, Defendant deposed Gregory Kuserk, a former CFTC employee, and on August 25, 2023, Defendant deposed Christopher Goodman, a current CFTC employee.  (*See generally* August 23, 2023 Dep. Tr. of Gregory Kuserk ("Kuserk Tr.") (excerpts attached hereto as Ex. 2); August 25, 2023 Dep. Tr. of Christopher Goodman ("Goodman Tr.") (excerpts

attached hereto as Ex. 3).)  Prior to the depositions, Defendant never raised the "other points" related to the deliberative process privilege to which it had alluded but declined to raise during the February 13 hearing.  (Feb. 13 Hr'g Tr. at 23:1-3.)  Instead, Defendant proceeded to ask hundreds of questions (oftentimes repeated questions) that directly implicated the deliberative process privilege and therefore elicited an objection and an instruction not to answer. Representative examples of the questions Defendant asked without seeking further guidance from the Court or challenging the McGonagle Declaration include:

- Was the Gemini auction relevant to your assessment of whether the CBOE Bitcoin Futures Contract complied with core principle 3?  (Goodman Tr. at 55:6-12)

- Did you think anything in the self-certification was false or misleading?  (Kuserk Tr. at 62:3-10.)

- Do you recall speaking to anyone at the CFTC about anything contained in Gemini's policies and procedures?  (Kuserk Tr. at 188:20-189:3.)

- When you and your colleagues assessed whether the Gemini auction was susceptible to manipulation, were you applying the existing policies and procedures of the CFTC?  (Kuserk Tr. at 271:15-22.)

- When you are evaluating compliance with core principle 3, what do you understand readily susceptible to manipulation to mean?  (Goodman Tr. at 75:23-76:1.)

- What was discussed during the internal meeting concerning the July 25 presentation? (Goodman Tr. at 183:22-184:3.)

- Did you take any action or refrain from taking any action based on any statement contained in Exhibit 20 or made during the July 25th meeting?  (Goodman Tr. at 184:5-13.)

In fact, Defendant readily admits that it sought to invade the deliberative process privilege by trying to solicit testimony:

- about the CFTC's witnesses' subjective understanding of whether certain statements that Defendant made to the CFTC were false or misleading.  (Mot. at 6.)

- about the CFTC's witnesses' internal review, analysis, and discussion of documents and data that Defendant provided to the CFTC.  (*Id.* at 7.)

- about the preliminary, pre-decisional determinations that the CFTC made, or could make, in connection with its review of self-certified products. (*Id.* at 8.)

Because Defendant refused to abide by the Court's prior ruling on the application of the deliberative process privilege, or even acknowledge the McGonagle Declaration, which explained how the self-certification review implicates the deliberative process privilege, the Commission again authorized Mr. McGonagle to formally invoke the deliberative process privilege in connection with the questions that implicated the privilege during the depositions of the two CFTC witnesses. (*See Generally* October 17, 2023 Declaration of Vincent McGonagle ("Second McGonagle Decl.") attached hereto as Ex. 4.) The Second McGonagle Declaration confirms that the questions that drew objections based on the deliberative process privilege sought testimony that concerned "internal deliberations, commentary, analysis and opinions of members of the Commission's staff" that "were formulated in order to assist the Commission's staff in reviewing the proposed new product." (*Id.* ¶ 7.) As such, the testimony sought is protected by the deliberative process privilege because the answers "relate[] to the process by which DMO evaluates new product listings and exercises its new product oversight function." (*Id.* ¶ 11.)

### D. Defendant's Motion Overlooks the Testimony Defendant Obtained on Key Issues

While Defendant complains about the testimony it was unable to obtain, it ignores that it obtained pages of testimony on the issues that matter in this case. But because it is unhelpful to its defense, Defendant tries to recast this testimony as self-serving "thoughts, understandings, and impressions." (*Id.* at 9.) The transcripts, however, speak for themselves and show that the CFTC witnesses appropriately testified at length about:

- the nature of the review that the CFTC conducted in connection with self-certified products. (Goodman Tr. at 36:12-19, 38:7-13, 45:2-5, 45:13-22, 48:3-4, 77:15-22,

79:4-16, 81:16-20, 115:22-116:5; Kuserk Tr. at 21:7-26:10, 34:9-37:11, 41:7-46:16, 49:6-54:6, 66:17-72:20, 73:14-74:1, 86:15-88:21, 104:5-113:22, 163:17-168:16, 216:1-218:10, 243:1-248:15.)

- the public guidance the CFTC issued concerning self-certifications and the absence of any internal substantive guidance, beyond what is publicly available in the "Commodity Exchange Act[] [and] associated regulations." (Goodman Tr. at 44:4-45:1; *see also id* at 59:16-21, 66:15-24; Kuserk Tr. at 46:17-47:10, 72:21-73:13, 74:2-6, 75:6-77:3, 80:9-82:5.)

- the core principles set forth in CFTC regulations that apply to self-certifications. (Goodman Tr. at 52:14-54:2; Kuserk Tr. at 92:6-96:8, 101:13-103:18.)

- Appendix C to Part 38, which addresses the objective criteria and factors that the CFTC applies to determine whether self-certified products comply with Core Principle 3's requirement that the proposed contract not be readily susceptible to manipulation. (Goodman Tr. at 83:10-18, 84:8-23, 85:5-6, 89:10-22, 93:8-18, 96:14-21, 97:6-15, 98:8-13, 100:13-101:24, 102:24-103:7, 103:18-104:1, 104:18-105:14, 109:1-9, 124:3-125:9, 125:15-138:21, 312:7-314:11; Kuserk Tr. at 89:12-92:5, 96:9-101:1, 213:17-214:2, 248:16-253:9.)

- The statements Defendant made to the Commission and the general understanding of what was relayed, including during in-person meetings and subsequent follow-up discussions involving Defendant and its personnel. (Goodman Tr. at 145:8-183:20, 187:22-230:19, 233:15-236:16, 240:3-244:20, 246:2-261:7, 261:15-262:2, 264:22-268:23, 269:9-270:18, 280:17-284:17, 286:17-304:6, 314:12-319:9, 335:19-349:7, 349:25-352:19, 353:13-355:18, 356:5-362:17; Kuserk Tr. at. 59:1-61:3, 115:17-127:12, 130:2-135:1, 135:11-136:20, 137:1-141:19, 142:7-143:3, 144:2-163:6, 169:19-172:5, 174:18-181:20, 182:22-187:19, 188:16-190:4, 190:14-192:8, 192:21-194:7, 194:15-195:16, 196:16-198:9, 198:16-202:13, 202:19-204:1, 211:16-212:18, 223:5-232:5, 236:6-237:22, 240:11-242:22, 262:22-263:13.)

- Whether certain information related to the statements that Defendant made to the CFTC about the operation of its exchange and auction was disclosed at any point during the process that preceded the self-certification of the Bitcoin Futures Contract. (Goodman Tr. at 323:13-335:17; Kuserk Tr. at 274:7-299:19.)

Despite obtaining unfettered testimony on these core issues, Defendant purports to be disadvantaged because the CFTC correctly invoked the deliberative process privilege in response to repeated questions about the CFTC witnesses' "understanding, thoughts, impressions, beliefs, or conversations concerning the [s]elf-[c]ertification." (Mot. at 6-8.) Defendant's dissatisfaction with the testimony it actually obtained is a product of its own refusal to abide by established law

11

and the Court's prior rulings.  Defendant ignored wholesale the Court's prior rulings, and instead latched onto cherrypicked quotes that, under any reasonable interpretation, did not authorize Defendant to "[o]ver and over and over again" pose questions designed to elicit privileged answers.  (Mot. at 8.)

## ARGUMENT

"Parties may obtain discovery regarding any *nonprivileged matter* that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  As the Court previously recognized, "[t]he Commission is a government agency entitled to claim the deliberative process privilege."  *Royal Bank of Ca.¸* 2013 WL 1932120, at *1.  The Court explained that the deliberative process privilege covers "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Id.* (quoting *Tigue*, 312 F.3d at 76).  "The privilege is designed to promote the quality of agency decisions by preserving and encouraging candid discussion between officials and is based on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news."  *Id.* (cleaned up).

"For the deliberative process privilege to apply, the information must be inter—or intra-agency, pre-decisional, and deliberative."  *In re World Trade Ctr. Disaster Site Litig.*, 2009 WL 4722250, at *3 (S.D.N.Y. Dec. 9, 2009) (Hellerstein, J.).  "[A] record is predecisional if it relates to a specific decision *or a specific decisionmaking process* and was generated before the conclusion of that decision or process."  *Nat. Res. Def. Council v. EPA*, 19 F.4th 177, 181 (2d Cir. 2021).  Information is deliberative when it represents "an essential link in a specified consultative process."  *United States v. Wells Fargo Bank, N.A.*, 2015 WL 6395917, at *2 (S.D.N.Y. Oct. 22, 2015).

I.    **Defendant's Motion Misrepresents the Application of the Deliberative Process Privilege**

The Court already rejected Defendant's claim that the deliberative process does not apply to self-certifications.  (Feb. 13 Hr'g Tr. at 21:11-13 (upholding the CFTC's ability to invoke the deliberative process privilege).)  Nonetheless, Defendant rehashes its previous argument to claim (i) that the CFTC cannot prove the deliberative process privilege applies at all; (ii) that the privilege does not apply because the two CFTC witnesses were not policy makers; and (iii) that, at a minimum, Defendant was deprived answers to questions about the basis for the final decision regarding the self-certification.  All three of Defendant's arguments fail once more.

A.    **The Deliberative Process Privilege Applies to Self-Certifications**

As the CFTC explained in the parties' prior briefing on this issue (Joint Ltr. at 5), the CFTC's review of the bitcoin self-certification submission was not a "[d]escrete" exercise concerning an "individual case."  (Mot. at 10.)  Rather, in reviewing the self-certification of the Bitcoin Futures Contract, the CFTC exercised its statutorily delegated product oversight function, and any testimony that bears on the CFTC's analysis of the product in question—and whether it satisfied the Act's core principles—is protected from discovery by the deliberative process privilege.  (*See* Joint Ltr. at 5 (outlining the statutory and regulatory framework, which clarifies the CFTC's decisionmaking authority with respect to self-certified products)); *see also Nat. Res. Def. Council*, 19 F.4th at 192 ("[T]he privilege does not 'require that [a] document contribute to a single, discrete decision' but rather protects records that, more broadly, relate to a 'definable decisionmaking process.'"); *Tigue*, 312 F.3d at 80 (finding a document that was "prepared to assist IRS decisionmaking on a specific issue" was subject to the deliberative process privilege); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482-83 (2d Cir. 1999) (finding information "deliberative" where it "formed an important, if not essential, link" in the

agency's "consultative process"); *In re World Trade Center Disaster Site Litig.*, 2009 WL

4722250 at *4 ("Courts have routinely applied the privilege to a range of agency decisions.").[2]

      The McGonagle Declaration, which the CFTC provided to Defendant during document

discovery, laid out the evidentiary showing necessary to establish that the deliberative process

privilege applies to the work CFTC employees did in connection with the self-certification.  It

makes clear that "the deliberations, commentary and opinions" of DMO staff involved in the

self-certification review "were prepared to assist DMO's review of and oversight over the new

product listing" and "to evaluate, as required by Core Principle 3 of the Act, whether the new

product listing was readily susceptible to manipulation."  (McGonagle Decl. ¶ 5 .)  The

McGonagle Declaration also states that the opinions, deliberations, and recommendations of

DMO staff "assist the Commission in arriving at a specific decision—namely, whether to take

action with respect to the new product listing."  (*Id.* ¶ 9.)  Accordingly, "the deliberations,

commentary, or opinions of the Commission's staff concerning one or more aspects of the

proposed self-certification" were part of the process by which the CFTC develops "policy toward

the new bitcoin futures contract."  (*Id.* ¶ 12.)

      While the McGonagle Declaration, on its own, should be sufficient to invoke the

deliberative process privilege in connection with topics raised in any deposition involving CFTC

---

[2] As also noted in prior briefing (Joint Ltr. at 13 n.5), the cases Defendant cites to manufacture support for its limited view of the deliberative process privilege are unconvincing and inapposite because they deal with internal agency determinations, not federal agency determinations in furtherance of the agency's express authority.  *See Velez v. City of New York*, 2010 WL 2265443, at *4 (E.D.N.Y. June 2, 2010) (observing that "courts have held that the deliberative process privilege does not preclude the disclosure of documents concerning internal affairs investigations in civil rights suits against law enforcement agencies"); *Mitchell v. Fishbein*, 227 F.R.D. 239, 251 (S.D.N.Y. 2005) (finding internal steering committee decision—not a federal agency oversight decision—was "routine" and not subject to the deliberative process privilege) (citation omitted); *Lawrence v. Suffolk Cnty.*, 2022 WL 855380, at *10 (E.D.N.Y. Mar. 23, 2022) ("[T]he conversation about whether to replace [Assistant District Attorney] Albertson is not a policy or predecisional discussion, but instead a 'routine operating decision' not entitled to protection."); *Torres v. City Univ. of New York*, 1992 WL 380561, at *8 (S.D.N.Y. Dec. 3, 1992) (observing that "reappointment and tenure decisions . . . were discrete, routine decisions that were controlled by specific, published standards").

witnesses, including the Kuserk and Goodman depositions, to dispel any doubt, the Commission

again authorized Mr. McGonagle to invoke the privilege in connection with this motion. *See*

*FHFA v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 279 (S.D.N.Y. 2013) (approving the

"production of the certifications in response to a motion to compel" because requiring a

certification before any specific challenge to the privilege assertion "would constitute a

tremendous resource strain"). The Second McGonagle Declaration reinforces that the testimony

Defendant seeks to compel "relates to the process by which DMO evaluates new product

listings" and would reflect "opinions, analysis, and communications and deliberations of the

Commission's staff concerning one or more aspects of the proposed self-certification and the

Commission's public policy towards the new bitcoin futures contract." (Second McGonagle

Decl. ¶ 11.) Thus, the CFTC has set forth by the two McGonagle declarations the facts needed

to establish the application of the deliberative process privilege with respect to any deposition of

a CFTC witness, including the Kuserk and Goodman depositions. *See Nat. Res. Def. Council*, 19

F.4th at 181 ("[A]n agency may invoke the deliberative process privilege by connecting a record

either to a specific decision or to a specific decisionmaking process.")

## B.     The CFTC Witnesses Do Not Have To Be Policymakers for the Deliberative Process Privilege to Apply

Defendant next argues that the deliberative process privilege does not apply to the

specific CFTC witnesses who were deposed because they "were not policy makers at the CFTC."

(Mot. at 11.) Not even the cases Defendant cites support its argument. *See MacNamara v. City*

*of New York*, 249 F.R.D. 70, 81 (S.D.N.Y. 2008) (observing that the deliberative process applies

to documents "prepared by lower-ranking government officials for presentation to a superior

with final policymaking authority"); *see also ACLU v. Nat'l Sec. Agency*, 925 F.3d 576, 592 (2d

Cir. 2019) (finding deliberative process privilege applied to Office of Legal Counsel ("OLC") to

the Attorney General even though "OLC [did] not purport, and in fact lack[ed] authority, to make policy decisions").

In any event, the Court in *In re World Trade Center Disaster Site Litigation* rejected Defendant's erroneous view on the scope of the privilege and held that "the deliberative process privilege is not limited to high-level government officials making policy decisions." 2009 WL 4722250, at *4. Contrary to Defendant's argument, it does not matter whether a specific agency employee is in a role specifically defined to address policymaking, it only matters that their responsibilities "compris[e] part of a process by which governmental decisions and policies are formulated." *Royal Bank of Ca.*, 2013 WL 1932120, at *1. On this score, both witnesses testified that they were involved in the process of reviewing and overseeing self-certified product listings, including the Bitcoin Futures Contract.[3] This testimony conclusively establishes that each witness performed functions that formed "an essential link in a specified consultative process" that comprised the self-certification review. *Wells Fargo*, 2015 WL 6395917, at *2.

### C.     A Final Agency Decision Is Not Required for the Deliberative Process Privilege to Apply

Finally, Defendant argues that, "[a]t minimum," it was denied answers to questions that probed the basis for "any final decision" regarding the self-certification. (Mot. at 12.) This argument—and the focus on the underlying rationale for "any" final self-certification decision—is misplaced because the self-certification review is not geared toward a final decision by the Commission approving the new product listing. Defendant refuses to acknowledge that, "[t]o

---

[3] *See* Goodman Tr. at 29:6-24 (confirming that his job responsibilities included "reviewing new derivative contracts that are seeking either commission approval, or more commonly, self certification by the exchanges"), 48:13-49:1 (same), 54:3-55:1 (confirming his role in assessing whether the Bitcoin Futures Contract complied with the CFTC's core principles); Kuserk Tr. at 22:6-24:9 (confirming that his job responsibilities included reviewing and overseeing self-certifications to ensure that the proposed "contracts were not violating parts of the Act"), 26:2:6 (testifying that "primarily" his role and responsibilities were to "make sure that the contracts . . . met . . . whatever requirements in the Act might apply to them"), 50:16:20 (confirming review of the self-certification of the Bitcoin Futures Contract).

16

properly claim the privilege, an agency is not required to demonstrate a specific final decision, but simply establish what deliberative process was involved and the role played by the contested evidence in the course of that process." *SEC v. Nacchio*, 2009 WL 211511, at *6 (D. Colo. Jan. 29, 2009). Here, again, the cases that Defendant cite show that not all agency deliberations result in final agency decisions. *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 782 (2021) (recognizing the practical reality that an agency's decision is not considered final "because nothing follows it; sometimes a proposal dies on the vine or languishes").

Both CFTC witnesses testified repeatedly about the nature of the self-certification review, which does not involve a final agency determination because the review comprises part of the CFTC's oversight function. (Goodman Tr. at 38:7-13 (explaining that compliance with the CFTC's core principles is "an ongoing obligation, so there would never be a final determination necessarily, but . . . [the] review [is] based on the facts and based on the various representations made by the exchange" as well as "an independent analysis [the CFTC] may conduct as well"), 45:2-5 (confirming that self-certified products are not subject to "Commission approval," which is a separate process), 77:15-22 (explaining that, when a new product is self certified, "the designated contract market is making the representation and making a determination that the contract is not readily susceptible to manipulation" and providing "evidence to justify that conclusion," which "the [C]omission can and does review"), 81:16-20 (stating again that a self-certification is "not a final determination generally"); Kuserk Tr. at 247:2-5 (explaining that "there's not really a final decision" that is "part of [a] self-certification"), 247:7-15 (explaining further that a self-certification is "not an approval process" that is "voted on by the Commission").

Based on the first McGonagle Declaration and the CFTC witness testimony, Defendant is well-aware that there is no final decision regarding the self-certification to inquire about. (*See* McGonagle Decl. ¶ 5.) Defendant was armed with this information before the depositions, yet it "repeatedly" (Mot. at 12) badgered the witnesses about a final agency decision despite being told that the CFTC's review and oversight of self-certifications was intended to fulfil the CFTC's oversight function and determine "whether to take any action with respect to the new product listing." (McGonagle Decl. ¶ 9.) This repetitive and unnecessary questioning defies binding precedent, *see Nat. Res. Def. Council*, 19 F.4th at 192 (observing that an "agency's critical review represents a specific decisionmaking process," which permits an agency "to withhold records reflecting deliberations relevant to that process"), and ignores the realities of agency decisionmaking in order to fabricate a reason to invade the deliberative process privilege. *See Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995) (observing that parties challenging the assertion of the deliberative process privilege should not "exalt semantics over substance" because "many processes might not ripen into agency decisions," but "that does not preclude the application of the deliberative process privilege") (cleaned up); *see also Nat. Res. Def. Council*, 19 F.4th at 184 (observing that "the Supreme Court has cautioned that its 'emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum [was] prepared").[4]

---

[4] Defendant misrepresents the questions that it asked about final agency decisions. (Mot. at 13 (claiming that Defendant "repeatedly sought to obtain testimony from [the CFTC witnesses] about what (if any) final decision CFTC (sic) made concerning the Self-Certification and the reasons supporting it").) Defendant knew that there was no final decision to inquire about so it injected references to final decisions in questions as a guise to inquire about the CFTC's internal deliberations and analysis concerning the self-certification. (*See, e.g.*, Goodman Tr. at 184:25-185:4 (asking whether "any final decision by the CFTC in connection with the . . . self-certification [was] based in any part on any statement contained in the presentation marked as Exhibit 20 or any statement made during the July 25th meeting"); Kuserk Tr. at 232:9-11 ("These three changes that Gemini made to the auction, how important were these changes to the final decision on Cboe's self-certification?").)

**II.    The CFTC's Decisionmaking Is Not a Factor in Evaluating the Materiality of Defendant's Misstatements and Omissions**

In direct conflict with the Court's prior ruling, Defendant argues that the CFTC's decisionmaking process is at issue in this case, which entitles Defendant to "[s]ubjective evidence" from the CFTC.  (Mot. at 14.)  It is difficult to understand what good-faith basis Defendant has for making this argument given that the Court's prior rulings.  During the February 13 hearing, where Defendant made the exact same argument about the materiality standard having some subjective component that entitled it to additional discovery, the CFTC cited the Supreme Court's opinion in *United States v. Gaudin*, 515 U.S. 506 (1995), which addressed the issue of materiality in a criminal false statement case brought under 18 U.S.C. § 1001.  In *Gaudin*, the Supreme Court held that "[d]eciding whether a statement is 'material' requires the determination of at least two subsidiary questions of purely historical fact: (a) 'what statement was made?' and (b) 'what decision was the agency trying to make?'" *Id.* at 512. Neither of these two "questions of purely historical fact" implicate the internal deliberations of the decisionmaking body.  After the CFTC recited this language, verbatim, from *Gaudin*, the Court stated "that's how I understand the law," which "makes it an objective standard, and we don't get into the question of how the particular individual was or was not influenced.  That's my ruling."  (Feb. 13 Hr'g Tr. at 14:21-25.)  Eliminating any doubt about the Court's position—and the law of this case—the Court reiterated during the March 22 hearing that "the issue of materiality is an objective one, and it's not a matter for the person receiving the representation to say whether it's material or not."  (March 22 Hr'g Tr. at 18:18-21.)

Yet, Defendant's entire argument rests on the rejected proposition that the "CFTC's understanding of statements made in connection with the [s]elf-[c]ertification is critical evidence in this case."  (Mot. at 14.)  Nothing could be further from the truth or contrary to how courts in

19

this Circuit interpret the materiality standard in cases involving false statements made to the

Government or during official Government proceedings. *See CFTC v. eFloorTrade, LLC*, 2020

WL 2216660, at *5 (S.D.N.Y. May 7, 2020) ("Whether [defendant's] false testimony actually

influenced the CFTC's investigation is not the test."); *United States v. Scali*, 2018 WL 604852,

at *3 (S.D.N.Y. Jan. 29, 2018) (citing materiality standard and observing that "[t]he logical

consequence of this objective inquiry is the insignificance of a statement's actual effect on the

adjudicating or investigatory body") (emphasis added); *United States v. Santiago*, 2014 WL

4827883, at *5 (S.D.N.Y. Sept. 26, 2014) ("[T]he test of materiality is objective, not subjective;

that is, a statement is material if it is capable of influencing a decision by a decision-making

body even if the body did not in fact rely on the statement.").[5]

Tellingly, Defendant has not cited a single case where a Court has ruled that the objective

materiality standard implicates the deliberative process privilege in a false statement case

brought by the Government.  Instead, Defendant argues that the standard is "nominally

objective" because materiality is "measured by reference to 'the decisionmaking body to which it

was addressed.'"  (Mot. at 14.)  The authority Defendant cites for the novel "nominal

objectivity" standard do not hold or suggest that there is any subjective element to the

materiality standard that entitles a defendant to the target agency's internal deliberations.  For

example, in *United States v. Litvak*, there was no question the statements were "addressed" to a

"decisionmaking body," which in that case was "the Department of Treasury."  808 F.3d 160,

171-72 (2d Cir. 2015).  The issue was whether the decisionmaking body, *i.e.*, the Treasury, had

---

[5] The cases Defendant cites are readily distinguishable because they do not involve false statement cases brought by
a federal agency.  *See, e.g.*, *Child. First Found., Inc. v. Martinez*, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10,
2007) (Plaintiff, who was not a government agency, brought action challenging agency decision which "reject[ed]
[Plaintiff's] applications for a custom license plate"); *Burbar v. Garden City*, 303 F.R.D. 9, 13 (E.D.N.Y. 2014)
(finding, in malicious prosecution and abuse of process action against government agency, "the intent and decision
making process of the *County Defendants* are unquestionably at the heart of these claims") (emphasis added).

any decisionmaking authority in the first place. *Id.* at 172 (citing *Gaudin* and observing that "the government must have adduced evidence of an actual decision of the *Treasury* that was reasonably capable of being influenced by [the defendant's] misstatements") (emphasis in original).

There is no credible dispute about the CFTC's decisionmaking authority with respect to self-certified new product listings. *See supra* at 13-15; (*see also* Joint Ltr. at 5; McGonagle Decl.; Second McGonagle Decl.). And, the cases Defendant cites where courts have purportedly considered subjective evidence are not false statement cases where the target of the statements is the government, *cf. United States v. Gramins*, 939 F.3d 429, 446 (2d Cir. 2019) (permitting counterparty testimony in securities fraud prosecution); *United States v. Landesman*, 17 F.4th 298, 341 (2d Cir. 2021) (same), or otherwise confirm that subjective testimony is neither necessary to sustain a false statement charge nor places the agency's deliberative process at issue. *See United States v. Serv. Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998) (observing that the materiality test turns on "the *intrinsic* capabilities of the false statement itself, rather than the possibility of the actual attainment of its end as measured by collateral circumstances").[6]

---

[6] As in prior briefing, Defendant cites *United States v. Raza*, 876 F.3d 604, 617 (4th Cir. 2017), to try to infuse a subjective element into the materiality standard. (Mot. at 14.) More recent Fourth Circuit precedent confirms that the materiality inquiry in a false statement case "is ultimately 'an objective test'" and that—consistent with precedent from within this Circuit— "[i]t's irrelevant 'whether the false statement actually influenced the [agency's] decision-making process.'" *United States v. Smith*, 54 F.4th 755, 769 (4th Cir. 2022). Defendant also erroneously cites a second decision from the *Litvak* matter to claim that subjective evidence from CFTC witnesses is relevant so long as there is "evidence of a nexus" between the testimony sought and the hypothetical reasonable CFTC employee. (Mot. at 14-15 (citing *United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018) ("*Litvak II*").) *Litvak II* did not address false statements to the government because the defendant, following reversal after his first appeal, was only retried on ten securities fraud counts. *See Litvak II*, 889 F.3d at 58-59, 62. And, for the securities fraud counts, the government "relied heavily" on the testimony of counterparty traders to establish that the misstatements to the counterparties were an "important factor . . . in their investment decision." *Id.* at 65. Applying an objective "reasonable investor" standard, the Second Circuit found that the admission of the "idiosyncratic and erroneous belief" of one of the traders about its relationship with the defendant was reversible error. *Id.* at 59, 69. However, in a false statement case like this one involving a government agency, the CFTC does not have to rely on the subjective views of counterparties to establish materiality, nor does a "reasonable CFTC employee" standard apply. *See supra* at 20 (citing cases).

Defendant overlooks the fact that Defendant has already obtained hundreds of pages of relevant testimony on the primary issues in this case—it was just not the exculpatory variety it had hoped for.  (Mot. at 5, 7, 15.)  As Defendant acknowledges (*id.* at 15), the CFTC informed the Court during the March 22 hearing that CFTC witnesses can appropriately testify about "the factors that are considered in connection with the self-certification, the nature of the inquiry, [and] the purpose of the decision that had to be made."  (*Id.* at 20:13-17.)  This statement is consistent with the testimony that the Second Circuit has found sufficient in other false statements cases involving the Government.  *See United States v. Rigas*, 490 F.3d 208, 235 (2d Cir. 2007) ("In the context of an objective decisionmaking process, whether a misrepresentation is 'material' requires *examination of the factors* the decisionmaker would employ, and the degree to which a misrepresentation would be 'capable of influencing[ ] the decision of the decisionmaking body.'") (emphasis added); *United States v. Regan*, 103 F.3d 1072, 1084 (2d Cir. 1997) ("At trial, the government presented ample evidence about *the nature of the investigation* in relation to which Regan testified before the Grand Jury.") (emphasis added); *United States v. Adekanbi*, 675 F.3d 178, 183 (2d Cir. 2012) (finding adequate evidence in false statement case where government "introduced testimony that the *purpose* of a safety-valve proffer is to determine eligibility for safety-valve relief and that both truthfulness and criminal history are *elements* to be considered in determining whether a defendant is safety-valve eligible") (emphasis added).

Defendant is wrong to argue that the CFTC prevented Defendant from asking questions about these issues.  (Mot. at 15-16.)  Both CFTC witnesses testified about the factors considered in reviewing a self-certified product, the nature of the inquiry, and the purpose served by the CFTC's review.  *See supra* at 10-11 (citing testimony).  But rather than focusing on objective

facts and factors, which are discoverable, Defendant admits that it asked about information that went to the heart of the CFTC's deliberative process, including what specific information each witness reviewed as part of the self-certification, "whether the allegedly omitted information was relevant to their assessment of the [s]elf-[c]ertification," "the witness's understanding of key terms," and "whether the witnesses believed Gemini made any false or misleading statements." (Mot. at 15.)  Not only has the Court ruled that this information is irrelevant, (*see* Feb. 13 Hr'g Tr. at 14:21-25 ("That makes it an objective standard and we don't get into how the particular individual was or was not influenced.  That's my ruling."); March 22 Hr'g Tr. at 18:18-21 ("[T]he issue of materiality is an objective one, and it's not a matter for the person receiving the representation to say whether it's material or not.")), but the testimony also falls squarely within the deliberative process privilege.  *See Grand Cent. P'ship*, 166 F.3d at 482 ("The privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.") (cleaned up).[7]

## III.   The CFTC Has Not Waived the Deliberative Process Privilege

Defendant's argument that the CFTC waived the deliberative process privilege "over most or all topics in this case" is meritless.  (Mot. at 16-18.)  For starters, because the deliberative process privilege "exists to aid the governmental decisionmaking process, a waiver should not be lightly inferred."  *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997).  As such,

---

[7] Noticeably absent from Defendant's motion is any argument that "good cause" exists to override the deliberative process privilege.  *See FHFA v. HSBC N. Am. Holdings Inc.*, 2014 WL 1909446, at *4 (S.D.N.Y. May 13, 2014) ("[T]he deliberative process privilege[] [is a] qualified privilege[] and may be overridden for good cause based on analysis of competing interests.").  Defendant's silence speaks volumes and is a tacit admission that it cannot satisfy the multifactor test courts typically apply to determine whether to override the deliberative process privilege.  *Id.* (citing factors and finding no good cause to override the privilege where, as here, "it is defendants' role in the events at issue that is the principal focus of the[] lawsuit[]" and "[t]he focus of the legal claims and defenses . . . is not on the legality or legitimacy of the conduct of [the] government").

"[d]efendants bear the burden of proving waiver of . . . the . . . deliberative process privilege[]."
*United States v. US Airways Grp., Inc.*, 2013 WL 12341599, at *16 (D.D.C. Oct. 10, 2013).
And, contrary to Defendant's position, "there is no subject-matter waiver associated with the
deliberative process privilege." *Spadaro v. United States Customs & Border Prot.*, 2019 WL
1368786, at *6 (S.D.N.Y. Mar. 25, 2019) (collecting cases).  None of the supposed "three ways"
that the CFTC purportedly disclosed privileged information suffices to satisfy Defendant's
burden of proving a waiver of "most or all topics in this case."  (Mot. at 16-20.)

 *First*, both CFTC witnesses testified appropriately about the nature the of the CFTC's
review of self-certifications and the objective factors that the CFTC considers as part of that
review.  *SEC v. Sentinel Mgmt. Grp., Inc.*, 2010 WL 4977220, at *3 (N.D. Ill. Dec. 2, 2010)
("Discussion of objective facts, as opposed to opinions and recommendations, generally is not
protected by the deliberative process privilege.").  Defendant's claim of "strategic invocation" of
the deliberative process privilege does not withstand scrutiny (Mot. at 17) and omits critical
context that differentiates between questions that are protected by the deliberative process
privilege and those that are not.  Specifically:

- Mr. Goodman identified Appendix C to Part 38 in response to a question about the "*objective criteria* that the CFTC applies to determine whether a contract is readily susceptible to manipulation."  (Goodman Tr. at 83:10-18) (emphasis added). Conversely, Mr. Goodman was instructed not to answer when the questions sought to inquire about the analysis he personally employed in reviewing self-certifications. (*E.g.*, *id.* at 60:1-12 (asking "have *you* ever consulted with any CFTC policy documents or manuals or written guidance concerning self-certification for the core principles") (emphasis added).)

- Mr. Goodman answered questions about "final" agency decisions and explained that the self-certification of the Bitcoin Futures Contract "was not approved by the [C]omission in a formal sense."  (*Id.* at 35:25-36:19.)  However, when the questions implicated non-final, and thus by definition, pre-decisional determinations (*id.* at

36:21-38:24), Mr. Goodman was instructed not to answer.[8]

- Mr. Goodman responded to Defendant's question about the meaning of pre-funding based on an objective, general understanding of the term as relayed by Defendant since the witness was instructed that he could answer to the extent he would not "reveal internal opinions and commission communications and deliberations." (*Id.* at 149:8-23; *see also id.* at 151:10-21 (confirming that his "understanding [was] based on [Gemini and the CFE's] documents, and . . . their . . . discussions with us" because the "point was made that . . . these are pre-funded, so there's not leverage concerns"), 152:1-14 (same).) However, Mr. Goodman was instructed not to answer when the question called for his specific "understanding" that "any trade made using borrowed funds was not pre-funded." (*Id.* at 151:1-8.) The same applies to Mr. Kuserk who testified that Defendant was "trying to argue" that "prefunding" meant that "you couldn't basically overleverage in the Gemini market because you have . . . to put up the funds first." (Kuserk Tr. at 211:16-212:18.) However, Mr. Kuserk was instructed not to answer when the questions called for his specific understanding of the term "prefunding" "based on [his] experience working at the CFTC over 30 years" or what his mental impression of the term was "when [he was] at the meeting on July 25th . . . looking at [a slide] deck" or whether he "agree[d] with Gemini's definition of pre-funding." (*Id.* at 190:8-12, 192:5-14, 198:10-14.)[9]

---

[8] Illustrating the repetitive questioning each witness faced when Defendant did not like the answers it received, Defendant asked Mr. Goodman numerous times about the CFTC's final decision with respect to the self-certification (knowing full well there was not one), and Mr. Goodman reiterated that "there's no . . . final determination that something is not [readily] susceptible to manipulation" because "[i]t's an ongoing obligation." (Goodman Tr. at 79:4-16.) After four more questions, Mr. Goodman emphasized that the self-certification is "not a final determination generally." (*Id.* at 79:18-81:20.)

[9] It bears noting that the testimony Defendant elicited from Mr. Goodman about his understanding of the meaning of "prefunding" was in connection with an exhibit that reflected his handwritten notes. (Goodman Tr. at 140:23-187:4.) The circumstances were unique. Mr. Goodman confirmed that he had been asked about the same exhibit during his interview with the U.S. Attorney's office, and that the handwriting reflected notes of his review of the slide deck, which occurred after the meeting with Defendant and its representatives that occurred on July 25, 2017. (Goodman Tr. at 163:10-23, 169:4-9.) In the deposition, the CFTC specifically permitted questioning related to the exhibit and Mr. Goodman's handwritten notes. (*Id.* at 171:5-14 ("[W]e will permit questioning on this document and the handwritten notes without waiving the deliberative process privilege, and we will reserve the right to invoke the privilege should the questions stray beyond the contents of this document.").) By allowing the witness to testify about a single potentially privileged document, the CFTC acted in accordance with the law that addresses the waiver of the deliberative process privilege, which "overwhelmingly (if not uniformly) [holds] that 'the release of a document only waives the *deliberative process* privilege for the document that is specifically released, *and not for* related materials.'" *See Wells Fargo Bank*, 2015 WL 6395917, at *1. The two cases Defendant cites do not support a subject matter waiver based on Mr. Goodman's, or anyone else's, deposition testimony. *See Lawrence*, 2022 WL 855380, at *10 (finding individual, not the agency, "has no deliberative process to assert" where the agency had "turned over the documents" that the individual "describes as predecisional and deliberative"); *Bahena v. City of Chicago*, 2018 WL 2905747, at *4 (N.D. Ill. June 11, 2018) (compelling production of a single document where witness "testified . . . without objection about most of the information contained in the [document]").

25

- Mr. Goodman answered questions about information that was, or was not, relayed (Goodman Tr. at 326:15-23), *i.e.*, the statements that Defendant made, *see Gaudin*, 508 U.S. at 512, but was instructed not to answer questions that asked him to analyze the data Defendant provided to determine "if it's possible to identify instances . . . in which the same account was on both the buy and sell side." (Goodman Tr. at 199:23-200:7.)

*Second*, disclosing information to another agency does not waive the deliberative process privilege. (Mot. at 18.) Defendant does not cite a single case to support its claim that joint interviews conducted by the U.S. Attorney's office and the CFTC waived privilege. Nor could it, as it is settled law that the deliberative process privilege covers inter-agency and intra-agency deliberations. *Tigue*, 312 F.3d at 79. It is therefore incorrect to assert that disclosure to the U.S. Attorney's office waived the deliberative process privilege.[10] Moreover, Defendant decided not to ask either CFTC witness during their depositions about the interview summaries, set forth on the FD-302 forms created by the FBI, that Defendant obtained earlier this year from the U.S. Attorney's office. (*See* Def.'s Exs. 6, 7, 8, ECF Nos. 55-6, 55-7, 55-8.) Because Defendant had ample opportunity to inquire about each witness's interview with the U.S. Attorney's office but made the strategic decision not to do so, Defendant is not entitled to a second chance. *See Arugu v. City of Plantation*, 2010 WL 2609394, at *3 (S.D. Fla. June 27, 2010) (finding "no good cause exists" to allow a party to re-depose a witness where "the fault in failing to make . . . an inquiry" during the deposition "lies with no one except [the party taking the deposition]"); *Rodriguez v. Delta Air Lines, Inc.*, 2005 WL 8165155, at *2 (D.N.J. July 22, 2005) (observing that, because "Defendant had ample opportunity to obtain the information sought at its first deposition," it "is not entitled to redepose Plaintiff pursuant to Rule 30(a)(2)(B)").

---

[10] It is also irrelevant that the information disclosed to the U.S. Attorney's office was part of a so-called "separate process surrounding a separate decision" about whether to charge Defendant with making false statements and omissions (Mot. at 19) because the deliberative process applies with equal force to agency investigations. *See Royal Bank of Ca.*, 2013 WL 1932120, at *1 ("The deliberative process privilege protects documents 'assessing whether [a government agency's] investigation should proceed to the next stage in the investigatory process.'").

*Third*, the two documents Defendant references—a "Backgrounder on Self-Certified Contracts for Bitcoin" and a "Statement on Self-Certification of Bitcoin Products"—are insufficient to carry Defendant's burden to demonstrate waiver through publication.  (Mot. at 19-20 (quoting Def.'s Exs. 18 & 19, ECF No. 55-18 & 55-19).)  Neither document discloses pre-decisional or deliberative elements of the CFTC's review of Defendant's self-certification.  In similar circumstances, Courts have rejected arguments that high-level press releases regarding agency decisions constitute a waiver of the deliberative process privilege.  *See United States v. US Airways Grp., Inc.*, 2013 WL 12341599, at *16 (D.D.C. Oct. 10, 2013) ("Each press release provides only a very broad overview of the agency's reasoning," which "can hardly be said to constitute a waiver of either the work product doctrine or deliberative process privilege."); *cf. ACLU*, 925 F.3d at 599 ("[D]isclosure of similar information to that contained in documents protected by the attorney-client or deliberative process privileges does not waive the privilege.").

The lone published case that Defendant cites illustrates the weakness of its waiver by publication argument.  That case, *DeLeon-Reyes v. Guevara*, 2021 WL 3109662 (N.D. Ill. July 22, 2021), involved claims of wrongful conviction, among others, and the individual officer defendants sought to depose the former Assistant State's Attorney, Eric Sussman, who was involved in the postconviction decision to dismiss the plaintiffs' criminal cases.  *Id.* at *1.  The Court ruled that the officer defendants could depose Mr. Sussman on the rationale for dismissing the charges because Mr. Sussman had stated in open court and during depositions that the reason for dismissing the charges against the plaintiffs was not "actual innocence."  *Id.* at *2.  The court found that Mr. Sussman's "public statement . . . revealed pre-decisional and deliberative elements [of] the . . . decision to dismiss Plaintiffs' cases."  *Id.* at 5.

No analogous information was disclosed in either of the documents Defendant relies upon, as any fair reading of the documents shows that they:  (i) outlined non-privileged events that preceded the self-certification (*e.g.*, Def.'s Exs. 18 & 19); (ii) provided guidance to market participants about the risks associated with the newly listed bitcoin products (*e.g.*, Def.'s Ex. 19); and (iii) reinforced the CFTC's continuing oversight (*e.g.*, *id.*).  Nothing in the two documents says anything about the CFTC's internal review of the self-certifications, its rationale for declining to take action with respect to any of the self-certified bitcoin contracts, or the basis to determining that the contracts comply with the CFTC's core principles.[11]

## IV.   Defendant's Request to Preclude Evidence Is Overbroad and Lacks the Required Specificity

Defendant cites a patchwork of cases from a "variety of other contexts" (Mot. at 21) to concoct a blanket exclusionary rule that purports to prevent the CFTC from "introducing any evidence on any matter" as to which the CFTC properly invoked the deliberative process privilege.  (*Id.* at 22-23.)  Defendant's sweeping request is fatally flawed in several respects.

*First*, the CFTC does not need to rely on privileged information to show that Defendant made materially false and misleading statements during the self-certification of the Bitcoin Futures Contract.  The guidance from the Court has been crystal clear that the CFTC's internal deliberations are irrelevant to the objective standard that courts use to measure the materiality of Defendant's misstatements and omissions.  *See supra* at 5, 7, 19 (quoting the Court's rulings on the standard for materiality).  And the CFTC has been equally transparent in disclosing that,

---

[11] Defendant's motion makes passing reference to compelling "any future CFTC witnesses to answer any questions of the same nature" as the questions that Mr. Kuserk and Mr. Goodman were instructed not to answer.  (Mot. at 1, 12, 23-24.)  The only future deposition that would implicate the deliberative process privilege is Defendant's attempt to depose a representative of the CFTC under Rule 30(b)(6) of the Federal Rules of Civil Procedure.  The CFTC has filed a motion for a protective order (ECF No. 49) seeking to bar testimony of a CFTC representative, and even if the Court denies the CFTC's motion, Defendant has not offered any separate arguments why the deliberative process privilege would not apply to an agency representative designated under Rule 30(b)(6).

consistent with Second Circuit precedent, CFTC witnesses can testify about the factors that are

considered in connection with the CFTC's review of the self-certification, the nature of the

inquiry, and the purpose of the self-certification review.  (March 22 Hr'g Tr. at 19:18-22, 20:13-

17.)  Because Defendant has no basis to object to the admission of evidence that bears on the key

issues in this case, it invents an exclusionary rule to preclude unidentified testimony and

documents on a non-exhaustive range of topics.  (Mot. at 22-23.)  Such relief extends far beyond

what would normally be appropriate to address the proper invocation of the deliberative process

privilege.  *CFTC v. Royal Bank of Ca.*, 2014 WL 2933232, at *1 (S.D.N.Y. June 27, 2014)

(Hellerstein, J.) ("To avoid any unfairness, the CFTC will be precluded from using at trial any

material in its files that has not been produced.")

    *Second*, the prevailing law disfavors requests to exclude "broad and unspecific categories

of evidence" because "courts are 'better situated during the actual trial to assess the value and

utility of evidence,' instead of 'tackling the matter in a vacuum.'"  *Vincent v. Reyes*, 2021 WL

4262289, at *1 (N.D. Cal. Sept. 20, 2021).  As such, categorical requests like the ones suggested

by Defendant that do not identify any evidence to be precluded are routinely denied.  *See*

*Thomas v. West*, 2019 WL 1206696, at *2 (S.D.N.Y. Mar. 14, 2019) ("[B]lanket request to

preclude all evidence of punitive damages is improperly vague."); *Wechsler v. Hunt Health Sys.,*

*Ltd.*, 381 F. Supp. 2d 135, 150 (S.D.N.Y. 2003) (denying in limine motion where "Defendants do

not specify any evidence that they seek to preclude"); *Weiss v. La Suisse, Societe D'Assurances*

*Sur La Vie*, 293 F. Supp. 2d 397, 407 (S.D.N.Y. 2003) ("A motion in limine may properly be

denied where it is too sweeping in scope."); *Nat'l Union Fire Ins. Co. v. L.E. Myers Co.*, 937 F.

Supp. 276, 287 (S.D.N.Y. 1996) (finding the "motion in limine lack[ed] the necessary specificity

with respect to the evidence to be excluded" and was otherwise "too sweeping in scope to be

decided in limine").

 *Third*, and relatedly, Defendant does not cite a single case where a court has imposed sweeping subject matter restrictions based on the proper invocation of the deliberative process privilege.  Rather, Defendant relies on inapposite cases that address implied waiver of the attorney-client privilege where defendants have placed legal advice at issue by arguing that they believed their conduct was lawful.  *See E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2000) (preventing defendant from advancing an advice of counsel defense after asserting "the attorney-client privilege at his deposition to prevent inquiry into his communications with counsel"); *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 2019 WL 1649983, at *18 (S.D.N.Y. Mar. 28, 2019) (declining to consider two paragraphs in summary judgment declaration where defendant had "broadly invoked privilege" during depositions to prevent plaintiff from testing the basis for the statements); *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) ("[A] party may not assert that it believed its conduct was lawful, and simultaneously claim privilege to block inquiry into the basis for the party's state of mind or belief"); *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) (addressing "*implied waiver*" or "*at issue*" waiver and suggesting that the "rule is perhaps more aptly described as one of forfeiture, rather than waiver").

 These implied waiver cases provide ill-fitting comparisons given the reluctance of courts to import waiver concepts from other privilege doctrines "into the realm of the deliberative process privilege."  *Gen. Elec. Co. v. Johnson*, 2006 WL 2616187, at *17 (D.D.C. Sept. 12, 2006); *see also Wells Fargo*, 2015 WL 6395917, at *2 (finding "no reason to depart from this general rule, which is 'designed to ensure that agencies do not forego voluntarily disclosing some privileged material out of the fear that by doing so they are exposing other, more sensitive

documents'").[12]

Established precedent recognizes that where, as here, the defendant "fails to set forth, with sufficient particularity, the forecasted evidence for which preclusion is sought, the court has discretion to deny the motion or reserve judgment." *Walia v. Napolitano*, 2017 WL 10378189, at *2 (E.D.N.Y. Dec. 4, 2017). Exercising such discretion to deny Defendant's request for alternate relief is appropriate here given that Defendant's sweeping and unparticularized request to exclude evidence on a non-exhaustive list of topics reflects the "inappropriate use" of motions to exclude evidence that courts have resoundingly rejected. *See MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 566 (S.D.N.Y. 2017) (recognizing the "inappropriate use" of in limine motions as a "preemptive weapon[] with which . . . to strike, in shotgun fashion, at whole topics and sources of prospective evidence").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion (i) to compel CFTC witnesses Christopher Goodman and Gregory Kurserk to answer questions over which the CFTC properly invoked the deliberative process privilege; (ii) to compel any future CFTC witnesses to answer any questions that are properly objected to on the basis of the deliberative process privilege; or (iii) preclude, in the alterative, evidence on a non-exhaustive list of topics set forth in Defendant's motion.

---

[12] The other cases Defendant cites are similarly poor precedent to apply in the context of a government agency's assertion of the deliberative process privilege. *See Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456-57 (2d Cir. 1975) (addressing issue of "fair notice" of the theory defendant "ultimately disclosed at trial" where interrogatories were "broad enough to require [defendant] to divulge" the challenged theory); *SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 549 (S.D.N.Y. 1985) (addressing defendant's invocation of his fifth amendment privilege against self-incrimination in "declin[ing] to answer a number of interrogatories"); *SEC v. Benson*, 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987) (observing that a civil defendant forfeits "the right to offer evidence disputing the plaintiff's evidence or supporting his own denials" when he "hid[e]s behind the protection of the Fifth Amendment as to his contentions"). Indeed, the fifth amendment authority is particularly inapt given that the invocation is not "cost free" in a civil action and can warrant an adverse inference against the party invoking the privilege. *SEC v. Suman*, 684 F. Supp. 2d 378, 386 (S.D.N.Y. 2010).

Dated:  October 17, 2023

Respectfully submitted,

*/s/ Andrew J. Rodgers*
K. Brent Tomer, Chief Trial Attorney
Alejandra de Urioste, Chief Trial Attorney
David Oakland, Senior Trial Attorney
Katherine Rasor, Trial Attorney
Diana Wang, Trial Attorney
Andrew J. Rodgers, Trial Attorney
Manal M. Sultan, Deputy Director

COMMODITY FUTURES
TRADING COMMISSION
Division of Enforcement
290 Broadway, Suite 600
New York, NY 10007
Phone: (646) 746-9700
Fax: (646) 746-9888