UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COMMODITY FUTURES TRADING
COMMISSION,

                          Plaintiff,                                22-cv-4563 (AKH)

              v.                                                    Hon. Alvin K. Hellerstein

GEMINI TRUST COMPANY, LLC,

                          Defendant.

---

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GEMINI TRUST COMPANY, LLC'S MOTION <u>FOR CERTIFICATION FOR INTERLOCUTORY APPEAL</u>

COMMODITY FUTURES TRADING
COMMISSION
Division of Enforcement
290 Broadway, 6th Floor
New York, NY 10007
Phone: (646) 746-9700
Fax: (646) 746-9888

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND .............................................................................................................. 3

A.    Defendant Made Materially False or Misleading Statements or Omissions During the Self
Certification Process. ........................................................................................ 3

B.    Both Defendant and Plaintiff Moved for Partial Summary Judgment ................................. 4

C.    The Court Ruled that *Janus* Does Not Apply In the Section 6(c)(2) Context. .................... 5

D.    The Court Ruled that Defendant Was Liable Under Section 6(c)(2) for the Statements
Relating to Prefunding and Cost of Capital ......................................................... 7

LEGAL STANDARD ...................................................................................................... 8

ARGUMENT ................................................................................................................... 9

A.    THE COURT SHOULD NOT CERTIFY THE ORDER GRANTING PARTIAL
SUMMARY JUDGMENT TO THE CFTC AND FINDING DEFENDANT WAS THE
"MAKER" OF THE 31 WRITTEN STATEMENTS .......................................... 9

   1.    This Court's Reading of Section 6(c)(2) Conforms with the Plain Text, Purpose,
and Policy Concerns of the Statute and Does Not Involve a "Controlling Question
Of Law" ...................................................................................................... 9

   2.    There Is No "Substantial Ground for Difference of Opinion" on Whether *Janus*
Applies to a Statute Involving False Statements to the Government .................... 12

   3.    An Interlocutory Appeal Would Unnecessarily Prolong this Litigation Instead of
Advancing It ................................................................................................ 17

   4.    The Court Should Not Certify the Order Denying Defendant's Motion for Partial
Summary Judgment. ..................................................................................... 19

B.    THERE IS NO REASON FOR THE SECOND CIRCUIT TO PROVIDE "APPELLATE
GUIDANCE" ON THE ADDITIONAL ISSUE OF THE PREFUNDING AND COST
OF CAPITAL STATEMENTS ......................................................................... 20

C.    THIS COURT SHOULD NOT ISSUE A STAY PENDING APPEAL ......................... 23

CONCLUSION ................................................................................................................ 25

i

# TABLE OF AUTHORITIES

## Cases

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co.*,
  426 F. Supp. 2d 125 (S.D.N.Y. 2005) .................................................................. 12, 16

*Bild v. Konig*,
  2011 WL 4007895 (E.D.N.Y. Sept. 8, 2011) ......................................................... 13, 17

*Blanchard v. Tabulate, Inc.*,
  2018 WL 11383043 (S.D.N.Y. Oct. 22, 2018) ........................................................... 24

*BLU Mgmt., LLC*,
  2010 WL 4942720 (M.D. Fla. Nov. 29, 2010) ........................................................... 22

*Cap. Recs., LLC v. LLC v. Vimeo, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013) .................................................................. 12, 13

*CFTC v. Arista LLC*,
  2013 WL 6978529 (S.D.N.Y. Dec. 3, 2013) ............................................................... 14

*CFTC v. eFloorTrade, LLC*,
  2018 WL 10625588 (S.D.N.Y. Sept. 21, 2018) ....................................................... 14, 21

*CFTC v. Gramalegui*,
  2018 WL 4610953 (D. Colo. Sept. 26, 2018) ............................................................. 14

*CFTC v. Int'l Fin. Servs. (New York), Inc.*,
  323 F. Supp. 2d 482 (S.D.N.Y. 2004) ...................................................................... 21

*CFTC v. Monex Credit Co.*,
  2021 WL 8776702 (C.D. Cal. Dec. 20, 2021) ............................................................. 22

*Chamarac Props. Inc. v. Pike*,
  1994 WL 410902 (S.D.N.Y. Aug. 3, 1994) ................................................................. 12

*De Jesus v. Oyshi Table Corp.*,
  2021 WL 1791478 (S.D.N.Y. May 5, 2021) ................................................................ 22

*Garber v. Off. of the Com'r of Baseball*,
  120 F. Supp. 3d 334 (S.D.N.Y. 2014) ...................................................................... 18

*Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*,
  2016 WL 4120635 (S.D.N.Y. July 22, 2016) .............................................................. 20

*Gramercy Advisors, LLC v. Coe*,
  2014 WL 5847442 (S.D.N.Y. Nov. 12, 2014) ............................................................. 23

*Gulino v. Board of Education*,
  234 F. Supp. 2d 324 (S.D.N.Y. 2002) ....................................................................... 8

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ...................................................................................... 24

*In re 127 John St. Assocs.*,
  2005 WL 911488 (S.D.N.Y. Apr. 18, 2005) ................................................. 12

*In re Flor*,
  79 F.3d 281 (2d Cir. 1996) ............................................................................. 8

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
  2014 WL 5002090 (S.D.N.Y. Oct. 7, 2014) .................................................. 21

*In re World Trade Ctr. Disaster Site Litig.*,
  469 F. Supp. 2d 134 (S.D.N.Y. 2007) ....................................................8, 9, 25

*In re World Trade Ctr. Disaster Site Litig.*,
  503 F.3d 167 (2d Cir. 2007) ........................................................................... 24

*Ins. of Wausau v. News Corp.*,
  2008 WL 4560687 (S.D.N.Y. Oct. 6, 2008) .................................................. 24

*Isra Fruit Ltd. v. Agrexco Agr. Export Co. Ltd.*,
  804 F.2d 24 (2d Cir. 1986) ............................................................................. 18

*Janus Capital Group, Inc. v. First Derivatives Traders*,
  564 U.S. 135 (2011) ...............................................................................*Passim*

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990) ............................................................................. 8

*Koehler v. Bank of Bermuda Ltd.*,
  101 F.3d 863 (2d Cir. 1996) ...................................................................... 8, 12

*Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*,
  2012 WL 1481510 (S.D.N.Y. Apr. 27, 2012) ...........................................17, 18

*Mills v. Everest Reinsurance Co.*,
  771 F. Supp. 2d 270, 275 (S.D.N.Y. 2009) ................................................... 19

*Mitre Sports Int'l Ltd. v. HBO, Inc.*,
  2014 WL 12802684 (S.D.N.Y. Aug. 27, 2014) ............................................. 13

*N.F.L. Ins. v. B&B Holdings*,
  1993 WL 255101 (S.D.N.Y. July 1, 1993) .................................................... 13

*Primavera Familienstifung v. Askin*,
  139 F. Supp. 2d 567 (S.D.N.Y. 2001) ...............................................13, 22, 23

*SEC v. Credit Bancorp, Ltd.*,
  103 F.Supp.2d 223 (S.D.N.Y. 2000) ............................................................. 9

*SEC v. Jarkesy*,

144 S. Ct. 2117 (2024) ............................................................................................. 22

*SEC v. Ripple Labs, Inc.*,
    697 F. Supp. 3d 126 (S.D.N.Y. 2023) .................................................................. 23

*Segedie v. The Hain Celestial Grp., Inc.*,
    2015 WL 5916002 (S.D.N.Y. Oct. 7, 2015) ........................................................ 21

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
    531 F.3d 190 (2d Cir. 2008) ................................................................................ 24

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
    690 F. Supp. 170 (S.D.N.Y. 1987) ...................................................................... 21

*Tull v. United States*,
    481 U.S. 412 (1987) ............................................................................................ 22

*United States v. Davis*,
    8 F.3d 923 (2d Cir. 1993) ...................................................................................... 5

*United States v. Gilliland*,
    312 U.S. 86 (1941) .............................................................................................. 15

*Walker v. Carter*,
    210 F. Supp. 3d 487 (S.D.N.Y. 2016) ................................................................. 20

*Wiwa v. Royal Dutch Petroleum Co.*,
    2008 WL 11512999 (S.D.N.Y. Oct. 24, 2008) .................................................... 25

## Statutes

7 U.S.C. § 9(1) ........................................................................................................ 14

7 U.S.C. § 9(2) .................................................................................................. *Passim*

18 U.S.C. § 1001 ..................................................................................................... 15

28 U.S.C. § 1292(b) .......................................................................................... *Passim*

## Regulations

17 C.F.R. § 38.200 ..................................................................................................... 4

## Other Authorities

Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Proc.* § 3929 ................... 25

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Plaintiff") respectfully submits this Opposition to the motion of Defendant Gemini Trust Company, LLC ("Gemini" or "Defendant") to certify an interlocutory appeal and to stay the proceedings.  ECF No. 140 ("Def. Mot.").[1]

## PRELIMINARY STATEMENT

The Court should deny Defendant's motion to certify for interlocutory review the Court's Orders (1) granting the CFTC's motion for partial summary judgment with respect to whether Defendant made false or misleading statements to the CFTC under Section 6(c)(2) of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 9(2); (2) denying Defendant's motion for partial summary judgment; and (3) granting the CFTC's motion for partial summary judgment with respect to the statements relating to prefunding.  Defendant's motion primarily seeks to certify its flawed argument that it was not the "maker" of certain written statements about its exchange and auction that were transmitted to the CFTC through an intermediary based on the inapposite Supreme Court case, *Janus Capital Group, Inc. v. First Derivatives Traders*, 564 U.S. 135 (2011).  Defendant's motion fails all three prongs of the standard for certification for interlocutory appeal under Section 1292(b).

The Court correctly interpreted Section 6(c)(2), and thus Defendant wishes to certify an issue that does not involve "substantial ground for difference of opinion."  28 U.S.C. § 1292(b).  Specifically, this Court correctly held that *Janus* does not apply to false statements made to a government agency in the course of the agency's core oversight functions—in this case, evaluating whether a proposed Bitcoin Futures Contract was susceptible to manipulation.  That

---

[1] Unless otherwise indicated, capitalized terms are defined in the Complaint, ECF No. 1.

evaluation necessitated that the CFTC "gather information" from interested parties such as CBOE and Gemini.  ECF No. 133 ("July 23, 2024 Tr.") at 55:9.  Gemini knew this, and thus it was "Gemini's expectation that the information it provide[d] to [] CBOE will be passed on to the CFTC."  *Id.* at 55:15–16.  There is no reason to extend *Janus*, which narrowly construed a private cause of action over who "makes" a statement under the Securities and Exchange Commission ("SEC") Rule 10b-5 prohibition on false statements made in connection with security transactions, to apply to Section 6(c)(2) of the Act, which prohibits false statements made to the CFTC.

Not only would Defendant have the Court certify a question that has no legal merit, but an interlocutory appeal will not address a "controlling question of law" or "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Contrary to Defendant's implication that it would *escape liability* altogether if the Second Circuit agreed with Defendant's spurious argument, the overwhelming, undisputed evidence would still warrant a finding on summary judgment that Defendant was the "maker" of all 31 written statements, or at the very least, there would be disputed facts that would require the case to proceed to trial in much the same way regardless of the Second Circuit's ruling.  That is, Plaintiff would still be able to prove with ample evidence at trial that, even under the standard set forth by *Janus*, Defendant had ultimate authority over—that is, it was the "maker" of—all the alleged false or misleading statements made to the CFTC.  As Plaintiff has set forth in its opposition to Defendant's motion for summary judgment (ECF No. 90 ["Pl. Opp'n"]) and in its own motion for summary judgment brief (ECF No. 99 ["Pl. MSJ"]), there is ample evidence that Defendant had control not only over the contents of the statements, but also over whether and how to

communicate those statements to the CFTC. In short, no matter how the Second Circuit rules on *Janus*'s application to Section 6(c)(2), that ruling will not have a material impact on the trial.

Additionally, the Court should reject Defendant's extraneous argument that certifying the *Janus* issue would allow the Second Circuit to provide helpful "guidance" on the Court's ruling that Defendant's prefunding and cost of capital statements violated Section 6(c)(2). The Court's ruling on Defendant's liability does not materially affect the rest of the proceedings, which will concern other false statements and omissions Defendant made; thus, the ruling with respect to the prefunding statements should be appealed after final judgment is entered in the case. Defendant concedes that this issue is not appropriate for interlocutory appeal as its brief does not even attempt to satisfy the Section 1292(b) requirements for this issue. Instead, Defendant incants the purported benefits of "guidance" from the Second Circuit before the case proceeds to trial and the possible prejudice it will face at trial on the remaining claims. But Defendant's argument overlooks the basic tenet of federal law to delay appellate review until a final judgment has been entered. And any prejudice is the natural consequence of a summary judgment finding, which is not unique or undue, and certainly not sufficient to justify piecemeal appeals.

Finally, the Court should decline to issue a stay if it decides to certify the *Janus* issue for appeal. A trial will be necessary regardless of the outcome of any appeal. There is no principled basis to stay the entire case when there is ample, non-duplicative pre-trial work that can continue during the pendency of any appeal.

## **BACKGROUND**

### A. **Defendant Made Materially False or Misleading Statements or Omissions During the Self Certification Process.**

Plaintiff assumes the Court's familiarity of the record and summarizes only the portions relevant to the instant motion. This case concerns false or misleading statements and omissions

Defendant made to the CFTC in supporting the self-certification of a proposed Bitcoin Futures Contract that was to be listed on the Cboe Futures Exchange ("CFE"). The CFTC was tasked with reviewing whether the proposed Bitcoin Futures Contract was readily susceptible to manipulation. *See* 17 C.F.R. § 38.200 (2023). During the self-certification process, Defendant made several written submissions to the CFTC, either directly or via CFE, regarding Defendant's operations, auction mechanics, and the reliability of Defendant's auction pricing. In so doing, Defendant repeatedly violated Section 6(c)(2) of the Act by making at least 31 written statements and omissions to the CFTC that were materially false or misleading. Pl. MSJ, Ex. A.

**B.    Both Defendant and Plaintiff Moved for Partial Summary Judgment.**

On March 22, 2024, Defendant moved for partial summary judgment with respect to certain of the written statements the CFTC alleges were false or misleading, arguing under a novel application of *Janus* that it did not "make" those statements for purposes of Section 6(c)(2) of the Act because it did not transmit the statements directly to the CFTC. ECF No. 82. The CFTC opposed the motion, arguing that Defendant cannot escape liability by simply filtering its own statements through an intermediary, especially when Defendant had a key role in drafting, providing the substantive content of, reviewing, and approving those statements. More fundamentally, it is undisputed from the documentary evidence that Defendant was fully aware—and intended—that the statements would be presented to the CFTC. Pl. Opp'n at 19–31.[2]

_____

[2] Defendant moved for partial summary judgment without coordinating briefing schedules with the CFTC, despite the fact that the CFTC previously indicated it would move for summary judgment. *See* ECF No. 71 (Dec. 11, 2023 Tr.) at 70:24-73:23. As a result, when the CFTC filed for partial summary judgment, the parties were already in the midst of briefing the Defendant's motion. The Court then denied Defendant's motion before briefing on the CFTC's motion was complete; and upon reviewing the legal and factual issues as fully presented by the CFTC in its motion briefing and oral argument, the court then found that *Janus* did not apply and Gemini was the maker of all 31 statements.

On June 13, 2024, this Court denied Defendant's motion for partial summary judgment, ruling that "[w]hether and to what extent defendant is the maker of the representations passed on to the CFTC by the [CFE] is a question of fact."  ECF No. 115.  The Court also noted that "whether and to what extent the rule of [*Janus*] . . . applies in the context of [the] CFTC's oversight of commodities exchanges and companies seeking to use the facilities of the exchange to trade futures contracts, and the manner used by the CFTC to gather information necessary and relevant to its supervisory obligations" also presented "questions of fact."  *Id.*  Defendant never moved for reconsideration of the Court's June 13, 2024 order denying its motion for partial summary judgment.

On May 7, 2024, prior to the Court's ruling on Defendant's motion, the CFTC moved for partial summary judgment on all 31 written statements.  ECF No. 97.  In its brief, the CFTC reiterated that Defendant was the "maker" of the statements by presenting uncontroverted evidence that, among other things, Defendant had every intention of submitting the statements to the CFTC, either through CFE or directly.  *See* Pl. MSJ at 11–12, 26–29; ECF No. 118 (Plaintiff's reply brief ["Pl. Reply"]) at 5–11.  And, as other courts have ruled in the context of interpreting statutes prohibiting false statements to the government, "there is no requirement that a false statement be made [directly] *to* a federal agency."  Pl. MSJ at 29 (quoting *United States v. Davis*, 8 F.3d 923, 929 (2d Cir. 1993)).

### C.    The Court Ruled that *Janus* Does Not Apply In the Section 6(c)(2) Context.

On July 23, 24, and 30, 2024, the Court held oral argument on the CFTC's motion for partial summary judgment.  At the oral argument, Defendant argued that under *Janus*, the Court must read Section 6(c)(2) to restrict liability to only those who directly transmitted statements to the CFTC.  Defendant argued that *Janus*, which concerned SEC Rule 10b-5, applied equally to

Section 6(c)(2) because the two provisions contained similar language.  July 23, 2024 Tr. at 34:18–37:16.

In response, the CFTC noted that, consistent with precedent involving other statutes prohibiting false statements to a government agency, liability for making false statements to the CFTC extends to any party that "contemplated that the statement would be used by the agency as part of its regulatory authority."  July 23, 2024 Tr. at 46:15–17.  The CFTC went on to summarize the evidence, without dispute from Defendant, that all 31 written false or misleading statements were made by Gemini "with the intent to convince the CFTC that Gemini's exchange [and] auction complied with listing requirements, including the critical one, Core Principle 3," and that, regardless of who ultimately transmitted the statements, Defendant "knew at the time that all information would be relayed by CBOE to the CFTC."  *Id.* at 45:18–20, 48:5–9; *see generally id.* 48:20–50:23, 52:8–22.  Finally, the CFTC argued that, contrary to Defendant's attempts to analogize SEC Rule 10b-5 to Section 6(c)(2), the CFTC already had "a 10b-5 equivalent," which was Section 6(c)(1) of Act.  In contrast, "Section 6(c)(2) is a pure false statement statute," and it was a "unique power" that was granted to the CFTC as part of the Dodd-Frank reforms.  *Id.* at 51:15–25, 53:8–22.

After hearing argument from both parties on *Janus*, the Court ruled that Defendant was the maker of all 31 written statements.  July 23 Tr. at 62:18–63:11.  In so ruling, the Court noted that the CFTC had "an overall responsibility" to assure that the Bitcoin Futures Contract was "not readily susceptible to manipulation."  *Id.* at 62:20–22.  And in making that evaluation, the CFTC needed to "gather information from parties like Gemini," and it was "Gemini's expectation that the information it provides to [] CBOE will be passed on to the CFTC."  *Id.* 55:13–16.  Thus, "when Gemini supplies information to [] CBOE," and CBOE "passes along the

information" to the CFTC, CBOE was acting to "effect[] the carrying of a communication initiated by Gemini." *Id.* at 60:18–23. In other words, Gemini "intended" all the statements at issue "to reach the CFTC." *Id.* at 60:25. Thus, to the extent CBOE served as an intermediary for some of the false or misleading representations at issue, CBOE merely "passed on communications [that were] made by Gemini in the first instance," which were properly attributable to Gemini. *Id.* at 62:18–63:4.

The Court then specifically addressed *Janus*, and found the case "distinguishable" on its facts, as it involved an alleged violation of SEC Rule 10b-5 for false statements made "in the prospect[us] issued to Janus's shareholders." *Id.* at 77:16–78:15. Since *Janus*, "Section [10b-5] has been subject to a series of restrictive holdings by the Supreme Court." *Id.* at 78:16–17. Moreover, the Supreme Court has never applied its *Janus* holding to a case involving "core agency oversight over a particular area." *Id.* 78:19–20. In this case, where the CFTC had a "core oversight" function over "trading on futures markets" and must "assure that there is fair trading on those markets," the CFTC necessarily needed to "get information from the market . . . not only from CBOE but from other interested parties," such as Defendant. *Id.* at 78:20–79:8. Thus, the Court found that Defendant "understood that the statements it made to CBOE would in turn be transmitted to the CFTC, and ultimately hoping for the CFTC's blessing [on the Bitcoin Futures Contract]." *Id.* at 79:5–8. The Court therefore held that Defendant was the "maker" of all 31 written statements at issue in the CFTC's motion for partial summary judgment. *Id.* at 79:7–8; 80:16–17.

**D.    The Court Ruled that Defendant Was Liable Under Section 6(c)(2) for the Statements Relating to Prefunding and Cost of Capital**

After hearing argument on whether Defendant was the "maker" of the 31 statements at issue in the CFTC's motion, the Court heard argument and evidence on each of the four

7

categories of alleged false or misleading statements and omissions made by Defendant. The

Court ruled that the first category of statements—*i.e.*, statements related to prefunding and

traders' cost of capital—were false or misleading, were material, and that Defendant knew or

should have known that they were false or misleading.  July 23, 2024 Tr. at 101:20–102:25; ECF

No. 135 ("July 24, 2024 Tr.") at 158:24–159:14, 216:22–25.

## <u>LEGAL STANDARD</u>

"[F]ederal practice strongly disfavors discretionary interlocutory appeals." *In re World*

*Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007) (Hellerstein, J.).

"[O]nly 'exceptional circumstances [will] justify a departure from the basic policy of postponing

appellate review until after the entry of a final judgment.'"  *In re Flor*, 79 F.3d 281, 284 (2d Cir.

1996) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990)).

Interlocutory appeals "prolong judicial proceedings, add delay and expense to litigants, burden

appellate courts, and present issues for decisions on uncertain and incomplete records, tending to

weaken the precedential value of judicial opinions."  *In re World Trade*, 469 F. Supp. 2d at 144

(citing *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)).  Thus, Section

1292(b) only "provides for *limited* interlocutory appeals."  *Id.* (emphasis in original).

For the Court to certify such an appeal, Defendant must establish that there is (1) "a

controlling question of law," (2) "as to which there is substantial ground for difference of

opinion," and that (3) "immediate appeal from the order may materially advance the ultimate

termination of the litigation."  28 U.S.C. § 1292(b).  Even if these criteria are met, the Court still

has "unfettered discretion" to deny certification of an order for interlocutory appeal.  *Gulino v.*

*Bd. of Educ.*, 234 F. Supp. 2d 324, 325 (S.D.N.Y. 2002) (quotation omitted).  The Court's

assessment must be made "to avoid too many appeals by too many disappointed litigants who

could argue that a different ruling by the district judge would end a litigation and save much

expense." *In re World Trade*, 469 F. Supp. 2d at 144 (citing *SEC v. Credit Bancorp, Ltd.*, 103 F.

Supp. 2d 223, 226 (S.D.N.Y. 2000)).

## ARGUMENT

### A. THE COURT SHOULD NOT CERTIFY THE ORDER GRANTING PARTIAL SUMMARY JUDGMENT TO THE CFTC AND FINDING DEFENDANT WAS THE "MAKER" OF THE 31 WRITTEN STATEMENTS

Defendant seeks to appeal the Court's ruling that it was the "maker" of all 31 statements

at issue in the CFTC's motion for partial summary judgment by attempting to graft a novel

reading of *Janus*, a case involving an implied private right of action under SEC Rule 10b-5 for

false statements made in connection with securities transactions, onto Section 6(c)(2) of the Act,

a broadly construed remedial statute that serves to prohibit and deter false statements made to a

government agency. Defendant's argument flunks each of Section 1292(b)'s requirements: It

does not present a "controlling question of law"; it does not present a "substantial ground for

difference of opinion"; and it would only delay litigation of the remaining issues for trial. This is

not one of the "exceptional" cases that merits a departure from the established norm of avoiding

piecemeal appeals. *See Flor*, 79 F.3d at 284.

#### 1. This Court's Reading of Section 6(c)(2) Conforms with the Plain Text, Purpose, and Policy Concerns of the Statute and Does Not Involve a "Controlling Question Of Law"

Defendant's Motion fails Section 1292(b)'s first requirement that the order involve a

"controlling question of law." 28 U.S.C. § 1292(b). Section 1292(b) requires "a pure question

of law that can be decided quickly and cleanly without detailed study of the record." *McGraw-*

*Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 399 (S.D.N.Y. 2018) (citation

omitted). "[R]esolution of pure questions of law by the appellate court does not obviate

subsequent applications of fact to the determined law." *In re Facebook, Inc., IPO Sec. &*

*Derivative Litig.*, 986 F. Supp. 2d 524, 533 (S.D.N.Y. 2014). In addition to establishing a pure question of law, Defendant must also establish that the question is "controlling." For a question to be "controlling," Defendant would either have to show that reversal of the Court's order would "terminate the action," or, "at a minimum, that determination of the issue on appeal would materially affect the litigation's outcome." *In re Fairfield Sentry Ltd.*, 458 B.R. 665, 673 (S.D.N.Y. 2011) (quoting *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005)).

      Contrary to Defendant's claim that whether it is a "maker" of the statements under Section 6(c)(2) of the Act is a "pure question of statutory interpretation," Def. Mot. at 7, an appellate decision on whether *Janus*'s "ultimate authority" standard applies to Section 6(c)(2) would not end the inquiry. Instead, the case necessarily would proceed to the application of the law "to the facts or evidence of a particular case." *In re Facebook*, 986 F. Supp. 2d at 536 (citation omitted). That is, the district court would still need to determine whether Defendant had the requisite control over the contents and dissemination of the written statements to establish ultimate authority. This type of "mixed factual and legal analysis is not suitable for interlocutory appeal." *Flores v. Nat'l Football League*, No. 22 Civ. 0871 (VEC), 2024 WL 50238, at *3 (S.D.N.Y. Jan. 4, 2024) (holding that party's framing of the issue was not a "pure" question of law because the issue's resolution would still require "the Second Circuit to assess whether Plaintiffs' arbitration agreements are unconscionable based on the unique facts of this case"); *see also Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, No. 19 Civ. 10067 (PAE), 2023 WL 4249356, at *18 (S.D.N.Y. June 29, 2023) (collecting cases holding that challenges to applications of law to a "unique set of facts" are especially "weak candidate[s] for [Section 1292(b)] certification").

Indeed, the fact-intensive nature of *Janus*'s application is also what makes the issue not "controlling." Defendant concedes that "reversal would not terminate this litigation in its entirety," but blithely asserts that reversal by the Second Circuit would "*require* that summary judgment be granted in Gemini's favor as to [] 80% of the at-issue statements," thereby "significantly alter[ing] the issues that remain to be decided at trial." Def. Mot. at 9. Nothing could be further from the truth. Even if the Second Circuit held, contrary to Section 6(c)(2)'s plain text and purpose, that *Janus* applied to the statute, that decision likely would not affect the outcome of this case because at trial Plaintiff would still be able to prove that Defendant made each of the written statements under *Janus*.

As Plaintiff set forth in detail in its opposition to Defendant's motion for partial summary judgment, Pl. Opp'n at 19–31, and its motion for summary judgment, Pl. MSJ at 11–12, Pl. Reply at 5–8, even assuming that *Janus* applied to Section 6(c)(2), ample evidence in the record establishes that Defendant had "ultimate authority" over the content of the false or misleading statements for which Defendant now disclaims responsibility, including evidence that Gemini drafted, edited, and reviewed the statements, and retained control over whether and when the statements would be submitted to the CFTC. Reversal of the Court's order granting, in part, the CFTC's motion for partial summary judgment and ruling that Defendant was the "maker" of all 31 written statements on the *Janus* issue would still require the jury to determine whether Defendant had "ultimate authority" over the written statements under *Janus*. And, then, the jury would still need to address the falsity, materiality, and scienter elements of the remaining false statements other than the prefunding and cost of capital statements. Even assuming a reversal of the Court's order on the *Janus* issue, the "scope of the remaining proceedings," Def. Mot. at 9, would not be significantly limited because Defendant would not be automatically granted

11

summary judgment in its favor on any of the statements.  Because a jury or Court could find that even under *Janus*, there is ample evidence of Defendant's ultimate authority over the written statements, an "interlocutory appeal is not warranted" because "there are potentially other grounds for affirming the Order."  *In re 127 John St. Assocs.*, No. 93-B-46171 (CB), 2005 WL 911488, at *7 (S.D.N.Y. Apr. 18, 2005).

Accordingly, Defendant's request for interlocutory appeal does not present a "controlling question" because reversal of the Court's order would neither terminate the action nor materially affect the outcome of the litigation.  *See, e.g.*, *Koehler*, 101 F.3d at 866 (certification improper because "either way we rule, a remand will be required"); *Chamarac Props. Inc. v. Pike*, No. 86-cv-7919 (KMW), 1994 WL 410902, at *2 (S.D.N.Y. Aug. 3, 1994) (denying certification because, "were the Court of Appeals to reverse the [] Order, the court would still have to consider the alternative grounds for dismissal . . . and after that, proceed to trial").  Defendant has failed to present a controlling issue of law, and thus has not satisfied the first prong of the stringent standard for interlocutory appeal.

### 2. There Is No "Substantial Ground for Difference of Opinion" on Whether *Janus* Applies to a Statute Involving False Statements to the Government

Defendant's motion also fails to present any "substantial ground for difference of opinion."  28 U.S.C. § 1292(b).  A substantial ground for difference of opinion exists where "there is conflicting authority on the issue," or "the issue is particularly difficult and of first impression for the Second Circuit."  *Cap. Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013).  "A mere claim that a district court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion."  *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005).  "Further, the mere fact that a disputed issue is a question of first impression is insufficient to demonstrate substantial grounds

for a difference of opinion." *N.F.L. Ins. v. B&B Holdings*, 91 Civ. 8580 (PKL), 1993 WL

255101, at *2 (S.D.N.Y. July 1, 1993). Instead, there must be "genuine doubt as to whether the

district court applied the correct legal standard." *Bild v. Konig*, No. 09 Civ. 5576 (ARR), 2011

WL 4007895, at *2 (E.D.N.Y. Sept. 8, 2011). Interlocutory review "is not intended [] to be a

vehicle to provide early review of difficult rulings in hard cases." *Primavera Familienstifung v.

Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (quotation marks omitted).

To begin, Defendant has not identified any conflicting authority on this issue, which is

understandable because there is none. Instead, Defendant asserts that it is entitled to

interlocutory review because it "has raised substantial argument in opposition to this Court's

decision." Def. Mot. at 9. That is not the legal standard. Were it otherwise, then almost every

motion to certify interlocutory review would be granted because most parties seeking appellate

review of an unfavorable decision would have raised "substantial arguments in opposition" to the

decision they are appealing. *See Mitre Sports Int'l Ltd. v. HBO, Inc.*, No. 08 Civ. 9117 (GBD),

2014 WL 12802684, at *3 (S.D.N.Y. Aug. 27, 2014) ("That a defendant whose summary

judgment motion is denied believes its previously-raised arguments demonstrate the accuracy of

its position does not give rise to a substantial ground for difference of opinion.").

Under the correct legal standard, there is no conflict of legal authority on whether *Janus*

applies to Section 6(c)(2). Indeed, Defendant appears to concede as much by arguing that the

"standard does not require a conflict in existing authority," and instead "can be satisfied when

the issue is particularly difficult and of first impression for the Second Circuit." Def. Mot. at 9

(citation omitted). But the issue posed by Defendant is not a "particularly difficult" one. *Cap.

Recs.*, 972 F. Supp. 2d at 551. And while it is arguably one of first impression, that is only

because no court has ever extended *Janus* to impose its narrow holding involving SEC Rule 10b-5 onto Section 6(c)(2) of the Act.

As Plaintiff has explained (Pl. Opp'n 8–10), Section 6(c)(2) prohibits a person from making false or misleading statements to a government agency, and thus has been treated by courts as analogous to other statutes that prohibit false statements to the government. *See CFTC v. eFloorTrade, LLC*, No. 16 Civ. 7544 (PGG), 2018 WL 10625588, at *8 (S.D.N.Y. Sept. 21, 2018); *CFTC v. Gramalegui*, No. 15 Civ. 02313 (REB) (GPG), 2018 WL 4610953, at *24 & n.19 (D. Colo. Sept. 26, 2018); *CFTC v. Arista LLC*, No. 12 Civ. 9043 (PAE), 2013 WL 6978529, at *7, *13 (S.D.N.Y. Dec. 3, 2013). As such, the scope of liability for false statements to the government are not restricted only to those who *directly* submitted the statement to the government. Pl. Opp'n at 8–9 (citing cases). This is particularly the case where, as here, the statute is applied to persons making statements to the CFTC in the exercise of its "overall responsibility" and "core oversight" functions over futures exchanges and the future contracts that may trade on them. July 23, 2024 Tr. at 62:18–63:4; 78:18–79:2.

Moreover, as the CFTC has already explained in prior briefing, the plain text of Section 6(c)(2) is not "materially identical to the language of [SEC Rule] 10b-5," because the latter does not concern false statements made to the government. Rather, it is a catch-all provision that prohibits all fraudulent conduct (including false statements) made in connection *with security transactions*. Pl. Opp'n at 10–11. In that sense, SEC Rule 10b-5 is much more analogous to Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and CFTC Rule 180.1, 17 C.F.R. 180.1 (2023), promulgated thereunder, which generally prohibit manipulative and deceptive devices in connection with the financial instruments under the CFTC's jurisdiction, such as swaps, commodity sales contracts, or futures contracts. In other words, Section 6(c)*(1)* and CFTC Rule

14

180.1 are the closest parallels to the antifraud provisions of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5. Section 6(c)(2), on the other hand, is a specific power granted to the CFTC (and no other financial regulators, including the SEC) in the wake of the Dodd-Frank reforms. Pl. Opp'n at 11–12. Thus, there is no reason to interpret Section 6(c)(2) and SEC Rule 10b-5 together as having the same meaning or scope.[3]

Defendant also briefly reprises two other arguments from its motion for partial summary judgment, neither of which is a basis to challenge the Court's ruling. First, Defendant attempts to distinguish 18 U.S.C. § 1001 by arguing that the phrase "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States" is "why . . . Section 1001 imposes no requirement that a false statement be made *to* the federal agency." Def. Mot. at 12 (citation omitted). But Defendant does not grapple with the fact that Section 6(c)(2) contains similar language of prohibiting "any person" from making false statements to the CFTC, a government agency. There is no reason to read the reach of these statutes differently, particularly when, as the Court recognized, the CEA is a "remedial" statute that is meant to be construed broadly. July 23, 2024 Tr. at 54:23–55:1; *see also* Pl. Opp'n at 10 n.5 (citing cases).

Second, Defendant resurrects its argument from its motion for partial summary judgment that it could have been charged under "another provision of the CEA—Section 13c(a)" for

_____

[3] For these reasons, Defendant's citation to SEC *enforcement* actions (Def. Mot. at 11 n.2) must fail because all SEC Rule 10b-5 actions concern false statements made in connection *with security transactions*, not false statements made to the government. Even though the enforcement actions cited by Defendant were brought by the SEC, the false statements at issue were made to investors in connection with securities transactions, and the government was not intended to be the primary recipient. The policy concerns animating prohibitions of false statements to the government, like Section 6(c)(2), are obviously different and of fundamentally distinct concern than those authorizing private rights of action, like SEC Rule 10b-5. Pl. Opp'n 12–14; *see also United States v. Gilliland*, 312 U.S. 86, 93 (1941) (explaining that the criminal statute prohibiting false statements to the government was meant to "protect the authorized functions of governmental departments and agencies from the perversion which might result from [] deceptive practices").

15

aiding-and-abetting liability, which would render Section 6(c)(2) superfluous to Section 13c(a).

Def. Mot. at 10–11.  Again, as the CFTC has explained (Pl. Opp'n at 11 n.6), the simple fact that

Defendant could be liable under another section of the Act does not mean that it cannot be

charged under Section 6(c)(2).  Section 13(a)'s aiding-and-abetting liability for any and all

violations of the CEA is of a different scope than Section 6(c)(2)'s prohibition against making

false statements to the Commission.  *See Lorenzo v. SEC*, 587 U.S. 71, 82–83 (2019) (holding

that a defendant who disseminated false statements could be held liable under subsections (a) and

(c) of Rule 10b-5, and rejecting defendant's argument that the holding would erase "a clear

distinction between primary and secondary (i.e., aiding and abetting) liability" because "it is

hardly unusual for the same conduct to be a primary violation with respect to one offense and

aiding and abetting with respect to another").

      This Court, like other courts that have interpreted Section 6(c)(2) and similar statutes

prohibiting false statements to the government, correctly interpreted the provision as

encompassing all parties who made the statements to the government, regardless of whether they

did so directly or through an intermediary.  *See* July 23, 2024 Tr. at 62:18–63:4.  Defendant's

"mere claim" that this Court's decision was incorrect is not a "substantial ground for difference

of opinion" that warrants the extraordinary measure of interlocutory review, and its motion

therefore fails the second prong Section 1292(b).  *Aristocrat Leisure*, 426 F. Supp. 2d at 129.[4]

---

[4] Defendant's citations to the Court's statements during argument that the issue was "difficult" and that it had "second thoughts" before its ruling, Def. Mot. at 9–10 (citing July 23, 2024 Tr.), do not help its argument. These statements only evince that the Court made its ruling with great deliberation, which is further evident from the fact that the *Janus*-related portion of the oral argument took the better part of an entire day, with presentation of evidence and arguments from both parties.  That the Court took such care in reaching its ultimate ruling is not grounds for asking for interlocutory review and appellate reversal.

### 3. An Interlocutory Appeal Would Unnecessarily Prolong this Litigation Instead of Advancing It

Defendant has also failed to establish that interlocutory review would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Courts place particular emphasis on the importance of this last factor" and "strictly construe[]" the requirement "to preclude appeals that have no clear potential to materially advance the litigation's termination." *Bild*, 2011 WL 4007895, at *3. Rather than materially advance the "termination" of this case, an interlocutory appeal "would indefinitely delay resolution of a trial-ready case" where discovery is complete, summary judgment motions have been resolved, and trial is scheduled for January 2025. *Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, No. 10 Civ. 1611 (PKC), 2012 WL 1481510, at *2 (S.D.N.Y. Apr. 27, 2012).

The primary argument Defendant offers is that resolution of the *Janus* issue in its favor would result in dismissal of 80% of the written statements. Def. Mot. at 13. But, as discussed above in the first prong of Section 1292(b), *see supra* Section A.1, even if the Second Circuit agreed with Defendant's improper application of *Janus* to Section 6(c)(2), that would not "result in judgment for Gemini," Def. Mot. at 13, as to any of the written statements. Instead, the CFTC would simply show at trial—as it has shown through undisputed documentary evidence from the record—that even under *Janus* Defendant had "ultimate authority" over the content of all the written statements, which all relate to Defendant's exchange and auction, and over the dissemination of the statements to the CFTC. *See* Pl. Opp'n at 19–31; Pl. MSJ at 9–12, 27–29. Indeed, much of that evidence would overlap with the evidence on the remaining issues to be resolved at trial. Most obviously, evidence of Defendant being the "maker" of the statements would be bound up with evidence supporting the scienter element of Section 6(c)(2), *i.e.*, whether *Defendant* knew or should have known the statements were false or misleading. Thus,

even if the Second Circuit ruled that *Janus* could be read to apply to claims under Section 6(c)(2), the issues for trial would not be narrowed in any material way.

Moreover, Defendant did *not* move for summary judgment on some of the written statements based on its *Janus* argument, thereby tacitly conceding that it was the maker of those statements to the CFTC.  As noted in the CFTC's opposition to Defendant's motion for partial summary judgment, Pl. Opp'n at 13–14, those statements are substantively similar to the statements that are subject to Defendant's motion.  Thus, even if Defendant were correct that a reversal from the Second Circuit would automatically result in a final judgment in its favor on certain statements without needing to proceed to trial, there would still be substantially similar statements undisputedly made by Defendant, which would not be impacted by such a ruling. And Defendant would still have to incur the cost of defending against those statements at trial. *See Garber v. Off. of the Comm'r of Baseball*, 120 F. Supp. 3d 334, 338 (S.D.N.Y. 2014) (finding that the possibility that "an interlocutory appeal would delay the onset of trial . . . is reason enough to deny certification").

In short, contrary to Defendant's concoction of hypothetical efficiencies, interlocutory appeal would not materially "streamline" the upcoming trial.  Def. Mot. at 13.[5]  A successful appeal would neither "advance the time for trial or to shorten the time required for trial."  *Louis Vuitton*, 2012 WL 1481510, at *2 (quoting 16 Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3930 (2d ed. 1996)); *see also Isra Fruit Ltd. v. Agrexco Agr. Export Co. Ltd.*, 804 F.2d 24, 25–26 (2d Cir. 1986) (rejecting an immediate appeal because even if some

---

[5] If anything, the only change from a Second Circuit reversal would be a potential reduction in the maximum penalty amount, not a narrowing of issues as to liability.  And as discussed in more detail in Section B, *infra*, the determination of penalty is within the province of the judge, not the jury.

claims "were eliminated at this stage of the litigation, there is scant basis for believing that trial of the latter claims would be concluded with any appreciable savings of time").

### 4. The Court Should Not Certify the Order Denying Defendant's Motion for Partial Summary Judgment.

To the extent Defendant seeks certification of the Court's June 13, 2024 order denying Defendant's motion for partial summary judgment (Def. Mot. at 1), that request should be denied. As an initial matter, Defendant's request fails because it is untimely. Defendant never moved for reconsideration of the Court's June 13, 2024 Order, nor did it indicate that it had any issue with the Court's denial of its motion for partial summary judgment. It was not until oral argument on the CFTC's motion that Defendant raised, for the first time, any intention to appeal the Court's June 13, 2024 Order denying Defendant's motion for partial summary judgment. July 23, 2024 Tr. at 63:16–23. That Defendant waited one and a half months before seeking to certify the Court's June 13, 2024 order weighs against certifying the order for interlocutory appeal. *See Capitol Recs. LLC v. ReDigi Inc.*, No. 12 CIV. 95(RJS), 2013 WL 12618509, at *5 (S.D.N.Y. June 21, 2013) (holding Defendant has "unduly delayed in seeking certification two and a half months after the Order issued); *Green v. City of New York*, No. 05 Civ. 0429 (DLI) (ETB), 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006) (denying certification after two-month delay).

Moreover, Defendant's request to certify the June 13, 2024 Order fails for the exact same substantive reasons discussed above, namely that it does not present a controlling question of law; it does not present a substantial ground for difference of opinion; and it would only delay litigation of the remaining issues for trial. *See supra*, Part A.1–3. Indeed, courts "frown[] upon allowing an interlocutory appeal of a denial of summary judgment" and "prefer to let the trial resolve the outstanding issues." *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 275

19

(S.D.N.Y. 2009) (citations omitted).  The court should therefore decline to certify the June 13,

2024 Order for interlocutory appeal.

### B.  THERE IS NO REASON FOR THE SECOND CIRCUIT TO PROVIDE "APPELLATE GUIDANCE" ON THE ADDITIONAL ISSUE OF THE PREFUNDING AND COST OF CAPITAL STATEMENTS

The Court need not consider Defendant's extraneous and irrelevant argument that the

Court should allow interlocutory review so the Second Circuit may provide "appellate guidance"

on this Court's ruling that Defendant's prefunding and related cost of capital statements violated

Section 6(c)(2).  Def. Mot. at 14.  Defendant implicitly concedes it cannot satisfy the burden of

establishing that the Court's summary judgment ruling on the 15 prefunding and cost of capital

statements satisfies the requirements for interlocutory appeal under Section 1292(b).  *Id.* at 16.

Yet, Defendant attempts to shoehorn the Court's ruling into an appellate review because it

"vigorously disagrees" that summary judgment was appropriate.  *Id.* at 15.  Even if the Court

were to consider Defendant's arguments, which it should reject outright, Defendant's broad

criticism of the Court's ruling and hypothetical "prejudice" it would suffer if the case were to

proceed to trial is meritless.

*First*, Defendant is wrong to argue that the Court applied the incorrect summary

judgment standard and drew "debatable inferences" from documentary evidence.  Def. Mot. at

14–15.  As the Court correctly found, the CFTC set forth ample, undisputed documentary

evidence of Defendant's liability on the prefunding and cost of capital statements.  Pl. MSJ at

32–41.  In response to the CFTC's motion for partial summary judgment, Defendant was

required to "bring forward 'specific facts showing a genuine issue for trial.'"  *Walker v. Carter*,

210 F. Supp. 3d 487, 498 (S.D.N.Y. 2016) (quoting *Gen. Ins. Co. of Am. v. Starr Indem. & Liab.*

*Co.*, No. 14 Civ. 07354 (JGK), 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016)).  This is

where Defendant faltered.  Its opposition to the CFTC's motion for partial summary judgment rested primarily on "*post hoc*, conclusory, self-serving statements" that the court "is not required to credit at summary judgment."  *eFloorTrade*, 2018 WL 10625588, at *9 (collecting cases); *CFTC v. Int'l Fin. Servs. (New York), Inc.*, 323 F. Supp. 2d 482, 509 (S.D.N.Y. 2004) ("[T]o draw[] all inferences in [the non-moving party's] favor is not to suspend disbelief.") (citation omitted); *see also, e.g.*, ECF No. 105 (Defendant's Opposition to Pl. MSJ) at 18, 23 (relying on evidence from its own expert and an after-the-fact declaration by Tyler Winklevoss for the definition of prefunding and the purported purpose of Pearl Street).

*Second*, invoking the possibility of reversal and the related costs associated with a retrial is a "one-sided argument [that] fails to take into account the (just as likely) possibility that certification will delay the action further."  *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 Civ. 3461 PAC, 2014 WL 5002090, at *2 (S.D.N.Y. Oct. 7, 2014).  As discussed above, *see* Section A.3, *supra*, regardless of how the Second Circuit rules this case will need to proceed to trial on the issues on which the Court did not grant summary judgment, including determining the falsity, materiality, and scienter elements of the remaining categories of false statements other than the prefunding and cost of capital statements.  Defendant's request for certification "would create the type of piecemeal litigation that weighs against § 1292(b) certification."  *Segedie v. The Hain Celestial Grp., Inc.*, No. 14 Civ. 5029 (NSR), 2015 WL 5916002, at *3 (S.D.N.Y. Oct. 7, 2015).[6]

---

[6] Defendant's citation to *Telectronics* is misleading.  Def. Mot. at 13, 15.  That almost 40-year-old case involved a motion to disqualify plaintiff's counsel.  *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 171 (S.D.N.Y. 1987).  A reversal would have required the plaintiff to obtain new counsel, thus meaning that certification would "eliminate the possibility of a time-consuming and expensive retrial due to attorney disqualification following a trial on the merits."  *Id.* at 176.  No parallels can be drawn here since Defendant is free to retain the same counsel regardless of the outcome of trial or any appeal.

*Third*, the supposed "practical concerns" and potential unfairness from proceeding to trial are overblown.  Def. Mot. at 15.  For one thing, it is not the case that a jury will have to decide the penalty for Defendant's misstatements about its prefunding requirement and a trader's cost of capital, because "Defendants do not have a jury trial right as to the amount of civil penalties" in cases brought by the CFTC.  *CFTC v. Cap. BLU Mgmt., LLC*, No. 6:09-CV-508, 2010 WL 4942720, at *1 (M.D. Fla. Nov. 29, 2010).  Prior courts to consider the question of who decides the penalty in CFTC enforcement actions have uniformly determined that "under the CEA the assessment of civil penalties is not a decision for the jury."  *CFTC v. Monex Credit Co.*, No. SACV 17-1868 JVS (DFM), 2021 WL 8776702, at *2 (C.D. Cal. Dec. 20, 2021) (collecting cases).[7]

Thus, Defendant's motion amounts to a complaint about run-of-the-mill issues that any party would encounter following a partial grant of summary judgment.  The Court and the parties are no doubt capable of navigating issues that may arise during trial stemming from the Court's partial summary judgment ruling.  *See Primavera*, 139 F. Supp. 2d at 573 (finding that "the niceties of trial management . . . should not be pre-judged" because anticipated trial issues can be "addressed through a properly crafted pre-trial order and techniques such as a special verdict form or even alternative verdicts").  If that were not the case, then "any motion granting partial summary judgment [would] be immediately appealable to the Second Circuit," which "is not the law."  *De Jesus v. Oyshi Table Corp.*, No. 19 Civ. 830 (JPC), 2021 WL 1791478, at *4

---

[7] No intervening change in law compels a different result.  In *SEC v. Jarkesy*, the Court determined that the Seventh Amendment entitles defendants to a jury trial on the *claim* when the SEC seeks civil penalties against them for securities fraud.  144 S. Ct. 2117, 2127 (2024).  The Court did not address the right of a defendant to have the jury determine the civil *penalty*.  Indeed, the *Jarkesy* Court cited with approval *Tull v. United States*, the seminal Supreme Court case that held that "Congress' assignment of the determination of the amount of civil penalties to trial judges . . . does not infringe on the constitutional right to a jury trial."  481 U.S. 412, 426–27 (1987).

(S.D.N.Y. May 5, 2021).

*Finally*, Defendant's stated intent to challenge the Court's prefunding ruling at final judgment (Def. Mot. at 15) cuts against, not in favor of, granting interlocutory appeal because an interlocutory appear would create the "inefficiency of having the Court of Appeals hear multiple appeals in the same case." *Primavera*, 139 F. Supp. 2d at 570. Regardless of the outcome of any appeal, "resource-intensive litigation remains in this matter before final judgment, including a remedial phase . . . , additional *Daubert* briefing, pretrial litigation (including motions *in limine*), and trial." *SEC v. Ripple Labs, Inc.*, 697 F. Supp. 3d 126, 137 (S.D.N.Y. 2023). Thus, "[u]nder these circumstances, the litigation may be most expeditiously advanced by 'proceeding in the ordinary course to judgment, [and] permitting a single round of appellate review on a complete record.'" *Id.* Defendant's desire to challenge every adverse ruling simply does not signify "exceptional circumstances justifying a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Gramercy Advisors, LLC v. Coe*, No. 13 Civ. 9069 (VEC), 2014 WL 5847442, at *4 (S.D.N.Y. Nov. 12, 2014) (citation omitted).

## C.  THIS COURT SHOULD NOT ISSUE A STAY PENDING APPEAL

The Court's denial of Defendant's request for interlocutory appeal would moot Defendant's corresponding request for a stay. But even if the Court were inclined to certify the summary judgment orders for interlocutory appeal, a stay would not be appropriate. While Defendant acknowledges that a stay pursuant to Section 1292(b) requires an order from this Court or the Second Circuit (Def. Mot. at 16), it overlooks the four factors that courts in this Circuit consider—namely, "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Defendant makes no attempt to analyze these requirements, which alone weighs against a stay. *See Emps. Ins. of Wausau v. News Corp.*, No. 06 Civ. 1602 (SAS), 2008 WL 4560687, at *1 (S.D.N.Y. Oct. 6, 2008) ("Because plaintiffs have made no showing that their mandamus petition has a likely chance of success, I deny the motion to stay the order."). Rather than address the elements of a stay, Defendant extols the "practical benefit" of obtaining an advisory opinion from the Second Circuit "before the parties and the Court embark on a lengthy and costly trial." Def. Mot. at 17.

For starters, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Blanchard v. Tabulate, Inc.*, No. 18 Civ. 8631 (ER), 2018 WL 11383043, at *2 (S.D.N.Y. Oct. 22, 2018) (citation omitted). And the likelihood of the Second Circuit providing "guidance" is speculative given that the Second Circuit would have to accept the appeal, and then also exercise its discretion to review and reverse the rulings, which, as discussed above, would have little impact on the remaining issues to be resolved at trial. *See Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 197 (2d Cir. 2008) (declining to exercise discretion to address issues that were not certified on appeal because "the resolution of these issues will not 'materially advance the ultimate termination of the litigation'"); *see also* Sections A.3 and B, *supra*.

In any event, a blanket stay would do more harm than good given that a successful appeal would only expand, not narrow, the issues for trial. There is no good reason to suspend work on pre-trial preparations when there are outstanding issues set for trial that are not impacted by any appeal. In fact, Defendant does not argue that any pre-trial work related to the claims that are set

24

for the January 2025 trial would be superfluous or otherwise unneeded in the event that the Court certifies the summary judgment orders for appeal and the Second Circuit rules in Defendant's favor. Where, as here, the appeal would not result in dismissal of the entire case, "it is 'ordinarily . . . better to proceed with the rest of the case unless [doing so will] threaten extensive duplication later.'" *Wiwa v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP), 2008 WL 11512999, at *1 (S.D.N.Y. Oct. 24, 2008) (quoting 16 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Proc.* § 3929).[8]

At bottom, a stay at this stage of the case would inflict the very harms that Section 1292(b) appeals guard against—namely, "prolong[ing] judicial proceedings," adding "delay and expense to litigants," and "burden[ing] appellate courts." *In re World Trade Ctr.*, 469 F. Supp. 2d at 144. Thus, even if the Court were inclined to certify the summary judgment orders for interlocutory appeal, the case should proceed to trial on the current schedule.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's motion to certify an interlocutory appeal of the Court's orders (1) granting the CFTC's motion for partial summary judgment with respect to whether Defendant "made" the 31 written statements, (2) denying Defendant's motion for partial summary judgment, and (3) granting the CFTC's motion for partial summary judgment with respect to the statements relating to prefunding and cost of capital, and deny Defendant's motion to stay the proceedings.

---

[8] Defendant also quotes from Section 3929 of Wright & Miller but omits critical language that makes plain that a stay is not appropriate when the appeal will not dispose of the entire case. The language Defendant omits makes the point abundantly clear: "*If the certified order involves only part of the case, ordinarily it should be better to proceed with the rest of the case unless* there is sufficient overlap to threaten extensive duplication later or loss of the benefits of the appeal." *Id.* (emphasis added to show omitted text).

Dated: New York, New York
       August 22, 2024

Respectfully submitted,
COMMODITY FUTURES TRADING
COMMISSION

By:   */s/ Diana Wang*

K. Brent Tomer, Chief Trial Attorney
Alejandra de Urioste, Chief Trial Attorney
David Oakland, Senior Trial Attorney
Katherine Rasor, Trial Attorney
Diana Wang, Trial Attorney
Andrew J. Rodgers, Trial Attorney
Peter Janowski, Trial Attorney
Manal M. Sultan, Deputy Director

COMMODITY FUTURES
TRADING COMMISSION
Division of Enforcement
290 Broadway, 6th Floor
New York, NY 10007
Phone: (646) 746-9700
Fax: (646) 746-9888