**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COMMODITY FUTURES TRADING
COMMISSION,

                                          Plaintiff,

            v.

GEMINI TRUST COMPANY, LLC,

                                          Defendant.

No. 22-cv-4563 (AKH)

Hon. Alvin K. Hellerstein

**REPLY IN SUPPORT OF DEFENDANT GEMINI TRUST
COMPANY, LLC'S MOTION FOR CERTIFICATION FOR
INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

## TABLE OF CONTENTS

**Page**

A.    The Maker Issue Warrants Certification ................................................................. 2

    1.    The *Janus* Question Is A Controlling Question Of Law ............................. 2

    2.    There Are Substantial Grounds For Difference Of Opinion With This
Court's Resolution Of The *Janus* Issue ....................................................... 3

    3.    An Immediate Appeal Will Materially Advance This Litigation ............... 7

    4.    The Court Should Certify Its Order Denying Gemini's Motion For
Summary Judgment ..................................................................................... 9

B.    The Opportunity To Obtain Additional Guidance From The Court Of
Appeals Also Counsels In Favor Of Certification ................................................. 10

C.    A Stay Is Warranted If The Court Grants Certification ........................................ 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrows v. Brinker Rest. Corp.*,
  36 F.4th 45 (2d Cir. 2022) ...................................................................................11

*Bruton v. United States*,
  391 U.S. 123 (1968) ............................................................................................12

*Capitol Recs., LLC v. Vimeo, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013) ..................................................................4

*CFTC v. Arista LLC*,
  2013 WL 6978529 (S.D.N.Y. Dec. 3, 2013) .........................................................5

*CFTC v. Capital BLU Mgmt., LLC*,
  2010 WL 4942720 (M.D. Fla. Nov. 29, 2010) .....................................................12

*CFTC v. eFloorTrade, LLC*,
  2018 WL 10625588 (S.D.N.Y. Sept. 21, 2018)...............................................5, 11

*CFTC v. Gramalegui*,
  2018 WL 4610953 (D. Colo. Sept. 26, 2018) ........................................................5

*CFTC v. Monex Credit Co.*,
  2021 WL 8776702 (C.D. Cal. Dec. 20, 2021) ......................................................12

*Consub Delaware LLC v. Schahin Engenharia Limitada*,
  476 F. Supp. 2d 305 (S.D.N.Y. 2007)...................................................................4

*CTS Corp. v. Waldburger*,
  573 U.S. 1 (2014).................................................................................................6

*Dalie v. Pulte Home Corp.*,
  636 F. Supp. 2d 1025 (E.D. Cal. 2009)................................................................8

*Danzer v. Norden Sys., Inc.*,
  151 F.3d 50 (2d Cir. 1998)..................................................................................11

*Feltner v. Columbia Pictures Television, Inc.*,
  523 U.S. 340 (1998).............................................................................................12

*Hilton v. Braunskill*,
  481 U.S. 770 (1987)..............................................................................................13

*In re World Trade Ctr. Disaster Site Litig.*,
503 F.3d 167 (2d Cir. 2007)...........................................................................................13

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ........................................................................................................1

*Kinkead v. Humana, Inc.*,
2016 U.S. Dist. LEXIS 143000 (D. Conn. Oct. 13, 2016) ....................................13, 14

*Landis v. North Am. Co.*,
299 U.S. 248 (1936) ......................................................................................................13

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
676 F.3d 83 (2d Cir. 2012) ............................................................................................13

*Mills v. Everest Reinsurance Co.*,
771 F. Supp. 2d 270 (S.D.N.Y. 2009)............................................................................10

*Narragansett Elec. Co. v. American Home Assur. Co.*,
921 F. Supp. 2d 166 (S.D.N.Y. 2013)..............................................................................2

*Noto v. 22nd Century Grp., Inc.*,
35 F.4th 95 (2d Cir. 2022) ...............................................................................................3

*St. Pierre v. Dyer*,
208 F.3d 394 (2d Cir. 2000)............................................................................................11

*Tantaros v. Fox News Network, LLC*,
465 F. Supp. 3d 385 (S.D.N.Y. 2020)..........................................................................3, 7

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
690 F. Supp. 170 (S.D.N.Y. 1987)...................................................................................8

*Tull v. United States*,
481 U.S. 412 (1987) .......................................................................................................12

*Yamaha Motor Corp. v. Calhoun*,
516 U.S. 199 (1996).................................................................................................11, 12

**Statutes**

7 U.S.C. § 9(2) .............................................................................................................1, 5

7 U.S.C. § 13c(a).............................................................................................................6

18 U.S.C. § 1001 .............................................................................................................5

28 U.S.C. § 1292(b) .............................................................................................1, 2, 7, 11

**Secondary Authority**

Antonin Scalia & Brian A. Garner,
  *Reading Law: The Interpretation of Legal Texts* (2012) ................................................................6

Charles A. Wright & Arthur R. Miller,
  *Federal Practice and Procedure* § 3929 (3d ed. 2024)................................................................14

Interlocutory appeal is warranted so that the Second Circuit can promptly review this Court's threshold conclusion that the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), does not govern the requirement in Section 6(c)(2) that a defendant "*make* [a] false or misleading statement of a material fact *to the Commission*." 7 U.S.C. § 9(2) (emphasis added). That question of first impression is—at a minimum—close and unsettled. And if resolved in Gemini's favor, it would streamline the trial proceedings in this case, by ending the case as to approximately 80% of the written statements at issue (while confirming that Gemini is entitled to a jury finding as to attribution of the remaining statements). The time for resolving that question is now—before the parties, the Court, and the members of a jury embark on a month-long trial that may prove to be a wasteful detour if the Second Circuit ultimately disagrees with this Court's summary judgment rulings.

The CFTC's opposition provides no sound justification for delaying appellate review.  The CFTC denies that Gemini has identified a controlling question of law, but only by misstating the result of a ruling in Gemini's favor on the *Janus* issue. The CFTC denies that the issue is a close one, but only by ignoring this Court's own acknowledgement that it found the issue to be "difficult" and that it had "second thoughts," and by once again ignoring the straightforward textual arguments for Gemini's position that *Janus* governs what it means to "make" a statement under Section 6(c)(2).  And the CFTC denies that an immediate appeal would materially advance this litigation, but only by (again) mischaracterizing the import of an appellate reversal and by exaggerating the incremental delay before commencing trial that would occasioned by proceedings before the Second Circuit.

This Court should grant certification under Section 1292(b) and stay further litigation in this Court pending appeal.

1

### A.    The Maker Issue Warrants Certification

The Court's summary judgment orders should be certified for interlocutory appeal because the question whether *Janus* applies to Section 6(c)(2) presents "a controlling question of law as to which there is substantial ground for difference of opinion," and "an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  The CFTC's contrary arguments lack merit.

### 1.    The *Janus* Question Is A Controlling Question Of Law

The CFTC appears to agree (Opp. 9-10) that whether *Janus* governs what it means to "make" a statement to the CFTC under Section 6(c)(2) presents a "question of law" under 28 U.S.C. § 1292(b). In any event, there can be no serious dispute that this question of statutory interpretation is "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record."  *Narragansett Elec. Co. v. American Home Assur. Co.*, 921 F. Supp. 2d 166, 196 (S.D.N.Y. 2013) (citation omitted).

The CFTC instead attempts to shift the focus, contending that Gemini has failed to identify a question of law—and that the *Janus* question would not be "controlling" in any event—because applying *Janus*'s rule in this case would involve a fact-intensive inquiry. Opp. 10-11. In particular, the CFTC posits that, "even assuming that Janus applied to Section 6(c)(2), ample evidence in the record establishes that Defendant had 'ultimate authority'" over the relevant submissions to the CFTC. Opp. 11. As Gemini has previously demonstrated (ECF 93, at 13-14), the CFTC's confidence in its ability to satisfy *Janus*'s rule rests on a legal misunderstanding. The supposedly "ample evidence" that the CFTC invokes would show only that Gemini participated in drafting the relevant submissions, proposed and reviewed draft language, and in some cases provided "approval." *See* ECF 93, at 14-24. Under *Janus*, however, it is "[f]inal control"—not "review and

2

approv[al]"—that determines whether the defendant made a statement. *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 103-04 (2d Cir. 2022).

When viewed under the correct legal standard, the relevant evidence is undisputed. CBOE's witness confirmed that it was "ultimately CBOE that had the final decision about what to say" in the submissions to the CFTC. ECF No. 109-17 (Reinstein Tr. 157:15-22); see also ECF No. 100-10 (Reinstein Tr. 159:12-23) (explaining that CBOE "vetted" its submissions with Gemini, but had "ultimate authority to submit" them to the CFTC). Gemini's witnesses agreed with that understanding, *see, e.g.*, ECF No. 83-13 (C. Winklevoss Tr. 528:16-23), and the CFTC's own Deputy Director for the Division of Market Oversight acknowledged that CBOE "ha[d] the ultimate responsibility for the content of the self-certification," ECF No. 109-57 (Kuserk Tr. 59:21-60:1, 60:7).

In short, reversal on the *Janus* question would require that summary judgment be granted in Gemini's favor as to the 80% of the at-issue statements that were the subject of Gemini's motion. Moreover, as the CFTC concedes (Opp. 11), the jury would need to find whether Gemini was the maker of the remaining at-issue statements that were not covered by Gemini's motion. The *Janus* issue is thus "controlling" in the sense that reversal of this Court's decision "could significantly affect the conduct of the action," by substantially altering the scope of the upcoming trial. *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020).

## 2. There Are Substantial Grounds For Difference Of Opinion With This Court's Resolution Of The *Janus* Issue

The CFTC also has no persuasive response to Gemini's showing that there are substantial grounds for difference of opinion with this Court's conclusion that *Janus* does not apply to Section 6(c)(2). *See* Opening Memo. 9-12. On that issue, the CFTC accuses Gemini of applying the wrong "legal standard," Opp. 13, but the CFTC's own articulation of the standard is identical to Gemini's:

A "substantial ground for difference of opinion" means that there is "a genuine doubt as to whether the district court applied the correct legal standard." *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008). Such a "genuine doubt" exists when "the issue is particularly difficult and of first impression for the Second Circuit." *Id.* (quoting *In re Lloyd's Am. Trust Funds Litig.*, 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997)); *see also* Opening Memo. 9; Opp. 12-13.

That standard is readily satisfied here. Indeed, the CFTC is constrained to acknowledge (albeit with considerable understatement) that the *Janus* question is "arguably one of first impression." Opp. 13. Moreover, the CFTC is flatly wrong that this is an issue of first impression only "because no court has ever extended *Janus* to impose its narrow holding involving SEC Rule 10b-5 onto Section 6(c)(2)." Opp. 14. In fact, the CFTC has never identified *any other case* in which it even advanced its current understanding of Section 6(c)(2), under which liability may be imposed not only for statements that were made *to* the CFTC—as the text of Section 6(c)(2) provides—but also for statements made within the CFTC's regulatory jurisdiction. That is the sense in which the *Janus* issue is one of first impression, which powerfully reinforces the appropriateness of interlocutory review. *See, e.g.*, *Consub Delaware*, 476 F. Supp. 2d at 309; *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 552 (S.D.N.Y. 2013).[1]

At the same time, the CFTC blinks reality in contending (Opp. 12-16) that the *Janus* issue is not, at a minimum, a difficult one. For starters, the CFTC inexplicably discounts this Court's *own statements* that it found the *Janus* issue "difficult" and that it had "second thoughts" regarding

---

[1] The CFTC is thus wrong to suggest (Opp. 16) that this Court joined "other courts that have interpreted Section 6(c)(2) and similar statutes prohibiting false statements to the government" to cover statements that were not made directly to the CFTC. No other case addressing Section 6(c)(2) has ever adopted that position.

its ruling. The CFTC pretends that "[t]hese statements only evince that the Court made its rulings with great deliberation." Opp. 16 n.4. But that is simply not what the Court said.

The CFTC's defense of the merits of this Court's ruling also fails to overcome Gemini's showing. The CFTC reiterates its argument (Opp. 14-15) that Section 6(c)(2) liability can be grounded in cases decided under 18 U.S.C. § 1001, which hold that a false statement need not have been made to a government agency in order to subject the defendant to criminal liability. But the CFTC's cases do not demonstrate that Section 6(c)(2) is "analogous" (Opp. 14) to Section 1001 for all purposes. One case was a settled consent order that contained no analysis of Section 1001 whatsoever. *See CFTC v. Arista LLC*, 2013 WL 6978529, at *7, *13. (S.D.N.Y. Dec. 3, 2013). The other two looked to precedent decided under Section 1001 to help interpret elements that Section 6(c)(2) indisputably shares with Section 1001. *See CFTC v. eFloorTrade, LLC*, 2018 WL 10625588, at *8 (S.D.N.Y. Sept. 21, 2018) (materiality); *CFTC v. Gramalegui*, 2018 WL 4610953, at *24 (D. Colo. Sept. 26, 2018) (falsity and materiality). As Gemini has explained (Opening Memo. 12), that approach does not assist the CFTC here, because Section 1001's language is markedly different from Section 6(c)(2) on the relevant issue. Section 6(c)(2) applies only when a defendant "make[s] any false or misleading statement of a material fact *to the Commission*," 7 U.S.C. § 9(2) (emphasis added), whereas Section 1001(a) criminalizes false statements "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States," 18 U.S.C. § 1001(a). Of course, if Congress had imported similar language into Section 6(c)(2)—for example, prohibiting false or misleading statements "made in any matter within the jurisdiction of the Commission"—then the CFTC's analogy to Section 1001 would make logical sense. But Congress selected narrower language, and that decision must be given effect.

5

The CFTC seeks to bolster its reading of Section 6(c)(2) by invoking (Opp. 15) the notion that the CEA is a "remedial" statute that should receive a "broad[]" construction. As the Supreme Court has emphasized, however, it is "error" to treat that proposition "as a substitute for a conclusion grounded in [a] statute's text and structure." *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014). "After all, almost every statute might be described as remedial in the sense that all statutes are designed to remedy some problem." *Id.* Moreover, reasoning from a statute's assertedly "remedial" purpose inevitably produces overbroad interpretations, given that "no legislation pursues its purposes at all costs." *Id.* (quoting *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) (per curiam)). For "remedial" provisions just as much as other enactments, therefore, "Congressional intent is discerned primarily from the statutory text." *Id.*; *see also* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 364 (2012) (rejecting "[t]he false notion that remedial statutes should be liberally construed" as a "formulation that needlessly invites judicial lawmaking, and explaining that "a fair reading is all that is required").

Finally, the CFTC incorrectly contends (Opp. 15-16) that its reading of Section 6(c)(2) can be squared with the separate aiding-and-abetting provision in Section 13c(a) of the CEA, which imposes liability on "[a]ny person . . . who willfully *causes* an act to be done or omitted which if directly performed or omitted by him or another would be a violation of the provisions of this chapter." 7 U.S.C. § 13c(a) (emphasis added). As Gemini has explained (Opening Memo. 10-11), Section 13c(a)'s specific use of the word "cause"—and its absence in Section 6(c)(2)— demonstrates that "causing" a false statement is *not* actionable under Section 6(c)(2). The CFTC's generalized response that the same act may violate multiple provisions of the law is thus unresponsive to Gemini's point.

### 3.    An Immediate Appeal Will Materially Advance This Litigation

The CFTC agrees (Opp. 17) that an immediate appeal would "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), "if [the] appeal promises to advance the time for trial or *to shorten the time required for that trial*." *Tantaros*, 465 F. Supp. 3d at 389 (emphasis added) (citation omitted). That standard is satisfied here because a successful appeal would result in judgment in Gemini's favor on approximately 80% of the at-issue statements, thereby substantially streamlining the issues and evidence that must be presented at trial. *See* Opening Memo. 12-14.

In response, the CFTC principally contends (Opp. 17-18) that reversal would not materially narrow the trial because the jury would still need to determine whether Gemini was the maker of all 31 written statements under the *Janus* standard. As we have explained, however, that contention is incorrect. *See* pp. 1-3, *supra*. Under the correct legal standard, there is no material dispute of fact as to the attribution of the statements that were subject to Gemini's motion for summary judgment. If the Second Circuit were to disagree with this Court as to *Janus*, Gemini would be entitled to summary judgment on those statements—and they would be excluded entirely from the upcoming trial.

The CFTC separately contends (Opp. 18) that trial would not be materially streamlined because Gemini did not move for summary judgment as to all of the written statements, and that some of those statements as to which trial must proceed in any event are "substantially similar" to ones covered by Gemini's motion. But the CFTC fails to appreciate that each individual statement that must be considered at trial will require incremental time and impose additional burden, as the parties must present documentary evidence and testimony to allow the jury to understand the statement and its context. Moreover, the CFTC does not contest Gemini's showing that granting summary judgment to Gemini on the attribution question would entirely eliminate the need for

trial on one of the CFTC's categories of alleged misstatements (volume and liquidity). *See* Opening Memo. 2. Appellate reversal would thus streamline the trial proceedings in significant part—thereby conserving the resources of the parties and the Court and, perhaps most importantly, minimizing the imposition on the members of the jury who will otherwise be asked to give up a month of their time. *See* 7/30/2024 Tr. 339 (the Court expressing its desire "to tell the jury . . . when we come up to it, that the trial is estimated to last less than a month").

The CFTC also fails to acknowledge that an immediate appeal would promote efficiency by "eliminat[ing] the possibility of a time-consuming and expensive retrial" if Gemini were to prevail on appeal from a final judgment in this case. *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 176 (S.D.N.Y. 1987); *see also, e.g.*, *Dalie v. Pulte Home Corp.*, 636 F. Supp. 2d 1025, 1030 (E.D. Cal. 2009).[2] Of course, if a retrial were to be required—which is a meaningful risk here, given the substantial arguments Gemini has raised in opposition to the Court's *Janus* ruling—that would also significantly delay the ultimate resolution of this litigation.

Finally, there is no merit to the CFTC's professed concern (Opp. 17) that an interlocutory appeal would "indefinitely delay" this case. Trial is not scheduled to begin until January 2025, and although it is unlikely that an appeal in the Second Circuit would be briefed, argued, and decided before then, it is also unlikely that an appeal would introduce significant incremental delay. To the contrary, if the Second Circuit were to accept interlocutory review, it would presumably seek to

---

[2] The CFTC seeks to dismiss *Telectronics* in a footnote, *see* Opp. 21 n.6, but offers no persuasive response to the common-sense proposition that an interlocutory appeal can "eliminat[e] the possibility of a time-consuming and expensive retrial," Opening Memo. 13 (quoting *Telectronics*, 690 F. Supp. at 176). That proposition is true regardless of whether the retrial is occasioned by disqualification of counsel (as in *Telectronics*) or by an error in resolving the parties' motions for summary judgment (as Gemini has argued here). Unsurprisingly, the CFTC offers no authority for the proposition that repeating a month-long jury trial is cheap and easy so long as the same counsel are available.

resolve the appeal on a reasonably expedited timeline, such that any delay from the appeal would be modest. The CFTC's complaints of delay also ring particularly hollow given that the events underlying this litigation occurred in 2017 and the CFTC did not file its complaint until June 2022. Moreover, the primary focus of this litigation is retrospective monetary relief; although the CFTC's complaint includes a request for an injunction, the Bitcoin Futures Contract at issue here was discontinued in 2018, so that request is largely irrelevant. The CFTC thus fails to identify any exigency that would outweigh the significant benefits of receiving an appellate decision from the Second Circuit before trial begins.

### 4. The Court Should Certify Its Order Denying Gemini's Motion For Summary Judgment

The CFTC also argues (Opp. 19-20) that the Court should decline to certify its order denying Gemini's motion for partial summary judgment on the *Janus* question. For the most part, that argument rests on the same mistaken premises as the CFTC's opposition to certification of the *Janus* question more broadly, and thus fails for the reasons explained above. The CFTC adds only two brief points that are specific to Gemini's motion for partial summary judgment, both of which are insubstantial.

First, the CFTC faults (Opp. 19) Gemini for supposedly waiting too long after the Court's June 13, 2024, denial of its motion to seek certification. But the Court's June 13 Order denied Gemini's motion for partial summary judgment based on the Court's conclusion that "questions of fact" needed to be resolved in order to determine whether Gemini made the statements covered by the motion. ECF No. 115. It was not until the recent hearing on summary judgment that the Court announced its conclusion that *Janus*'s understanding of what it means to "make" a statement does not apply to Section 6(c)(2). That *legal* conclusion—which Gemini respectfully submits is mistaken—is the primary subject of Gemini's request for certification. Gemini alerted the Court

of its intent to seek certification during the summary judgment hearing itself, and filed its motion requesting certification promptly after the completion of that hearing—even before this Court has issued its contemplated opinion "further discuss[ing]" its rulings. 7/30/2024 Tr. 222. The CFTC's contention that Gemini has unduly delayed in seeking certification is therefore baseless.

Second, the CFTC suggests that certification is unwarranted because "courts 'frown[] upon allowing an interlocutory appeal of a denial of summary judgment' and 'prefer to let the trial resolve the outstanding issues.'" Opp. 19 (quoting *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 275 (S.D.N.Y. 2009)). That suggestion is baffling: As the CFTC must understand, because the Court has granted summary judgment *in the CFTC's favor* on the *Janus* question, there will be *no trial at all* to "resolve the outstanding issues," *Mills*, 771 F. Supp. 2d at 275, on that question. Thus, even if there were some *general* reluctance to certify orders denying a motion for summary judgment, it would be entirely inapplicable here.[3]

**B.    The Opportunity To Obtain Additional Guidance From The Court Of Appeals Also Counsels In Favor Of Certification**

The CFTC does not dispute that interlocutory review of the *Janus* question will also permit the Second Circuit to review this Court's grant of summary judgment on "the prefunding and related cost of capital statements" prior to trial. Opp. 20; *see also Yamaha Motor Corp. v. Calhoun*,

---

[3]    If anything, the CFTC's invocation of *Mills* only underscores the opportunism underlying the CFTC's complaint about the timing of Gemini's certification request. As noted above, this Court's June 13 Order denied Gemini's motion based on the Court's conclusion that "questions of fact" precluded summary judgment. ECF No. 115. If the Court had adhered to that conclusion, it would have required denying the CFTC's motion for summary judgment on the *Janus* issue, at least insofar as that motion addressed the same statements covered by Gemini's motion. Such a decision would have placed the parties in precisely the scenario described in *Mills*, where trial could potentially "resolve the outstanding issues," 771 F. Supp. 2d at 275, in a way that would obviate the need for appellate review. Because it did not become clear that no such trial would occur here until the Court announced its conclusion on the CFTC's summary judgment motion, Gemini cannot be faulted for not pursuing certification earlier.

516 U.S. 199, 205 (1996). The CFTC is wrong to dismiss those significant additional benefits of interlocutory review as "extraneous and irrelevant." Opp. 20.

The CFTC begins by attacking a strawman, announcing that Gemini "implicitly concedes it cannot satisfy the burden . . . for interlocutory appeal under Section 1292(b)" with respect to these additional issues. Opp. 20. Gemini has never contended that these additional issues would independently warrant interlocutory review, but that hardly diminishes the value of appellate guidance on a huge swath of the case as to which the Court has definitively ruled in the CFTC's favor. More telling is the CFTC's inability to dispute that these issues would be subject to appeal were this case to proceed to trial, and the absence of any reason why it would not be beneficial to this Court and the case generally to have clarity from the Second Circuit as to whether this Court's disposition of these issues *as a matter of law* is correct. The CFTC may not *want* that answer now, but that does not mean it would not be helpful to have it sooner rather than later.

Moreover, the CFTC's single-sentence defense of the Court's ruling does not justify the CFTC's purported confidence in the outcome of an appeal. The CFTC asserts that Gemini's opposition to summary judgment on these issues "rested primarily on 'post hoc, conclusory, self-serving statements,'" Opp. 21 (quoting *CFTC v. eFloorTrade*, 2018 WL 4610953, at *9), and faults Gemini for submitting "evidence from its own expert and an after-the-fact declaration by Tyler Winklevoss," *id.* That characterization of the summary judgment record is incorrect, but even if it were accurate, the Second Circuit has repeatedly held that evidence cannot be discounted merely because it is labeled "self-serving." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 (2d Cir. 2022); *St. Pierre v. Dyer*, 208 F.3d 394, 405 (2d Cir. 2000); *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). And we cannot imagine any basis for faulting a party that relies on "evidence from its own expert"; that is the whole point of expert testimony.

11

The CFTC also repeats (Opp. 21) its generic concerns about "delay" from an interlocutory appeal. As we have explained, however, discovery is complete and trial is still more than four months away, so any delay from an interlocutory appeal would be modest. *See* pp. 8-9, *supra*. Likewise, the CFTC does not suggest (nor could it) that consideration of these additional issues on interlocutory appeal would itself add any *incremental* delay.

Finally, the CFTC dismisses (Opp. 22) the significant practical concerns and unfairness that would result from proceeding to trial in light of the Court's prefunding decision. But the CFTC's out-of-circuit cases holding that the court may determine the penalty amount under Section 6(c)(2) are obviously not binding here. And the persuasive value of those cases is limited because they ultimately rest on reasoning from *Tull v. United States*, 481 U.S. 412 (1987), that the Supreme Court itself has subsequently characterized as "arguably dicta" and "at least in tension" with foundational Seventh Amendment principles. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998); *see CFTC v. Capital BLU Mgmt., LLC*, 2010 WL 4942720, at *1 (M.D. Fla. Nov. 29, 2010) (following *Tull*); *CFTC v. Monex Credit Co.*, 2021 WL 8776702, at *2-3 (C.D. Cal. Dec. 20, 2021) (same). Moreover, although Gemini trusts that the Court and the parties would seek to minimize the prejudice to Gemini at trial through the use of limiting instructions, there are limits to a jury's ability to understand and follow those instructions. *Cf. Bruton v. United States*, 391 U.S. 123, 135 (1968). The CFTC has no real answer to Gemini's practical concern that instructing the jury that Gemini has in fact made 15 false or misleading to the CFTC would pose a considerable risk of prejudicing the jury as it must determine whether Gemini is liable for the remaining statements (some of which are parts of the very same submissions that Court has determined include material falsehoods). Interlocutory review would eliminate that unacceptable risk of prejudice.

### C.    A Stay Is Warranted If The Court Grants Certification

The CFTC argues that, if this Court certifies its summary judgment orders for interlocutory appeal, it should nonetheless decline to stay further proceedings pending the result of that appeal. *See* Opp. 23-25. This Court should reject that quixotic suggestion, which would frustrate the practical benefits that justify certification in the first place. *See* Opening Memo. 16-17. It should accordingly be rejected.

The CFTC appears to contend (Opp. 23-24) that evaluating Gemini's stay request requires a rigid application of the four-factor test articulated in *Hilton v. Braunskill*, 481 U.S. 770 (1987). To be sure, the traditional stay factors can provide useful guidance, particularly in cases that require an appellate court to decide whether to stay further proceedings before a district court. *See, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). But a request for a stay of further proceedings addressed to the district court itself invokes that court's "broad discretion to manage its docket." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012); *see also Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Such a request therefore entails a significant degree of flexibility to address practical considerations, which is precisely why courts may choose to stay further litigation pending appeal notwithstanding the usual rule that the expense of litigation itself is not irreparable injury. *See, e.g.*, *Kinkead v. Humana, Inc.*, 2016 U.S. Dist. LEXIS 143000, at *9-10 (D. Conn. Oct. 13, 2016) (recognizing that "litigation costs do not rise to the level of irreparable injury," but granting stay because it would "be in all parties' interests—as well as in the public interest—to resolve this dispositive [certified] question before the parties and the Court expend additional resources").

Turning to those practical considerations, the CFTC ultimately agrees (Opp. 25 & n.8) that, even if appellate reversal would not dispose of the entire case, a stay is warranted when "there is sufficient overlap to threaten extensive duplication later or loss of the benefits of the appeal." 16

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3929 (3d ed. 2024). Contrary to the CFTC's submission, that standard is readily satisfied here: if the Second Circuit accepts the certified appeal and agrees with Gemini, that decision would mean that some 80% of the at-issue statements should be excluded from the upcoming trial. *See* pp. 1-3, *supra*. A decision in Gemini's favor may also demonstrate that this Court should not have granted summary judgment as to the prefunding statements, and that the jury must hear evidence and make findings as to liability on these statements. *See* pp. 10-12, *supra*. To state the obvious, if the case were to proceed to trial *before* the Second Circuit reaches those conclusions, the scope of the trial could not be adjusted to reflect the Second Circuit's guidance—thereby depriving the parties and this Court of the principal benefit of an interlocutory appeal. *See also Kinkead*, 2016 U.S. Dist. LEXIS 143000, at *10 (granting a stay based on court's conclusion that "the motivation underlying my decision to grant certification—the desire to resolve this issue before the parties engage in potentially unnecessary litigation—would be undermined without an accompanying stay"). A stay pending appeal is therefore warranted.[4]

\* \* \* \* \*

For the foregoing reasons and those stated in our opening memorandum, the Court should certify its summary judgment orders for interlocutory appeal under 28 U.S.C. § 1292(b) and should

---

[4]    The CFTC vaguely references (Opp. 24-25) "pre-trial preparations" and "pre-trial work related to the claims that are set for the January 2025 trial," but it does not identify any specific tasks that could be efficiently accomplished during the pendency of an interlocutory appeal. To be clear, however, if the CFTC were to identify any such pre-trial tasks—*i.e.*, ones that do not depend on the scope of the upcoming trial—Gemini would have no objection to them proceeding during the pendency of an appeal. Gemini has no interest in undue delay of the upcoming trial, because it looks forward to that opportunity to demonstrate the legal and factual mistakes underlying the CFTC's case.

14

issue an accompanying stay.

Dated:  New York, New York            BAUGHMAN KROUP BOSSE PLLC
        August 29, 2024

                                   By: /s/John F. Baughman
                                       John F. Baughman
                                       Daniel A. Schwartz
                                       Elizabeth J. Lee
                                       Ernest E. Butner IV
                                       One Liberty Plaza – 46th FL
                                       New York, NY 10006
                                       (212) 548-3212
                                       jbaughman@bkbfirm.com
                                       dschwartz@bkbfirm.com
                                       elee@bkbfirm.com
                                       ebutner@bkbfirm.com

                                       *Attorneys for Defendant*
                                       *Gemini Trust Company, LLC*