**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COMMODITY FUTURES TRADING
COMMISSION,

                              Plaintiff,

            v.

GEMINI TRUST COMPANY, LLC,

                              Defendant.

No. 22-cv-4563 (AKH)

Hon. Alvin K. Hellerstein

**MEMORANDUM OF LAW IN SUPPORT OF**
**GEMINI'S AMENDED MOTION *IN LIMINE* NO. 1**

TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.    THE CFTC MAY NOT OFFER AT TRIAL EVIDENCE THAT IT WITHHELD
      ON THE BASIS OF RELEVANCE OR PRIVILEGE OR ARGUMENTS BASED
      ON THAT EVIDENCE ....................................................................................... 2

II.   THE CFTC SHOULD BE PRECLUDED FROM OFFERING EVIDENCE
      AND/OR ARGUMENT AS TO THE FIVE ISSUES BECAUSE IT WITHHELD
      DISCOVERY ON THEM BY ASSERTING THEY WERE IRRELEVANT
      AND PRIVILEGED ............................................................................................ 5

      A.    The CFTC Should be Precluded from Offering Argument or Evidence
            About Why It Asked Certain Questions Before the Self-Certification
            (Issue 1) ................................................................................................... 5

      B.    The CFTC's Witnesses Should be Precluded from Testifying that Self-
            Crossing on the Gemini Exchange Was Not Disclosed (Issue 2) ........... 8

      C.    The CFTC Should be Precluded from Offering Argument or Evidence
            About Its Review of Self-Certifications Beyond the Plain Text of
            Appendix C (Issue 3) ............................................................................. 12

      D.    The CFTC's Witnesses Should be Precluded from Testifying About Any
            Decisions the Commission Made or Could Have Made in Connection
            With the Self-Certification (Issue 4) ..................................................... 16

      E.    The CFTC's Witnesses Should be Precluded from Testifying that Any
            Statements Made in Connection with the Self-Certification Were False or
            Misleading (Issue 5) .............................................................................. 17

CONCLUSION ........................................................................................................ 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arista Records LLC v. Lime Group LLC.*,
 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) ....................................................................4

*E.G.I. Gem Lab Ltd. v. Gem Quality Institute, Inc.*,
 90 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2000),
 *aff'd*, 4 F. App'x 81 (2d Cir. 2001) .................................................................................3

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
 2019 WL 1649983 (S.D.N.Y. Mar. 28, 2019) ..................................................................4

*Indep. Prods. Corp. v. Loew's, Inc.*,
 22 F.R.D. 266 (S.D.N.Y. 1958) .......................................................................................4

*John Doe Co. v. United States*,
 350 F.3d 299 (2d Cir. 2003) ............................................................................................3

*New Hampshire v. Maine*,
 532 U.S. 742 (2001) ........................................................................................................3

*SEC v. Benson*,
 657 F. Supp. 1122 (S.D.N.Y. 1987) ................................................................................4

*SEC v. Cymaticolor Corp.*,
 106 F.R.D. 545 (S.D.N.Y. 1985) .....................................................................................4

*SEC v. Nat'l Student Mktg. Corp.*,
 1974 WL 415 (D.D.C. June 25, 1974) .............................................................................5

*In re Sunshine Sec. Litig.*,
 109 B.R. 658 (E.D. Pa. 1990) ..........................................................................................4

*Troublé v. Wet Seal, Inc.*,
 179 F. Supp. 2d 291 (S.D.N.Y. 2001) ..............................................................................4

*United States v. Litvak*,
 808 F.3d 160 (2d Cir. 2015) ..........................................................................................16

*Weiss v. Chrysler Motors Corp.*,
 515 F.2d 449 (2d Cir. 1975) ............................................................................................3

**Rules & Statutes**

Fed. R. Evid. 402................................................................................................................3

Gemini Trust Company, LLC ("Gemini") respectfully submits this memorandum of law in support of its Amended Motion *in Limine* No. 1,[1] which seeks to preclude the CFTC[2] from arguing and/or introducing evidence on five key issues:

- **Issue 1:** Why the CFTC asked certain questions before the Self-Certification.

- **Issue 2:** Whether self-crossing on the Gemini Exchange was disclosed to the CFTC before the Self-Certification was filed.

- **Issue 3:** The CFTC's review of self-certifications, generally, and the Self-Certification, specifically, for compliance with CFTC Core Principle 3.

- **Issue 4:** What decisions the Commission made or could have made in connection with the Self-Certification.

- **Issue 5:** What statements, if any, made in connection with the Self-Certification were false or misleading.

Collectively, Gemini refers to these as the "Five Issues."

## INTRODUCTION

The jury in this case must decide, *inter alia*, whether three categories of statements were materially false or misleading. For each of those three categories—self-crossing, bespoke fee agreements, and the trade volume and liquidity on the Gemini Exchange—Gemini has substantial defenses, including that the relevant information was provided to the CFTC and, in all events, was immaterial. During discovery, Gemini sought discovery from the CFTC that is relevant to these defenses. When the CFTC refused to provide the requested discovery on the grounds that it was

---

[1]  On June 7, 2024, Gemini filed a motion *in limine* titled Motion *in Limine* No. 1 seeking an order precluding the CFTC from offering evidence or argument on six issues. Dkt. 111. Gemini withdrew that motion at argument on the CFTC's motion for partial summary judgment. Decl. of John F. Baughman ("Baughman Decl.") ¶ 14. Gemini has styled this motion as Amended Motion *in Limine* No. 1 because it seeks similar relief—an order of preclusion preventing the CFTC from offering certain evidence and argument at trial—but, in light of the Court's summary judgment order, does so with respect to a different set of issues.

[2]  "CFTC" and "Commission" refer to the Commodity Futures Trading Commission. "Self-Certification" refers to the December 1, 2017 self-certification filed by Cboe Futures Exchange ("Cboe" or "CFE"). "Bitcoin Futures Contract" refers to the product that was the subject of the Self-Certification. "Ex." refers to exhibits to the Declaration of John F. Baughman filed in support of this motion.

irrelevant and privileged, Gemini repeatedly moved to compel production. Ultimately, the Court sided with the CFTC and rejected Gemini's motions.

Gemini brings this motion to hold the CFTC to its prior positions and to enforce the Court's previous rulings. The Court should not permit the CFTC to do an about-face at trial and rely on the very evidence it argued so vigorously to withhold. Nevertheless, the CFTC's actions throughout this case—including during depositions and on summary judgment—indicate it intends to do precisely that. The CFTC's flip-flop presents the exact situation Gemini has worked to avoid, invites trial by surprise, and leaves Gemini hamstrung in its ability to rebut the CFTC's claims. To avoid this unfair prejudice, the Court should hold that the CFTC is bound by its prior arguments and privilege assertions and is therefore precluded from arguing and/or offering any evidence on the Five Issues.

**ARGUMENT**

## I.     The CFTC May Not Offer at Trial Evidence that it Withheld on the Basis of Relevance or Privilege or Arguments Based on that Evidence

It is well-settled in this Circuit that a party cannot take one position during discovery in order to avoid providing potentially relevant evidence and then later rely on the very evidence it previously withheld. There are two bases for this well-established prohibition.

*First*, the doctrine of judicial estoppel bars a party from taking one position early in a case and then, having prevailed, taking a different position later. As the Supreme Court has explained:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. *This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.*

2

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).[3] Here, the CFTC successfully asserted that much of the discovery addressed in this motion was not relevant to the claims and defenses in this case. It is axiomatic that "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Thus, by necessity, the CFTC's argument that it need not produce evidence because it was not relevant bars any subsequent attempt to introduce that same evidence at trial.

*Second*, a party that asserts privilege during discovery and withholds evidence on that basis cannot later introduce evidence on the issues it previously declared were privileged. Indeed, the Second Circuit has made clear that fairness considerations—including "the unfairness to the adversary of having to defend against the privilege holder's claim without access to pertinent privileged materials that might refute the claim" and the risk that "some independent decisionmaker will accept [the] representations [of the party asserting the privilege] without . . . having adequate opportunity to rebut them," *John Doe Co. v. United States*, 350 F.3d 299, 304–05 (2d Cir. 2003) (emphasis omitted)—prohibit a party from relying at trial on evidence it has not disclosed.

One way courts enforce this rule is through orders precluding parties from offering evidence at trial that was not produced during discovery. In *E.G.I. Gem Lab Ltd. v. Gem Quality Institute, Inc.*, the Second Circuit affirmed an order rejecting the defendant's attempt to assert an advice of counsel defense at trial because "he asserted the attorney-client privilege at his deposition to prevent inquiry into his communications with counsel." 90 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2000), *aff'd*, 4 F. App'x 81 (2d Cir. 2001). In *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 455–57 (2d Cir. 1975), for example, the Second Circuit overturned a jury verdict based in

---

[3]    Unless otherwise indicated, all quotes are cleaned up, all emphasis is added, and all internal citations are omitted.

part on the trial court's decision to permit defendant to introduce evidence as to a key issue that it had not produced during discovery.

Trial court decisions in this district confirm this rule. For example, in *Arista Records LLC v. Lime Group LLC*, the court granted a motion *in limine* to preclude defendant from introducing evidence in support of its advice of counsel defense because it did not "make a full disclosure [of those communications] during discovery." 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011). As the court explained, "a party may not assert that it believed its conduct was lawful, and simultaneously claim privilege to block inquiry into the basis for the party's state of mind or belief." *Id.* The court reached a similar conclusion in *Troublé v. Wet Seal, Inc.*, where defendant waived its right to assert an advice of counsel defense by invoking the attorney-client privilege to avoid compliance with plaintiff's discovery requests. 179 F. Supp. 2d 291, 303–04 (S.D.N.Y. 2001). "A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Id.* at 304.[4] Put simply, Gemini "ought not be denied a possible defense because [the CFTC] seek to invoke an alleged privilege." *Indep. Prods. Corp. v. Loew's, Inc.*, 22 F.R.D. 266, 277 (S.D.N.Y. 1958).

A preclusion order is particularly appropriate here, where the CFTC has invoked a special governmental privilege to avoid providing relevant discovery. "As a plaintiff, the government has an obligation to be forthcoming with information it possesses which may assist defendants in preparing for trial." *In re Sunshine Sec. Litig.*, 109 B.R. 658, 666 (E.D. Pa. 1990). Accordingly, it

---

[4] *See also, e.g.*, *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 2019 WL 1649983, at *18 (S.D.N.Y. Mar. 28, 2019) (court "decline[d] to consider" evidence submitted on summary judgment where submitting party asserted privilege to avoid providing discovery on subject); *SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 549–50 (S.D.N.Y. 1985) (granting "total preclusion order" prohibiting defendant from introducing any evidence on "any matter" as to which it had asserted privilege); *SEC v. Benson*, 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987) (explaining court entered preclusion order because "it would be abuse of the Fifth Amendment privilege to allow a civil litigant to use it to offer proofs while denying the adversary discovery of his contentions").

is "not unreasonable to draw from the now classic maxim of Judge Learned Hand in *United States v. Andolsheck*, 142 F.2d 503, 506 (2d Cir. 1944) concerning the government's obligation when it assumes the prosecutorial role: 'The government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully.'" *SEC v. Nat'l Student Mktg. Corp.*, 1974 WL 415, at *7 (D.D.C. June 25, 1974).

## II.    The CFTC Should Be Precluded from Offering Evidence and/or Argument as to the Five Issues Because It Withheld Discovery on Them by Asserting They Were Irrelevant and Privileged

During discovery, the CFTC successfully argued that numerous categories of information Gemini sought were irrelevant, privileged, or both and withheld them on that basis. The CFTC should not be permitted to change course now. The Court should preclude the CFTC from offering evidence and/or argument as to these issues.

### A.    The CFTC Should be Precluded from Offering Argument or Evidence About Why It Asked Certain Questions Before the Self-Certification (Issue 1)

On August 25, 2017, the Cboe Futures Exchange ("CFE") submitted answers (some prepared with Gemini's assistance) to questions posed by the CFTC (the "August 25 Submission"). The answers contained in that submission include two of the purportedly false statements that will be at issue at trial. Those questions and answers are included below:

**August 25 Submission – Question 8 (Statement 23)**[5]

> **8. Could you please provide more detail on the market makers rebate program? How many market makers are signed up? How much liquidity are they providing to the auctions?**
>
> We have implemented a trading fee program which is available to all of our market participants; we have no specifically defined market maker program. In summary, fees are typically charged for liquidity-taking trades, but these fees can be reduced through high trading volumes and maintaining a balance between buy and sell trades; and fees can be charged for liquidity-making trades, but rebates can be earned in a similar way. The details are available at https://gemini.com/fee-schedule/. In a typical month, between 5 and 10 market participants have earned liquidity-making rebates, and these participants typically make up approximately 90% of volume in the auctions.

Dkt. 109-21 at 9.

**August 25 Submission – Question 10 (Statement 24)**

> **10. Could an auction occur where there is one participant trading with themselves?**
>
> No, we have instituted self-trade prevention.

*Id.*

During the deposition of the CFTC's witnesses, Christopher Goodman and Gregory Kuserk, Gemini attempted to obtain testimony about why the CFTC asked these questions and did not ask others. This testimony was important, as the answers bear on whether the alleged false statements were material. The CFTC, however, asserted privilege and instructed its witnesses not to answer Gemini's questions. Mr. Goodman, for example, was asked the following questions and given the following instructions:

> Q.    Do you recall why you asked Question 10 to [the August 25 Submission]?
>
> CFTC COUNSEL: Objection on the basis of the deliberative process privilege. And an instruction not to answer
>
> Q.    Do you recall why you asked Question 8 to the [the August 25 Submission]?

---

[5]    As used herein, all statement numbers refer to the numbers the CFTC assigned to the at-issue statements in its brief in support of its summary judgment motion. *See* Dkt. 99 at Exhibit A.

CFTC COUNSEL: Same objection. Same instruction.

Ex. 2 at 212:11–19. Mr. Kuserk received a similar instruction:

> Q.    About the rebates on -- that was addressed on question number 8, and answers to question number 8, you said that you did not ask any questions about market maker[] rebate program to Gemini. Why didn't you ask any questions?
>
> CFTC COUNSEL: So that's -- I'm going to instruct the witness not to answer based on the deliberative process privilege.

Ex. 6 at 181:22–182:8. As a result of the CFTC's instructions, there is no evidence in the record

as to *why* the CFTC asked these questions.

Notwithstanding these instructions, the CFTC argued that these questions are evidence that

bespoke rebates and self-crossing were material. For example, the CFTC made the following

assertions in connection with its summary judgment motion:

- "*[T]he CFTC's follow-up questions during the product certification dispel any doubt that Gemini's market maker trading fee rebates were a material part of the CFTC's inquiry* into whether the proposed futures contract, and its cash market settlement price (the Gemini auction), were readily susceptible to manipulation." Dkt. 99 at 43.[6]

- "[A]fter Gemini represented it had a market maker rebate program on July 25, 2017, *the CFTC inquired directly, in writing,* for more information about Gemini's market maker rebate program . . . . *The CFTC's direct inquiry further substantiates the materiality* of Gemini's rebate practices to the CFTC's review of the product certification." *Id.* at 44.

- "*[I]n response to a question posed by the CFTC* . . . Gemini definitively stated in a written submission, without exception: 'No, we have instituted self-trade prevention.'" *Id.* at 48.

- "When *squarely presented with a question from the CFTC* calling for disclosure of whether self-trading in Gemini's auction was possible, Gemini told the CFTC 'No' when the true answer was 'Yes.'" *Id.* at 50.

---

[6]    All page numbers refer to the page number of the CFTC's brief.

- "*[T]he CFTC's follow-up questions during the product certification confirm the materiality* of Gemini's statements and omissions about self-trading and self-trade prevention." *Id.*

- "*[P]recisely because of the heightened concerns* around self-trading and its ability to distort the cash-settlement price (i.e., Gemini's auction price), *the CFTC specifically inquired*, in writing, about self-trading by asking whether 'an auction could occur where there is one participant trading with themselves' . . . . The CFTC's direct inquiry further substantiates the materiality of self-trading to the CFTC's review of the product certification." *Id.* at 51.

- "The CFTC explicitly asks, could an auction occur where there is one participant trading with themselves? *The CFTC thought it was material enough to ask a specific question about Gemini self-trade prevention capabilities.*" Ex. 5 at 284:14–20.

By making these assertions, the CFTC sought to replace factual testimony from percipient witnesses with lawyer argument about what the relevant evidence would have been. This is inappropriate and contrary to the well-established rule that a party may not use privilege as a sword and shield. Put simply, the CFTC had its opportunity during discovery to disclose *evidence* about why it asked the questions it did about rebates and self-crossing (and did not ask others). Instead, it asserted privilege and instructed Mr. Goodman and Mr. Kuserk not to answer Gemini's questions. The CFTC must be held to its choice. To permit otherwise would be highly prejudicial to Gemini. As *Arista Records*, *Troublé*, and the other cases cited above make clear, preclusion is an appropriate remedy in such circumstances.

The Court should preclude the CFTC from offering argument or soliciting testimony at trial about why it asked the questions it did about self-crossing and rebates.

### B. The CFTC's Witnesses Should be Precluded from Testifying that Self-Crossing on the Gemini Exchange Was Not Disclosed (Issue 2)

One of Gemini's defenses in this case is that trade data submitted to the CFTC months before the Self-Certification disclosed allegedly omitted instances of self-crossing on the Gemini exchange. Specifically, after a meeting between the CFTC, CFE, and Gemini on July 25, 2017,

8

the CFTC asked CFE for the data it used to make a graph showing trade volume on the Gemini exchange that the CFTC now alleges contained false or misleading statements. Ex. 11; Dkt. 78-2; Dkt. 99 at Ex. A (statement 30). CFE provided this data on August 1, 2017. Dkt. 83-4.

Gemini attempted to examine Mr. Goodman and Mr. Kuserk about this data submission during their depositions. Here again, however, the CFTC asserted privilege and instructed its witnesses not to answer Gemini's questions. Mr. Goodman, for example, was asked the following question and received the following instruction:

> Q.    Mr. Goodman, do you recall whether you reviewed or analyzed any of the data contained in tab Data 2 in [the data submission]?
>
> A.    Again, it's highly likely that I would have reviewed this. I do remember looking at the order data. I don't know if I recall this specific spreadsheet per se, but it's very likely that I have looked at this.
>
> Q.    Okay. And the data contained in the Data 2 tab of [the data submission] shows on an auction by auction basis what accounts placed orders in each Gemini auction and which orders were filled on both the buy and sell side for each Gemini auction. Correct?
>
> CFTC COUNSEL: Objection, lacks foundation.
>
> Q.    You can answer.
>
> A.    Yeah, I mean, yeah, it looks like it's -- yeah, it's the price, the quantity, yeah, the order size, and then it looks like what was actually filled.
>
>     . . .
>
> Q.    Do you know if it's possible to identify instances in the data contained on the Data 2 tab of [the data submission] in which the same account was on both the buy and sell side?
>
> (Simultaneous crosstalk.)
>
> CFTC COUNSEL: So I'm going to object on the basis of the deliberative process privilege. And instruct the witness not to answer.
>
> Q.    As you sit here today, Mr. Goodman, can you testify one way or the other as to whether the data provided to the CFTC as reflected in [the data submission] discloses the fact that there had been historic instances in which the same account was on both the buy and sell side of [the auction]?

9

CFTC COUNSEL: Same objection. Same instruction.

Ex. 2 at 198:23–200:17. Mr. Kuserk received a similar instruction:

> Q.    Earlier today we discussed about the meeting on July 25th, 2017, that you
>       attended in person, and we looked at the graph, the data. Remember that?
>
> A.    Right.
>
> Q.    And you said you had questions about the data, and Gemini provided some
>       additional data or information. After receiving that additional data and
>       information, what did you do with that information? Did you analyze the
>       data?
>
> CFTC COUNSEL: So objection as worded under deliberative process privilege,
> and I'm going to instruct the witness not to answer.
>
> Q.    And when you were asking for these additional data and you received this
>       data from Gemini, what were you looking for?
>
> CFTC COUNSEL: Objection. Same instruction.

Ex. 6 at 253:13–254:10.

The CFTC's refusal to provide discovery on this topic extended beyond depositions. On September 12, 2023, Gemini filed a motion to compel answers to these questions. Dkt. 54 at 18; *see also* Dkt. 64 at 16–17. The CFTC opposed this motion, and the Court ruled in the CFTC's favor. Dkts. 70, 71. Subsequently, Gemini propounded interrogatories seeking information about the CFTC's analysis of Gemini trade data, including whether any such analysis uncovered instances of self-crossing. Ex. 8, Interrog. 58–60. The CFTC also refused to answer these interrogatories, asserting they sought "information that is not relevant to the parties' claims or defenses" and is "protected by the deliberative process and/or attorney work product privilege." Ex. 9, Resps. to Interrogs. 58–60.[7] Gemini attempted to compel a substantive response to these interrogatories, but, here again, the CFTC successfully opposed Gemini's efforts.

---

[7]    The CFTC has previously asserted that Gemini somehow erred by not deposing CFTC witnesses on this subject after the Court entered its January 4, 2024 order. *See, e.g.*, Dkt. 78 at 11–12. The CFTC's refusal to answer these interrogatories—and, in particular, its continued assertions that the information requested was irrelevant and

In light of these instructions and objections, the CFTC has blocked Gemini from obtaining any evidence from the CFTC regarding the disclosure of this historic self-crossing. Nevertheless, the CFTC has indicated that it intends to solicit testimony from its witnesses disputing that this self-crossing was disclosed, including in connection with data regarding trade volume on Gemini. For example, the CFTC's examination of Mr. Kuserk included the following question and answer:

> Q.     How about that auction participants were self-trading in general, they didn't disclose that as part of the volume figures that were provided to the CFTC.
>
> GEMINI COUNSEL: Objection to form.
>
> A.     That's correct. That wasn't disclosed.
>
> . . .
>
> Q.     They didn't disclose that the auction figures were achieved because the same auction participants were being filled as both a buyer and a seller in a single Gemini auction?
>
> GEMINI COUNSEL: Objection to form.
>
> A.     That's correct.

Ex. 6 at 294:16–295:9. Mr. Goodman was asked similar questions:

> Q.     Did Gemini disclose to commission staff that the auction trading volume figures it presented to the CFTC was achieved because auction participants were self trading in Gemini auctions?
>
> GEMINI COUNSEL: Objection to the form.
>
> A.     No, that had not been disclosed.
>
> Q.     And then finally on this point, did Gemini disclose to commission staff that the auction trading figures it presented were achieved because the same auction participants were being filled as both a buyer and a seller in a single Gemini auction?
>
> GEMINI COUNSEL: Objection to the form.

---

privileged—provides critical context to Gemini's decision not to pursue those depositions and underscores that the CFTC has chosen to assert privilege rather than provide disclosure.

A.     No, that had not been disclosed.

Ex. 2 at 334:12–335:6.

The CFTC should not be permitted simultaneously to solicit testimony that Gemini did not disclose that self-crossing had historically occurred on its exchange and to block Gemini from showing that testimony is wrong. Indeed, this attempt to have it both ways presents precisely the type of unfairness that the Second Circuit and courts in this district have repeatedly held can and should be remedied by a preclusion order. *Supra* 1–4.

The Court should preclude the CFTC's witnesses from testifying that Gemini did not disclose that self-crossing had occurred on its exchange or disputing that trades between a single account were included in volume information provided to the CFTC.

## C.     The CFTC Should be Precluded from Offering Argument or Evidence About Its Review of Self-Certifications Beyond the Plain Text of Appendix C (Issue 3)

Throughout discovery, Gemini repeatedly sought evidence about what the CFTC typically considers in assessing self-certifications and what information it actually considered in connection with this Self-Certification. For example, Gemini's document requests sought the production of relevant CFTC policies and procedures. Ex. 10, Request 11. After the CFTC objected to this request, Gemini moved to compel the production of these documents. Dkt. 32 at 1–4. In opposition, the CFTC argued that Gemini's request "call[ed] for internal agency documents that would reveal the CFTC's internal deliberations of whether, and how, decisions will be made by the CFTC staff in evaluating self-certifications," *Id.* at 7, and that the CFTC's "internal thinking . . . is completely irrelevant to" whether any alleged false statements are material, Ex. 1 at 9:18–22. The Court agreed and denied Gemini's request. *Id.* at 14:21–25.

During depositions, the CFTC instructed Mr. Goodman and Mr. Kuserk not to answer questions about the CFTC's general processes for reviewing self-certifications, or even what key

terms in CFTC Core Principle 3 mean. Questions the CFTC instructed its witnesses not to answer include the following:

- "Is there a definition of 'manipulation' that the CFTC uses when evaluating compliance with core principle 3?" Ex. 2 at 73:23–74:7.

- "What does it mean for a product to be readily susceptible to manipulation?" Ex. 2 at 75:15–21.

- "When you are evaluating compliance with core principle 3, what do you understand 'readily susceptible to manipulation' to mean?" Ex. 2 at 75:24–76:4.

- "Is susceptible to manipulation different from readily susceptible to manipulation?" Ex. 6 at 86:8–13.

- "What is the difference between susceptible to manipulation and readily susceptible to manipulation?" Ex. 2 at 77:2–7.

The parties continued to litigate over Gemini's attempts to obtain this evidence after depositions concluded. *See, e.g.*, Dkt. 60. These disputes culminated in the CFTC's repeated representation in response to interrogatories that the guidance in Appendix C to the CFTC's Core Principle regulations is the *only* evidence of how the Commission evaluates compliance with Core Principle 3 and what factors it considers. *See* Ex. 9, Resps. to Interrogs. 17, 29–33, 36.

The CFTC similarly resisted Gemini's attempts to obtain discovery about what the CFTC actually considered in connection with CFE's Self-Certification of the Bitcoin Futures Contract. Indeed, the CFTC repeatedly instructed Mr. Goodman and Mr. Kuserk not to answer questions about what they or their colleagues reviewed, discussed, analyzed, or otherwise considered in connection with the Self-Certification. For example, the CFTC instructed its witnesses not to answer the following questions about their review and analysis of the Bitcoin Futures Contract and materials the CFTC received in connection with the Self-Certification:

- "Was the Gemini auction in any way relevant to your assessment of whether the CBOE Bitcoin futures contract complied with core principle 3?" Ex. 2 at 55:6–14.

13

- "[W]hat did the CFTC look into to determine whether or not [the Gemini] exchange[] [was] readily susceptible to manipulation?" Ex. 6 at 88:22–89:10.

- "Did you ever speak with anybody within the CFTC about the fact that between five and ten market participants had earned liquidity making rebates and those participants made up approximately 90 percent of the volume in auction?" Ex. 2 at 217:16–24.

- "Did you ever discuss [the CFE presentation provided in connection with July 25, 2017 meeting] on Bitcoin Futures with anyone at CFTC?" Ex. 6 at 125:20–126:4.

- "[A]fter reviewing [the August 25 Submission], did you discuss this with anyone at the CFTC? Ex. 6 at 182:10–14.

- "What was discussed during the internal meeting concerning the July 25th presentation?" Ex. 2 at 183:22–184:3.

- "Can you tell me, please, what you discussed with Mr. Kuserk and Mr. Leahy regarding the answers contained in [the August 25 Submission]." Ex. 2 at 206:24–207:7.

The CFTC's refusal to provide discovery on these topics also extended beyond depositions. Gemini filed a joint dispute letter on February 8, 2023 and Gemini's September 12, 2023 motion to compel. *See* Dkt. 32 at 7–11; Dkt. 54 at 6–7; Dkt. 64. The CFTC opposed these applications, and the Court ruled in the CFTC's favor. Ex. 1 at 17:6–12; Ex. 7 at 2:20–14:25.

The CFTC also blocked discovery about its understanding of key issues. For example, Gemini sought Rule 30(b)(6) testimony about "[t]he CFTC's understanding of the Pearl Street Loans, Operational Advances, Rebates, and Self-Trading and their purported effect on Gemini's prefunding requirements, or on the trading volume, liquidity, and number of participants in the Bitcoin Auction." Ex. 3, Topic 15. The CFTC objected, asserting that "testimony about the CFTC's subjective understanding or the subjective understanding of CFTC employees . . . is irrelevant and outside the scope of permissible discovery" and that it "call[ed] for testimony protected by the deliberative process privilege, the attorney-client privilege, common interest privilege, investigatory files privilege, [and] the attorney work product doctrine." Ex. 4, Resp. to Topic 15.

14

The Court upheld these objections and the CFTC's objections to other similar topics. Dkt. 70 ¶¶ 3, 10, 15, 20, 21; *see also id.* ¶¶ 28–29 (sustaining objections to Rule 30(b)(6) topics seeking testimony about what the CFTC and/or its employees knew or understood about key issues).

Here again, the CFTC's arguments on summary judgment indicate that it intends to reverse course at trial. Indeed, the CFTC's summary judgment papers are replete with argument about what the CFTC *actually* considered in evaluating compliance with Core Principle 3 and the purported *actual* effect of the alleged false statements on the CFTC's review:

- "As undisputed evidence shows, Gemini's exchange and its auction *were the focal point of the CFTC's review . . . .*" Dkt. 99 at 2.

- "During this product certification process, Gemini was well aware that *the CFTC was focused on* whether the Gemini auction was readily susceptible to manipulation." *Id.* at 9–10.

- "Gemini's wholesale failure to answer the question accurately, and to double down and expand on its false and misleading answer in subsequent submissions to the CFTC, *deprived the CFTC of information necessary for it to determine whether further investigation into self-trading at Gemini was necessary.*" *Id.* at 51.

- "At the very least, the failure to disclose that self-trade prevention was a recent development; that instances of self-trading occurred in the past and were included in the trade data supporting the certification; and that self-trading could still occur in the future *prevented the CFTC from getting a clear picture* of whether the auction operated as a sufficient indicator of the price of the underlying commodity." *Id.* at 52.

The Court should not permit the CFTC to offer evidence or make arguments along these lines at trial. Through its instructions and objections, the CFTC has denied Gemini any meaningful chance to understand what the CFTC generally does when evaluating self-certifications or what the CFTC actually did to evaluate the Self-Certification. Indeed, the only answer the CFTC has provided in response to Gemini's many requests is that Appendix C sets forth the factors the CFTC uses to evaluate compliance with Core Principle 3. Any other information, it has asserted, is privileged and irrelevant. The Court should hold the CFTC to its word.

The Court should bar the CFTC from making any argument or offering or soliciting any evidence—beyond the plain text of Appendix C—about what was important to the CFTC when reviewing self-certifications, generally, or the Self-Certification, specifically, for purposes of determining compliance with Core Principle 3.

> **D.** **The CFTC's Witnesses Should be Precluded from Testifying About Any Decisions the Commission Made or Could Have Made in Connection With the Self-Certification (Issue 4)**

A statement or omission is material "if it has a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Litvak*, 808 F.3d 160, 170 (2d Cir. 2015) (emphasis omitted). For this reason, Gemini has repeatedly sought discovery on what decision(s), if any, the CFTC made or could have made in connection with the Self-Certification. Here again, the CFTC asserted privilege and refused to provide the requested information. For example, the CFTC instructed Mr. Goodman not to answer the following questions:

- "What decisions does the CFTC make concerning self-certifications?" Ex. 2 at 64:9–12.

- "[C]an you testify to any decision that the CFTC made with respect to the CBOE self-certification filed December 1st, 2017?" Ex. 2 at 36:21–37:4.

- "Without revealing the substance of any internal commission communications, are you aware of any decision the CFTC made with respect to the CBOE self certification filed on December 1st, 2017?" Ex. 2 at 37:6–12.

- "Did the CFTC ever make any decisions whatsoever with respect to the 2017 CBOE Bitcoin futures contract self-certification?" Ex. 2 at 38:17–24.

Because of these instructions, Mr. Goodman did not answer two of the most fundamental questions underlying this case: whether the CFTC made (or could have made) any decision with respect to the CFTC and what that decision was.

The CFTC's refusal to produce this information was not limited to Mr. Goodman's deposition. Gemini's Rule 30(b)(6) notice sought testimony about "[t]he decisions that the CFTC could have made in connection with the Self-Certification and whether any such decisions were made." Ex. 3, Topic 7. The CFTC objected that the requested testimony was "protected by the deliberative process privilege," Ex. 4, Resp. to Topic 7, and moved for a protective order, Dkt. 50 at 13 n.7. When Gemini, at the Court's instruction, propounded an interrogatory on this topic, the CFTC set forth a panoply of objections and identified only one possible decision: "whether to take any action with respect to the new product listing." Ex. 9, Resps. to Interrog. 16. On February 29, 2024, Gemini filed a joint letter seeking an order compelling the CFTC to identify what decision it claims it could have made, but the Commission again refused to provide a straightforward answer to this simple question. Dkt. 78 at 5–6, 14–15. On March 5, 2024, the Court entered an Order that did not address this specific interrogatory but declined to compel the CFTC to provide a clear response. Dkt. 79.

Having given these instructions, it would be unfair for the CFTC to solicit or permit its witnesses to testify at trial about decisions the CFTC did or could have made in connection with the Self-Certification. As the Second Circuit and district precedent set forth above make clear, an order precluding the CFTC's counsel from asking such questions and CFTC's witnesses from giving such testimony is appropriate.

### E.    The CFTC's Witnesses Should be Precluded from Testifying that Any Statements Made in Connection with the Self-Certification Were False or Misleading (Issue 5)

The CFTC claims Gemini made false or misleading statements. For this reason, Gemini repeatedly questioned Mr. Kuserk and Mr. Goodman about whether they believed (and thus could testify at trial) that any statements were false or misleading. The CFTC instructed both witnesses not to answer these questions, including the following examples:

- "Did you ever determine that anything on this Cboe slide deck from the meeting on July 25th, 2017 -- did you ever determine anything in there is false or misleading?" Ex. 6 at 127:14–21.

- "Did you ever determine that any statement made in the July 25th presentation . . . or any statement made during the July 25th meeting was false or misleading?" Ex. 2 at 185:7–13.

- "Do you have any basis to say anything contained in Gemini's answer to Question 10 [of the August 25 Submission] is false?" Ex. 2 at 210:24–211:4.

- "Did you think that anything in this self-certification is false . . . or misleading?" Ex. 6 at 62:3–10.

- "Did you think that there's anything in this self-certification that omitted material information?" Ex. 6 at 62:19–63:2.

- "Did you ever determine that any statement made in the [Self-Certification] was false or misleading?" Ex. 2 at 307:5–9.

- "Did you ever determine that anything material had been omitted from the [Self-Certification] . . . ?" Ex. 2 at 307:10–15.

When Gemini moved to compel answers to these questions, Dkt. 54 at 15, the CFTC argued that the requested information "went to the core of the deliberative process privilege" and that "the internal subjective thoughts of the recipient of the statement is totally irrelevant" under the objective materiality standard, Ex. 7 at 4:3–5:5, 26:8–18; *see also* Dkt. 59 at 22–23. The Court agreed, holding that "[w]hat an individual may have thought is not relevant" and "is part of [the] deliberative process" and that the CFTC's witnesses "can't testify [as to their] personal belief." Ex. 7 at 7:12–25.

Having successfully asserted that the testimony of any individual—including Mr. Kuserk and Mr. Goodman—on this is irrelevant and privileged, the CFTC should be precluded from offering any such testimony at trial.

## CONCLUSION

For the foregoing reasons, the Court should enter an order precluding (i) the CFTC from offering argument or evidence about why it asked certain questions before the Self-Certification; (ii) the CFTC's witnesses from testifying that self-crossing on the Gemini Exchange was not disclosed; (iii) the CFTC offering argument or evidence about its review of self-certifications, including the Self-Certification, beyond the plain text of Appendix C; (iv) the CFTC's witnesses from testifying about any decisions the Commission made or could have made in connection with the Self-Certification; and (v) the CFTC's witnesses from testifying that any statements made in connection with the Self-Certification were false or misleading.

Dated: New York, New York
            November 15, 2024

BAUGHMAN KROUP BOSSE PLLC

By /s/ John F. Baughman

    John F. Baughman
    Daniel A. Schwartz
    Elizabeth J. Lee
    Ernest E. Butner IV
    One Liberty Plaza – 46th Floor
    New York, NY 10006
    (212) 548-3212

    *Attorneys for Gemini Trust Company, LLC*