UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

                              Plaintiff,                                22-cv-4563 (AKH)

              v.                                                        Hon. Alvin K. Hellerstein

GEMINI TRUST COMPANY, LLC,

                              Defendant.


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO EXCLUDE THE EXPERT TESTIMONY OF JEREMY CUSIMANO**

COMMODITY FUTURES TRADING
COMMISSION

Diana Wang
Andrew J. Rodgers
Katherine Rasor
Peter Janowski
Alejandra de Urioste
K. Brent Tomer

Division of Enforcement
290 Broadway, 6th Floor
New York, NY 10007
Phone: (646) 746-9700
Fax: (646) 746-9888

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ...................................................................................................... 4

PROCEDURAL HISTORY....................................................................................... 5

LEGAL STANDARD ............................................................................................... 7

      A.    Qualifications........................................................................................ 7

      B.    Relevance............................................................................................. 8

      C.    Reliability ............................................................................................ 9

ARGUMENT ......................................................................................................... 10

I.    Cusimano Is Not Qualified to Offer His Proposed Opinions and Testimony...........10

II.    Cusimano's Opinions About Industry Standards and Practices Are Irrelevant and Would Confuse the Jury.........................................................................14

III.    Cusimano's Proposed Testimony Applies the Wrong Legal Standard and Usurps the Role of the Jury by Opining on Issues of Intent, Motive, and Materiality     18

IV.    Cusimano's Proposed Opinions Are Not the Product of Reliable Principles and Methods Under *Daubert* and Rule 702 ...................................................22

      A.    Cusimano's Opinion that Defendant's Rebate Program Was Consistent with Common and Well-Established Trading Incentive Programs Lacks a Reliable Foundation ................................................................. 22

      B.    Cusimano's Opinion that Defendant's Self-Match Prevention Practices Were Consistent with Industry Standards Lacks a Reliable Foundation .................. 29

V.    Cusimano's Proposed Opinions About Gemini's Prefunding Statements and Related Cost of Capital Are Contrary to the Court's Summary Judgment Ruling, Irrelevant, and Unreliable.........................................................................34

VI.    The Court Should Exclude the Summary Slides Cusimano Proposes to Present at Trial.............................................................................................39

CONCLUSION ...................................................................................................... 40

**TABLE OF AUTHORITIES**

**Cases**

*523 IP LLC v. CureMD.Com*,
    48 F. Supp. 3d 600 (S.D.N.Y. 2014)..................................................................8, 22

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002).........................................................................8, 9, 22

*Arista Recs. LLC v. Lime Grp. LLC*,
    2011 WL 1674796 (S.D.N.Y. May 2, 2011) ...........................................................27

*Arista Recs. LLC v. Usenet.com, Inc.*,
    608 F. Supp. 2d 409 (S.D.N.Y. 2009)......................................................................7

*Barber v. United Airlines, Inc.*,
    17 F. App'x 433 (2d Cir. 2001) ..............................................................................37

*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
    2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) ........................................................20

*CFTC v. Arista LLC*,
    2013 WL 6978529 (S.D.N.Y. Dec. 3, 2013) ..........................................................15

*CFTC v. Cap. BLU Mgmt., LLC*,
    2010 WL 4942720 (M.D. Fla. Nov. 29, 2010) .........................................................6

*CFTC v. eFloorTrade, LLC*,
    2018 WL 10625588 (S.D.N.Y. Sept. 21, 2018).........................................14, 18, 19

*CFTC v. Gramalegui*,
    2018 WL 4610953 (D. Colo. Sept. 26, 2018).....................................................15, 18

*CFTC v. Monex Credit Co.*,
    2021 WL 8776702 (C.D. Cal. Dec. 20, 2021) ..........................................................6

*Chin v. Port Authority of N.Y. & N.J.*,
    685 F.3d 135 (2d Cir. 2012)....................................................................................18

*CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*,
    815 F. Supp. 2d 673 (S.D.N.Y. 2011)...............................................................33, 38

*Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*,
    2013 WL 978980 (S.D.N.Y. Mar. 12, 2013) ..........................................................39

*Daniels-Feasel v. Forest Pharms., Inc.*,
    2021 WL 4037820 (S.D.N.Y. Sept. 3, 2021) ........................................................32

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ................................................................................. *passim*

*Davis v. Carrol*,
    937 F. Supp. 2d 390 (S.D.N.Y. 2013) ................................................................23

*E.E.O.C. v. Bloomberg L.P.*,
    2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010) ......................................................26

*Fair Isaac Corp. v. Fed. Ins. Co.*,
    447 F. Supp. 3d 857 (D. Minn. 2020) ................................................................17

*FTC v. Ross*,
    743 F.3d 886 (4th Cir. 2014) ............................................................................6

*Golden Unicorn Enters. v. Audible, Inc.*,
    682 F. Supp. 3d 368 (S.D.N.Y. 2023) ..................................................................6

*H. Daya International Co., Ltd. v. Do Denim, LLC*,
    2023 WL 1340422 (S.D.N.Y. Jan. 31, 2023) ......................................................14

*Highland Cap. Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005) ................................................................21

*Hill v. Quigley*,
    336 F. Supp. 3d 283 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 16 (2d Cir. 2019) ............7, 26, 32

*Holowecki v. Fed. Exp. Corp.*,
    644 F. Supp. 2d 338 (S.D.N.Y. 2009) ............................................................25, 31

*In re Blech Sec. Litig.*,
    2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ........................................................9

*In re Electronic Books Antitrust Litig.*,
    2014 WL 1282298 (S.D.N.Y. 2014) ..................................................................23

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009) ..................................................................8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018) ..................................................................9

*In re Longtop Fin. Technologies Ltd. Sec. Litig.*,
  32 F. Supp. 3d 453 (S.D.N.Y. 2014)......................................................................21, 35

*In re Lyman Good Dietary Supplements Litig.*,
  2019 WL 5682880 (S.D.N.Y. Oct. 31, 2019)........................................................8, 9, 28, 33

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
  2008 WL 1971538 (S.D.N.Y. May 7, 2008) ...............................................................10

*In re Mirena IUD Prods. Liab. Litig.*,
  169 F. Supp. 3d 396 (S.D.N.Y. 2016)....................................................................33-34

*In re Rsrv. Fund Sec. & Derivative Litig.*,
  732 F. Supp. 2d 310 (S.D.N.Y. 2010)......................................................................15

*In re Rsrv. Fund Sec. & Derivative Litig.*,
  2012 WL 12356742 (S.D.N.Y. Sept. 10, 2012)............................................................25

*In re Rezulin Prod. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004)......................................................................20

*In re Rezulin Prod. Liab. Litig.*,
  369 F. Supp. 2d 398 (S.D.N.Y. 2005)......................................................................27

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999).....................................................................................7, 10

*LaSalle Bank Nat. Ass'n v. CIBC Inc.*,
  2012 WL 466785 (S.D.N.Y. Feb. 14, 2012)..................................................................21

*LinkCo, Inc. v. Fujitsu Ltd.*,
  2002 WL 1585551 (S.D.N.Y. July 16, 2002) ............................................................24, 30

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
  209 F. Supp. 3d 612 (S.D.N.Y. 2016)......................................................................13

*Marmo v. Tyson Fresh Meats, Inc.*,
  457 F.3d 748 (8th Cir. 2006) .............................................................................29

*Marvel Characters, Inc. v. Kirby*,
  726 F.3d 119 (2d Cir. 2013)...............................................................................31

*MLB Baseball Props., Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2d Cir. 2008)................................................................................9

*Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007)........................................................................37

*Moltner v. Starbucks Coffee Co.*,
   2009 WL 3573190 (S.D.N.Y. Oct. 23, 2009) ...........................................................14

*Music Royalty Consulting, Inc. v. Reservoir Media Mgmt.*,
   598 F. Supp. 3d 158 (S.D.N.Y. 2022).........................................................................6

*Nimely v. City of N.Y.*,
   414 F.3d 381 (2d Cir. 2005)...........................................................................7, 8, 9, 26

*Olin Corp. v. Lamorak Ins. Co.*,
   2018 WL 1901634 (S.D.N.Y. Apr. 18, 2018)............................................................19

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   691 F. Supp. 2d 448 (S.D.N.Y. 2010)........................................................................24

*Primavera Familienstifung v. Askin*,
   130 F. Supp. 2d 450 (S.D.N.Y. 2001)..................................................................36, 37

*Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*,
   988 F. Supp. 2d 395 (S.D.N.Y. 2013)..................................................................24, 30

*Restivo v. Hessemann*,
   846 F.3d 547 (2d Cir. 2017).......................................................................................37

*Rowe Ent., Inc. v. William Morris Agency, Inc.*,
   2003 WL 22272587 (S.D.N.Y. Oct. 2, 2003) ...........................................................39

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ...........................................................................37-38

*SEC v. Airborne Wireless Network*,
   2023 WL 5935627 (S.D.N.Y. Sept. 12, 2023) ..........................................................21

*SEC v. Lek Sec. Corp.*,
   370 F. Supp. 3d 384 (S.D.N.Y. 2019)........................................................................25

*SEC v. Ripple Labs, Inc.*,
   2023 WL 5670711 (S.D.N.Y. Mar. 6, 2023) .............................................................31

*SEC v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013)...........................................................13, 21, 25, 30, 36

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ........................................................8

*United States v. Cisneros*,
    26 F. Supp. 2d 24 (D.D.C. 1998) ...............................................16

*United States v. Dukagjini*,
    326 F.3d 45 (2d Cir. 2003) ........................................................32

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008) ..........................................25, 28, 36

*United States v. Mendlowitz*,
    2019 WL 6977120 (S.D.N.Y. Dec. 20, 2019) ...................3, 16, 17

*United States v. Newkirk*,
    684 F. App'x 95 (2d Cir. 2017) ...................................................15

*United States v. Stewart*,
    433 F.3d 273 (2d Cir. 2006) ..................................................17, 39

*United States v. Tin Yat Chin*,
    371 F.3d 31 (2d Cir. 2004) ..........................................................8

*United State v. Tipton*,
    269 F. App'x 551 (6th Cir. 2008) ...............................................38

*United States v. Tomasetta*,
    2011 WL 6382562 (S.D.N.Y. Dec. 12, 2011) .........................15-16

*Zaremba v. Gen. Motors Corp.*,
    360 F.3d 355 (2d Cir. 2004) ........................................................7

**Statutes**

Section 6(c)(2), 7 U.S.C. § 9(2) ....................................................... *passim*

**Rules**

Fed. R. Civ. P. 26 .............................................................................33

Fed. R. Evid. 702 ....................................................................... *passim*

**Regulations**

17 C.F.R. § 38.200 .............................................................................4

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") submits this memorandum of law and the accompanying declaration and exhibits in support of its motion to exclude the opinions and testimony of Jeremy Cusimano ("Cusimano"), a putative expert witness identified by Defendant Gemini Trust Company, LLC ("Gemini" or "Defendant").[1]

## PRELIMINARY STATEMENT

This case centers on the false or misleading statements and related omissions that Defendant made in connection with the self-certification of a bitcoin futures contract for trading on the Cboe Futures Exchange ("CFE"). Defendant is a cryptocurrency exchange, which partnered with the CFE to list a bitcoin futures product that would settle by reference to a daily auction held on Defendant's exchange. During the months leading up to the product self-certification, Defendant made oral false statements and at least 31 written false statements to the CFTC, 15 of which the Court has already determined were materially false and misleading, and thus violated the CFTC's false statement statute, 7 U.S.C. § 9(2), as a matter of law. To avoid liability for the oral misstatements and remaining 16 written misstatements, Defendant proposes to offer the expert testimony of Cusimano to opine that Defendant's rebate program and self-trade prevention capabilities were consistent with market standards and, therefore, Defendant would not have reasonably known that statements or omissions about those practices were relevant and material to the CFTC's product review. Cusimano's report and his proposed testimony miss the mark by a wide margin and flunk every standard that courts apply to

---

[1] References to "Ex. __" refer to the exhibits attached to the Declaration of Christopher Giglio Pursuant to 28 U.S.C. § 1746 in Support of the CFTC's Motion to Exclude Expert Testimony of Jeremy Cusimano, filed herewith. "Rpt." refers to the May 15, 2024 Report of Jeremy Cusimano (Ex. 1) and "Tr." refers to the June 3, 2024 Deposition Transcript of Jeremy Cusimano (Ex. 2). All transcript cites have been cleaned up with objections omitted. Other capitalized terms have the meaning set forth in the Complaint, ECF No. 1.

determine whether to admit expert testimony.   His opinions and testimony should therefore be excluded in their entirety.

*First*, Cusimano is unqualified to opine on the relevance and materiality of information that was disclosed to, or concealed from, the CFTC during the CFTC's review of a commodity futures product self-certification.  Cusimano has a bachelor's degree in economics and a master's degree in environmental and natural resource economics.  His professional experience has focused on the forensic analysis of trading data to identify market manipulation or other types of disruptive trading or analyzing trade surveillance systems and controls.  But those issues are not part of Cusimano's report as he did not endeavor to analyze any of the features of Defendant's exchange and auction.  On the issues that matter, Cusimano has no relevant experience—he has never reviewed a product self-certification to determine whether it complies with the CFTC's regulatory requirements, including Core Principle 3, which requires that applicants demonstrate that the proposed contract is not readily susceptible to manipulation.  Cusimano never designed a new product or analyzed a new product that was submitted to the CFTC (or any market regulator).  Having no relevant experience with product self-certifications, or the application of Core Principle 3 to the CFTC's review of product self-certifications, Cusimano is completely unqualified to opine on what was "relevant and material" to the CFTC's product review.  (Rpt. ¶ 4.)

*Second*, Cusimano's proposed testimony about industry standards is irrelevant and misleading.  Cusimano's overall opinion is that Defendant would not have known that its statements or omissions were materially misleading because its business practices complied with amorphous industry standards.  That Defendant's business practices complied with industry standards or benchmarks is irrelevant and has no bearing on any issue at trial.  The issue for trial

is whether Defendant accurately disclosed its business practices to the CFTC during the months leading up to the product self-certification, not whether Defendant's business practices complied with certain industry standards or benchmarks. Admitting Cusimano's testimony would misleadingly suggest to the jury that Defendant did not mispresent the nature of its business to the CFTC because its business practices did not violate industry norms. Courts have uniformly excluded testimony addressing industry practices in cases involving misstatements or omissions based on the "danger of unfair prejudice, confusion of the issues, or misleading the jury." *United States v. Mendlowitz*, 2019 WL 6977120, at *7 (S.D.N.Y. Dec. 20, 2019).

*Third*, Cusimano's proposed testimony conflates the materiality and knowledge elements of a Section 6(c)(2) charge, which further heightens the risk of jury confusion. Under settled law, all that is required to establish a Section 6(c)(2) violation is that Defendant knew or should have known its statements were false or misleading. It does not matter, as Cusimano presupposes, whether Defendant was aware of the materiality of the information that it failed to disclose. Infusing materiality into the knowledge prong of a Section 6(c)(2) charge is wrong and misstates the mens rea requirement. And, aside from conflating the legal standard, it is entirely inappropriate for Cusimano to opine on Defendant's intent, motivation, or the materiality of various business practices. This type of testimony would usurp the role of the jury and are textbook examples of improper expert opinions.

*Fourth and finally*, each of Cusimano's proposed opinions about Defendant's compliance with purported industry standards relies on either a non-existent or deeply flawed "methodology." Instead of providing any analysis or support for his opinions that is grounded in his specific experience, recognized financial theory, or academic research, Cusimano simply incants his "experience" without elaboration and then bolsters his statements by paraphrasing

readily understandable public documents or regulatory filings and then concocting an analysis based on cherry-picked and unscientific data samples.  Cusimano uses this flawed methodology to then make sweeping assertions about his view of the financial industry and the reasonableness of Defendant's conduct and knowledge of the materiality of its misstatements and omissions to the CFTC's product review.  By all measures, his opinions fall short of *Daubert*'s reliability standards, which are meant to prevent the type of *ipse dixit* that Cusimano proposes to peddle before the jury.  Because his testimony is irrelevant, unreliable, legally erroneous and improper, Cusimano's opinions and proposed testimony should be excluded from trial.

## **BACKGROUND**

In 2017, Defendant made materially false and misleading statements to the CFTC in connection with the self-certification a bitcoin futures contract, which was to be settled by reference to the price set by Defendant's daily bitcoin auction.  In the months leading to the product self-certification, Defendant made statements directly to the CFTC and through the CFE in order to satisfy the CFTC's product listing requirements, including Core Principle 3, which prohibits the listing of products that are "readily susceptible to manipulation."  17 C.F.R. § 38.200.

To convince the CFTC that the proposed product was not readily susceptible to manipulation—and that the CFTC should take no action with respect to the novel product listing—Defendant made 31 false or misleading written statements as well as additional oral statements.  The false or misleading statements are set forth in Exhibit A to the CFTC's Memorandum of Law in Support of Its Motion for Partial Summary Judgment, ECF No. 99, and fall into the following four groups:  (1) statements related to Defendant's prefunding requirement and the related cost of capital to trade on the Gemini exchange and in the auction (*id.* (statements 1, 2, 5, 6, 9, 10, 13, 14, 17-20, 22, 26, 27 & 32)); (2) statements related to Defendant's fee rebate

incentives offered to market participants (*id.* (statements 23, 28 & 32)); (3) statements related to the extent and possibility of self-trading, self-crossing, or collusive trading on the Gemini exchange and in the auction (*id.* (statements 4, 8, 12, 16, 21, 24, 31 & 32)); and (4) statements related to the volume and liquidity of the Gemini exchange and in the auction (*id.* (statements 3, 7, 11, 15, 25, 29, 30 & 32)).

Defendant proffers Cusimano as an expert, "who specializes in financial markets, trading compliance, risk, and controls" (Rpt. ¶ 1), to testify that, because Defendant's "actions were consistent with common and acceptable market practices" (*id.* ¶ 100):

(1) Defendant "would not have known or had reason to believe that the information it provided to the CFTC with respect to its pre-funding requirement would be viewed as containing false or misleading statements or material omissions." (*Id.* ¶¶ 12(a), 42-68 (Section V).)

(2) Defendant "would not have known or had reason to believe that the information it provided to the CFTC with respect to its trading incentive program would be viewed as containing false or misleading statements or material omissions." (*Id.* ¶¶ 12(b), 69-88 (Section VI).)

(3) Defendant "would not have known or had reason to believe that the information it provided to the CFTC with respect to potential self-trading on the Gemini Exchange would be viewed as containing false or misleading statements or material omissions." (*Id.* ¶¶ 12(c), 89-99 (Section VII).)

## **PROCEDURAL HISTORY**

During oral argument on the CFTC's motion for partial summary judgment, ECF No. 97, the Court ruled that Defendant's 15 written statements about its prefunding requirement and the related cost of capital violated Section 6(c)(2) as a matter of law. (7/23/2024 Hr'g Tr. at 25:1-6,

101:18, ECF No. 133; 7/24/2024 Hr'g Tr. at 158:9-159:16, 161:19-162:12, 209:21-210:1, 211:6-16, 216:22-25, ECF No. 135.)  Based on the Court's summary judgment rulings, Cusimano's opinions addressing the purported consistency of Defendant's prefunding requirement, and Defendant's use of loans and advances to inflate volume, with so-called market standards is erroneous and irrelevant for trial.  (Rpt. ¶¶ 12(a), 42-68 (Section V)); *see Music Royalty Consulting, Inc. v. Reservoir Media Mgmt.*, 598 F. Supp. 3d 158 (S.D.N.Y. 2022) (precluding expert testimony when the court has already ruled "as a matter of law" on summary judgment relating to issues on which the expert opined); *Golden Unicorn Enters. v. Audible, Inc.*, 682 F. Supp. 3d 368, 380 (S.D.N.Y. 2023) (excluding expert's damage calculations when they "do not correspond to Plaintiffs' sole remaining claim" after the court dismissed other claims on summary judgment); *FTC v. Ross*, 743 F.3d 886, 893 (4th Cir. 2014) ("As the district court correctly ruled, however, [the expert's] testimony was irrelevant because it had already decided the deceptiveness issue in favor of the Commission at summary judgment.").  Cusimano's testimony does not address the penalty that should be imposed for any of the false or misleading statements, let alone the ones that the Court ruled were false and misleading as a matter of law.  And, even if his testimony did address the only issue to be decided with respect to the penalty for the 15 prefunding and cost of capital statements, "Defendants do not have a jury trial right as to the amount of civil penalties" in cases brought by the CFTC.  *CFTC v. Cap. BLU Mgmt., LLC*, 2010 WL 4942720, at *1 (M.D. Fla. Nov. 29, 2010); *see also CFTC v. Monex Credit Co.*, 2021 WL 8776702, at *2 (C.D. Cal. Dec. 20, 2021) (collecting cases).

The only triable issues on which Cusimano provides an opinion relate to Defendant's misstatements about its rebate program and its self-trade prevention capabilities.  Nonetheless, despite the Court's ruling, Defendant refused to withdraw any expert testimony or identify any

proposed testimony set forth in its experts' reports that were no longer relevant for trial. Regardless of whether Defendant intends to proffer irrelevant testimony, Cusimano should be barred outright from testifying at trial because he is unqualified to provide his proposed opinions, his proposed testimony is irrelevant, misleading, and inappropriately usurps the role of the jury by opining on Defendant's intent and the materiality of Defendant's misstatements and related omissions.  And, even if the proposed testimony did not suffer from these threshold defects, each of his proposed opinions lacks any reliable foundation grounded in either Cusimano's specific experience, the information he purports to have reviewed, or the undisciplined "analyses" Cusimano invented to backfill his *ipse dixit* assertions.

## LEGAL STANDARD

The Supreme Court instructed that a district court has a "gatekeeping" role with respect to expert opinion testimony.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  "As a gatekeeper, the judge has 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Hill v. Quigley*, 336 F. Supp. 3d 283, 298 (S.D.N.Y. 2018) (quoting *Daubert*, 509 U.S. at 597) (Hellerstein, J.), *aff'd*, 784 F. App'x 16 (2d Cir. 2019).  "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied."  *Arista Recs. LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009).

### A.    Qualifications

A court must first determine whether the expert is qualified to testify.  *Id.* (citing *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 360 (2d Cir. 2004)).  The Court must determine whether the proposed expert is qualified by virtue of some specialized "knowledge, skill, experience, training, or education."  *Nimely v. City of N.Y.*, 414 F.3d 381, 396 n.11 (2d Cir.

2005).  "When deciding whether an expert is qualified to render opinion testimony, the court must take into consideration the expert's 'background and practical experience,' by looking at the 'totality of the expert's qualifications.'"  *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 642 (S.D.N.Y. 2014) (citation omitted).  "A witness may be qualified based on any one or more of the qualities listed in Rule 702—knowledge, skill, experience, training or education."  *Id*.  The Court should "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony."  *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).  Simply "because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields."  *Nimely*, 414 F.3d at 399 n.13.

### B.    Relevance

Another "threshold question for the Court is whether the 'proffered expert testimony is relevant.'"  *In re Lyman Good Dietary Supplements Litig.*, 2019 WL 5682880, at *3 (S.D.N.Y. Oct. 31, 2019) (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)).  The question of relevance "can be expressed as a question of 'fit'—'whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'"  *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (quoting *Daubert*, 509 U.S. at 591).  Expert testimony that is "irrelevant, unhelpful, and [has] the potential to mislead or confuse a jury" should be excluded.  *In re Lyman Good Dietary Supplements*, 2019 WL 5682880, at *5.

Moreover, expert testimony may not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."  *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).  "Although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal

conclusions based on those facts." *Id.* Critically, an expert cannot offer an opinion that

"attempts to substitute the expert's judgment for the jury's." *Nimely*, 414 F.3d at 398 (citations

omitted); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430,

489-91 (S.D.N.Y. 2018) (excluding expert opinion that manipulation occurred based on the

interpretation of trader communications because the expert's interpretation of the factual

evidence was "invasive of the province of the trier of fact").

### C.    Reliability

If the Court determines that the expert is qualified and the proposed testimony is relevant

and will not mislead the jury, the Court must then determine "whether the proffered testimony

has a sufficiently reliable foundation to permit it to be considered." *In re Lyman Good Dietary*

*Supplements*, 2019 WL 5682880, at *3.   In assessing expert testimony and evidence, "the

district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the

testimony is grounded on sufficient facts or data; (2) that the testimony 'is the product of reliable

principles and methods'; and (3) that 'the witness has applied the principles and methods reliably

to the facts of the case.'" *Amorgianos*, 303 F.3d at 265 (quoting Fed. R. Evid. 702).

"[T]he reliability analysis applies to all aspects of an expert's testimony: the

methodology, the facts underlying the expert's opinion, the link between the facts and the

conclusions, *et alia*." *Id.* (internal quotation marks omitted).  An expert's opinion that is

"without factual basis" or based on "speculation or conjecture" is inadmissible.  *MLB Baseball*

*Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (affirming district court's

exclusion of expert who did not cite evidence to support his conclusory statements and

"performed no empirical studies"); *see also In re Blech Sec. Litig.*, 2003 WL 1610775, at *23

(S.D.N.Y. Mar. 26, 2003) ("General statements without adequate factual support are

inadmissible.").  The test of reliability is the same where, as here, "an expert's testimony is not

scientific in nature." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 2008 WL 1971538, at *3 (S.D.N.Y. May 7, 2008) (citing *Kumho Tire*, 526 U.S. 137).  In such cases, the Court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire,* 526 U.S. at 152.

## ARGUMENT

### I.    Cusimano Is Not Qualified to Offer His Proposed Opinions and Testimony

The threshold flaw with Cusimano's proposed testimony is that he is not qualified to give it.  Defendant offers Cusimano to testify about what "may be material and relevant to the self-certification of a bitcoin futures contract[] with respect to potential susceptibility to manipulation under the CFTC's Core Principle 3."  (Rpt. ¶ 4.)  But Cusimano does not possess the relevant education or experience to provide an opinion about what is relevant and material for the purposes of complying with Core Principle 3's requirement that a new product not be readily susceptible to manipulation.  *See* Fed. R. Evid. 702 (to be "qualified as an expert," a witness much have "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue").

Cusimano possesses a Bachelor of Science in Economics from the University of Rochester and a Master of Science in Environmental and Natural Resource Economics.  (*See* Rpt. ¶¶ 1-3 & App'x A.)  Cusimano's academic pursuits focused on "land use change modeling" and "modeling the economic value of water quality around residential properties." (Tr. at 17:1-18:23.)  Cusimano did not study, research, or evaluate anything close to the issues in this case, such as product certifications, product listings, or regulatory disclosures in connection with the listing of new products.  (*Id.*)

Cusimano's professional experience is likewise off base.  He purports to have "extensive experience in global financial markets, economic analysis, investigations into commodity and derivatives trading, and regulatory policy."  (Rpt. ¶ 1 & App'x A.)  This experience stems from his work as:

- The Chief Economist for Petroleum Reserves at the U.S. Department of Energy;

- An Economic Advisor to the Director of Enforcement at the CFTC;

- A Managing Director with Grant Thornton LLP; and

- A Managing Director with Alvarez & Marsal Disputes and Investigations LLC.

(Rpt. ¶ 2 & App'x A.)

Most, if not all, of Cusimano's "representative experience" involves the analysis of trading data and market activity to assess claims of fraud, market manipulation, or other types of market abuse.  (Tr. at 58:5-17; *see generally* Rpt. App'x A.)  Cusimano's engagements that did not call for data or forensic analysis generally involved assessments of compliance programs and trade surveillance systems.  (Rpt. App'x A; Tr. at 23:16-23; 41:14-42:14.)  For this case, however, Cusimano does not purport to conduct any forensic or data analysis, nor did he analyze Defendant's risk controls, surveillance systems, or compliance program.  (Tr. at 44:6-45:17.)

Cusimano has never reviewed a new futures product self-certification for compliance with Core Principle 3, has never designed a new futures product, and has never analyzed the disclosure obligations of a party seeking to certify a new product.  (Tr. at 53:6-19.)  In fact, Cusimano admitted during his deposition that "any . . . work that [he had] done has been post-listing of new products."  (Tr. at 53:13-19.)  Cusimano could only identify one matter listed in his "representative experience" where he "[a]dvised a nascent futures exchange on regulatory requirements for registering with the CFTC as a Designated Contract Market" ("DCM").  (Rpt.

11

App'x A at 4; Tr. at 53:15-19.)  But he conceded that the entity "didn't have any products" so he did not analyze any prospective products to determine whether they complied with any Core Principles, let alone Core Principle 3.  (Tr. at 27:5-29:3.)  Cusimano simply has no experience evaluating product certifications for compliance with regulatory requirements, including compliance with Core Principle 3.  (*Id.* at 57:25-58:4 ("A.  So I was not reviewing the product certifications for compliance with regulatory requirements").)[2]

Cusimano's three-year stint over a decade ago at the CFTC as an Economic Advisor to the Director of Enforcement underscores his lack experience addressing product certifications and compliance with Core Principle 3's requirement that futures products not be readily susceptible to manipulation.  (Rpt. ¶ 2; Tr. at 33:19-34:2.)  In his role at the CFTC, Cusimano "largely assisted" enforcement attorneys "with analyzing trading and market data and interpreting the data and the activity in the context of the CFTC's regulations and the Commodity Exchange Act."  (Tr. at 34:3-16; 46:10-15.)  In Cusimano's own words: "I sat with[in] the division of enforcement, so all of my time was in enforcement."  (*Id.* at 46:10-15.)  Thus, Cusimano was not in the Division of Market Oversight ("DMO"), the division that is responsible for the review of new product listings.

To overcome his dearth of relevant experience, Cusimano testified that he had "[r]egular" interactions with DMO.  (*Id.* at 34:24-35:2.)  These interactions related to undefined issues dealing with "surveillance" and "trade reporting and analysis."  (*Id.* at 35:7-24.)  Even though Cusimano purported to have provided input in connection with two new product listings, the

---

[2] During his deposition, Cusimano testified that he was retained in a matter that was not disclosed under his representative experience that involved the review of product certifications.  (Tr. at 54:24-56:13.)  Upon further examination, however, he admitted that "[t]he review of product certifications was not the focus; it was not the reason why I was engaged" and he merely reviewed the "certifications to gain an understanding of the products."  (Tr. at 57:2-58:4.)  The failure to disclose the matter under his "representative experience" speaks for itself (*see generally* Rpt. App'x A) and does not salvage Cusimano's otherwise deficient experience.

products were not self-certifications under Rule 40.2 and Cusimano only analyzed the "economic purpose of the contracts," not whether the contracts complied with Core Principle 3.  (*Id.* at 37:17-38:2 ("Q.  Did you analyze the contract's compliance with Core Principle 3?  A.  No.  Not that I recall"); *id.* at 48:23-49:10 ("Q.  And did you provide the enforcement division's view that a product did not comply with CFTC product certification requirements?  A. With respect to the movie futures contract, I provided the view that I did not think it had the valid economic purpose on behalf of the division of enforcement.  Q.  Is that a Core Principle 3 concern?  A.  No").)

In fact, Cusimano could not identify any specialized experience he had about the factors that the CFTC considers in evaluating whether a cash-settled futures contract complies with Core Principle 3.  The best Cusimano could muster is that he has "some specialized experience" that is relevant to the Core Principle 3 analysis.  (*Id.* at 50:21-51:4.)  Yet Cusimano failed to identify any specific experience except to say that his "CV outlines a lot of . . . experience" "evaluating the market activity, liquidity, [and] the characteristics of the market participants."  (*Id.* at 49:11-52:10.)

Ultimately, Cusimano admitted that he "couldn't tell you what a DCM is required to submit" in connection with a product self-certification.  (*Id.* at 53:6-12.)  This is because his experience is too far removed from the subject matter about which Cusimano proposes to testify, which encompasses the factors and issues that "may be material and relevant to the self-certification of a bitcoin futures contract."  (Rpt. ¶ 4); *see also SEC v. Tourre*, 950 F. Supp. 2d 666, 679 (S.D.N.Y. 2013) ("Being a professional testifying expert in the financial area does not give an individual the qualification to opine in every financial area as to every type of analysis."); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638 (S.D.N.Y. 2016) (disqualifying witness whose "experience and education may qualify him as an

expert in certain areas of . . . intellectual property law," but lacked "training or experience" specifically "measuring [a trademark's] secondary meaning"); *Moltner v. Starbucks Coffee Co.*, 2009 WL 3573190, at *8 (S.D.N.Y. Oct. 23, 2009) (experience with "major fast food vendors" was not sufficient to qualify witness to testify as to what constitutes "customary or reasonable care . . . exercised by coffee and tea shops" in handling hot beverages); *H. Daya International Co., Ltd. v. Do Denim, LLC*, 2023 WL 1340422, at *4 (S.D.N.Y. Jan. 31, 2023) (expert witness, whose "experience as an executive in the apparel industry [was] extensive," was not qualified to discuss merger of apparel firms where "nothing about [that experience] suggests any specialized knowledge in corporate governance or mergers and acquisitions . . . even pertaining to businesses in the apparel industry").

## II.    Cusimano's Opinions About Industry Standards and Practices Are Irrelevant and Would Confuse the Jury

Even if Cusimano was qualified to give the proposed opinions, Cusimano's proposed testimony about Defendant's knowledge of what is relevant and material is tied to Cusimano's view that Defendant's operations were consistent with common or accepted market practices or industry standards.  (Rpt. Sections V, VI, VII, VIII.)[3]  Purported expert testimony about what is "common and acceptable market practice" (Rpt. ¶ 100) is irrelevant to this case because Defendant's liability turns on whether it knew or reasonably should have known that its statements and omissions were false or misleading.  *CFTC v. eFloorTrade, LLC*, 2018 WL 10625588, at *8 (S.D.N.Y. Sept. 21, 2018) (finding "no genuine issue of material fact as to whether [Defendant] knew, or reasonably should have known, that his testimony . . . was false or

---

[3] As noted above, Section V of Cusimano's report is no longer relevant to the parties' claims or defenses in light of the Court's summary judgment ruling.  Therefore, the Court need not consider Cusimano's opinions and proposed testimony regarding Defendant's pre-funding definition and its purported consistency with "common and accepted practice in financial markets."  (Rpt. ¶ 46.)  But, even if the opinions Cusimano expressed were not wholly irrelevant in light of the Court's ruling, they should be excluded for the same reasons set forth herein.

misleading").  The issue at trial will be whether Defendant, as a sophisticated cryptocurrency exchange that was financed by billionaires and represented by able counsel and consultants, reasonably should have known that its statements to the CFTC about its fee rebate program and self-trade prevention capabilities were false or misleading.  *See CFTC v. Gramalegui*, 2018 WL 4610953, at \*24 (D. Colo. Sept. 26, 2018) ("Defendant's history and background inform [the] determination [of what Defendant should have known], as do considerations of what a reasonable person would be expected to know in similar circumstances.").  This inquiry looks to whether Defendant had access to information contradicting its misstatements, not whether Defendant's business operations conformed with some unparticularized market practice or standard.  *CFTC v. Arista LLC*, 2013 WL 6978529, at \*7 (S.D.N.Y. Dec. 3, 2013) (finding "Defendants knew or reasonably should have known" their statements "[were] false or misleading" based on information "available to Defendants" and "reflected in" internal records); *cf. In re Rsrv. Fund Sec. & Derivative Litig.*, 732 F. Supp. 2d 310, 322 (S.D.N.Y. 2010) (observing that "defendants' knowledge of facts or access to information contradicting their public statements" present circumstances where "defendants knew or, more importantly should have known that they were misrepresenting material facts").

As the Second Circuit acknowledged in a case involving criminal misrepresentations, expert testimony "regarding customary industry practices" has "little if any bearing on [defendant's] obligations not to convey information they actually know, or consciously avoid knowing, is false."  *United States v. Newkirk*, 684 F. App'x 95, 97 (2d Cir. 2017).  Whether Defendant's operations aligned with certain standards or practices does not address whether Defendant completely and accurately relayed those business practices and operations to the CFTC in connection with the product self-certification.  *See United States v. Tomasetta*, 2011

WL 6382562, at *3 (S.D.N.Y. Dec. 12, 2011) (excluding expert accountant's testimony regarding "common industry practice, [and] compliance with GAAP," where the issue was whether "Defendants followed their disclosed [accounting] practices"); *United States v. Mendlowitz*, 2019 WL 6977120, at *4-5 (S.D.N.Y. 2019) (excluding expert testimony regarding defendants "conformity with [common industry] practices" as irrelevant to whether defendant misled customers about those practices).

 Moreover, the proffered testimony would risk misleading the jury by suggesting that Defendant lacked any duty to provide the omitted information that rendered Defendant's affirmative statements false or misleading because its practices complied with industry norms and the CFTC never expressly requested the specific information.  In fact, one theme Cusimano repeats throughout his report is that the CFTC "did not specifically request" the information that forms the basis of the CFTC's claims, "or provide any guidance as to [the CFTC's] disclosure expectations in the ongoing dialogue with Gemini . . . leading up to the self-certification of the Bitcoin Futures Contract."  (Rpt. ¶ 104; *see also id.* ¶¶ 12(b), 12(c).)  Ignorance of the law does not immunize Defendant for making false or misleading statements to market regulators.  When Defendant volunteered information to the CFTC on its own volition or in response to specific questions, it had "an obligation to refrain from telling half-truths or from excluding information necessary to make the statements accurate."  *See United States v. Cisneros*, 26 F. Supp. 2d 24, 42 (D.D.C. 1998).  This case focuses on Defendant's misstatements and related omissions regardless of whether Defendant's undisclosed practices conformed with market practices, industry standards, or CFTC guidance.  As such, Cusimano's opinions and proposed testimony could improperly suggest to the jury that the issue before it is whether Defendant's actions were consistent with industry practice as opposed to focusing on Defendant's misstatements and what

Defendant knew or should have known about the information it conveyed to the CFTC in connection with the product self-certification. *See United States v. Stewart*, 433 F.3d 273, 311-12 (2d Cir. 2006) (affirming district court's decision to preclude defendant's proposed securities law expert on the ground that the proffered expert opinions were "not relevant to the charges under consideration" and "would have increased the potential for confusion" of the jury); *Mendlowitz*, 2019 WL 6977120, at *7 (observing that admitting testimony about industry practice creates a "high" risk of prejudice "since there was a likelihood of jury confusion that the standard against which [Defendant's] conduct was to be measured was industry practice rather than whether his conduct violated the [applicable] statute").

Lastly, at the end of his Report, Cusimano suggests that Defendant lacked sufficient "notice" about what was "relevant and material information with respect to potential susceptibility to manipulation." (Rpt. ¶ 104.) But Defendant has not pled a fair notice defense (*see* Def.'s Ans., ECF No. 13), nor could it since it would be absurd to suggest that Defendant was unaware that Section 6(c)(2) prevents applicants from making false or misleading statements or omissions to the CFTC in connection with a product self-certification. *See generally* 7 U.S.C. § 9(2). To the extent this language about lack of notice is not the product of careless drafting and is intended to bolster an unpled "fair notice" defense, Cusimano should not be permitted to opine that Gemini lacked notice of its disclosure obligations. *See Fair Isaac Corp. v. Fed. Ins. Co.*, 447 F. Supp. 3d 857, 874 (D. Minn. 2020) ("But Defendants did not plead mitigation of damages in their answer. Because this defense has been waived, Dr. Kursh's opinions that pertain to this defense are inadmissible.").

In any event, putting aside the clear statutory requirement that Defendant could not make false or misleading statements and omissions to the CFTC, 7 U.S.C. § 9(2), even if Defendant

had pled a viable fair notice defense, Cusimano's random utterance about the CFTC's failure to "make public" its "disclosure expectations" (Rpt. ¶ 104) is not grounded in his experience or any identifiable methodology besides transparently spoon-fed arguments from Defendant's lawyers. This unadorned opinion about lack of notice is a pure lawyer's argument that is inappropriate expert testimony. *See Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135, 161 (2d Cir. 2012) (expert properly excluded where "her testimony would not have provided assistance to the trier of fact beyond that afforded by the arguments of counsel").

## III. Cusimano's Proposed Testimony Applies the Wrong Legal Standard and Usurps the Role of the Jury by Opining on Issues of Intent, Motive, and Materiality

Another core aspect of Cusimano's opinions and testimony addresses what Defendant "would . . . have known or had reason to believe" about the relevance or materiality of the information it provided to, or omitted from, the CFTC. (Rpt. ¶ 12 (a)-(c); *see also id.* ¶ 101 (opining that "[i]t was not reasonable to expect that Gemini should have known the CFTC would view the alleged false or misleading statements or omissions as being relevant or material to susceptibility to manipulation").) This proposed testimony is improper for numerous reasons:

*First*, Cusimano's proposed opinion misconstrues the legal standard in this case. Under the charged offense, "the CFTC must show defendant (1) made a false or misleading statement or omission; (2) of material fact; (3) to the CFTC; (4) which [defendant] knew or reasonably should have known was false or misleading." *Gramalegui*, 2018 WL 4610953, at *23; *eFloorTrade, LLC*, 2018 WL 10625588, at *8 (same). A Section 6(c)(2) violation does not require the CFTC to show that Defendant independently knew or should have known of the materiality of its own statements and omissions. Yet, Cusimano's opinions are couched in terms of what Defendant "would not have reasonably known" would be "relevant and material to the

susceptibility to manipulation analysis." (Rpt. ¶¶ 12(a)(ii); *see also id.* ¶¶ 12(a)(iv), 12(b), 12(c).)[4]

In other words, Cusimano misconstrues the knowledge prong of a Section 6(c)(2) charge to require that Defendant had actual intent to mislead the CFTC by failing to disclose information it knew or should have known would be material to the CFTC's product review. Courts in this Circuit have rejected similar attempts to infuse a heightened intent element into the knowledge prong of a Section 6(c)(2) charge. *See eFloorTrade, LLC*, 2018 WL 10625588, at *10 (rejecting the argument that it was not defendant's "intent to mislead or deceive the CFTC" because liability under Section 6(c)(2) looks to whether a defendant "*reasonably should have known*, the statement to be false or misleading"). Because Cusimano's testimony would improperly suggest that Defendant must know or have reason to know its misstatements were material to the CFTC's review, rather than merely being false or misleading, his testimony should be excluded. *Olin Corp. v. Lamorak Ins. Co.*, 2018 WL 1901634, at *21 (S.D.N.Y. Apr. 18, 2018) ("Expert testimony also should be excluded when it applies the wrong legal standard.")[5]

---

[4] The report is replete with other examples of Cusimano invoking the wrong legal standard. (*See, e.g.*, Rpt. ¶¶ 14 ("Gemini would not have known or had reason to believe that the CFTC would have considered its actions, policies, or representations to amount to alleged false, misleading, or omitted statements, that were relevant and material to the Core Principle 3 compliance . . . ."), 45 ("The following subsections discuss the CFTC's allegations with respect to pre-funding . . . as well as how they conflict with what Gemini should have reasonably been expected to know with respect to relevant or material disclosures for Core Principle 3 compliance . . . ."), 69 ("Gemini would not reasonably have known that the CFTC would view information about bespoke fee arrangements as relevant and material to Core Principle 3 compliance."), 88 ("Gemini would not have had reason to know that the CFTC would view the allegedly omitted facts as relevant or material to the Bitcoin Futures Contract's self-certification and Core Principle 3 compliance."), 89 ("Gemini would not reasonably have known that the CFTC would view the theoretical possibility of trading between its continuous order book and its auction book as relevant to Core Principle 3 compliance.").)

[5] While courts allow some leeway where the sustainability of a Defendant's legal theory "has not yet been decided," *Olin Corp.*, 2018 WL 1901634, at *21, Defendant's legal theory that requires knowledge of the materiality of the omitted information ignores the plain text of the statute, settled law, and this Court's prior articulation of the elements of a Section 6(c)(2) charge. *See* Jan. 4, 2024 Order at 2, ECF No. 77 (quoting *eFloorTrade, LLC*, 2018 WL 1062558, at *8)).

*Second*, even if Cusimano had used the correct legal standard, his opinions are still inappropriate because he proposes to opine on what Defendant "had reason to believe" or what Defendant "would not have known." (Rpt. ¶¶ 12(a), 12(b), 12(c), 14, 45, 46, 54, 68, 69, 89.) Testimony about a defendant's mental state are inappropriate topics for expert testimony and would usurp the role of the jury in applying the law to the facts. *See Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2011 WL 6288415, at *8 (S.D.N.Y. Dec. 15, 2011) (concluding that "[t]here is no dispute that opinions concerning state of mind are an inappropriate topic for expert opinion"); *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (finding "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony" because "[t]he question of intent is a classic jury question and not one for the experts").

Despite this settled law, Defendant offers Cusimano to testify about Defendant's mental state and what Defendant would have known at the time of the product self-certification. (*E.g.*, Rpt. ¶ 100; Tr. at 114:16-22 ("One area I offer opinions is whether or not . . . Gemini would have had a reasonable basis to know that the CFTC would find that issue to be relevant with respect to Core Principle 3."); *see also id.* at 132:20-23 ("The opinions are[:] was there a basis for Gemini to know or to assume that the CFTC would have found them material with respect to Core Principle 3.").) But, Cusimano has no firsthand knowledge of Defendant's state of mind during the time period leading to the product self-certification and never inquired about it. (Tr. at 115:3-6 ("Q. Did you ask Gemini what it knew at the time about Core Principle 3? A. No"); *see also id.* at 120:21-121:2 ("Q. Did you speak with anybody at Gemini about what Gemini knew about the statements it made to the CFTC during the self-certification? A. No").) It would be wholly improper for Cusimano to opine about Defendant's mental state when he lacks

personal knowledge about what Defendant knew when it made false or misleading statements to the CFTC. *See LaSalle Bank Nat. Ass'n v. CIBC Inc.*, 2012 WL 466785, at *7 (S.D.N.Y. Feb. 14, 2012) ("[A]n expert may not testify as to facts not within his personal knowledge, and may not opine as to a party's state of mind . . . ."); *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (excluding as inadmissible proposed expert testimony "as to the state of mind and knowledge possessed by defendants" as improperly "supplant[ing] . . . the role of the jury [in] interpreting the evidence") (cleaned up); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453, 460 (S.D.N.Y. 2014) (it is "well-established that expert witnesses are not permitted to testify about legal standards or conclusions of law" including "[w]hether a party acted with objective reasonableness").

*Finally*, Cusimano improperly opines on whether the "alleged false or misleading statements of material facts, or alleged omissions of material facts, may be material and relevant to the self-certification of a bitcoin futures contract." (Rpt. ¶ 4; *see also* ¶ 14 (opining that Defendant's "actions, polices, or representations" did not "amount to alleged false, misleading, or omitted statements[] that were relevant and material to the Core Principle 3 compliance self-certification analysis for the . . . Bitcoin Futures Contract").) Throughout his report Cusimano opines that certain statements and omissions would not "be viewed as containing false or misleading statements or material omissions." (*Id.* ¶¶ 12(a), 12(b), 12(c); *see also id.* ¶¶ 14, 45, 54, 59, 68, 69, 84, 88, 101, 103, 104.) These opinions directly implicate the materiality of Defendant's misstatements and related omissions and are not appropriate expert topics. *SEC v. Airborne Wireless Network*, 2023 WL 5935627, at *6 (S.D.N.Y. Sept. 12, 2023) ("An expert cannot testify as to whether the specific information at issue in a case is or is not 'material'"); *Tourre*, 950 F. Supp. 2d at 678 ("[O]pining on whether or not all 'economically material'

information has been disclosed improperly invades both the province of the judge to instruct on the law and the jury to find the facts").  Because Cusimano intends to opine that "the CFTC failed to provide justification for its assertion that Gemini provided false or misleading statements or omissions of material facts" (*id.* ¶ 103), his testimony is wholly improper and should be excluded in its entirety.

## IV.    Cusimano's Proposed Opinions Are Not the Product of Reliable Principles and Methods Under *Daubert* and Rule 702

Even assuming that Cusimano is qualified and proposes to opine on topics that are appropriate for expert testimony, "the district court must determine 'whether the proffered testimony has a sufficiently "reliable foundation" to permit it to be considered.'" *Amorgianos*, 303 F.3d at 265 (quoting *Daubert*, 509 U.S. at 597); *523 IP LLC*, 48 F. Supp. 3d at 643-44 ("Once a court has determined that a witness is qualified as an expert, it must next ensure that the expert's testimony . . . 'rests on a reliable foundation . . . .'").  "[I]t is critical that an expert's analysis be reliable at every step."  *Id.* at 267.  Here, however, every step that supports Cusimano's ultimate opinions is unreliable.

### A.    Cusimano's Opinion that Defendant's Rebate Program Was Consistent with Common and Well-Established Trading Incentive Programs Lacks a Reliable Foundation

Cusimano opines that the CFTC "lacks a rationale for its assumption that Gemini's trading incentive program is substantially different or less appropriate than those deemed acceptable to the CFTC," and as a result, Defendant "would not reasonably have known that the CFTC would view information about bespoke fee arrangements as relevant and material to Core Principle 3 compliance."  (Rpt. ¶ 69.)  Cusimano fails to provide a reliable basis to support this position.

As a threshold matter, Cusimano's testimony about what Defendant would have known ignores that, during the time period leading to the product self-certification, the CFTC specifically asked Defendant about the rebate incentives it offered to market makers.  (Def.'s Counter 56.1 Statement at 56, ECF No. 106 (admitting that "[o]n August 18, 2017, the CFTC posed a number of questions to Gemini and CFE by email, one of which asked Gemini to 'provide more detail on the market makers rebate program? How many market makers are signed up? How much liquidity are they providing to the auctions?'").)  Cusimano's failure to grapple with Defendant's undisputed knowledge of the CFTC's interest in, and questions directed at, Defendant's rebate program (*see* Rpt. ¶¶ 69-88; Tr. at 262:24-269:3), eviscerates the reliability of his core opinion that Defendant did not know that bespoke fee arrangements were relevant and material to the CFTC's product review.  *See In re Electronic Books Antitrust Litig.*, 2014 WL 1282298, at *15 (S.D.N.Y. 2014) (excluding expert who "ignored the evidence," "relied on unreasonable assumptions unmoored to the record evidence or directly contradicted by it, and avoided rigorous analysis"); *Davis v. Carrol*, 937 F. Supp. 2d 390, 418 (S.D.N.Y. 2013) ("Where . . . expert testimony rests on inadequate factual foundations, problematic assumptions, or a misleadingly partial selection of relevant facts, it must be excluded under Rule 702.").

Even if Cusimano's opinion was grounded in the facts of this case, Cusimano cannot point to a single reliable basis to back up his final opinion about the consistency of Defendant's bespoke rebate practices with trading incentive programs offered by other CFTC-registered exchanges.  (Rpt. ¶¶ 12(b), 69-88.)  To reach his ultimate conclusion, Cusimano offers an unexplained assortment of support, including his own experience, random third-party sources and publications, a putative analysis derived from a "representative sample" of self-certification filings related to the creation and modification of trading incentive programs, and two consent

23

orders involving traders who abused other trading incentive programs.  (*Id.* ¶¶ 74-86.)  None of this support, taken together or separately, provides a reliable foundation for Cusimano's proposed testimony.  (*Id.* ¶ 69.)

For starters, Cusimano invokes his "experience" as a basis to conclude that "trading incentive programs, including fee rebates, are broadly ubiquitous at exchanges" and "often involv[e] complex programs of fee rebates, complex tier structures, limited disclosure, and the stated purpose of increasing trading volume and / or liquidity."  (*Id.* ¶ 73.)  Cusimano does not explain "how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, [or] how [his] experience is reliably applied to the fact."  *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 473 n.148 (S.D.N.Y. 2010) (quoting Fed. R. Evid. 702 Advisory Committee Note); *see also Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 401 (S.D.N.Y. 2013) ("[A]n expert basing his opinion solely on experience must do more than aver conclusorily that his experience led to his opinion."); *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *4 (S.D.N.Y. July 16, 2002) (requiring experts to "provide some explanation for their conclusions, rather than referring generally to their experience").

In lieu of identifying any relevant experience that informs his conclusion, Cusimano cherry-picks statements from various public sources, including a 2018 Royal Bank of Canada study, a 2018 SEC roundtable discussion, a 2020 SEC Investor Advisory Committee recommendation, and a 2014 article from *Trader's Magazine.*  (Rpt. ¶¶ 74-77.)  According to Cusimano, these sources purport to support his assertions that trading incentive programs are "widespread," "highly tiered," and "target[ed] [at] one or more preferred customer firms."  (Rpt. ¶¶ 75-76.)  But, Cusimano is simply summarizing third-party statements without providing any

independent expertise or analysis that connects these conclusory hearsay statements to this case. *In re Rsrv. Fund Sec. & Derivative Litig.*, 2012 WL 12356742, at *3 (S.D.N.Y. Sept. 10, 2012) ("Inasmuch as [the expert] plans to summarize these articles, his proposed testimony would bring no specialized knowledge that might assist the jury.")  Indeed, "[a]cting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology." *Tourre*, 950 F. 2d at 675; *see also United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (expert may not "simply transmit . . . hearsay to the jury").

In addition to the hearsay from public sources that Cusimano proposes to paraphrase to the jury, Cusimano proffers an analysis he conducted of a "representative sample of 34 self-certifications" filed with the CFTC that discussed incentive programs offered by other exchanges.  (Rpt. ¶ 79.)  The purpose of the analysis is to bolster Cusimano's opinion that the information Defendant disclosed about its rebate program "was not unique or unusual."  (*Id.* ¶ 84.)  But Cusimano conceded that the sample he analyzed to draw his conclusions was not actually "representative" in the statistical sense.  (Tr. at 286:20-24 ("Q.  How do you know that the sample is representative?  A.  So it's not a statistically randomized sample").)  Cusimano admitted that he just "grab[bed]" some "recent" DCM self-certifications "that related to incentive programs" for "different exchanges" and "different types of products."  (*Id.* at 286:8-287:10.)[6] Court routinely find that "broad conclusions" like Cusimano's that are drawn from a "non-representative sample" "are unreliable and must be excluded."  *SEC v. Lek Sec. Corp.*, 370 F. Supp. 3d 384, 419 (S.D.N.Y. 2019); *see also Holowecki v. Fed. Exp. Corp.*, 644 F. Supp. 2d 338,

---

[6] While Cusimano claimed that he did not exclude any certifications, he could not identify the universe of certifications that his sample was drawn from and did not employ an identifiable methodology to select the sample from a disclosed set of filings.  (*Id.* at 286:25-287:14.)

361 (S.D.N.Y. 2009) (expert testimony inadmissible where it "failed to demonstrate" that it was

based on a "proper representative sample"); *E.E.O.C. v. Bloomberg L.P.*, 2010 WL 3466370, at

*14 (S.D.N.Y. Aug. 31, 2010) ("Dr. Borgida's opinion must be excluded because he relied on

insufficient facts and data . . . .  He made no effort to ensure that the materials that he reviewed

were representative.").

While the use of a flawed sample is, alone, sufficient to exclude the proffered testimony,

*see Hill*, 336 F. Supp. 3d at 299 ("[I]t is critical that an expert's analysis be reliable at every

step."), the methodology Cusimano adopted to analyze the non-representative sample of thirty-

four self-certifications suffers from additional defects.  Cusimano claims to have reviewed the

thirty-four self-certification filings for four characteristics: "disclosure of incentives or

obligations for program participants; presence of a Freedom of Information Act ('FOIA') letter

regarding program information;[7] information on participants and participant limitations; and

Core Principles that were cited as potentially impacted in the filing."  (Rpt. ¶ 79.)  However,

Cusimano fails to explain the reasoning behind the selected characteristics or how those

characteristics support his opinion that there is a "broad understanding among CFTC-registered

exchanges that incentives have nothing to do with susceptibility to manipulation."  (*Id.* ¶ 84; Tr.

at 287:21-288:9.)  This, too, weighs against permitting Cusimano to testify at trial.  *See Nimely*,

414 F.3d at 396 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district

court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the

---

[7] Cusimano's focus on the "presence of a [FOIA] letter" as demonstrating that "secrecy around participation, terms, conditions, and rewards for these programs was a standard industry practice" is confounding.  Rpt. ¶¶ 79-80.  This case is about information that should have been disclosed to the CFTC not to the general public.  The FOIA letters plainly show that, contrary to Cusimano's opinion, CFTC-registered exchanges provided detailed disclosures to the CFTC about trading incentives.

expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

The errors in Cusimano's methodology are laid bare by the fact that the self-certification filings Cusimano reviewed actually undermine Cusimano's opinion that "incentives have nothing to do with susceptibility to manipulation" (Rpt. ¶ 84) or, therefore, Core Principle 3. Thirty-one of the thirty-four self-certifications in Cusimano's "representative sample" disclosed *to the CFTC* that market manipulation, market abuse, or wash trading were relevant considerations to the structure of the incentive programs. (Rpt. at Exs. A1-A10, A12-A29, A31-A34.) And, in one of three illustrative examples that Cusimano elevated to the text of his Report, the self-certification expressly stated that the incentive program was "structured so that it does not create incentives for participants to engage in market abuses such as manipulative trading or wash sales." (Ex. 4 (Cusimano Ex. 10).) Cusimano's blatant failure to "acknowledge or account for [] evidence" "tending to refute [his] theory," *In re Rezulin Prod. Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005), that trading "incentives have nothing to do with susceptibility to manipulation" (Rpt. ¶ 84) makes his opinion about the consistency of Defendant's disclosures with industry standards wholly unreliable and inapt for trial.

Making matters worse, Cusimano acknowledged he did not consider how references to market abuse and manipulation could implicate Core Principle 3 (Tr. at 276:8-280:13), and only reviewed the self-certifications "to see if they specifically referenced Core Principle 3." (Tr. at 289:7-10.) Of course, expert analysis is not required to review a limited set of filings for specific words and then conclude that those specific words were not mentioned. *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *4 (S.D.N.Y. May 2, 2011) ("A court should not admit expert testimony that is 'directed solely to lay matters which a jury is capable of understanding

and deciding without the expert's help.'"); *In re Lyman Good Dietary Supplements*, 2019 WL 5682880, at *4 (S.D.N.Y. Oct. 31, 2019) (rejected chart where the "conclusion [was] obvious," "require[d] no specialized knowledge to reach," and "fail[ed] to present any information or conclusions that the jury could not reach with their own 'common knowledge and common sense'").

The same is true of Cusimano's observation that, "in the last 20 years, the CFTC has charged and settled multiple enforcement proceedings wherein different DCM customers abused trading incentive programs without penalizing the DCM or rejecting future trading incentive programs by those same DCMs." (Rpt. ¶ 86.)  For one thing, that observation is entirely irrelevant to the question of whether Defendant's own statements about its trading fee program were materially misleading based on the failure to disclose its practice of providing bespoke, and preferential, trading fees and rebates to market makers.  *See supra* at 15-16 (citing authority). For another, no specialized expertise or knowledge is required to regurgitate factual matters set forth in two public consent orders.  *See Mejia*, 545 F.3d at 196.

Cusimano's reliance on, and summary of, two consent orders only underscores the reliability flaws of his opinion addressing Defendant's rebate program disclosures because, in summarizing the consent orders, Cusimano overlooks language that directly implicates Core Principle 3.  Indeed, the consent orders plainly state that the abuse of rebate incentives through "wash sales" is "harmful, in part, because [wash sales] create illusory price movements in the market."  (*E.g.*, Ex. 5 at 5 (Cusimano Ex. 13).)  Such illusory price movements caused by wash or fictitious sales "may mislead market participants" because the transactions "do not reflect the forces of supply and demand."  (*Id.*)  Because Cusimano's opinion that "Gemini would not have had reason to know that the CFTC would view the allegedly omitted facts [regarding its bespoke

trading fees] as relevant or material" rests on multiple unreliable foundations, it should be excluded.  (Rpt. ¶ 88.)

### B.    Cusimano's Opinion that Defendant's Self-Match Prevention Practices Were Consistent with Industry Standards Lacks a Reliable Foundation

Cusimano opines that, because "it is generally understood and accepted [in financial markets] that self-trading is possible," "Gemini would not reasonably have known that the CFTC would view the theoretical possibility of trading between its continuous order book and its auction book as relevant to Core Principle 3 compliance." (Rpt. ¶ 89.)  This topline opinion rests on a similarly flawed and unreliable foundation.

Here, too, Cusimano fails to account for the questions that the CFTC posed to Defendant about its self-trade prevention capabilities.  Defendant has already conceded that, as part of the CFTC's review of information provided during the time period before the self-certification, the CFTC expressly asked about Defendant's self-trade prevention capabilities.  (Def.'s Counter 56.1 Statement at 57, ECF No. 106 (admitting that "[o]n August 18, 2017, the CFTC inquired via email whether 'an auction could occur where there is one participant trading with themselves'").  It defies credulity, and thus renders Cusimano's opinions inherently suspect and unreliable, to opine that Defendant "would not reasonably have known" that its self-trade prevention capabilities were, at the very least, relevant to the CFTC's product review when the CFTC posed a question to Defendant about those very capabilities.  Such basic failures to account for undisputed facts renders Cusimano's opinion a poor fit for this case.  *See supra* at 23, 27 (citing authority); *see also Marmo v. Tyson Fresh Meats*, *Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) ("Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case.")

And, again, putting aside this fundamental flaw in his opinion, the support Cusimano gathers for his opinion is utterly unreliable.  This support is grounded in his "experience," a notice and FAQ from two other exchanges that were published in 2020 and 2021 (respectively), and a purported comparison of Defendant's self-trade prevention capabilities to CFTC-regulated exchanges.  (Rpt. ¶¶ 89-99.)

Starting with his experience (*see id.* ¶ 90), Cusimano does not outline what his experience is, how his experience is a sufficient basis for his opinions about self-trade prevention capabilities, or how his experience was reliably applied to any facts.  *See LinkCo*, 2002 WL 1585551, at *4 (observing that an expert "must provide some explanation for their conclusions, rather than referring generally to their experience"); *Reach Music*, 988 F. Supp. 2d at 401 (expert "must do more than aver conclusorily that his experience led to his opinion").  Without the required explanation, Cusimano's opinion is mere *ipse dixit*, which is insufficient under *Daubert*.  *See Tourre*, 950 F. Supp. 2d at 678 ("The law is clear that mere *ipse dixit* is not appropriate expert testimony because it is not based on reliable methodology, as *Daubert* requires.").

Next, Cusimano resorts to summarizing the contents of two documents—"a 2020 CME Group Market Regulation Advisory Notice" and a 2021 "FAQ" issued by ICE Futures U.S. (Rpt. ¶ 92)—to conclude that "CFTC-regulated entities see self-trading as something that can happen incidentally in a variety of scenarios and customers ultimately have the responsibility to mitigate it."  (*Id.* ¶ 93.)  Cusimano offers no explanation why an expert in the field would rely on these two documents, nor how these documents, which postdate the relevant time period in this case by several years, have any bearing on any issue to be decided by the jury.  *Daubert*, 509 U.S. at 595 ("Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are 'of a type reasonably relied upon by experts in the particular

field in forming opinions or inferences upon the subject.'").  The evidence from 2020 and 2021 on which Cusimano purports to rely in forming his opinion is irrelevant, inadmissible, and cannot provide a reliable foundation for Cusimano's opinion.  *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.").  Even if the documents were admissible, or could otherwise provide insights into the state of affairs in 2017, "[e]xpert testimony should not be 'directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.'"  *SEC v. Ripple Labs, Inc.*, 2023 WL 5670711, at *16 (S.D.N.Y. Mar. 6, 2023).  Jurors would be equally capable of drawing their own conclusions from the two documents if they were admissible without Cusimano's help.  *Id.*

Cusimano tries to save his defective opinion with a purported comparison of Defendant's self-trading prevention capabilities to the practices of CFTC-regulated DCMs.  (Rpt. ¶ 97 & App'x C.)  This comparison is based on a review of "rulebooks, regulatory filings, and public user documentation from a representative sample of CFTC-regulated DCMs."  (Rpt. ¶ 90.)  Here, again, the "sample" is not statistically "representative" because Cusimano did not employ "any kind of filtering" to ensure that the set of documents he reviewed fairly represented the practices of CFTC-regulated DCMs.  (Tr. at 336:3-9 ("Q.  And how did you select the regulatory filings?  A.  . . . [T]here wasn't any kind of filtering that was done.  It was how many can I or can my team find that discuss self-trade prevention capabilities").)  Cusimano's failure to provide any reliable justification for his selection criteria that drove his analysis, or provide any replicable guidelines that governed the selection process, plainly renders inadmissible any opinion tied to his analysis.  *Holowecki*, 644 F. Supp. 2d at 361.  As this Court recognized, "without a reliable

31

methodology or statistical basis for selecting among possible samples," the expert is merely "reason[ing] backward from [a] conclusion."  *Hill*, 336 F. Supp. 3d at 299.  The same is true here, as Cusimano attempts to backfill his opinion with as many regulatory filings that his team could locate without employing any reliable or replicable principles or methods.  *See Daniels-Feasel v. Forest Pharms., Inc.*, 2021 WL 4037820, at *5 (S.D.N.Y. Sept. 3, 2021) ("Cherry-picking is a form of '[r]esult-driven analysis,' which 'undermines principles of the scientific method' by 'applying methodologies (valid or otherwise) in an unreliable fashion.'").

Further compounding this incurable defect is the fact that Cusimano's sample included material "[a]s of May 2024."  (Rpt. ¶ 97.)  Cusimano could not explain why experts in his field, opining on industry practices in 2017, would use material from 2024, nearly six years past the "Relevant Period."  (Tr. at 311:6-313:19); *see United States v. Dukagjini*, 326 F.3d 45, 57 (2d Cir. 2003) (permitting expert witnesses to "testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions").  Because this evidence could not have been known to Defendant in 2017, Cusimano's opinion is merely a recitation of otherwise inadmissible hearsay and should be excluded.

Finally, in order to compare Defendant's self-trade prevention capabilities to other exchanges, Cusimano had to understand what Defendant's capabilities were.  But unlike the CFTC-regulated exchanges that "provide[] their customers with very detailed guidance in their rulebooks clarifying how they think about wash trading" (Rpt. ¶ 92), Defendant does not provide comparable—and publicly available—disclosures.  (Tr. at 339:8-12 ("A.  . . . the details of Gemini's self-match prevention capabilities came from document[s] that were produced in this case, not on their website").)  Thus, to conduct the comparison, Cusimano relied on information

provided by Defendant.  (*Id.* at 340:4-8.)  Neither Cusimano's report, nor Appendix C, which purports to be a chart comparing self-trade prevention capabilities by exchanges, outlines the basis for Cusimano's understanding of Defendant's self-trade prevention capabilities.

Such unsourced and untestable opinions that are based solely on information provided by Defendant and its counsel are plainly unreasonable and unfit for presentation at trial for at least two reasons.  First, there is no way for the Court to "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case" where, as here, "[t]he facts asserted have no citations . . . and the Report has no reference to the data, information, or methodology used to formulate the opinions provided."  *See In re Lyman Good Dietary Supplements Litig.*, 2019 WL 5682880, at *6 (S.D.N.Y. Oct. 31, 2019); *see also CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 677 (S.D.N.Y. 2011) ("Assumptions based on conclusory statements of the expert's client, rather than on the expert's independent evaluation are not reasonable.").  And, second, Cusimano's report flouts Rule 26 of the Federal Rules of Civil Procedure because he failed to include "the facts or data considered . . . in forming" the proposed opinions.  *See In re Lyman Good Dietary Supplements Litig.*, 2019 WL 5682880, at *7 (precluding expert opinion under Rule 26 where, as here, the expert report "does not include the 'facts or data considered' by [the expert] in forming his opinions, beyond a vague reference to 'testing results'").

As a result, Cusimano failed to provide a reliable basis on which to compare Defendant's self-trade capabilities to those of other exchanges.  Because Cusimano lacks a shred of reliable support for his opinions regarding Defendant's self-trade prevention disclosures and omissions, his testimony amounts to an invitation for the jury to draw sweeping conclusions simply based

on his say-so.  *See In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 433 (S.D.N.Y.

2016) (expert testimony inadmissible where it "impermissibly [drew] grossly 'overreaching

conclusions,' which [were] connected solely to the data by [the expert's] say-so") (citation

omitted).

## V.    Cusimano's Proposed Opinions About Gemini's Prefunding Statements and Related Cost of Capital Are Contrary to the Court's Summary Judgment Ruling, Irrelevant, and Unreliable

On July 23 and 24, 2024, the Court granted partial summary judgment in favor of the

CFTC on its claim that Defendant violated Section 6(c)(2), 9 U.S.C. § 9(2), by making 15 false

or misleading statements to the CFTC about its prefunding requirement and the related cost of

capital to trade.  (7/23/2024 Hr'g Tr. at 25:1-6, 101:18, ECF No. 133; 7/24/2024 Hr'g Tr. at

158:9-159:16, 161:19-162:12, 209:21-210:1, 211:6-16, 216:22-25, ECF No. 135.)  Thus,

Cusimano's opinion that Defendant's "characterization of pre-funding is a reasonable definition"

and, as a result, Gemini "would not have known or had reason to believe that the information it

provided to the CFTC with respect to its pre-funding requirement would be viewed as containing

false or misleading statements or omissions" (Rpt. ¶¶ 43, 45; *see also id.* ¶ 12(a)) is erroneous

and, now, wholly irrelevant in light of the Court's ruling.  *See supra* at 6 (collecting authority).

Also, as noted above, Defendant cannot shoehorn Cusimano's testimony into trial based on the

misperception that the jury must decide the penalty for the statements that the Court determined

were false and misleading as a matter of law.  *Id.*  Even if the jury were to decide the issue

reserved for the Court, Cusimano does not provide any opinions about damages or what the

appropriate penalty should be for each Section 6(c)(2) violation.

But if Defendant argues that Cusimano's testimony is relevant to any issues that the jury

is required to resolve, it should be excluded for the same reasons set forth above.  *See supra* at

Sections I-III.[8]  And, much like Cusimano's other opinions, his opinions about Defendant's prefunding statements and related cost of capital lack any reliable foundation, which counsels strongly in favor of complete exclusion of the opinions referenced in Section V of Cusimano's report.  (Rpt. ¶¶ 42-68.)

As an initial matter, Cusimano's main opinion that Defendant's "characterization of pre-funding is a reasonable definition" (Rpt. ¶ 43) is a legal determination that is not an appropriate topic for expert testimony.  *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d at 460 (it is "well-established that expert witnesses are not permitted to testify about legal standards or conclusions of law" including "[w]hether a party acted with objective reasonableness").  Even if Cusimano's ultimate conclusion was appropriate, it is inappropriately supported by three propositions, none of which provide a reliable basis to admit Cusimano's testimony.  The three supporting propositions are:  (i) that "[c]ustomer borrowing is a common and accepted practice in financial markets" (Rpt. ¶¶ 46-53); (ii) that "[a]dvances and credits to customer accounts are a routine and accepted practice in financial markets" (*id.* ¶¶ 54-59); and (iii) that "[t]o [his] knowledge, the CFTC has not published statements that describe its expectation for understanding or disclosing source of funds in customer accounts for the purposes of compliance with Core Principle 3." (Rpt. ¶¶ 60-68.)

*First*, Cusimano's opinion that customer borrowing is common and accepted relies on unspecified "experience" and the *ipse dixit* remark that, "it is generally accepted in financial markets that customers may obtain loans, advances and credits, including from financial entities that they have a relationship with."  (*Id.* ¶ 44; *see also id.* ¶ 48 ("In traditional finance, for

---

[8] The CFTC inquired if Defendant was going to withdraw any of the expert opinions in this matter, to which it responded:  "we do not intend to withdraw any experts or any portions of any expert reports, nor do we see any reason to do so."  (Ex. 3.)

example a large Wall Street bank, there are both lending and trading businesses within the same

firm.")  When asked what research he had done to reach this conclusion, Cusimano confessed:

"I take that as just common knowledge."  (Tr. at 213:24-214:3.)  The same is true for

Cusimano's statement that, in his "experience, borrowing funds or assets does not, in itself,

lower or eliminate the cost of capital, nor demonstrate a connection to increased potential for

manipulation or abusive behavior."  (*Id.* ¶ 53.)  But Cusimano's appeals to common knowledge

and his "experience" is not a substitute for a reasoned basis for his conclusions.  *Primavera*

*Familienstifung v. Askin*, 130 F. Supp.2d 450, 529 (S.D.N.Y. 2001) (observing that courts do not

permit experts to "offer credentials rather than analysis").[9]

Equally problematic is Cusimano's attempt to equate his unsupported statements about

borrower behavior to the loan recipients who received loans through Defendant's affiliate, Pearl

Street.  (*Id.* ¶¶ 51-52; Tr. at 221:7-8, 221:22-25.)  Cusimano proclaims that "[t]he Affiliate Loans

were not gifts" and that the unsecured credit provided through Defendant's affiliate loan program

did "not necessarily make manipulative conduct more likely."  (Rpt. ¶ 51.)  There is no data,

analysis, financial theories, or academic research to support this point.  Instead, these unsourced

pronouncements flow from Cusimano's review of a single Pearl Street loan document that he did

not even compare to loan documents provided by other lenders.  (*Id.* ¶ 52 & n.52 (opining that

the Pearl Street loans included standard repayment and interest terms based on "one example of

an Affiliate Loan"); Tr. at 222:2-15.)  Courts routinely reject such superficial analysis as

---

[9] Reference to purported "[c]ommentators" opining that the digital asset industry is "recapitulating the history of traditional finance" does not help Cusimano's otherwise unreliable opinion.  Cusimano did not conduct any research to reach this conclusion (Tr. at 213:24-214:3) and merely quotes public sources.  (Rpt. ¶¶ 49 n.48 & n.49.)  Cusimano cannot be a vessel through which to parrot hearsay to the jury.  *Tourre*, 950 F. 2d at 675; *Mejia*, 545 F.3d at 196.  Cusimano also equates Defendant's lending affiliate, Pearl Street Financial LLC ("Pearl Street") with a "CME Group affiliate," which also "served to bolster liquidity," to impute knowledge to the CFTC of volume enhancing affiliates.  (Rpt. ¶ 50; Tr. at 212:19-24, 215:24-216:18.)  This is a puzzling comparison given, as Cusimano acknowledges, the CME Group's practice "continued with the knowledge of the CFTC" unlike Defendant's lending via an affiliate that was not disclosed.  (*Id*. ¶ 50; Tr. at 217:7-13.)

36

insufficient to support expert opinions. *See Barber v. United Airlines, Inc* , 17 F. App'x 433,

437 (affirming district court's exclusion of expert because he "cherry-picked the facts he

considered to render an expert opinion"); *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir.

2017) (expert testimony is inadmissible where there is "simply too great an analytical gap

between the data and the opinion proffered"); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp.

2d 558, 582 (S.D.N.Y. 2007) (excluding expert opinion based on a "severely flawed

methodology" such that the "probative value" of the opinion was substantially outweighed by its

"potential to mislead the jury").

    *Second*, Cusimano also did not conduct any independent research or analysis to

determine whether Defendant's practice of providing advance credits or operational floats were

similar to or consistent with "accepted practice in financial markets" and did "not necessarily

make the Gemini Bitcoin Auction more susceptible to manipulation." (Rpt. ¶ 54; *see also id.*

¶ 56 ("Providing advances to digital asset exchange customer accounts is not unique to

Gemini.").) When asked about the basis for his opinion, Cusimano again incanted his

"experience dealing with financial accounts, financial markets" and "experience working with

other [unnamed] digital asset trading platforms." (Tr. at 236:21-238:22.) But, Cusimano cannot

rely on his credentials to offer sweeping conclusions about financial markets and the impact

operational advances did or did not have on the susceptibility of Defendant's auction to

manipulation. *See Primavera*, 130 F. Supp. 2d at 529. And the support Cusimano does offer, in

the form of cherry-picked testimony from a single trader who purported to "describe[] Gemini's

pre-funding requirement" as "consistent with that of several other cash digital asset exchanges"

(Rpt. ¶ 56), reinforces why expert testimony should be excluded because the trader "is perfectly

capable of offering this testimony at trial." *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D.

37

33, 47 (S.D.N.Y. 2016) (granting motion to preclude expert "from quoting witnesses' prior statements on the stand, and from repeating witnesses' prior statements without any further analysis").

Rather than comparing Defendant's practice of providing advances and credits to traders in a meaningful way, Cusimano launches into a defense of Defendant's policies with respect to operational advances.  (Rpt. ¶ 57.)  But Cusimano did not compare or measure Defendant's policies against any industry standards or practices (Tr. at 240:7-241:18) and he did not do anything to verify whether Defendant actually followed its policy because he declined to "look deeper into the mechanics of their operations."  (Tr. at 241:11-18.)  Yet, based solely on "a representation from counsel" (*id.* at 244:24-246:7), Cusimano opined that operational failures are not uncommon and "do not negate established company policies and procedures."  (Rpt. ¶ 58.)  Repeating representations from counsel is not a sufficiently reliable basis to form an opinion and is no substitute for the expert's independent evaluation.  *See CIT Grp./Bus. Credit*, 815 F. Supp. 2d at 677 ("Assumptions based on conclusory statements of the expert's client, rather than on the expert's independent evaluation are not reasonable."); *see also United State v. Tipton*, 269 F. App'x 551, 559 (6th Cir. 2008) (expert opinion is unreliable where it "depended on information provided by the Defendants").

*Finally*, Cusimano fares no better in his attempt to rationalize Defendant failure to disclose that it was seeding customer accounts with loans, advances, or credits because the only published guidance addressing customers' source of funds related to compliance with anti-money laundering ("AML") regulations and Know-Your-Customer ("KYC") requirements. (Rpt. ¶¶ 60-61.)  Cusimano overlooks Defendant's actual statements, which implicate a trader's cost of capital and thus a customer's source of funds.  (Rpt. ¶¶ 60-68.)  And, regardless,

Cusimano conceded that there is no "reasonable basis for Gemini to assume that" AML or KYC

concerns impact the analysis of whether a proposed contract complies with Core Principle 3.

(Tr. at 253:24-254:7.)  He also admitted that he did not "necessarily think prefunding is [an]

AML or KYC issue."  (*Id.* at 254:22-255:5.)

Based on his own admissions about the relevance of his own cursory analysis, Cusimano

should not be permitted to confuse the jury by conflating adherence to AML/KYC requirements

with compliance with disclosure obligations in the context of a product self-certification.  *United

States v. Stewart*, 433 F.3d 273, 312 & n.10 (2d Cir. 2006) (holding district court properly

excluded expert testimony on unrelated issues and explaining that "expert testimony regarding an

[irrelevant] issue . . . has the potential to confuse the jury even further"); *Rowe Ent., Inc. v.

William Morris Agency, Inc.*, 2003 WL 22272587, at *7 (S.D.N.Y. Oct. 2, 2003) (excluding

expert conclusions that were "not relevant to the issues in Plaintiffs' case and would only serve

'to interject substantial unfair prejudice into the case' and confuse the jury by directing its

attention from the issues in this case").

## VI.   The Court Should Exclude the Summary Slides Cusimano Proposes to Present at Trial

Appendix D to Cusimano's report provides a "Summary of Opinion Slides."  (*See* Rpt.

App'x D.)  The Court need not address the admissibility of the summary slides if the Court

concludes that Cusimano's testimony is inadmissible.  In the event Cusimano's testimony is

admissible in whole or in part, the Court should exclude the summary slides, which merely

repeat the opinions set forth in Cusimano's written report.  *Crown Cork & Seal Co. Master Ret.

Tr. v. Credit Suisse First Bos. Corp.*, 2013 WL 978980, at *7 (S.D.N.Y. Mar. 12, 2013)

(collecting cases and observing that "[c]ourts have held that where an expert is expected to

testify at trial, his report is inadmissible hearsay and redundant").  Expert reports are not

admissible, and Defendant cannot circumvent this bedrock principle by reducing Cusimano's report to PowerPoint slides.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court exclude the opinions and testimony of the Defendant's proposed expert Jeremy Cusimano in their entirety.

Dated: New York, New York
        November 15, 2024

Respectfully submitted,

COMMODITY FUTURES TRADING
COMMISSION

By:    */s/ Andrew J. Rodgers*

    Diana Wang
    Andrew J. Rodgers
    Katherine Rasor
    Peter Janowski
    Alejandra de Urioste
    K. Brent Tomer

Division of Enforcement
290 Broadway, 6th Floor
New York, NY 10007
Phone: (646) 746-9700
Fax: (646) 746-9888