UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

                    Plaintiff,                  22-cv-4563 (AKH)

     v.                                  Hon. Alvin K. Hellerstein

GEMINI TRUST COMPANY, LLC,

                   Defendant.

**PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS OMNIBUS
MOTION *IN LIMINE* TO EXCLUDE AND ADMIT CERTAIN EVIDENCE**

COMMODITY FUTURES TRADING
COMMISSION
Division of Enforcement
290 Broadway, 6th Floor
New York, NY 10007
(646) 746-9700

November 15, 2024

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES .................................................................................................... iv

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 3

    I.   Motion In Limine Number One:  To Preclude Evidence or Argument that Defendant Acted in Good Faith, Lacked Bad Faith, or Otherwise Believed Its Actions Were Lawful ............................................................................................................................ 3

    II.  Motion In Limine Number Two:  To Preclude Evidence or Argument Regarding the Legality of Pearl Street Loans .............................................................................................. 7

    III. Motion In Limine Number Three:  To Preclude Evidence or Argument Suggesting There Was No Purported Harm to Market Participants or No Occurrences of Price Manipulation While the Contract Was Operational .......................................................... 10

    IV. Motion In Limine Number Four:  To Exclude Evidence or Argument About Steps Taken by Gemini to Prevent Manipulation and Disclosure to CFTC of Such Steps ........ 11

    V.  Motion In Limine Number Five:  To Preclude Evidence or Argument Suggesting that the CFTC Never Requested or Asked for the Information Gemini Withheld During the Product Certification ................................................................................................ 13

    VI. Motion In Limine Number Six:  To Exclude Evidence or Argument that Defendant Would Have Disclosed Omitted Information if Asked ...................................................... 16

    VII.   Motion In Limine Number Seven:  To Exclude Any Evidence or Argument that Defendant Discharged Its Obligation to Provide Complete and Accurate Information Because Information Contradicting Defendant's False or Misleading Statements Was Buried in Documents or Data Transmitted to the CFTC .................................................. 17

    VIII.  Motion In Limine Number Eight:  To Exclude Evidence or Argument About the CFTC's Investigation, Charging Decisions, and Any Parallel Investigation Related to the Same Subject Matter ........................................................................................................ 20

    IX. Motion In Limine Number Nine:  To Exclude Inflammatory Evidence or Argument About Gemini's Former COO, Including Character Evidence and His Status as a Whistleblower, Unless He Is Called as a Witness .......................................................... 23

    X.   Motion In Limine Number Ten:  To Admit Opposing Party Statements Made by Defendant's Commonly Controlled Affiliate, Winklevoss Capital Management, LLC .. 24

XI. Motion In Limine Number Eleven:  To Allow the CFTC to Ask Leading Questions on
    Direct Examination of Gemini and WCM Witnesses ....................................................... 29

CONCLUSION .................................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Arista Recs. LLC v. Lime Grp. LLC,*
2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011).......................................................5-7

*Belabbas v. Inova Software Inc.,*
2019 WL 13258046 (S.D.N.Y. Oct. 1, 2019).........................................................27

*CFTC v. eFloorTrade, LLC,*
2018 WL 10625588 (S.D.N.Y. Sept. 21, 2018)..............................................5, 13, 19

*CFTC v. Gramalegui,*
2018 WL 4610953 (D. Colo. Sept. 26, 2018)..................................................5, 15, 17

*Charney v. Zimbalist,*
2014 WL 5064860 (S.D.N.Y. 2014)....................................................................13

*Disability Advocates, Inc. v. Paterson,*
2009 WL 1312112 (E.D.N.Y. May 8, 2009).........................................................11

*Evans v. Port Auth. of New York & New Jersey,*
192 F. Supp. 2d 247 (S.D.N.Y. 2002)....................................................................3

*Feis v. United States,*
394 F. App'x 797 (2d Cir. 2010) ..........................................................................25

*Highland Capital Mgmt., L.P. v. Schneider,*
379 F. Supp. 2d 461 (S.D.N.Y. 2005).....................................................................3

*In re 650 Fifth Avenue and Related Properties,*
2017 WL 6419014 (S.D.N.Y. May 30, 2017) ........................................................29

*In re General Motors LLC,*
2015 WL 8578945 (S.D.N.Y. Dec. 9, 2015) ..........................................................28

*In re General Motors LLC Ignition Switch Litig.,*
2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015) ...........................................................9

*In re Reserve Fund Securities & Derivative Litig.,*
2012 WL 12354219 (S.D.N.Y. Sept. 10, 2012)......................................................29

*In re Reserve Fund Securities & Derivative Litig.,*
2012 WL 12354233 (S.D.N.Y. Oct. 3, 2012).........................................................27

*Kozak v. Liberty Maritime Corp.*,
  2024 WL 1558809 (S.D.N.Y. Apr. 10, 2024)........................................................................24

*Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.Palmieri v. Defaria*,
  258 F.R.D. 95 (S.D.N.Y. 2009) .............................................................................................7

*Palmieri v. Defaria*,
  88 F.3d 136 (2d Cir. 1996)......................................................................................................3

*Pappas v. Middle Earth Condo. Ass'n*,
  963 F.2d 534 (2d Cir. 1992)..................................................................................................25

*Rosario v. City of N.Y.*,
  2021 WL 9455782 (S.D.N.Y. Nov. 22, 2021) ......................................................................30

*Sanders v. New York City Human Resources Administration*,
  361 F.3d 749 (2d Cir. 2004)..................................................................................................29

*Santrayall v. Burrell*,
  993 F. Supp. 173 (S.D.N.Y. 1998) ........................................................................................15

*SEC v. Honig*,
  2021 WL 5630804 (S.D.N.Y. Nov. 30, 2021) ....................................................................6, 7

*SEC v. Monterosso*,
  768 F. Supp. 2d 1244 (S.D. Fla. 2011) .................................................................................13

*SEC v. Moshayedi*,
  WL 12129282 (C.D. Cal. Nov. 20, 2013)........................................................................29, 30

*SEC v. Ripple Labs, Inc.*,
  2021 WL 2323089 (S.D.N.Y. May 30, 2021) ........................................................................6

*Shatkin v. McDonnell Douglas Corp.*,
  727 F.2d 202 (2d Cir. 1984)....................................................................................................3

*Torres v. Metro-North Railroad Co.*,
  2023 WL 2088174 (S.D.N.Y. Feb. 16, 2023)........................................................................30

*United States v. Al Kassar*,
  660 F.3d 108 (2d Cir. 2011).............................................................................................9-10

*United States v. Autuori*,
  212 F.3d 105 (2d Cir. 2000)..................................................................................................15

*United States v. Calderon*,
    944 F.3d 72 (2d Cir. 2019).................................................................13

*United States v. Carneglia*,
    2009 WL 185725 (E.D.N.Y. Jan. 27, 2009) ......................................15

*United States v. Corr*,
    543 F.2d 1042 (2d Cir. 1976)..............................................................3

*United States v. DeFiore*,
    720 F.2d 757 (2d Cir. 1983)...............................................................29

*United States v. Duncan*,
    2019 WL 2210663 (S.D.N.Y. May 22, 2019) ...................................21

*United States v. Ferguson*,
    553 F. Supp. 2d 145 (D. Conn. 2008).................................................13

*United States v. Klein*,
    2017 WL 1316999 (E.D.N.Y. Feb. 10, 2017)....................................22

*United States v. Miller*,
    626 F.3d 682, 689 (2d Cir. 2010).......................................................20

*United States v. Murray*,
    2023 WL 3309484 (S.D.N.Y. May 8, 2023) .......................................9

*United States v. Nekritin*,
    2011 WL 2462744 (E.D.N.Y. June 17, 2011) ...................................12

*United States v. Ramsey*,
    2023 WL 2523193 (E.D.N.Y. Mar. 15, 2023) ...................................12

*United States v. Regan*,
    103 F.3d 1072 (2d Cir. 1997).............................................................20

*United States v. Reyes*,
    2007 WL 2554227 (N.D. Cal. 2007) ..................................................13

*United States v. Rosado*,
    728 F.2d 89 (2d Cir. 1984).................................................................20

*United States v. Saldarriaga*,
    204 F.3d 50 (2d Cir. 2000).................................................................21

*United States v. Santiago*,
  2014 WL 4827883 (S.D.N.Y. Sept. 26, 2014) ........................................................19

*United States v. Scali*,
  2018 WL 461441 (S.D.N.Y. Jan. 18, 2018) ...........................................................9

*United States v. Scarpa*,
  897 F.2d 63 (2d Cir. 1990) ...................................................................................12

*United States v. Stafford*,
  422 F. App'x 63 (2d Cir. 2011) ............................................................................28

*United States v. Stewart*,
  2004 WL 113506 (S.D.N.Y. Jan. 26, 2004) ..........................................................21

*United States v. Tokash*,
  282 F.3d 962 (7th Cir. 2002) .................................................................................3

*United States v. Ware*,
  399 F. App'x 659 (2d Cir. 2010) ...........................................................................15

**Statutes**

7 U.S.C. § 6a(2)(A) ...........................................................................................................4

7 U.S.C. § 9(1)(C) .............................................................................................................3

7 U.S.C. § 9(2) .......................................................................................................... *passim*

7 U.S.C. § 13c(b) ...............................................................................................................5

**Rules**

Fed. R. Evid. 104 ..............................................................................................................3

Fed. R. Evid. 403 ...................................................................................................... *passim*

Fed. R. Evid. 404 .............................................................................................................23

Fed. R. Evid. 608 .............................................................................................................24

Fed. R. Evid. 611 .............................................................................................................29

Fed. R. Evid. 801 ...........................................................................................24, 25, 27, 28

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Plaintiff") respectfully submits this memorandum of law in support of its pretrial motions *in limine* to (1) exclude certain evidence that it expects Defendant Gemini Trust Company, LLC ("Gemini" or "Defendant") will introduce at the trial, and (2) admit certain evidence that the CFTC expects to introduce at trial.

## PRELIMINARY STATEMENT

Since the beginning of this case, Gemini has made clear that its trial strategy will hinge on misdirection and confusion. Unable to dispute the basic facts that Gemini made multiple materially false or misleading statements and failed to disclose multiple material facts to the CFTC regarding specific aspects of its exchange and auction central to the proposed bitcoin futures contract, Gemini hopes to divert the fact-finder's attention towards other evidence that has little or no bearing on the CFTC's claims. The Court should exclude such evidence as irrelevant under Federal Rule of Evidence 401 and, even if such evidence were relevant, as confusing, misleading, and prejudicial under Federal Rule 403, among other authority set forth below.

In particular:

- Gemini may seek to admit evidence or argue that it acted in good faith, believed its actions were lawful, and that certain loans issued by a Gemini affiliate were lawful and proper. But, good faith is not a defense to the CFTC's claim; moreover, the perceived lawfulness of specific aspects of Gemini's business has no bearing on whether Gemini *truthfully disclosed to the CFTC all material facts* pertaining to the proposed bitcoin futures contract. (CFTC Motions *In Limine* Nos. 1 and 2).

- Gemini may seek to admit evidence or argue that it took certain steps to prevent market manipulation on its exchange and that no market manipulation occurred. But again, such facts are irrelevant to whether Gemini *truthfully disclosed to the CFTC all material facts* pertaining to susceptibility to manipulation on its exchange regardless of what steps Gemini actually took and whether those steps were actually successful. (CFTC Motions *In Limine* Nos. 3 and 4).

- Gemini may seek to admit evidence or argue that the CFTC did not ask for certain categories of information, and that Gemini would have responded truthfully if asked. Such evidence is irrelevant because the CFTC had no obligation to ask Gemini for information that Gemini knew or should have known was necessary to make its false or misleading statements of material fact not misleading; rather, having affirmatively represented certain information about its exchange and auction to the CFTC in an effort to satisfy the proposed bitcoin futures contract product listing requirements, it was *Gemini's* duty to ensure that it disclosed *all information necessary to give the CFTC a complete and accurate picture* of the proposed contract. (CFTC Motions *In Limine* Nos. 5 and 6).

- Gemini may seek to admit evidence or argue that it discharged its obligation to provide complete and accurate information to the CFTC by burying disclosures in other documents submitted to the CFTC. Such information is irrelevant because liability for false or misleading statements attaches at the moment it made its false or misleading statements. (CFTC Motion *In Limine* No. 7).

- Gemini may seek to admit evidence or argue that the CFTC's investigation and charging decisions were flawed, or that another federal agency declined to charge Gemini in a parallel criminal case. Such evidence or conjecture about the CFTC's investigation is wholly irrelevant, and a separate agency's independent discretionary decision as to *criminal liability* has no bearing on Gemini's *civil liability*, especially where the standard for criminal liability is higher than for civil liability. (CFTC Motion *In Limine* No. 8).

- Gemini may seek to admit evidence or argue regarding the character of a former Gemini employee who disclosed information about Gemini to the CFTC. Although such evidence may be relevant for impeachment if the employee testifies at trial, it has no bearing otherwise and should be excluded except during cross examination of that witness in the event that he testifies. (CFTC Motion *In Limine* No. 9).

In addition, the CFTC moves to admit two types of evidence:

- First, the CFTC moves to admit certain statements made by Winklevoss Capital Management, LLC ("WCM") in a related arbitration proceeding. WCM is a closely related affiliate of Gemini, and its statements are party admissions under Federal Rule of Evidence 801(d)(2). (CFTC Motion *In Limine* No. 10).

- And second, the CFTC moves to permit the use of leading questions in direct testimony of Gemini and WCM witnesses, including Cameron Winklevoss. As witnesses identified with an adverse party, leading questions on the CFTC's direct examination are expressly permitted by Federal Rule of Evidence 611(c). (CFTC Motion *In Limine* No. 11).

**ARGUMENT**

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted); *see also Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005); *see generally* Fed. R. Evid. 104.  *In limine* motions therefore serve the salutary goal of "streamlin[ing] trials and settl[ing] evidentiary disputes in advance." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

The Court may rely on the Federal Rules of Evidence and its own broad discretion in determining whether to exclude certain evidence at trial.  *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 207 (2d Cir. 1984); *United States v. Corr*, 543 F.2d 1042, 1051 (2d Cir. 1976). Ordinarily, evidence is admissible so long as it is relevant, meaning that it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action," Fed. R. Evid. 401, and not otherwise barred under the Rules, *see* Fed. R. Evid. 402.  The proponent of the evidence, however, bears the burden of proving that it is admissible.  *See Evans v. Port Auth. of New York & New Jersey*, 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002) ("The burden of establishing admissibility, of course, is with the proponent of the evidence.").

I.    **Motion *In Limine* Number One:  To Preclude Evidence or Argument that Defendant Acted in Good Faith, Lacked Bad Faith, or Otherwise Believed Its Actions Were Lawful**

The CFTC expects Defendant to attempt to introduce evidence, elicit testimony, or present arguments that Defendant acted in good faith and believed its actions were lawful.  This Court should exclude this evidence as irrelevant under Rule 401 of the Federal Rules of

Evidence because good faith is not a defense to a violation of Section 6(c)(2) of the Commodity

Exchange Act ("CEA"), 7 U.S.C. § 9(2), and, further, Defendant refused to provide related,

relevant discovery material.

Variations of Defendant's good faith argument feature prominently in its Answer, ECF

No. 13, where Defendant states that:

- "Gemini did what it was supposed to do and what it was asked to do" (Answer at 2);

- "Gemini did everything right" (*id.*);

- "the statements . . . were made in good faith" (*id.* at 7); and

- "Gemini at all times acted appropriately and in good faith" (*id.* at 8).

Additionally, Defendant has argued that the Complaint "includes no evidence of bad

faith," and interposed a defense premised on the failure to establish evidence of "bad faith."  (*Id.*

at 6, 7, 22.)  During discovery, moreover, Gemini's President and co-founder, Cameron

Winklevoss, repeatedly testified about Gemini's belief in the lawfulness of its actions.[1]

Good faith, or lack of bad faith, is wholly irrelevant because it is not a defense to a

Section 6(c)(2) violation.  When good faith is a defense to a violation of the CEA, the statute

says so explicitly.  For example, mistakenly transmitting inaccurate price information to a

reporting service, if that mistake is "in good faith," is insufficient to establish manipulation by

false reporting under 7 U.S.C. § 9(1)(C); *see also id.* § 6a(2)(A) ("good faith exception" to

---

[1] Ex. 1 (2/29/2024 C. Winklevoss Dep. Tr. at 439:17 ("[T]here was never a question that went unanswered. And all of our answers were complete and accurate."), 529:21-530:7 ("Well, we are always truthful.  That's how we build our business . . . of trust.  And that's . . . how we operate.  And this . . . engagement with the CBOE was no different."), 533:17-21 ("All I know is that we got a lot of questions around our auction and the mechanic.  And we answered every question that was asked of us.  We provided truthful and accurate information."), 538:12-15 ("But as I testified earlier, we provided information, we were truthful, we were accurate."), 573:7-13 ("Everything we provided was accurate." "And I have no reason to believe that they provided information that was also not accurate or complete.  I have . . . no reason to believe that."), 689:5-8 ("I have no reason to [believe that statements relayed to the CFTC were false] . . . and having reviewed them through this deposition, once again, they're all accurate statements."), 720:20-721:24 ("Q.  If the CFTC told Gemini, in 2017, what the CFTC thought was important, would Gemini have tried to provide that information?  A.  Yes.").)

prohibition on excessive speculation).  Likewise, secondary liability based on control may be imposed only where the controlling person "did not act in good faith or knowingly induced" another person's violation.  7 U.S.C. § 13c(b).

Section 6(c)(2) of the CEA, in contrast, requires only that Defendant "know, or reasonably should have known" that its statements were false or misleading, and says nothing about Defendant's good faith or lack of bad faith.  *See CFTC v. Gramalegui*, No. 14-md-2543, 2018 WL 4610953 (D. Colo. Sept. 26, 2018); *CFTC v. eFloorTrade, LLC*, No. 16-cv-7544, 2018 WL 10625588 (S.D.N.Y. Sept. 21, 2018).  Because Defendant's purported good faith (or lack of bad faith) has no bearing on whether Defendant knew or reasonably should have known its statements were false or misleading, such evidence falls squarely within Rule 402's exclusion of irrelevant evidence.  Fed. R. Evid. 402.

Further, even if Defendant's belief about the lawfulness of its conduct, and its professed good faith or lack of bad faith, were relevant, Defendant has refused to produce any evidence to support its claim.  During discovery, Defendant declined to provide the basis for its contention that it "did what it was supposed to do," "what it was asked to do," and "did everything right." (*See* 2/29/2024 Def.'s Resp. to CFTC's Second Set of Interrogs. ("Def.'s Resp. to CFTC Interrogs.") (ECF 100-14) at 25 (response to Interrogatory 28)).  Instead, Defendant stonewalled the CFTC with unsupported, self-serving, and conclusory claims of good faith and argued that the CFTC had "adduced no evidence" that the statements were false and was "free" to contest the statements at trial.  (*Id.*)

Where, as here, Defendant intends to rely on its good faith at trial, it "'must make a full disclosure during discovery; failure to do so constitutes a waiver' of that defense."  *Arista Recs.*

*LLC v. Lime Grp. LLC*, No. 06-cv-5936, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011).[2]

Rather than make full disclosure of the basis for its good faith contentions, Defendant has

obfuscated how it intends to formulate its good-faith arguments and invoked the attorney-client

privilege to prevent the CFTC from testing its assertion.  For example, Cameron Winklevoss

testified that there was "nothing improper or wrong" about his dual role as the President of

Gemini and manager of Pearl Street Financial LLC ("Pearl Street"), a related company that

provided loans only to Gemini customers.  (Ex. 1 (2/28/2024 C. Winklevoss Dep. Tr. at 251:17-

252:14).)[3]  When asked whether Mr. Winklevoss was relying on any advice of counsel in

making statements about the appropriateness of the Pearl Street loans and his role with both

companies, Gemini's counsel invoked the attorney client privilege.  (*Id.* at 252:15-253:20.)

Nonetheless, Mr. Winklevoss confirmed that his testimony about the lawfulness of Pearl Street,

and how it operated to provide financing to Gemini customers, was informed, in part, by advice

of counsel.  (*Id.* at 255:22-256:5; 259:13-18.)  Additionally, during discovery, "Gemini has

repeatedly stated . . . . [that it] does not intend to raise an advice of counsel defense or claim that

it relied on the advice of counsel in formulation its good-faith belief with respect to information

submitted to the CFTC."  (Def.'s Resp. to CFTC Interrogs. at 25 (response to Interrog. 27), ECF

No. 100-14.)

---

[2] *See also SEC v. Honig,* No. 18-cv-8175, 2021 WL 5630804, at *11 (S.D.N.Y. Nov. 30, 2021) ("Where the asserting party either declines to definitively assert the defense or raises the defense after having routinely withheld documents and deposition testimony based on the attorney-client privilege, courts have found that the party waived the defense, and will not be permitted to assert it."); *SEC v. Ripple Labs, Inc.*, No. 20-cv-10832, 2021 WL 2323089, at *4–5 (S.D.N.Y. May 30, 2021) (a "'good faith' defense is grounded in a party's subjective belief that its behavior complied with the law, thus putting at issue any legal advice and that the 'critical question' in finding privilege waiver is 'whether [the defense] puts at issue questions about the defendant's state of mind or their reliance on counsel's advice, regardless of whether the defense is stylized as "good faith" or something else'").

[3] All references herein to exhibits refer to the Declaration Christopher Giglio Pursuant to 28 U.S.C. § 1746 in Support of Omnibus Motion *In Limine* to Exclude and Admit Certain Evidence, dated November 15, 2024.

By invoking Gemini's "good faith belief with respect to the information submitted to the CFTC" as a defense to the charged offense, Gemini had one option—lay bare the basis for its belief and whether it sought, received, or followed the advice of counsel. *Arista Recs.*, 2011 WL 1642434, at *2 ("Plaintiffs are correct that a party may not assert that it believed its conduct was lawful, and simultaneously claim privilege to block inquiry into the basis for the party's state of mind or belief."). Any other outcome would produce the exact injustice that the implied waiver doctrine is meant to address:  allowing Defendant to use the appearance of legal advice as both a shield and a sword in support of its claim that it acted lawfully in making statements to the CFTC in connection with the product certification. *See Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 106 (S.D.N.Y. 2009) (observing that "it would be unfair for a party asserting contentions . . . to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions."); *Honig*, 2021 WL 5630804, at *14 (finding waiver principle applies where Defendant "continues to assert privilege while raising a good faith defense based on his belief in the lawfulness of his actions"). Accordingly, Defendant should be "precluded from offering evidence or argument at trial regarding [its] purported belief in the lawfulness of [its] conduct." *Arista Recs*, 2011 WL 1642434, at *3.

## II.    Motion *In Limine* Number Two:  To Preclude Evidence or Argument Regarding the Legality of Pearl Street Loans

Evidence concerning the legality of the Pearl Street loans should similarly be excluded as irrelevant and, even if it were relevant, confusing to the jury.  On July 23 and 24, 2024, this Court granted partial summary judgment in favor of the CFTC by ruling that Defendant violated Section 6(c)(2) of the Act, 7 U.S.C. § 9(2), for its fifteen written false or misleading statements about its prefunding requirement and the related cost of capital to trade, finding that the written statements were made by Gemini, were false or misleading, were material, and Gemini knew or

should have known its statements were false or misleading. (*See* ECF No. 133 ("7/23/2024 Hr'g Tr.") at 25:1-6, 101:18; ECF No. 135 ("7/24/2024 Hr'g Tr.") at 158:9-159:16, 161:19-162:12, 209:21-210:1, 211:6-16, 216:22-25). In particular, the Court found that Defendant's "statement[s] of prefunding [were] misleading without the statement[s] about the exception for lending by Pearl Street," which would have been material to the CFTC. (7/24/2024 Hr'g Tr. at 158:24-159:2). In light of the Court's ruling, the only remaining issue to for trial with respect to Defendant's false or misleading statements about prefunding and the cost of capital is whether Gemini made additional, oral misstatements concerning prefunding (*not* Pearl Street loans, as to which Gemini was silent) to the CFTC at an in-person meeting on July 25, 2017.

At the upcoming trial, the CFTC will also establish that Gemini should be held liable for violations of 7 U.S.C. § 9(2) based on another category of statements made by Gemini, statements concerning Gemini's trading volume and liquidity. Here, the CFTC will establish that these statements were false or misleading in part due to Gemini's trading volume being inflated by the undisclosed Pearl Street loans.

Notwithstanding the Court's prior ruling, Defendant may seek to admit evidence or argue that it was justified in concealing the Pearl Street loans during the product certification process because the loans were not improper or illegal. (Answer at 4.) Cameron Winklevoss maintained that Gemini was "never told by anybody, including the CFTC, that there was anything wrong, illegal, or improper with Pearl[] Street loans." (Ex. 1 (2/29/2024 C. Winklevoss Dep. Tr. 691:19-691:22; *see also id.* at 693:11-693:12 ("And we've never been told that they were illegal or improper.").) But, whether the Pearl Street loans were illegal or improper is entirely beside the point: the relevant issue is whether those loans were *disclosed* (they were not) and whether this omission was material (it was), which this court has already determined as a matter of law.

Moreover, Section 6(c)(2) makes it unlawful for a Defendant to make materially false or misleading statements and omissions without regard to the legality of the omitted information. *See* 7 U.S.C. § 9(2) (making it "unlawful . . . to omit to state . . . any material fact that is necessary to make any statement of a material fact made not misleading"). There is no safe harbor for omitted information that is otherwise legal or proper. Thus, any evidence that the Pearl Street loans complied with other laws is irrelevant. *See United States v. Scali*, No. 16-cr-466, 2018 WL 461441, at *7 (S.D.N.Y. Jan. 18, 2018) (observing that "[a] Defendant's compliance with state law is no more relevant than one who is not when both are engaged in a scheme that violates the federal mail fraud statue"), *aff'd*, 820 F. App'x 23 (2d Cir. 2020).

Evidence and argument regarding the supposed legality of the Pearl Street loans should also be excluded under Rule 403. *See* Fed. R. Evid. 403 (allowing the exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"). Whether the Pearl Street loans were illegal or legal would have zero probative value about whether Gemini disclosed those loans to the CFTC. Evidence regarding the legality or propriety of the Pearl Street loans would also be a confusing and time-consuming sideshow that would distract the jury from the real issue: whether those loans were *disclosed*, regardless of whether they were legal. *United States v. Murray*, No. 22-cr-76, 2023 WL 3309484, at *2 (S.D.N.Y. May 8, 2023) (excluding evidence that "would . . . be confusing and a waste of time," and risk "devolving into a mini-[]trial"); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-md-2543, 2015 WL 8130449, at *5 (S.D.N.Y. Dec. 3, 2015) (excluding evidence and argument regarding tangential legal issues in a separate litigation, which would result in "a mini-trial within the larger trial, and a sideshow" on matters

that were "hardly central to the issues in th[e] case"); *see also United States v. Al Kassar*, 660 F.3d 108, 124 (2d Cir. 2011) (affirming district court's exclusion of evidence under Rule 403 that would have required a "trial-within-a trial").

### III.    Motion *In Limine* Number Three:  To Preclude Evidence or Argument Suggesting There Was No Purported Harm to Market Participants or No Occurrences of Price Manipulation While the Contract Was Operational

Defendant appears ready to adopt a defense of "no harm, no foul"—i.e., that its materially false and misleading statements and omissions did not matter because, according to Defendant, the CFE bitcoin futures contract operated without incident after it was listed for trading.  For example, in its Answer, Defendant argued that the contract "worked as intended— the reference price was reliable, no investors were harmed, [and] no price manipulation occurred."  (Ans. at 1, ECF No. 13.)  Defendant should be precluded from presenting evidence of lack of market harm because this Court has already made clear that such evidence is irrelevant to liability.

During discovery, Defendant sought documents and testimony from CFTC custodians and witnesses regarding the "monitoring, oversight, and investigation" of the bitcoin futures contract after it was listed for trading as well as the "[h]arm to any market participant that the CFTC attribute[d]" to Defendant's false statements and omissions.  (6/14/2023 Def.'s Notice of Rule 30(b)(6) Dep. to CFTC at 6, ECF No. 50-7 (topics 11 & 12); *see also* 2/3/2023 Joint Disc. Disp. Ltr. at 20-21, ECF No. 32 (seeking production of documents from CFTC employees "responsible for monitoring the self-certified bitcoin futures contract when it was traded (from December 2017 until March 2019)").)

The Court sustained the CFTC's objection to discovery that sought information about the CFTC's oversight of the contract after it was listed for trading and any harm inflicted on the market or its participants resulting from Defendant's false statements and omissions.  (1/11/2024

Hr'g Tr. at 40:8-41:22; *see also* 12/11/2023 Order at 1-2 (sustaining CFTC's objection to Defendant's Rule 30(b)(6) topics 11 and 12, which sought to depose a CFTC witness about the "CFTC's monitoring, oversight, and investigation of the Bitcoin Futures Contract after the Self-Certification" and "[h]arm to any market participant that the CFTC attributes to any conduct, statements, or omissions by Gemini in connection with the Bitcoin Futures Contract or Self-Certification").)  During the hearing to address Defendant's motion to compel Rule 30(b)(6) testimony on these topics, the Court "agree[d]" that "what happened after the fact or after the contract was self-certified is irrelevant" because "[t]here's not a free pass for making false statements simply because something bad didn't happen afterwards."  (*Id.* at 40:11-16.)

Consistent with these rulings, the Court should bar any evidence or argument at trial related to lack of harm or manipulation after the contract was listed for trading.  Such evidence is irrelevant to any party's claims or defense and is barred under the law of the case doctrine.  *See, e.g.*, *Disability Advocates, Inc. v. Paterson*, No. 03-cv-3209, 2009 WL 1312112, at *2 (E.D.N.Y. May 8, 2009) (holding that "[p]ursuant to the law of the case, the parties may not submit evidence at trial or post-trial briefing on any of the issues resolved in [prior opinions]," and granting motion *in limine* to exclude related evidence).

**IV.**     ***Motion In Limine* Number Four*:*  **To Exclude Evidence or Argument About Steps Taken by Gemini to Prevent Manipulation and Disclosure to CFTC of Such Steps**

Defendant has at times referenced steps it allegedly took to prevent manipulation of the auction and Defendant's disclosure of those steps to the CFTC, implying that the auction was in fact sufficiently protected from manipulation such that Gemini's false statements are immaterial.  (*See* Defendant's Opp. to the CFTC's Mot. for Partial Summary Judgment, at 5 (noting "many features of the Gemini auction [that] helped reduce the risk of manipulation").)  The Court should exclude such evidence under Federal Rules of Evidence 401 and 403.

The written and oral false and misleading statements made by Gemini that are at issue for trial relate to four topics relevant to the CFTC's inquiry into whether Gemini's auction was readily susceptible to manipulation—prefunding, fee rebates, self-trade prevention, and volume and liquidity. Those are the only statements and topics at issue in this trial. Evidence of *other* information that was disclosed, or *other* measures that Defendant took to prevent market manipulation, should be excluded as irrelevant under Rule 401—it is simply misdirection and has nothing to do with the materiality of the statements at issue in this trial. *See United States v. Nekritin*, No. 10-cr-491, 2011 WL 2462744, at *5 (E.D.N.Y. June 17, 2011) ("Evidence that a defendant charged with fraud engaged in other, non-fraudulent activity is generally irrelevant."); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); *see also United States v. Ramsey*, 21-cr-495, 2023 WL 2523193, at *4 (E.D.N.Y. Mar. 15, 2023) (declining to admit supposedly true statements made to agents in connection with false statement charge, where such statements were unrelated to the specific statements the government alleged were false).

What's more, to the extent Defendant intends to argue that its materially false or misleading statements and omissions were minor in comparison to *other* true statements it purportedly made, such evidence and arguments carry a substantial risk of prejudicing the CFTC, confusing the issues, and misleading the jury by distracting attention from Defendant's false statements and omissions. *See* Fed. R. Evid. 403. Focusing on statements that are not at issue would also be a waste of the Court's and the jury's time. Materiality is not a contest to identify the facts that were *most* important to the CFTC's product certification reviews, and it would confuse and mislead the jury to suggest otherwise. It would also be contrary to the objective

standard for materiality that this Court has repeatedly recognized. For a misrepresentation or omission to be material, it "must have an intrinsic capability to influence the agency's decision 'at the moment the statement was made.'" Jan. 4 Order at 2 (quoting *eFloorTrade*, 2018 WL 10625588, at *8). Materiality should be construed broadly, to include statements that have a capacity to influence the agency, to hinder its investigation, or to distract the investigators' attention away from a critical matter. *eFloorTrade, LLC*, 2018 WL 10625588, at *8. At its core, the materiality inquiry seeks to answer a simple question: "would the misrepresentation actually matter in a meaningful way to a rational decisionmaker?" *United States v. Calderon*, 944 F.3d 72, 86 (2d Cir. 2019). The standard *does not* require that a misrepresentation or omission matter to the decisionmaker *more* than other statements made by the Defendant.[4] Gemini cannot sidestep the materiality of its omissions and misstatements by saying that Gemini disclosed other, more important things that the CFTC cared about more.

## V.    Motion *In Limine* Number Five: To Preclude Evidence or Argument Suggesting that the CFTC Never Requested or Asked for the Information Gemini Withheld During the Product Certification

This Court should preclude evidence or arguments suggesting that the CFTC never asked for the specific information Gemini withheld during the product certification because such arguments and evidence are irrelevant and would confuse the jury. Gemini has repeatedly raised as a purported defense that the CFTC never asked for the specific information that made

---

[4] This principle has been stated repeatedly in the context of the analogous "materiality" standard applicable to securities fraud, an objective standard that asks whether a fact would be important to a reasonable investor. *See SEC v. Monterosso*, 768 F. Supp. 2d 1244, 1265 (S.D. Fla. 2011) ("[T]he materiality inquiry is not concerned with what disclosures may be most important to a reasonable investor.") (emphasis in original)*; United States v. Ferguson*, 553 F. Supp. 2d 145, 155 n.13 (D. Conn. 2008) ("[A] misstatement is material so long as investors would consider the misstated facts significant in making investment decisions, even if investors would consider other information to be more important."); *Charney v. Zimbalist*, No. 07-cv-6272, 2014 WL 5064860, at *26 (S.D.N.Y. 2014), *rev'd in part on other grounds*, 2015 WL 4597538 (holding that a statement is material "so long as investors would consider the misstated facts significant in making investment decisions, even if investors would consider other information to be more important"); *United States v. Reyes*, No. 06-cr-556, 2007 WL 2554227, at *3 (N.D. Cal. 2007) ("[A]lthough investors consider some information more important than non-cash compensation expenses, it does not follow that they consider stock options expenses unimportant.").

Defendant's statements false or misleading and did not publicly list the specific information it used to evaluate the self-certification.[5]  The Court's prior rulings, however, make clear that such evidence is irrelevant.

Specifically, Defendant's Rule 30(b)(6) notice sought testimony from a CFTC witness about "[w]hen and how the CFTC requested the information that it alleges should have been disclosed by . . . Gemini."  (7/14/2023 Def.'s Rule 30(b)(b) Notice, Schedule A at Topic 3, ECF No. 50-7.)  The Court ordered that the Rule 30(b)(6) topic be addressed by an interrogatory (12/11/2023 Hr'g Tr. at 35:13-22, ECF No. 71), and then instructed the CFTC in a January 4, 2024 Order to "identify the statements in defendant's disclosures that [the CFTC] alleges were materially false or misleading and, in the case of omissions, the statements necessary to make the false and misleading statements not false or misleading."  (1/4/2024 Order Regulating Proceedings at 3-4, ECF No. 77.)  Then, when Defendant challenged the CFTC's response to Defendant's interrogatories, including "a series of interrogatories seeking information about any requests by the CFTC for the purportedly omitted information" (2/29/2024 Joint Ltr. at 2, ECF No. 78), the Court recognized that "[t]he CFTC's response of January 19, 2024 substantially discharge[d] its obligations imposed by [the Court's] rulings at the December 11, 2023 oral argument and related orders."  (3/5/2024 Order Regulating Proceedings, ECF No. 79.)

The CFTC's response to the Court's order explained how the omitted information rendered false and misleading the statements that Defendant made.  (1/19/2024 Pl.'s Resp. to Jan. 4, 2024 Court Ord. at 3-6, ECF No. 100-20.)  As the CFTC has explained, Defendant's

---

[5] (*See e.g.*, Ans. at 1, ECF No. 13 ("The CFTC . . . contends that it was victimized because Gemini failed to disclose a few pieces of clearly immaterial information—none of which the CFTC ever requested"; *id.* at 7 (referring to the omitted information as "immaterial and unrequested"); *see also* Defendant's Opp. to the CFTC's Mot. for Partial Summary Judgment, at 12, ECF No. 105 ("There is precious little public guidance about how to determine if a contract is 'readily susceptible to manipulation.'  The CFTC has never defined the phrase . . . .").)

disclosure obligations flow, not only from the requests that the CFTC made during the product certification for specific information, but from the half-truths Defendant told to the CFTC about its exchange and auction that omitted material factual caveats and failed to provide a complete and accurate picture of Defendant's exchange and auction. *See United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000) ("[I]t is just as unlawful to speak 'half truths' or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading."). Accordingly, it is irrelevant whether the CFTC interposed a specific request for the omitted information: the true test is whether Defendant's statements "fail[ed] to include all information necessary to give the recipient a complete and accurate picture of the state of affairs communicated," regardless of whether the CFTC specifically asked for that information. *Gramalegui*, 2018 WL 4610953, at *24.

Under Rules 401 and 403, it is well within the Court's discretion to preclude evidence regarding a defense that is not "valid" and would only serve to "mislead or confuse the jury." *United States v. Ware*, 399 F. App'x 659, 661–62 (2d Cir. 2010); *see also United States v. Carneglia*, No. 08-cr-76, 2009 WL 185725, at *1 (E.D.N.Y. Jan. 27, 2009) (noting that even if some evidence was relevant, "it should not be admitted if the danger of misleading and confusing the jury substantially outweighs any probative value"); *Santrayall v. Burrell*, 993 F. Supp. 173, 177 (S.D.N.Y. 1998) (finding evidence irrelevant and inadmissible because it was "insufficient as a matter of law to serve as the basis of" an affirmative defense and thus "not of consequence to the determination of this action"). Because Defendant's liability does not turn on whether the CFTC asked Defendant for any information necessary to make Gemini's half-truths not misleading, Defendant should be precluded from eliciting testimony, offering evidence, or arguing that the CFTC did not expressly ask for the omitted information.

15

## VI.    Motion *In Limine* Number Six:  To Exclude Evidence or Argument that Defendant Would Have Disclosed Omitted Information if Asked

Self-serving evidence that Defendant *would have* disclosed omitted evidence if asked by the CFTC should be excluded as irrelevant and misleading.  Defendant has elicited the following testimony from Cameron Winklevoss:

- "[Q.]  If, in 2017, during the self-certification process, the CFTC had asked a question, which you understood called for information about Pearl Street, would Pearl Street or Gemini have provided it? . . . A.  Yes."  (Ex. 1 (2/29/2024 C. Winklevoss Dep. Tr. at 703:25-704:8).)

- "Q.  [I]f the CFTC had asked about the compliance rate for recordkeeping, in connection with the [operational advances] policy, would Gemini have provided such information?  A.  Yes."  (*Id.* at 709:5-10.)

- "Q.  If, in 2017, the CFTC had asked questions about folding, would Gemini have answered them? . . . .  A.  Yes."  (*Id.* at 718:21-719:2.)

- "Q.  If the CFTC had told Gemini, in 2017, what the CFTC thought was important, would Gemini have tried to provide that information?  A.  Yes."  (*Id.* at 720:20-24.)

- "Q.  Between November 1, 2017 and December 1, 2017, did the CFTC ask any questions about the Pearl Street loans?  A.  No.  Q.  If they had, would Gemini had [sic] answered them?  A.  Yes."  (*Id.* at 722:25-723:4.)

*First*, testimony and evidence seeking to show that Defendant would have disclosed the omitted information is legally irrelevant and deeply misleading and should be excluded under Rule  403.  Violations of Section 6(c)(2) are not limited to making false statements, but also include omitting material facts that are necessary to make any statements of material fact made not misleading in any material respect.  7 U.S.C. § 9(2).  The Complaint alleges that Defendant made a series of false or misleading statements and failed to disclose information which rendered prior statements of material fact misleading in any material respect.  (*See, e.g.*, Compl. ¶¶ 1-4, 77, 91.)  It is therefore irrelevant whether Defendant hypothetically would have disclosed this information.  Furthermore, admitting such evidence poses a substantial risk of confusing the jury.

16

Evidence of whether Defendant *would have* made certain disclosures misleadingly implies that it is only Defendant's *statements* that are in issue; to the contrary, Defendant's *omissions* are equally relevant and central to the alleged Section 6(c)(2) violation. Such evidence also wrongly suggests that it was the CFTC's responsibility to ask further questions, when in fact it was Defendant's obligation to provide a complete and accurate picture. *Gramalegui*, 2018 WL 4610953, at *24 ("[A] statement is actionable under this section when it is either literally untrue or when it fails to include all information necessary to give the recipient a complete and accurate picture of the state of affairs communicated."). This substantial risk of confusing the jury outweighs what little, if any, probative value these statements might have and should therefore be excluded. *See* Fed. R. Evid. 403.

**VII.**      ***Motion In Limine Number Seven:*** **To Exclude Any Evidence or Argument that Defendant Discharged Its Obligation to Provide Complete and Accurate Information Because Information Contradicting Defendant's False or Misleading Statements Was Buried in Other Documents or Data Transmitted to the CFTC**

       Defendant should be precluded from introducing evidence or arguing that so-called disclosures buried in other documents that were transmitted to the CFTC discharged its obligation to provide a complete and accurate picture of the true state of affairs to the CFTC. This issue arises with respect to Defendant's false or misleading statements about (i) its fee rebate incentives and (ii) the extent and possibility of self-trading on Defendant's platform.

       With respect to Defendant's statements about fee rebate incentives, in a July 25, 2017 written submission, Defendant represented to that CFTC that it had "[m]arket maker trading fee rebates." (Ex. 2 at 5.) Then, in an August 25, 2017 written response to the CFTC's request for details concerning Gemini's market maker rebate program, Defendant told the CFTC that it had "no specifically defined market maker program," that the "details" of the fee program were on its website at the time, and that the fee program was "available to all of [its] market participants."

(Ex. 3 at 7.)  As a defense, Defendant has previously argued, and may again seek to enter evidence or argue, that it disclosed its use of bespoke fee arrangements in a subsequent September 12, 2017 submission to the CFTC.  (*See, e.g.*, ECF No. 73 at 2-3.)  That submission attached Gemini's Policies and Procedure Manual in response to an entirely different question from the CFTC and, in its covering email, specifically drew the CFTC's attention to an entirely different portion of the manual that did *not* pertain to fee rebates.  (*See* Ex. 4 (September 12, 2017 email to the CFTC attaching Gemini Policy and Procedure Manual).)

With respect to Defendant's false or misleading statements about self-trading, after first asserting to the CFTC that self-trading was "prohibited" in a July 25, 2017 submission to the CFTC (Ex. 2 at 5), Defendant then claimed in an August 25, 2017 written submission, in response to further inquiries by CFTC regarding whether self-trading could occur, "No, we have instituted self-trade prevention."  (Ex. 3 at 7.)  Thereafter Defendant continued to represent to the CFTC that self-trading on Gemini was not possible.  As a defense, Defendant has previously argued (*see, e.g.*, ECF No. 73 at 3-4), and may seek to again enter evidence or argue, that it disclosed to the CFTC the extent and possibility of self-trading on Gemini on August 1, 2017 (*before* it made nearly all of its repeated representations that self-trading was not possible) by submitting a disk of Gemini trading data to the CFTC.  (*See also* Def.'s Opp'n to the CFTC's Mot. for Partial Summ. Judg. at 36-26, ECF No. 105 (arguing that "[f]inding" instances of self-trading in the data provided to the CFTC "was not a complicated task" and was the "type of work 'a junior developer straight out of school' could do").)

With respect to both the fee rebate and self-trading issues, the Court should exclude this type of evidence and argument as legally irrelevant and because whatever probative value it may carry is substantially outweighed by the risk of jury confusion and jury nullification.  Defendant

does not get a free pass for false statements simply because some information was transmitted to the CFTC that might have alerted it to the fact that the Defendant's prior—or subsequent—statements were false or misleading.  *See eFloorTrade*, 2018 WL 10625588, at *8 (liability for false or misleading statements attaches "at the moment the statement was made"); *United States v. Santiago*, No. 13-cr-39, 2014 WL 4827883, at *6 (S.D.N.Y. Sept. 26, 2014) (observing that recantation of false statement does not bar a conviction for making false statements).

Moreover, Defendant already declined to pursue any evidence about corrective disclosures that could conceivably be relevant to an issue for trial, namely the materiality of Defendant's misstatements and omissions.  Earlier in this case, the Court recognized that "an agency's indifference" to a false or misleading statement can be shown if the "decision-maker of that agency" was "aware[] of the misstatement and . . . was indifferent to its application," and the Court afforded Defendant the opportunity to question CFTC witnesses about their awareness of Defendant's false statements and the information that was transmitted that purportedly disclosed information and bespoke rebates and self-trading that undermined Defendant's affirmative statements to the CFTC.  (1/4/2024 Order at 3, 4, ECF No. 77.)  But Defendant never pursued that line of inquiry during discovery, and Defendant has therefore adduced no evidence that any CFTC decision-maker was aware that any statements were false or misleading at the time they were made, much less that Defendant happened to disclose contradictory information at other times.  Under these circumstances, Defendant should not be permitted to argue that it satisfied its obligation to provide complete and accurate information because contradictory information was buried in other documents or data that was transmitted to the CFTC.  *See* Fed. R. Evid. 403 (stating that a court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues,

19

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence");

*United States v. Miller*, 626 F.3d 682, 689 (2d Cir. 2010) (upholding the exclusion of evidence

under Rule 403 that "would be irrelevant and confusing").

**VIII.    Motion *In Limine* Number Eight:  To Exclude Evidence or Argument About the CFTC's Investigation, Charging Decisions, and Any Parallel Investigation Related to the Same Subject Matter**

Since the outset of this case, Defendant has repeatedly sought to deflect attention from its

own conduct by questioning the CFTC's investigation that led to the underlying charges.[6]

Defendant's tactic is no defense to the charged offense of making false or misleading statements

or omissions to the CFTC and have no place at trial.

Defendant's baseless accusations that the CFTC conducted a flawed or protracted

investigation and its speculation about the CFTC's actions and motives are irrelevant to

Defendant's liability for the underlying offence and therefore cannot be presented to the jury.

*See United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997) (affirming decision precluding

"evidence at trial that the grand jury investigation was illegitimate"); *United States v. Rosado*,

728 F.2d 89, 93 (2d Cir. 1984) (finding that defendant's trial arguments involving, inter alia,

"invit[ation of] jury nullification by questioning the Government's motives in subpoenaing

---

[6] (*See, e.g.*, Ans. at 2 ("The roots of [the CFTC's] investigation lie with Benjamin Small, a disgruntled former Gemini employee who was suspected, then terminated, for misconduct in 2017."); *id.* at 3 ("The CFTC nevertheless latched on to this investigation, refusing to acknowledge its compromised origin.  When the CFTC found no substantive violation of the CEA, it concocted bogus false statement charges.  In doing, the CFTC resorted to flyspecking every communication concerning the self-certification, ignoring the reality that DMO's core concerns were fully addressed."); *id.* at 6 ("The CFTC should have declined to pursue this matter based on its origin alone"; "The investigation should have been closed long ago and this Complaint should never have been filed."); *id.* at 7 ("[T]he investigation of this matter narrowly focused on immaterial and unrequested information allegedly omitted from accurate and complete statements"; "After four years of investigation, the CFTC has not unearthed a shred of evidence that anyone at Gemini believed that any statement made to the CFTC was inaccurate or incomplete."); *id.* at 9 ("This matter has, from its inception, rested on the rottenest of foundations."); 12/4/2023 Joint Discovery Dispute Ltr. at 5, ECF No. 69 ("As the Court is aware, Plaintiff undertook a protracted investigation into the subject matter of its claims."); 12/18/2023 Hr'g Tr. at 21:11, ECF No. 71 ("This is regulatory flyspecking."); *id.* at 61:9 ("And, indeed, they've already taken Mr. Winklevoss's deposition for two days, and they did that in a way that is questionable at best."); 11/8/2024 Def.'s Mem. of Law in Supp. of Mot. for Reconsideration, ECF No. 153 (the CFTC "waited more than four years to bring the case and has never sought to expedite").)

appellants and prosecuting them for contempt" functioned as a defense "ploy for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial"). The same is true of the CFTC's techniques in investigating and prosecuting violations of the Commodity Exchange Act and the Regulations promulgated thereunder. *See United States v. Saldarriaga*, 204 F.3d 50, 53 (2d Cir. 2000) ("The jury correctly was instructed that the government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and that the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged."); *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant]"); *United States v. Duncan*, No. 18-cr-289, 2019 WL 2210663, at *3 (S.D.N.Y. May 22, 2019) ("Evidence of the tactics that law enforcement agents used to investigate this case is . . . irrelevant"; "While [Defendant] may point to any asserted failure of proof in the record, any argument that the government has failed to carry its burden of proof because it conducted its investigation in a particular way is not relevant."). In short, Defendant may not put the motivations or conduct of the CFTC enforcement staff in issue in order to invite the jury to find Defendant not liable based on alleged, and unsubstantiated, governmental misconduct.

Similarly irrelevant is evidence concerning the charging decisions in a parallel criminal matter, which should be excluded as hearsay and because it is irrelevant and prejudicial. As an independent agency, the CFTC exercises discretion in investigating potential breaches of the

Commodity Exchange Act and CFTC Regulations and deciding to bring enforcement actions. Defendant may seek to introduce evidence or argue that the U.S. Attorney's office ("USAO") investigated Defendant but declined to bring any criminal charges. But any decision by the USAO about pursuing criminal charges against Gemini was independent from, and irrelevant to, the present CFTC civil case. As such, evidence and arguments relating to the charging decisions made in any other investigations should be excluded.

*United States v. Klein* demonstrates this principle. No 16-cr-442, 2017 WL 1316999, at *3 (E.D.N.Y. Feb. 10, 2017). As here, *Klein* dealt with parallel civil and criminal investigations in which a government department (USAO) filed charges against a defendant while another government agency (SEC) did not. The defendant in the USAO matter then attempted to use evidence of his absence from the SEC complaint to undermine the USAO's decision to charge him. *Id.* The court declined to admit the SEC complaint, holding that it was hearsay without any applicable exception, and prejudicial. *Id.* at *3-8. Specifically, the court found that the SEC complaint did not satisfy the public record exception because the SEC's allegations and charging decisions in its parallel civil case were not properly considered "factual findings," the SEC was neither a party to the USAO matter nor an agent of the USAO, and the SEC complaint did not meet the criteria for the residual hearsay exception. *Id.* at *3-7. The court also found that admitting the charging decision would be prejudicial because "the only purpose to be served by the admission of the SEC complaint and charging decision would be to suggest to the jury that it should reach the same conclusion that the SEC reached." *Id.* at *8 (internal quotations and citations omitted).

Just like the SEC's charging decision in *Klein*, the USAO's investigation and any decision not to charge Gemini constitutes inadmissible hearsay under Rules 801(c) and 802 and

does not fall under any applicable exception or exclusion. Further, the probative value of a USAO's charging decision here is even less than the SEC's charging decision in *Klein* because the USAO's standard of proof in a criminal case is much higher than for the CFTC's civil case. Facts that justify charges in a civil case might therefore fall short of those justifying charges in a criminal case, and it is entirely consistent for the CFTC to bring civil charges while the USAO abstains.

Finally, even if evidence of the USAO's charging decision was not hearsay and had probative value, it would be outweighed by the same substantial risks of prejudice and confusion the court noted in *Klein*. *See id.* at *6. Admitting such evidence would pose substantial danger of causing the trial to devolve into an inquiry as to whether the CFTC "got it right" in its charging decisions, which is immaterial to the elements of the case and could only confuse the jury and prejudice the CFTC. *See id.* at *26-27. This risk substantially outweighs any probative value of evidence of the USAO's charging decisions.

### IX.     Motion *In Limine* Number Nine:  To Exclude Inflammatory Evidence or Argument About Gemini's Former COO, Including Character Evidence and His Status as a Whistleblower, Unless He Is Called as a Witness

Evidence pertaining to Benjamin Small, including evidence regarding his whistleblower status and the alleged falsity of his whistleblower complaint, should be excluded for several reasons. First, to the extent such evidence relates to the conduct of the CFTC's investigation, it is irrelevant for the reasons set forth above. Second, allowing evidence of *Small's* purportedly false statements during the CFTC's investigation presents a danger of confusing the issues and misleading the jury by diverting attention from *Gemini's* false or misleading statements. Because Small is not a party to this case, and any purportedly false statements he made to the CFTC during its investigation have no bearing on Gemini's ultimate liability, such evidence should be excluded under Rule 403.

Third, Evidence of Small's purported dishonesty in other matters is inadmissible to prove that he acted dishonestly in his dealings with the CFTC.  Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."); *see also Kozak v. Liberty Maritime Corp.*, No. 20-cv-3684, 2024 WL 1558809, at *6 (S.D.N.Y. Apr. 10, 2024) (granting motion to exclude evidence of plaintiff's disciplinary records from prior employers under Rule 404(a), while reserving decision on exhibit to be used only for impeachment purposes).  Such character evidence is admissible only for certain limited enumerated purposes such as impeachment on cross examination.  *See* Fed. R. Evid. 608(b) ("[T]he court may, *on cross-examination*, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . (1) the witness . . . ." (emphasis added)).  Accordingly, evidence of Small's character should be allowed only to impeach him if he is called to testify.

**X.     Motion *In Limine* Number Ten:  To Admit Opposing Party Statements Made by Defendant's Commonly Controlled Affiliate, Winklevoss Capital Management, LLC**

Under Federal Rule of Evidence 801(d)(2), this Court should admit over any hearsay objection statements and admissions that Winklevoss Capital Management, LLC ("WCM") made in what Defendant has already admitted was a "related employment dispute" (ECF No. 13) involving Gemini's former COO.  The related employment dispute, an arbitration, involved WCM because Gemini's former COO was employed by WCM the entire time he served as Gemini's COO, until he was terminated in late 2017.  (ECF No. 32 at 30.)  During the arbitration, WCM, through its counsel, made several statements and admissions in a post-hearing brief that bear directly on issues for trial in this matter.  (*See* ECF No. 100-82 (WCM Post-

Hearing Memorandum).)  In particular, in the arbitration, WCM admitted, and Defendant does

not dispute, the following:

- Special fee arrangements, also called bespoke "fee overrides," were well known within Gemini.

- "Under the fee overrides, certain users of the Gemini marketplace were given fixed fees or rebates on terms more beneficial than the published fee schedule."

- "It is undisputed that Cameron and Tyler Winklevoss were aware that fee overrides" existed" because "they wrote the Policies and Procedures Manual where fee overrides were contemplated."

- Cameron and Tyler Winklevoss "were aware that appropriate fee overrides could increase volume on the exchange."

Additional statements in WCM's post-hearing brief include:

- In 2016 and 2017, Defendant's COO approved a serios of bespoke "fee overrides" for a small handful of customers.

- The strategy adopted by the COO resulted in "losing money" in order  to grow "fake volume on the order books by encouraging a handful of market participants [to] pass money back and forth to earn rebates" and that "such activity is 'wash trading.'"

- "The Winklevosses' directions were to grow bona fide volume, not fake volume through the riskless exchange of many back and forth."

Rule 801(d)(2)(D) provides that "[a] statement is not hearsay if . . . the statement is

offered against an opposing party and . . . was made by the party's agent or employee on a matter

within the scope of that relationship and while it existed."  To admit a statement under this rule,

the court must find "(1) the existence of the agency relationship, (2) that the statement was made

during the course of the relationship, and (3) that it relates to a matter within the scope of the

agency."  *Feis v. United States*, 394 F. App'x 797, 799 (2d Cir. 2010) (quoting *Pappas v. Middle

Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)).  As the Second Circuit has explained,

"admissibility under this rule should be granted freely."  *Pappas*, 963 F.2d at 537.

Defendant has indicated that it intends to distance itself from the prior statements WCM made and, at times, attributed to Defendant's principals, based on unobserved corporate distinctions.  During Cameron Winklevoss's deposition, Gemini's counsel objected to questions centered on statements contained in the post-hearing brief submitted by WCM on the grounds that WCM was "not a party to this proceeding [i.e., the CFTC's enforcement action against Gemini]," and therefore the statements in the brief were not "statement[s] of a party adversary." (Ex. 1 (C. Winklevoss Dep. Tr. at 462:12-17).)[7]

Such objections are baseless.  Cameron and Tyler Winklevoss were the beneficial owners of both Gemini and WCM and own, operate, and control both entities through an interconnected maze of holding companies and other affiliates.  (Ex. 5 (4/26/2018 Declaration of C. Winklevoss) ¶ 1.)  In fact, Cameron Winklevoss served the dual role as principal of WCM and founder and president of Gemini.  (*Id.*)  Many employees with primary roles at Gemini were actually employed by WCM, including Defendant's COO.  The Court need look no further than Defendant's answer, which stated that the arbitration was a "related employment dispute" with overlapping issues that directly implicate Defendant's former COO.  (Ans. at 2.)  Additionally, during the arbitration, Defendant's President, Cameron Winklevoss, Gemini, and WCM submitted a joint declaration (in Cameron's capacity as "a principle at Winklevoss Capital Management" and the "co-founder and president of Gemini"), which sought to invoke a restrictive covenant contained in Small's WCM employment agreement in favor of Gemini.  (Ex. 5 (4/26/2018 Declaration of C. Winklevoss) ¶¶ 1, 3, 10.)  There was simply no distinction

---

[7] Gemini's counsel also objected to questioning about the factual statements in the brief because those statements were "designed to summarize evidence that was presented in the arbitration" such that the statements were "not general statements, necessarily, in the sense they are being used." (*Id.* at 462:18-463:7.)  Nonetheless, Gemini's counsel confirmed as part of his speaking objection that the statements in the brief were supported by the cited evidence, which included testimony of current and former Gemini employees.  (*Id.* at 463:9-18.)

between Gemini and WCM for the purposes of the arbitration, and WCM's statements are fairly attributable to Gemini as opposing party statements.

Any argument that Defendant and WCM had "conflicting litigation positions" in the arbitration, such that WCM's statements are not admissible against Defendant, is simply not credible.  While the "Second Circuit has explained that statements made by a party's agent are not admissible against that party under Rule 801(d)(2)(D) when the party and the agent have 'conflicting litigation positions,'" *In re Rsrv. Fund Sec. & Derivative Litig.*, No. 09-md-2011, 2012 WL 12354233, at *6 (S.D.N.Y. Oct. 3, 2012); *see also United States v. King*, 134 F.3d 1173, 1176 (2d Cir. 1998) ("The construction of Rule 801(d)(2)(D) that protects a fully distinct entity from having attributed to it the statements of its agent under circumstances of 'conflicting litigation positions,' has no application to alter egos."), WCM and Gemini were perfectly aligned and indistinguishable for the purposes of the arbitration.  (Ans. at 3-4.)

Moreover, Defendant cannot avoid WCM's arbitration statements simply because they were made by an attorney representing WCM (in fact, the same attorney that represents Gemini here).  "Pleadings in other actions may constitute admissions under Federal Rule of Evidence 801(d)(2) 'and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party.'"  *Rsrv. Fund*, 2012 WL 12354233, at *8; *see also Belabbas v. Inova Software Inc.*, No. 16-cv-7379, 2019 WL 13258046, at *2 (S.D.N.Y. Oct. 1, 2019) ("Statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney.").  And while judicial admissions are limited to statements of facts and do not include an attorney's legal theories, arguments, or conclusions, WCM's post-hearing arbitration brief included strictly factual matters that Gemini's counsel confirmed in this matter "summarize[d] the evidence that was presented in the arbitration."  (Ex.

1 (C. Winklevoss Dep. Tr. at 462:23-463:2).)  WCM's factual assertions in the arbitration, and

particularly in the post-hearing arbitration brief, are thus admissible against Defendant as non-

hearsay opposing party statements.  *See* Fed. R. Evid. 801(d)(2)(A) (statement offered against a

party is not hearsay if it was "the party's own statement, in either an individual or a

representative capacity"); Fed. R. Evid. 801(d)(2)(D) (statement offered against a party is not

hearsay if it was "a statement by the party's agent or servant concerning a matter within the

scope of the agency or employment").

Finally, under Rule 801(d)(2)(B), a statement offered for its truth is not hearsay when it

"is offered against an opposing party and . . . is one the party manifested that it adopted or

believed to be true."  Fed. R. Evid. 801(d)(2)(B).  "Where, as here, the statement at issue is a

document, the adoptive admission test is whether the surrounding circumstances tie the possessor

and the document together in some meaningful way."  *In re Gen. Motors LLC*, No. 14-md-2543,

2015 WL 8578945, at *2 (S.D.N.Y. Dec. 9, 2015) (cleaned up).  Here, the surrounding

circumstance easily tie Gemini to WCM's arbitration statements.  Specifically, Defendant has

characterized the arbitration as "related" and invoked certain of the findings as a defense in this

case.  (Ans. at 2-5 (citing, among other things, the January 12, 2022 final arbitration award).)

And, as noted, Defendant and WCM were represented by the same counsel, who stated that he

and Defendant were not contesting that the statements in the post hearing brief "are not

supported by the evidence that's cited."  (Ex. 1 (C. Winklevoss Dep. Tr. at 463:9-463:14).)  This

more than satisfies the requirements rule 801(d)(2)(B) for admitting statements of which a party

has manifested an adoption or belief in its truth.  *See United States v. Stafford*, 422 F. App'x 63,

65 (2d Cir. 2011) ("Defendant's thorough review of the agent's notes and acknowledgment of

their accuracy adequately demonstrated his adoption of their contents.").

XI.     **Motion *In Limine* Number Eleven:  To Allow the CFTC to Ask Leading Questions on Direct Examination of Gemini and WCM Witnesses**

The CFTC should be permitted to ask leading questions on direct examination of all Gemini and WCM witnesses, including Cameron Winklevoss, Gemini's co-founder and president.

Federal Rule of Evidence 611(c) provides that "[o]dinarily, the court should allow leading questions . . . when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."  Fed. R. of Evid. 611(c).  "The term 'witness identified with an adverse party' is intended to apply broadly to an identification based upon employment by the party or by virtue of a demonstrated connection to an opposing party."  *In re Rsrv. Fund Sec. & Derivative Litig.*, No. 09-cv-4346, 2012 WL 12354219, at *9 (S.D.N.Y. Sept. 10, 2012).  Trial judges "are afforded a large degree of discretion in overseeing the examination of witnesses."  *Sanders v. N.Y. City Human Res. Admin*, 361 F.3d 749, 757-58 (2d Cir. 2004) (citing *United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir. 1983)).

There can be no serious dispute that Cameron Winklevoss is "identified with an adverse party."  He is not just an employee of an adverse party:  he is the adverse party's public face, co-founder, president, and a board member.  *See In re 650 Fifth Ave. and Related Properties*, No. 08-cv-10934, 2017 WL 6419014, at *2 (S.D.N.Y. May 30, 2017) (holding that former board members and presidents of adverse party were "identified with" an adverse party, and permitting government to lead those witnesses); *SEC v. Moshayedi*, No. 12-cv-01179, 2013 WL 12129282, at *11-12 (C.D. Cal. Nov. 20, 2013) (holding, in an insider trading case against a company executive, that the company's CEO, CFO, and multiple vice-presidents were "identified with" the company executive).

Beyond his position at the company, Cameron Winklevoss is further "identified with" Gemini because he was "intimately involved in the events which the jury will be asked to consider" and "closely involved in the subject matter of the case." *Moshayedi*, 2013 WL 12129282, at *11. Along with his brother, Tyler, Cameron was ultimately responsible for Gemini's overall strategy and major corporate decisions. (CFTC 56.1 Stmt. ¶ 4.) Among other things, he was instrumental in Gemini's development of the bitcoin futures contract (CFTC 56.1 Stmt. ¶¶ 40-43); approved Pearl Street loans and advanced credits at issue in this case (CFTC 56.1 Stmt. ¶¶ 95, 116); personally decided not to implement a mechanism to prevent self-trading between continuous order book orders and auction-only orders (CFTC 56.1 Stmt. ¶ 157); and made numerous other statements central to the CFTC's case (*e.g.*, CFTC 56.1 Stmt. ¶¶ 63, 85, 105, 112). For these reasons, Cameron Winklevoss has "an interest in promoting his version of events" and "an interest in the content of [his] testimony," which further supports the use of leading questions on direct examination by the CFTC. *Moshayedi*, 2013 WL 12129282, at *12.

The same rationale holds true for the other Gemini or WCM employees or representatives (such as Tyler Winklevoss or Rose Toomey) involved in these events that the CFTC may call to testify in this case. Accordingly, the CFTC should be permitted to ask leading questions of any other Gemini or WCM employee witness. *See Torres v. Metro-N. R.R. Co.*, No. 20-CV-10782 (LJL), 2023 WL 2088174, at *3 (S.D.N.Y. Feb. 16, 2023) (granting a motion to treat supervisors and managers of adverse party as hostile pursuant to Federal Rule of Evidence 611(c)); *Rosario v. City of N.Y.*, No. 18-cv-4023, 2021 WL 9455782, at *8-9 (S.D.N.Y. Nov. 22, 2021) (same).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant Plaintiff's motions *in limine* and grant any further relief as the Court deems appropriate.

Dated: New York, New York
       November 15, 2024

                              Respectfully submitted,


                              By: _____*Diana Wang*_____

                              K. Brent Tomer, Chief Trial Attorney
                              Alejandra de Urioste, Chief Trial Attorney
                              Katherine Rasor, Trial Attorney
                              Diana Wang, Trial Attorney
                              Andrew J. Rodgers, Trial Attorney
                              Peter Janowski, Trial Attorney
                              Manal M. Sultan, Deputy Director

                              COMMODITY FUTURES
                              TRADING COMMISSION
                              Division of Enforcement
                              290 Broadway, Suite 600
                              New York, NY 10007
                              Phone: (646) 746-9700
                              Fax: (646) 746-9888