UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
COMMODITY FUTURES TRADING                                      :    **OPINION AND ORDER**
COMMISSION,                                                    :    **DENYING PLAINTIFF'S**
                                                               :    **MOTION FOR PARTIAL**
                            Plaintiff,                         :    **SUMMARY JUDGMENT**
                                                               :
            -against-                                          :
                                                               :    22 Civ. 4563 (AKH)
                                                               :
GEMINI TRUST COMPANY, LLC,                                     :
                                                               :
                            Defendant.                         :
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Gemini Trust Company, LLC ("Gemini"), an operator of an exchange for bitcoin transactions, proposed to add futures contracts to its business, to be traded on the Cboe Futures Exchange ("CFE"). After the CFE certified Gemini's proposed futures contract as eligible for listing, the Commodities and Futures Trading Commission ("CFTC"), pursuant to its statutory authority, began its own investigation, and addressed inquiries to the CFE and to Gemini. Gemini's representations, the CFTC alleges, were false and misleading on material matters, leading to this lawsuit. After full discovery, both parties moved for partial summary judgment. Gemini argued that the Complaint should be dismissed because CFE, the party directly in contact with the CFTC, can be the only party chargeable for misrepresentations.[1] I denied Gemini's motion, holding that there were issues of fact. The CFTC argued that Gemini could be chargeable as the "maker" of the false statements, and that Gemini made thirty-two false and misleading representations to the CFTC. After extensive oral argument, I held that Gemini could be found as the "maker," that some, but not all, Gemini's representations to the CFTC were false

---

[1] Section 6(c)(2) of the Commodities Exchange Act, 7 U.S.C. § 9(2), provides for liability by a "maker" of false statements to the CFTC.

1

and misleading, and that others presented triable issues. I stated that a written opinion would follow.

This is that opinion. I confirm my holding that Gemini was the "maker" of the representations to the CFTC, for Gemini made these representations directly, at a face-to-face meeting and in a telephone exchange, and indirectly through the CFE as the transmitter of Gemini's representations. However, as to the representations themselves, I vacate my extemporaneous rulings, and hold that a jury should decide which are materially false and misleading, and which, not, for all were inextricably communicated to the CFTC, at different times and in different manners, to demonstrate a single proposition, that the futures contracts were not "readily susceptible to manipulation."

## BACKGROUND

Gemini Trust Company, founded in 2014 by Cameron and Tyler Winklevoss, operates a cryptocurrency exchange. One feature of the business is a daily auction to buy and sell bitcoins, for dollars or other cryptocurrencies. At 4:00 p.m., all bids and offers made for the auction, and all unexecuted market orders, are matched at a price that causes the greatest aggregate quantity of orders to buy and sell bitcoins to be executed.

Gemini wished to add a derivatives market to its business, and proposed a futures contract to be traded on the CFE. Normally, futures contracts for commodities are priced in relation to the "spot" prices commanded by the immediate deliveries of the commodity at fixed places and times;[2] Gemini proposed that its contract be cash-settled, that is, not by the delivery of the bitcoins that are the subject of the contracts, but by the final auction price of its exchange.

---

[2] *See* Steven Nickolas, *Commodity Spot Prices vs. Futures Prices: What's the Difference?*, Investopedia, May 19, 2024.

For a futures contract to be listed on a CFTC-regulated exchange like the CFE, the CFTC has an obligation to assure that the contract satisfies twelve "core principles," as provided by 7 U.S.C. § 7(d). A product's compliance with the core principles can be "self-certified" by the exchange, here, the CFE. But the CFTC can request "additional evidence, information or data that demonstrates that the contract meets, initially or on a continuing basis, the requirements of the Act or the Commission's regulations or policies thereunder." *See* 17 C.F.R. § 40.2(b). And, beginning in the summer of 2017, the CFTC did so by interrogatories to the CFE, to be answered by Gemini.

One "core principle," "Core Principal Three," requires futures contacts to be "not readily susceptible to manipulation." *See* 7 U.S.C. § 7(d)(3); Appendix C to 17 C.F.R. § 38.650 (2021). This "core principal" was of particular concern to the CFTC because Germini proposed a "cash-settled" futures contracts, and such "cash-settled" contracts are particularly susceptible to manipulation. As CFTC Regulations provide:

> Cash-settled contracts may create an incentive to manipulate or artificially influence the data from which the cash-settlement price is derived or to exert undue influence on the cash-settlement price's computation in order to profit on a futures position in that commodity. The utility of a cash-settled contract for risk management and price discovery would be significantly impaired if the cash settlement price is not a reliable or robust indicator of the value of the underlying commodity or instrument.

Part C(2) to App'x C to 17 C.F.R. § 38.650 (2021). And, with bitcoins, there is no "value of [an] underlying commodity or instrument" to provide a "reliable or robust indicator" that the "cash-settled" price is not "readily susceptible to manipulation."

The CFTC Regulations provide other factors to assure the reliability of cash-settlement prices: the size and liquidity of the underlying cash market, the platform's trading volume, and the number of participants contributing to determine the settlement price. *See* Part

3

C(2) to App'x C to 17 C.F.R. § 38.650 (2021). Where, as was stated to be the case with respect to Gemini's auction, "an independent, private sector third party calculates the cash settlement price," applicants to trade a futures contract must "verify that the third party utilizes business practices that minimize the opportunity or incentive to manipulate the cash settlement price." 17 C.F.R. pt. 38, App'x C at (c)(3)(i).

A meeting with CFTC officials in Washington, D.C. took place on July 25, 2017. The Winklevoss twins, the owners and principal executives of Gemini, were present, along with other Gemini employees and representatives of the CFE. In advance, Gemini had drafted, edited, and printed slides for a presentation that its futures contract was not readily susceptible to manipulation: illustrating pre-funding requirements, self-trading prohibitions, rebates to market-makers to encourage wide participation in the daily auctions, and incentives to promote liquidity and volume. *See* PX-16 at 2, 3, 5 ("As with all Gemini orders, auction orders must be fully (pre-) funded;" "[m]arket maker trading fee rebates encourage participation;" "[s]elf-crossing prohibited;" slides assuring that Gemini's auction was "liquid" and "transparent" and that the auction volume "is already roughly 2x the average maximum trade size of other bitcoin exchanges;" "[s]ettlement price is not readily susceptible to manipulation"); CFTC SAF ¶¶ 63-68; 78-87, ECF No. 91. Gemini provided the final review, edits, and approval of the slideshow presentation made to the CFTC. *See* Exs. H, I, J, ECF No. 92. In the meeting itself, representatives from Gemini explained the slides and responded orally to questions posed by the CFTC. *See* Kuserk Dep. at 258, Ex. C, ECF No. 92; Gordon Dep. at 38; Ex. 23, ECF No. 94.

On August 17, 2017, the CFTC sent follow-up questions to the CFE for the CFE and Gemini to answer, and the CFE forwarded the questions to Gemini. On August 25, 2017,

the CFE and Gemini responded in one document, on Gemini letterhead. *See* Rule 56.1 Statement ¶ 59, ECF No. 98; Ex. 19 at GEM_CFTC173214, GEM_CFTC173222-26, ECF No. 100.

On September 12, 2017, the CFE sent Gemini's Policies and Procedures manual to the CFTC along with a memo by Gemini, on Gemini letterhead bearing the Gemini logo, summarizing aspects of the auction that preserved pricing integrity and discouraged manipulation. PX-4 at GEM_CFTC084666; DX-15. Gemini told the CFE "you have our approval to send" to the CFTC. PX-25.

Direct communication between Gemini and the CFTC followed. On November 2, 2017, Gemini's lawyer and the CFTC had a telephone conversation to discuss the details of Gemini's auction. In preparation, Gemini's lawyer sent talking points about the prevention of auction manipulation directly to the CFTC, including highlighting the pre-funding requirement for orders to buy bitcoins. PX-20.

Throughout the fall of 2017, Gemini helped draft, comment on, and approve three versions of a product self-certification letter, that the CFE sent to the CFTC to represent, again, Gemini's pre-funding requirement, prohibition against self-trading, and incentives to increase volume, all to show that Gemini's futures contracts were not readily susceptible to manipulation. PX-6. Gemini helped draft, edit, and approve the final letter. *See* Ex. R, ECF No. 92; Ex. S, ECF No. 92; Ex. T, ECF No. 92.

## SUMMARY JUDGMENT STANDARD

A court should grant summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence

5

in the light most favorable to the party opposing summary judgment . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). However, the non-moving party may not rely on conclusory allegations or unsubstantiated speculation to defeat the summary judgment motion. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treat[] the fact as established in the case." Fed. R. Civ. P. 56(g).

## APPLICABLE LAW

The only count in this case is for False or Misleading Statements or Omissions to the Commission, violating Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2) ("CEA"). The statute makes it unlawful—

> [F]or any person to make any false or misleading statement of a material fact to the Commission, including in any registration application or any report filed with the Commission under this chapter, or any other information relating to a swap, or a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or to omit to state in any such statement any material fact that is necessary to make any statement of a material fact made not misleading in any material respect, if the person knew, or reasonably should have known, the statement to be false or misleading.

To establish liability under 7 U.S.C. § 9(2), the CFTC must prove by a preponderance of the evidence, that 1) a false or misleading statement, 2) was made to the CFTC, 3) the statement was material, and 4) the author of the statement knew or reasonably should have known that the statement was false or misleading at the time it was made. *See CFTC v. eFloorTrade, LLC*, 16 Civ. 7544 (PGG), 2018 WL 10625588, at *8 (S.D.N.Y. Sept. 21, 2018).

6

A statement is false or misleading "when it is either literally untrue or when it fails to include all information necessary to give the recipient a complete and accurate picture of the state of affairs communicated." *CFTC v. Gramalegui*, 15cv2313, 2018 WL 4610953, at *24 (D. Colo. Sept. 26, 2018). "Half truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations." *Universal Health Servs. Inc. v. U.S. ex rel Escobar*, 579 U.S. 176, 188 (2016).

Knowledge is established where the defendant "knew or reasonably should have known", at the time the statement was made, that it was false or misleading. 7 U.S.C. § 9(2).

Materiality is established if the statement is "capable of influencing a decision by a decision-making body" or if it is "capable of distracting a government investigator's attention from a critical matter." *Kungys v. United States*, 485 U.S. 759, 770–71 (1988); *United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012); *United States v. Litvak*, 808 F.3d 160, 172–74 (2d Cir. 2015). The standard is objective; the omission or misrepresentation must have an intrinsic capability to influence the agency's decision "at the moment the statement was made." *eFloorTrade, LLC*, 2018 WL 10625588, at *8 (defining materiality under 7 U.S.C. §9(2)); *United States v. Byrnes*, 644 F.2d 107, 111 (2d Cir. 1981) ("it is only the question, at the time of its asking, which is considered").

However, as will be seen, one can be liable as a maker of a statement "to the Commission" if it had control over the underlying substance conveyed to the Commission and knew that its statement was going to be shared with the CFTC as part of a decision-making process within the CFTC's jurisdictional scope.

7

## DISCUSSION

### I. "Maker" Liability

Gemini argues that it was not the "maker" of false statements under *Janus Capital Group v. First Derivative Trades*, 564 U.S. 135 (2011), and that even if it was the originator of information that was passed onto the CFTC, only the transmitter of that information, the CFE, can be liable. *Janus* does not apply to this case, certainly not as to statements made directly to the CFTC in a face-to-face meeting and over the telephone, and clearly not as to statements it made to the CFE to be conveyed to the CFTC.

*Janus* was a private securities lawsuit, on behalf of a class, under a right of action implied under Section 10b-5 of the Securities Exchange Act, 17 C.F.R. § 240.10b-5. Holders of stock in an investment management company sued their company for causing a mutual fund it managed to make false statements to people who bought shares of the mutual fund. *Janus Capital Group v. First Derivative Trades*, 564 U.S. 135, 140 (2011). Plaintiffs' theory was that the false statements, when they became known, prompted investors to withdraw money from the mutual fund, reducing the net assets of the fund and, indirectly, the value of the company of which Plaintiffs were shareholders and, indirectly again, the share prices of Plaintiffs' holdings. *Id.* at 139-140.

The Supreme Court, reversing the Fourth Circuit Court of Appeals, held that Plaintiffs had not stated a claim for relief. *Id.* at 148. The mutual fund, not the management company, had the statutory obligation to make statements to potential investors. *Id.* at 147. Although the management company, through a subsidiary, may have contributed information and drafted the statements made by the mutual fund, it was the mutual fund, with its own, independent board of directors, that had "ultimate authority over the statement, including its content and whether or how to communicate it." *Id.* at 142-43, 146-47.

8

*Gemini* is not like *Janus*. The CFTC is suing under explicit authority given to it by Section 9 of the CEA, 7 U.S.C. § 9(4); not under a theory of implied right of action. Gemini's statements were made directly to the CFTC, in a meeting with the CFTC, in a telephone call with the CFTC, and in statements intended for the CFTC but transmitted through the CFE. Gemini's misstatements were made on its letterhead, under its logo, by its personnel, and pursuant to its authority. The CFTC correctly argues that the relevant authority is not *Janus*, but 18 U.S.C. § 1001, as interpreted by *eFloorTrade, LLC*, 2018 WL 10625588, at *8 and *Gramalegui*, 2018 WL 4610953, at *24 n.19, creating liability for anyone who—

> [K]nowingly and willfully—(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

18 U.S.C. § 1001.

Gemini also argues that civil 10b-5 cases brought by the SEC post-*Janus* demonstrate that *Janus* applies, and should negate liability, in this context. This is not so. In *SEC v. Pentagon Cap. Mgmt. PLC*, the Second Circuit rejected the defendant's argument that only the brokers who gave the late trading instructions at issue, not the investment advisors who directed the late trading practice, could be held liable. 725 F.3d 279, 286 (2d Cir. 2013). Instead, the Second Circuit held that the brokers "may have been responsible for the act of communication, but [defendants] retained ultimate control over both the content of communication and the decision to late trade" and could therefore be liable. *Id.* at 286-87. In *SEC v. Norstra Energy Inc.*, the defendant in a 10b-5 suit was, as the spokesperson for the campaign materials at issue, the person to whom the alleged misstatements were attributed. 202 F. Supp. 3d 391, 396 (S.D.N.Y. 2016). In denying summary judgment as to whether the

9

defendant was the "maker" of the statements, the late Judge Pauley reasoned that "[w]hether a defendant is the 'maker' of the misstatement may depend on inferential or circumstantial evidence. In the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed." *Id.* (citing *Janus*, 564 U.S. at 142–43).

Finally, in a footnote in *SEC v. Solarwinds Corp.*, another 10b-5 action, Judge Engelmeyer stated that under *Janus*, "an executive may be held accountable where the executive had ultimate authority over the company's statement; signed the company's statement; ratified and approved the company's statement; or where the statement is attributed to the executive." 23cv9518 (PAE), 2024 WL 3461952, at *40 n.40 (S.D.N.Y. Jul. 18, 2024) (citing *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 473 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013). The executives responsible for signing and certifying the filings that contained the misleading risk disclosures in *Solarwinds* had "ultimate authority" over the company's risk disclosure. *Id.*

The post-*Janus* case law clearly reiterates the principle that liability flows from control over the statement at issue. Gemini, which drafted, edited, and provided information given or sent directly to the CFTC, and also communicated through the CFE to the CFTC, had ultimate authority over each of the alleged misstatements.

I hold that Gemini was the maker of the statements at issue in this case. Fed. R. Civ. P. 56(g).

## II. Misstatements

Issues of fact remain as to whether the thirty-two representations made by Gemini were materially false and misleading. It is proper for a jury to consider in whole the nature of the alleged misstatements, which inextricably overlap with each other, and which were

communicated to the CFTC at different times and in different manners, all in support of the proposition that the futures contracts were "not readily susceptible to manipulation." These statements are difficult to separate out at the summary judgment stage, and are best considered wholesale at trial.

## CONCLUSION

Summary judgment is denied, except as to the issue of whether Gemini was the maker of the alleged misrepresentations. The pending motions in limine and motions to seal at ECF Nos. 110, 113, and 122 were withdrawn without prejudice by consent of the parties. The Clerk shall terminate the open motions at ECF Nos. 97, 110, 113, and 122.

SO ORDERED.

Dated:   November 18, 2024
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge