UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

               Plaintiff,

     v.

GEMINI TRUST COMPANY, LLC,

               Defendant.

22-cv-4563

Hon. Alvin K. Hellerstein

## PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S
## OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 4

I.    Defendant's Motion Is Improper and Legally Baseless ........................................ 4

II.   The Court Should Decline to Issue an Order Precluding Testimony, Evidence, or
      Argument on Any of the Six Purported Issues Raised in Defendant's Motion ................ 8

      A.   The Court Should Deny Defendant's Request to Preclude Evidence and Argument
           About Why the CFTC Asked Defendant Certain Questions ..................................... 8

      B.   The Court Should Deny Defendant's Request to Preclude CFTC Witnesses from
           Testifying that Self-Crossing on the Gemini Exchange Was Not Disclosed .............. 11

      C.   The Court Should Deny Defendant's Request to Preclude the CFTC from
           Offering Argument or Evidence About Its Review of Self-Certifications Beyond
           the Plain Text of Appendix C ................................................................................. 13

      D.   The Court Should Deny Defendant's Request to Preclude CFTC Witnesses from
           Testifying About Any Decisions the CFTC Made or Could Make Regarding the
           Self-Certification ..................................................................................................... 17

      E.   The Court Should Deny Defendant's Request to Preclude Evidence and Argument
           Addressing Whether Anything Said in Connection with the Self-Certification
           Was False or Misleading .......................................................................................... 20

      F.   The Court Should Deny Defendant's Request to Preclude Certain Evidence
           Regarding Defendant's Statements About Pre-funding and the Related Cost of
           Capital to Trade ...................................................................................................... 21

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Arista Recs. LLC v. Lime Grp. LLC*,
  2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) ............................................................7

*Audio Technica U.S., Inc. v. United States*,
  963 F.3d 569 (6th Cir. 2020) ..................................................................................6

*CFTC v. Gramalegui*,
  2018 WL 4610953 (D. Colo. Sept. 26, 2018) ...............................................10, 15, 23

*CFTC v. Rolando*,
  589 F. Supp. 2d 159 (D. Conn. 2008) ....................................................................24

*CFTC v. Royal Bank of Ca.*,
  2014 WL 2933232 (S.D.N.Y. June 27, 2014) ...................................................... 2, 8

*Disability Advocs., Inc. v. Paterson*,
  2009 WL 1312112 (E.D.N.Y. May 8, 2009) ....................................................... 18-19

*Gen. Elec. Co. v. Johnson*,
  2006 WL 2616187 (D.D.C. Sept. 12, 2006) ..............................................................7

*Gogol v. City of New York*,
  2018 WL 4616047 (S.D.N.Y. Sept. 26, 2018) .........................................................20

*Hart v. RCI Hosp. Holdings, Inc.*,
  90 F. Supp. 3d 250 (S.D.N.Y. 2015) ......................................................................24

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
  2019 WL 1649983 (S.D.N.Y. Mar. 28, 2019) ...........................................................7

*In re Omeprazole Pat. Litig.*,
  2002 WL 287785 (S.D.N.Y. Feb. 27, 2002) ...........................................................17

*John Doe Co. v. United States*,
  350 F.3d 299 (2d Cir. 2003) ....................................................................................7

*Medallic Art Co. v. Novus Mktg., Inc.*,
  2004 WL 396046 (S.D.N.Y. Mar. 2, 2004)..............................................................21

*Nat'l Union Fire Ins. Co. v. L.E. Myers Co.*,
  937 F. Supp. 276 (S.D.N.Y. 1996) .........................................................................23

*New Am. Mktg. FSI LLC v. MGA Ent., Inc.*,
    187 F. Supp. 3d 476 (S.D.N.Y. 2016) ...................................................17

*Palmieri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996) ..............................................................4

*SEC v. Benson*,
    657 F. Supp. 1122 (S.D.N.Y. 1987) .....................................................8

*SEC v. Cymaticolor Corp.*,
    106 F.R.D. 545 (S.D.N.Y. 1985) .......................................................8

*SEC v. Sentinel Mgmt. Grp., Inc.*,
    2010 WL 4977220 (N.D. Ill. Dec. 2, 2010) .......................................... 22-23

*SEC v. Suman*,
    684 F. Supp. 2d 378 (S.D.N.Y. 2010) ..................................................8

*Ridge v. Davis*,
    639 F. Supp. 3d 465 (S.D.N.Y. 2022) .................................................20

*Trouble v. Wet Seal, Inc.*,
    179 F. Supp. 2d 291 (S.D.N.Y. 2001) ..................................................7

*TVT Records v. Island Def Jam Music Grp.*,
    250 F. Supp. 2d 341 (S.D.N.Y. 2003) .............................................1, 4, 5

*United States v. Adekanbi*,
    675 F.3d 178 (2d Cir. 2012) .......................................................16, 19

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015) ........................................................5, 6

*United States v. Autuori*,
    212 F.3d 105 (2d Cir. 2000) ...........................................................10

*United States v. Chan Lo*,
    2016 WL 9076234 (S.D.N.Y. Feb. 4, 2016), *aff'd*, 679 F. App'x 79 (2d Cir. 2017) ..........2, 10

*United States v. Cisneros*,
    26 F. Supp. 2d 24 (D.D.C. 1998) .......................................................10

*United States v. Drame*
    2021 WL 1226996 (S.D.N.Y. Apr. 1, 2021) ...........................................15

*United States v. Paredes,*
    176 F. Supp. 2d 179 (S.D.N.Y. 2001) ................................................................4, 24

*United States v. Pugh,*
    162 F. Supp. 3d 97 (E.D.N.Y. 2016) ........................................................................4

*United States v. Regan,*
    103 F.3d 1072 (2d Cir. 1997) ..........................................................................16, 19

*United States v. Rigas,*
    490 F.3d 208 (2d Cir. 2007) ..................................................................................16

*United States v. Tokash,*
    282 F.3d 962 (7th Cir. 2002) ..................................................................................4

*United States v. Wells Fargo Bank, N.A.,*
    2015 WL 6395917 (S.D.N.Y. Oct. 22, 2015) .........................................................7

*Wechsler v. Hunt Health Sys., Ltd.,*
    381 F. Supp. 2d 135 (S.D.N.Y. 2003) ....................................................................6

**Regulations**

17 C.F.R. pt. 38, App'x C ................................................................... 3, 13, 15

17 C.F.R. § 38.200 .............................................................................................9

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Plaintiff") respectfully submits this Opposition to Defendant Gemini Trust Company, LLC's ("Gemini" or "Defendant") Motion *In Limine* No. 1, ECF No. 158.[1]

## PRELIMINARY STATEMENT

Defendant's motion seeks to exclude testimony, evidence, or argument on six issues based on the Court's prior rulings in this case, which properly rejected Defendant's efforts to bolster futile defenses with privileged or irrelevant information. Defendant misconstrues the Court's rulings and the record adduced during discovery to argue that broad swaths of evidence and argument should be excluded from trial. Defendant's motion has several threshold flaws, and even if the Court were to consider the merits of each issue, Defendant offers no credible basis to exclude any unparticularized testimony, evidence, or argument.

Defendant's motion *in limine* suffers from at least two threshold flaws:

*First*, Defendant does not identify a shred of actual evidence that it seeks to preclude. Rather than point to any specific evidence, Defendant quibbles with the Court's prior rulings, which confirmed that the CFTC had appropriately objected to Defendant's baseless attempts to obtain privileged or irrelevant information throughout discovery. Courts routinely reject as improper motions *in limine* that endeavor "to strike in shotgun fashion at whole topics and sources of prospective evidence, out of context and before any specific objection against its proper backdrop is raised." *TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003).

---

[1] Unless otherwise defined, capitalized terms have the meaning ascribed to them in the Complaint, ECF No. 1. "Mot." refers to Defendant's Memorandum of Law in Support of its Motion *In Limine* No. 1, ECF No. 159. "Def. Ex." refers to the exhibits attached to the Declaration John F. Baughman in Support of Defendant's Motion *In Limine* No. 1, ECF No. 160.

*Second*, Defendant does not cite any applicable authority that supports the relief it seeks. Lacking any support for its unprecedented request, Defendant relies on the general proposition of judicial estoppel and a patchwork of cases largely addressing defendants' assertions of good faith defenses and the reliance on the advice of counsel to justify their unlawful conduct. Judicial estoppel is not applicable here because the CFTC has been unwavering in how it intends to present its case to the jury, and Defendant has not identified any "clearly inconsistent" positions (as it must). And, cases addressing the improper assertion of the attorney-client privilege when a defendant asserts a good faith and reliance on counsel defense have nothing to do with what Defendant complains about here—i.e., the CFTC's *proper* assertion of the deliberative process privilege. In reality, Defendant's motion appears to seek something quite modest—precluding the CFTC from offering evidence that was not produced during discovery. (Mot. at 3.) In prior briefing addressing substantially similar arguments (*see* ECF No. 59 at 29; ECF No. 123 at 13), the CFTC has cited this Court's opinion in *CFTC v. Royal Bank of Canada*, 2014 WL 2933232, at *1 (S.D.N.Y. June 27, 2014) where the Court precluded the CFTC from using at trial any material in its files that has not been produced. Defendant provides no reason for the Court to depart from its prior rulings and issue an overbroad exclusionary order for six amorphous issues.

Aside from these threshold problems, there are separate, independent reasons for the Court to decline to issue *in limine* rulings for each of the six issues:

- **Issue 1** seeks to preclude evidence and argument about the reasons for the questions the CFTC posed to Defendant as part of the CFTC's product review. Such testimony is not required for the CFTC to show and argue, under settled law, that the subject matter of the questions were a "proper matter of inquiry" and therefore material to the CFTC's decisionmaking. *See United States v. Chan Lo*, 2016 WL 9076234, at *8 (S.D.N.Y. Feb. 4, 2016) ("The false statements may be material to any proper matter of inquiry, including collateral matters that might influence the outcome of decisions . . .."), *aff'd*, 679 F. App'x 79 (2d Cir. 2017). Defendant has no basis to exclude evidence or arguments simply because it cannot dispute materiality under established law.

- **Issue 2** seeks to preclude CFTC witnesses from testifying that self-trading was not disclosed.  This request is based on Defendant's own failure to conduct discovery of CFTC witnesses about their knowledge, at the time Defendant stated that self-trading could not happen on the exchange or in the auction, of instances of self-trading in the trade data Defendant provided to the CFTC.  The Court granted Defendant's motion to compel, which allowed for limited discovery on this issue, but Defendant never pursued the relief afforded by the Court.  (1/4/2024 Order at 3-4, ECF No. 77 ("Jan. 4 Order").)  Defendant's own failure to conduct discovery is no basis for a preclusion order.  In fact, it is Defendant who should not be permitted to argue that it made no false or misleading statements because it discovered, years later, some evidence in the data transmitted to the CFTC that contradicted its affirmative statements about its self-trade prevention capabilities.  (*See* ECF No. 176 at 17-20 (CFTC's Motion *In Limine* Number Seven).)

- **Issue 3** seeks to preclude evidence and argument about the CFTC's review of the self-certified bitcoin futures contract beyond the plain text of Appendix C to Part 38, 17 C.F.R. pt. 38, App'x C.  Defendant's argument is premised on the erroneous—and misleading—proposition that the CFTC's summary judgment papers included argument about what the CFTC *actually* considered and the *actual* effect of the false statements on the CFTC's product review.  A cursory review of the cherry-picked excerpts dispels this notion.  Critically, Defendant does not take issue with any testimony or evidence that CFTC witnesses provided on the issues that matter in this case—rendering its argument academic and unfit for resolution through a pre-trial *in limine* motion.

- **Issue 4** seeks to preclude CFTC witnesses from testifying about the decisions the CFTC made or could make regarding the self-certified bitcoin futures contract.  The Court has already addressed and confirmed that the CFTC has jurisdiction and decision-making authority over self-certified futures products.  (*See, e.g.*, 11/18/2024 Order at 7, ECF No. 182 (finding Defendant was the maker of the statements because it "knew that its statement[s] [were] going to be shared with the CFTC as part of a decision-making process within the CFTC's jurisdictional scope").)  It is Defendant who should be barred from making misleading arguments to the jury that conflict with the settled law in this case.  Defendant's motion to the contrary is baseless.

- **Issue 5** seeks to preclude CFTC witnesses from testifying that any statements Defendant made were false or misleading.  But Defendant's request is unparticularized and overbroad, and fails to contend with the Court's Jan. 4 Order, which permits CFTC witnesses to testify about their knowledge of Defendant's false or misleading statements and related omissions at the time Defendant made affirmative statements to the CFTC.  The appropriate course would be to address any issues at trial where the testimony will be placed in the appropriate context.

- **Issue 6** seeks to preclude evidence concerning the CFTC's understanding of what "pre-funding" means.  The understanding of pre-funding is not subject to dispute, as

3

Defendant's co-founder and President—Cameron Winklevoss—confirmed that the term conveyed that traders were not receiving credit or margin from the exchange. Moreover, Defendant does not identify any testimony it seeks to exclude, even though CFTC witnesses appropriately testified, consistent with every other witness in this case, that Defendant conveyed that pre-funding meant no leverage or trading with funds borrowed from the platform.  Defendant does not contest this testimony, which is admissible, appropriate, and dispositive.

## ARGUMENT

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted).  *In limine* motions therefore serve the salutary goal of "streamlin[ing] trials and settl[ing] evidentiary disputes in advance." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).  Accordingly, "[e]vidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001).  For this reason, "[t]he movant has the burden of establishing that the evidence is not admissible for any purpose." *United States v. Pugh*, 162 F. Supp. 3d 97, 100 (E.D.N.Y. 2016) (citation omitted).

## I.    Defendant's Motion Is Improper and Legally Baseless

Rather than point to any discrete items of evidence that should be excluded under applicable rules of evidence, Defendant seeks a sweeping exclusionary ruling that encompasses six broad categories of evidence, testimony, or argument.  (Mot. at 2-5.)  The Court can swiftly reject Defendant's fatally flawed approach.

*First*, Defendant's motion reflects an inappropriate use of *in limine* motions.  "The purpose of *in limine* motions is to enable the Court to rule on disputes over the admissibility of discrete items of evidence." *See TVT Records*, 250 F. Supp. 2d at 344.  But Defendant's motion

4

is devoid of any discrete items of evidence.  To the contrary, Defendant's motion seeks to exclude testimony, evidence, or argument that bear on six purported "key issues" drawn from areas of discovery that Defendant declined to seek or that the Court appropriately denied.   (Mot. at 1-2.)  Courts take a dim view of what Defendant attempts to do here—"strike in shotgun fashion at whole topics and sources of prospective evidence, out of context and before any specific objection against its proper backdrop is raised."  *TVT Records*, 250 F. Supp. 2d at 344. This is reason alone to deny Defendant's entire motion.

     *Second*, while Defendant relies on the doctrine of judicial estoppel to support a sweeping preclusion order covering evidence, testimony, or argument for six issues, it cannot meet the prerequisite for invoking the doctrine by identifying any inconsistent positions the CFTC has taken in this case.  Under settled law, "the propriety of applying estoppel depends heavily on the 'specific factual context[ ]' before the court," and the first step is to "consider whether the party's argument is 'clearly inconsistent with its earlier position.'"  *United States v. Apple, Inc.*, 791 F.3d 290, 337 (2d Cir. 2015).  But Defendant cannot point to any inconsistent arguments made by the CFTC, let alone arguments that rest on previously withheld documents.  Nor could it because the CFTC has been consistent throughout this case about how CFTC witnesses will testify about Defendant's statements and the review of the self-certified bitcoin futures contract. (3/22/2023 Hr'g Tr. at 19:18-22, ECF No. 42 (stating that "the issue[] of materiality will be developed through those witnesses who can testify about what the decision was that had to be made, the factors that the CFTC considers, and the elements that are considered in connection with the self-certification"); *see also id.* at 20:13-17 (confirming at that the CFTC "witnesses can testify under Second Circuit precedent about the factors that are considered in connection with

the self-certification, the nature of the inquiry, [and] the purpose of the decision that had to be made").)

Merely incanting the doctrine of judicial estoppel without analyzing how any CFTC position stands in "direct and irreconcilable contradiction" with a prior position is plainly insufficient to justify a blanket bar to presenting testimony, evidence, or argument covering six issues. *See Apple*, 791 F.3d at 337 (observing the need to "carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction'"); *see also Wechsler v. Hunt Health Sys., Ltd.*, 2003 WL 21998980, at *3 (S.D.N.Y. Aug. 22, 2003) ("A district court is well within its discretion to deny a motion *in limine* that fails to identify the evidence with particularity or to present arguments with specificity.").[2]

*Third*, Defendant does not cite a single case that supports what it is asking the Court to do here. Rather, Defendant recycles the cases it cited in its prior motion to compel (ECF No. 54 at 20-23), which largely address legally distinct concepts that implicate the application of the attorney-client privilege when a *defendant* asserts a good faith or reliance on counsel defense. (Mot. at 3-4.) Of course, the CFTC is not the defendant here, rendering inapposite cases where defendants have invoked the attorney-client privilege to prevent inspection of a good faith or reliance on counsel defense.

Even if the cases addressing the implications of asserting a good faith defense premised on the advice of counsel could justify a categorical preclusion order encompassing testimony,

---

[2] It is not even clear that a motion *in limine* is the proper procedural mechanism to invoke the judicial estoppel doctrine as courts have recognized that "it [is] improper for [a] district court to consider judicial estoppel within the context of a motion *in limine*." *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020). This is because "[s]uch non-evidentiary legal issues must be decided in the context of a motion for summary judgment." *Id.* This authority further counsels against granting any of Defendant's motion given that it rests on a precarious—if not improper—legal footing.

evidence, and arguments, the nuances of the deliberative process privilege counsel against applying concepts grounded in the attorney-client privilege to the deliberative process jurisprudence.  *See Gen. Elec. Co. v. Johnson*, 2006 WL 2616187, at *17 (D.D.C. Sept. 12, 2006) ("The concept of subject-matter waiver is almost uniquely a function of the attorney-client relationship.  There is no authority for applying the waiver rule to the deliberative process privilege.").  Thus, even if the CFTC relied in some unidentified way on selectively disclosed privileged information (and, to be sure, it has not), there would still be no basis for the broad preclusion order Defendant seeks because, under the deliberative process privilege, "the release of a document only waives the *deliberative process* privilege for the document that is specifically released, *and not* for related materials."  *United States v. Wells Fargo Bank, N.A.*, 2015 WL 6395917, at *1 (S.D.N.Y. Oct. 22, 2015).[3]

Despite devoting several pages to cobbling together inapplicable cases (Mot. at 3-5), Defendant's motion acknowledges the limits of the relief Defendant is actually seeking. Defendant concedes that courts, in addressing the invocation of the attorney-client privilege to block inspection of a good faith or advice of counsel defense, "preclud[e] parties from offering evidence at trial that was not produced during discovery."  (*Id.* at 3.)  This more discrete

---

[3] As discussed, the majority of the cases Defendant cites address the implications of asserting a good faith defense without a corresponding waiver of the attorney-client privilege to support the defense.  *See, e.g.*, *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) ("[A] party may not assert that it believed its conduct was lawful, and simultaneously claim [attorney-client] privilege to block inquiry into the basis for the party's state of mind or belief"); *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 2019 WL 1649983, at *18 (S.D.N.Y. Mar. 28, 2019) (same); *see also John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) ("It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted.").  As these cases make plain, a defendant asserting a good faith defense tied to advice received from counsel has two options, either waive the attorney-client privilege or waive the good faith defense.  *Arista Recs.*, 2011 WL 1642434, at 2 ("[A] party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; *failure to do so constitutes a waiver of the advice-of-counsel defense.*"); *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) ("When a party intends to rely at trial on the advice of counsel as a defense to a claim of bad faith, that advice becomes a factual issue, and 'opposing counsel is entitled to know not only whether such an opinion was obtained but also its content and what conduct it advised.'").

approach is consistent with how this Court has previously addressed the CFTC's proper

invocation of the deliberative process privilege. *See CFTC v. Royal Bank of Ca.*, 2014 WL

2933232, at *1 (S.D.N.Y. June 27, 2014) (Hellerstein, J.). In *Royal Bank*, the Court ruled that,

"[t]o avoid any unfairness, the CFTC will be precluded from using at trial any material in its files

that has not been produced." *Id.* The CFTC has cited this case on numerous occasions and

Defendant has yet to explain why the Court should depart from its prior ruling, which squarely

addressed the relevant issue here—namely, the CFTC's appropriate invocation of the

deliberative process privilege during discovery.[4]

## II.    The Court Should Decline to Issue an Order Precluding Testimony, Evidence, or Argument on Any of the Six Purported Issues Raised in Defendant's Motion

Defendant's arguments with respect to each of the six broad topics fare no better. Each

category suffers from separate, independent defects that weigh against issuing a categorical

preclusion order.

### A.    The Court Should Deny Defendant's Request to Preclude Evidence and Argument About Why the CFTC Asked Defendant Certain Questions

Defendant's request to preclude evidence and argument about the reasons for questions

the CFTC posed to Defendant in the months leading up to the product self-certification rests on a

misunderstanding of the law and the undisputed record in this case. It is beyond dispute that,

"[o]n August 17, 2017, the CFTC sent follow-up questions to the CFE for the CFE and Gemini

---

[4] The volume of cases that Defendant cites does not mask the novelty of what Defendant is requesting. Besides cases that address the waiver of the attorney-client privilege in order to assert a good faith defense, Defendant relies on cases where defendants have invoked the fifth amendment privilege against self-incrimination. *See SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 549 (S.D.N.Y. 1985) (addressing defendant's invocation of his fifth amendment privilege against self-incrimination in "declin[ing] to answer a number of interrogatories"); *SEC v. Benson*, 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987) (observing that a civil defendant forfeits "the right to offer evidence disputing the plaintiff's evidence or supporting his own denials" when he "hid[es] behind the protection of the Fifth Amendment as to his contentions"). The fifth amendment authority is particularly inapt given that the invocation is not "cost free" in a civil action and can warrant an adverse inference against the party invoking the privilege. *SEC v. Suman*, 684 F. Supp. 2d 378, 386 (S.D.N.Y. 2010).

to answer, and the CFE forwarded the questions to Gemini." (11/18/2024 Order at 4, ECF No. 182.) It is also beyond dispute that the follow-up questions asked about Defendant's market maker rebate program and its self-trade prevention capabilities. (Def.'s Counter 56.1 Statement at 56, ECF No. 106 (undisputed that "the CFTC posed a number of questions to Gemini and CFE by email, one of which asked Gemini to 'provide more detail on the market makers rebate program? How many market makers are signed up? How much liquidity are they providing to the auctions?'"); *id.* at 57 (undisputed that "the CFTC inquired via email whether 'an auction could occur where there is one participant trading with themselves'").) Thus, as a matter of undisputed and objective fact, Defendant's market maker rebate program and self-trade prevention capabilities were part of the CFTC's inquiry into the proposed product's compliance with the CFTC's product listing requirements, including Core Principle 3, which proscribes the listing of contracts that are readily susceptible to manipulation. *See* 17 C.F.R. § 38.200.

Notwithstanding these objective and uncontested facts, Defendant claims that it was entitled during discovery to CFTC witness testimony about the reasons for the questions that were asked because "the answers bear on whether the alleged false statements were material." (Mot. at 6.) This statement stands in direct conflict with the settled law addressing the materiality of false or misleading statements to government actors and this Court's prior rulings. (11/18/2024 Order at 7, ECF No. 182 ("The [materiality] standard is objective; the omission or misrepresentation must have an intrinsic capability to influence the agency's decision 'at the moment the statement was made.'"); Jan. 4 Order at 3, ECF No. 77 ("The subjective views of individual agency decisionmakers and their testimony as to what they relied upon in making the decision is irrelevant.").)

Defendant refuses to acknowledge these rulings and the reality that the CFTC's questions about Defendant's market maker rebate program and self-trade prevention capabilities were posed while the CFTC was engaged in a decisionmaking process that sought to determine whether the bitcoin futures contracts was susceptible to manipulation. *See United States v. Chan Lo*, 2016 WL 9076234, at *8 (S.D.N.Y. Feb. 4, 2016) ("The false statements may be material to any proper matter of inquiry, including collateral matters that might influence the outcome of decisions . . ..."), *aff'd*, 679 F. App'x 79 (2d Cir. 2017). Defendant is therefore mistaken when it claims that the CFTC "sought to replace factual testimony from percipient witnesses with lawyer argument about what the relevant evidence would have been" (Mot. at 8) because, under the well-settled objective standard for determining the materiality of Defendant's misstatements, no such "factual testimony" would be required for the jury to appropriately conclude that Defendant's false or misleading answers to the questions posed were material. As such, there is simply no basis for Defendant's motion *in limine* to preclude the CFTC from arguing or presenting evidence about the context in which the CFTC posed specific questions about Defendant's market maker rebate program and self-trade prevention capabilities as part of the CFTC's review of the self-certified bitcoin futures contract.[5]

---

[5] It bears noting that it is Defendant who should be precluded from arguing or offering evidence suggesting that the CFTC never requested or asked for the specific information that Defendant withheld during the product certification. Defendant's disclosure obligations flow, not only from the requests that the CFTC made during the product certification, but also from the half-truths Defendant told to the CFTC that failed to provide a complete and accurate picture of Defendant's exchange and auction. (ECF No. 176 at 13-15 (CFTC's Motion *In Limine* Number Five)); *see also United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000) ("[I]t is just as unlawful to speak 'half truths' or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading."); *United States v. Cisneros*, 26 F. Supp. 2d 24, 42 (D.D.C. 1998) ("[O]nce a defendant volunteers information, he has an obligation to refrain from telling half-truths or from excluding information necessary to make the statements accurate.").

Accordingly, it is wrong—and impermissible—for Defendant to argue or try to establish through witnesses or evidence that the CFTC was required to request the omitted information: the true test is whether Defendant's statements "fail[ed] to include all information necessary to give the recipient a complete and accurate picture of the state of affairs communicated," regardless of whether the CFTC specifically asked for omitted information. (11/18/2024 Order at 7 (quoting *CFTC v. Gramalegui*, 2018 WL 4610953, at *24 (D. Colo. Sept. 26, 2018)).)

### B. The Court Should Deny Defendant's Request to Preclude CFTC Witnesses from Testifying that Self-Crossing on the Gemini Exchange Was Not Disclosed

Defendant's request to preclude CFTC witnesses from testifying that self-trading or self-crossing was not disclosed is puzzling. It is premised on Defendant's decision not to pursue testimony from CFTC witnesses about their knowledge of instances of self-trading in the trade data that Defendant transmitted to, but did not identify for, the CFTC. (Mot. at 9-10.) Defendant ignores that the Court "granted" Defendant's motion to compel, which permitted Defendant to "notice, or complete, depositions" of CFTC witnesses who were identified as reviewing Defendant's false or misleading statements prior to the product self-certification "and any of the materials defendant says it disclosed." (Jan. 4 Order at 3-4, ECF No. 77.)

Defendant made the strategic decision not to depose any of the witnesses identified by the CFTC to determine whether they were aware that the trade data provided to the CFTC included instances of self-trading and were indifferent to that fact. Defendant's inaction speaks volumes and reflects the reality that any testimony would be unfavorable to Defendant because Defendant told the CFTC witnesses *after Defendant had provided the trade data* that self-trading categorically could not occur intentionally or unintentionally. (*See, e.g.*, Def.'s Counter 56.1 Statement at 57, ECF No. 106 (undisputed that Defendant made the following statement on September 12, 2017 after it had provided the trading data that it claims to include identifiable instances of self-trading: "Self-Trade Prevention - We prohibit the same market participant from crossing with himself or herself (either intentionally or unintentionally) on a continuous trading order book or in a Gemini Auction").) This motion is the product of Defendant's gambit to forgo deposing CFTC witnesses in hopes of securing a blanket preclusion order because Defendant knows full well that CFTC witness testimony would eviscerate "Gemini's defense[]" that the

11

trade data alerted CFTC witnesses to "instances of self-crossing on the Gemini exchange." (Mot. at 8.)

As pretext for its failure to depose CFTC witnesses, Defendant claims to have propounded interrogatories seeking information about the CFTC's analysis of Gemini trade data, including whether any such analysis uncovered instances of self-crossing. (Mot. at 10.) This claim is blatantly misleading. Defendant's interrogatories were propounded on December 26, 2023, *before* the Court's Jan. 4 Order that granted Defendant the ability to question CFTC witnesses. Yet, Defendant misstates that it "propounded interrogatories" after—i.e., "[s]ubseqent[]" to when—the Court issued the Jan. 4 Order. (Mot. at 10.) The only explanation, relegated to a footnote, that Defendant provides for failing to take the discovery it had specifically asked for is that the CFTC "refus[ed] to answer the[] interrogatories" and "continued [to] assert[] that the information requested was irrelevant and privileged." (Mot. at 10 n.7.) Defendant is wrong again because, in response to the Defendant's interrogatories, the CFTC directed Defendant to the Court's Jan. 4 Order and what the CFTC said in response to it. (Def. Ex. 9 at 29-30, ECF No. 160-9 (CFTC Resps. to Def. Interrogatories 58-60).) But *Defendant still did nothing* and never noticed another deposition of a single witness the CFTC identified as receiving Defendant's trade data to determine whether any such witness was aware of instances of self-trading notwithstanding Defendant's repeated misrepresentations that self-trading was not possible. Defendant cites no authority where a Defendant's own failure to take discovery, which it expressly sought, is grounds for excluding evidence permitted by a court order.

But, putting aside Defendant's misleading claims and half-baked excuses for failing to follow the Court's Jan. 4 Order, regardless of what Defendant was able to discover years later in its own trade data, it never provided a complete and accurate picture of its self-trade prevention

capabilities *to the CFTC* in the months before the product self-certification by, for example, disclosing that the trade data included instances of self-trading. Or, that even after it had the capability to identify and prevent certain types of self-trading, it failed to stop self-trading between a trader's resting continuous order book order and that same trader's auction only order when the auction was executed. Instead, the undisputed evidence shows that Defendant maintained that self-trading was prohibited based on its self-trade prevention capabilities and stated, unequivocally, that unintentional or intentional self-trading could not occur. (Def.'s Counter 56.1 Statement at 57, ECF No. 106.) Based on this undisputed record, the CFTC has moved *in limine* to prevent Defendant from misrepresenting the record and confusing the jury with argument or evidence that Defendant somehow discharged its disclosure obligations because it was able to locate, years later, information in data relayed to the CFTC that happened to conflict with the affirmative statements it made about its own self-trade prevention capabilities. (*See* ECF No. 176 at 17-20 (CFTC's Motion *In Limine* Number Seven).)

**C.  The Court Should Deny Defendant's Request to Preclude the CFTC from Offering Argument or Evidence About Its Review of Self-Certifications Beyond the Plain Text of Appendix C**

Defendant seeks to preclude the CFTC from offering evidence or argument about what was important, beyond what is set forth in Appendix C, to the CFTC's review of a product self-certification. (Mot. at 12-16.) To concoct a basis for an *in limine* motion, Defendant selectively quotes from the CFTC's summary judgment papers to argue that the CFTC intends to rely on what the CFTC "*actually*" considered in its review of the self-certified bitcoin futures contract and the "*actual* effect" of the misleading statements on the CFTC's review. (*Id.* at 15.) But Defendant's argument does not provide a viable basis for the Court to issue an *in limine* ruling because Defendant omits critical context from the excerpts that it extracted from the CFTC's

summary judgment papers.  The omitted context confirms that the CFTC's statements and arguments are based on undisputed evidence and settled law, and thus, permissible at trial.

For instance, Defendant emphasizes the CFTC's point—in the CFTC's preliminary statement—that the auction was "*the focal point of the CFTC's review*."  (Mot. at 15 (quoting CFTC Mem. of Law in Supp. of Mot. for Partial Summary Judg. at 2, ECF No. 99 ("CFTC SJ Mem.")).)  Defendant also italicizes the CFTC's statement, excerpted from the CFTC's statement of material facts, that "*the CFTC was focused on*" the auction's susceptibility to manipulation.  (*Id.*)  Defendant conveniently omits that the support for these statements, which Defendant does not dispute, comes from Defendant's own documents and admissions.  (Def.'s Counter 56.1 Statement at 45, ECF No. 106 (Defendant admitting that it was "[u]ndisputed that Gemini knew the CFTC wanted information about the Gemini auction"); Ans. at 6, ECF No. 13 (admitting in its own *Answer* that the CFTC "was principally interested in the auction's mechanics and how they would serve to ensure the reliability of the auction price once the contract started trading").)  Defendant cannot credibly claim that the CFTC relied on unproduced—and privileged—evidence about what it "actually considered" in evaluating the self-certified bitcoin futures contract based on statements that Defendant's auction was the focus of the CFTC's review when Defendant's own documents and admissions concede this uncontroverted point.

The same is true for Defendant's other excerpts from the CFTC's legal arguments, which Defendant also italicized for dramatic effect.  (Mot. at 15.)  Defendant claims that the CFTC's legal argument—and common-sense proposition—that, in failing to completely and accurately answer the CFTC's questions about its self-trade prevention capabilities, Defendant "*deprived the CFTC of information necessary for it to determine whether further investigation into self-*

*trading . . . was necessary.*"  (*Id.* (quoting CFTC SJ Mem. at 51).)  This argument tracks almost

verbatim the Court's opinion in *United States v. Drame*, where the Court observed, in finding

materiality established as a matter of law, that "it is reasonable to assume that [omitted]

information *would have influenced a decisionmaker to investigate further*."  2021 WL 1226996,

at *4 (S.D.N.Y. Apr. 1, 2021) (Hellerstein, J.) (emphasis added).  Of course, Defendant omits the

legal citation that makes this point clear.

Similarly, Defendant fails to cite the legal authority that makes plain that the CFTC's

argument that it was prevented from "*getting a clear picture*" of the operation of Defendant's

auction because of Defendant's failure to disclose information about its self-trade prevention

capabilities (or lack thereof) (Mot. at 15), goes directly to the question of materiality and whether

disclosure of omitted information "would have led to the discovery of additional evidence

relevant to the CFTC's investigation."  (CFTC SJ Mem. at 52 (citing and quoting *Gramalegui*,

2018 WL 4610953, at *24, 26).)  Simply because the applicable standard requires the jury to

consider whether Defendant's misrepresentations and related omissions had "an intrinsic

capability to influence" agency decisionmaking (Jan. 4 Order at 2, ECF No. 77; 11/18/2024

Order at 7, ECF No. 182 (same)), it does not follow that the CFTC's arguments tied to that legal

standard require evidence of what the CFTC actually considered or the actual effect of

Defendant's statements on the CFTC's decisionmaking.

Regardless of Defendant's arguments that rest on misleading excerpts, Defendant is

forced to concede that the CFTC has "repeated[ly]" (Mot. at 13) identified Appendix C to Part

38 as the relevant guidance for addressing the main question for the CFTC arising from the

statutory and regulatory framework for evaluating product certifications—namely, whether the

proposed contract complied with Core Principle 3 and was not readily susceptible to

manipulation.  (Def. Ex. 9 at 18-19, ECF No. 160-9 (CFTC Resps. to Def. Interrogatories 33, 36); C. Goodman Dep. Tr. at 83:10-18, ECF No. 59-4; G. Kuserk Dep. Tr. at 100:3-101:1, ECF No. 59-3.)  Additionally, the CFTC confirmed during discovery that, as part of its oversight and review of new product certifications, it considers "the representations made by proponents of the self-certification that the product complies with the aforementioned Core Principles."  (Def. Ex. 9 at 12-13 (CFTC Resp. to Def. Interrogatory 17); *see also* C. Goodman Dep. Tr. at 38:7-13, ECF No. 59-4 (explaining that the CFTC's "review [is] based . . . on the various representations made by the exchange" as well as "an independent analysis [the CFTC] may conduct as well").)

And, the CFTC has also been crystal clear throughout this case that its witnesses "can testify under Second Circuit precedent about the factors that are considered in connection with the self-certification, the nature of the inquiry, [and] the purpose of the decision that had to be made."  (3/22/2023 Hr'g Tr. at 20:13-17, ECF No. 42); *see also United States v. Rigas*, 490 F.3d 208, 235 (2d Cir. 2007) ("In the context of an objective decisionmaking process, whether a misrepresentation is 'material' requires examination of the factors the decisionmaker would employ, and the degree to which a misrepresentation would be 'capable of influencing[ ] the decision of the decisionmaking body.'"); *United States v. Regan*, 103 F.3d 1072, 1084 (2d Cir. 1997) ("At trial, the government presented ample evidence about the *nature of the investigation* in relation to which Regan testified before the Grand Jury.") (emphasis added); *United States v. Adekanbi*, 675 F.3d 178, 183 (2d Cir. 2012) (finding evidence adequate in false statement case where government "introduced testimony that the *purpose* of a safety-valve proffer is to determine eligibility for safety-valve relief and that both truthfulness and criminal history are *elements* to be considered in determining whether a defendant is safety-valve eligible") (emphasis added); (3/22/2023 Hr'g Tr. at 24:1-4, ECF No. 42 ("[T]he important thing is . . . to

identify exactly what criteria are used" by the CFTC to review product certifications)).

On this point, Defendant ignores—and does not seek to exclude—the reams of testimony it obtained from CFTC witnesses about the nature of the review that the CFTC conducts in connection with self-certified products; the public guidance that applies to the CFTC's review, which addresses the objective criteria and factors the CFTC employs to evaluate product certifications; and the statements Defendant made to the CFTC and what messages were conveyed. (ECF No. 59 at 10-11 (citing testimony that Defendant obtained during the depositions of CFTC employees).) Defendant has not identified any objectionable statements in the testimony already provided that the CFTC could use, has used, or intends to use. This renders Defendant's argument entirely hypothetical and devoid of any context on which the Court could judge the relevancy of the unidentified evidence that Defendant proposes to exclude. (Mot. at 12-15.) Courts routinely reserve judgment where, as here, any evidence "would have to be established as relevant in the context of the facts presented at trial." *New Am. Mktg. FSI LLC v. MGA Ent., Inc*., 187 F. Supp. 3d 476, 481 (S.D.N.Y. 2016); *In re Omeprazole Pat. Litig.*, 2002 WL 287785, at *8 (S.D.N.Y. Feb. 27, 2002) (finding that defendant "may object to particular documents if used . . . improperly at trial" where defendant failed to "delineate with any specificity any . . . evidence [plaintiff] intends to offer"). Defendant offers no reason for the Court to reach a different result.

### D. The Court Should Deny Defendant's Request to Preclude CFTC Witnesses from Testifying About Any Decisions the CFTC Made or Could Make Regarding the Self-Certification

Defendant seeks to exclude testimony on an issue that has already been resolved by the Court. (Mot. at 16-17.) Defendant argues that there are "two . . . fundamental questions underlying this case: whether the CFTC made (or could have made) any decision with respect to

[the self-certified bitcoin futures contract] and what that decision was." (*Id*. at 16).  But the Court has decided as a matter of law that the CFTC has decision-making authority with respect to product self-certifications.  (11/18/24 Order at 7, 11 (finding Defendant the "maker of the alleged misrepresentations" because Defendant "knew that its statement[s] [were] going to be shared with the CFTC *as part of a decision-making process within the CFTC's jurisdictional scope*.") (emphasis added); 7/23/2024 Hr'g Tr. at 62:18-23, ECF No. 133 ("I'm ruling that Gemini is a maker of statements eventually passed on through CBOE to the CFTC, and I'm reasoning that there is an overall responsibility of the CFTC to assure that the product on the designated contract market is not readily susceptible to manipulation.  That's the finding that the CFTC has to make."); *id.* at 76:18-77:5 (observing that the CFTC's decisionmaking authority is "a question of law" and finding that the CFTC "could have done one of three things.  It could have said, okay, CBOE, go trade; could have said, don't trade; or, which is also an action, it could do nothing, which puts the thing into limbo and which makes CBOE uncertain"); *see also* Jan. 4 Order at 3, ECF No. 77 ("An agency may or may not make a decision for a host of reasons.  That has no bearing on whether the statement, at the time it was made, was capable of influencing th[e] decision-making process.").)

Defendant simply ignores the Court's rulings to argue that CFTC witnesses should not be permitted to testify at trial about the decisions the CFTC made or could make in connection with the self-certification of the bitcoin futures contract.  (Mot. at 17.)  Such testimony is not necessary in light of the Court's ruling.  (11/18/2024 Order at 6-11, ECF No. 182.)  In fact, it would be inappropriate for Defendant to argue that the CFTC lacked decision-making authority over the self-certified bitcoin futures contract. *Disability Advocs., Inc. v. Paterson*, 2009 WL

1312112, at *2 (E.D.N.Y. May 8, 2009) ("Pursuant to the law of the case, the parties may not submit evidence at trial or post-trial briefing on any of the issues resolved in [prior rulings].").

For the avoidance of doubt, while the CFTC does not need to elicit testimony or evidence about any specific decision it made or could make in connection with the self-certified bitcoin futures contract given the Court's ruling on this issue (11/18/2024 Order at 7, 11, ECF No. 182), CFTC witnesses can testify under settled law about the nature and purpose of the product certification and the CFTC's oversight role in that process. *See supra* at 16 (citing *Regan*, 103 F.3d at 1084 and *Adekanbi*, 675 F.3d at 183). And, this is precisely the type of testimony the CFTC witnesses provided during their depositions. (C. Goodman Dep. Tr. at 38:7-13, ECF No. 59-4 (explaining that compliance with the CFTC's core principles is "an ongoing obligation, so there would never be a final determination necessarily, but . . . [the] review [is] based on the facts and based on the various representations made by the exchange" as well as "an independent analysis [the CFTC] may conduct as well"), 45:2-5 (confirming that self-certified products are not subject to "Commission approval," which is a separate process), 77:15-22 (explaining that, when a new product is self-certified, "the designated contract market is making the representation and making a determination that the contract is not readily susceptible to manipulation," and "the [C]omission can and does review th[e] determination[]" that the proposed contract is not readily susceptible to manipulation), 81:16-20 (stating again that a self-certification is "not a final determination generally"); G. Kuserk Dep. Tr. at 247:2-5, ECF No. 59-3 (explaining that "there's not really a final decision" that is "part of [a] self-certification"), 247:7-15 (explaining further that a self-certification is "not an approval process" that is "voted on by the Commission").)

As with Defendant's other broad categorical requests, anticipated CFTC witness testimony cannot be addressed in a vacuum and without the benefit of live testimony in the context of the actual trial.  This too justifies denying Defendant's request with respect to this issue.  *Vincent v. Reyes*, 2021 WL 4262289, at *1 (N.D. Cal. Sept. 20, 2021) ("Motions *in limine* that seek exclusion of broad and unspecific categories of evidence are generally disfavored because courts are better situated during the actual trial to assess the value and utility of evidence, instead of tackling the matter in a vacuum.") (cleaned up); *Gogol v. City of New York*, 2018 WL 4616047, at *1 (S.D.N.Y. Sept. 26, 2018) ("[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context.").

### E. The Court Should Deny Defendant's Request to Preclude Evidence and Argument Addressing Whether Anything Said in Connection with the Self-Certification Was False or Misleading

Defendant requests that the Court preclude CFTC witnesses from testifying that they believed that any statements were false or misleading.  (Mot. at 17.)  This request is vague, overbroad, and should be denied for several reasons.

*First*, Defendant's request lacks the required specificity for the Court to entertain an *in limine* motion seeking to exclude testimony that "any statements" were false or misleading. *Ridge v. Davis*, 639 F. Supp. 3d 465, 479 (S.D.N.Y. 2022) (finding request to exclude "*any* evidence" on a particular subject "[lacked] the necessary specificity with respect to the evidence to be excluded").  Rather than identify evidence that it seeks to preclude, Defendant complains about its inability to elicit privileged answers from CFTC witnesses about whether "they believed" or "determine[d]" that Defendant's statements were false or misleading.  (Mot. at 17-18.)  The Court made abundantly clear that "[t]he subjective views of individual agency

decisionmakers and their testimony as to what they relied upon in making the decision is irrelevant."  (Jan. 4 Order at 3, ECF No. 77.)

*Second*, as previously discussed, Defendant fails to grapple with the Court's Jan. 4 Order, which contemplates inquiry into whether CFTC witnesses were aware that Defendant's statements were false or misleading at the time they were made.  (Jan. 4 Order at 3, ECF No. 77.) Defendant offers no explanation for its failure to take a single deposition as permitted by the Court's Jan. 4 Order and thus cannot claim to have been prejudiced when it never availed itself of the remedies provided by the Court.  Given that testimony regarding the CFTC's awareness of false statements depends on the factual context in which the evidence will be presented at trial, a preemptive *in limine* order is inappropriate.  *Medallic Art Co. v. Novus Mktg., Inc.*, 2004 WL 396046, at *2 (S.D.N.Y. Mar. 2, 2004) (denying *in limine* motion were "Defendants' briefing on th[e] issue is far too vague and removed from any factual context to enable this Court to render a blanket decision").

### F.  The Court Should Deny Defendant's Request to Preclude Certain Evidence Regarding Defendant's Statements About Pre-funding and the Related Cost of Capital to Trade

On November 25, 2024, the Court granted Defendant's request to amend its motion to address evidence concerning Defendant's pre-funding statements and the related cost of capital to trade.  (ECF No. 188.)  Through its amendment, Defendant seeks to preclude the CFTC from introducing evidence concerning (i) the CFTC's understanding of what "pre-funding" means; (ii) the relevance of Gemini's pre-funding requirement to the CFTC's analysis of the bitcoin futures contract; and (iii) why the CFTC did not ask any questions about pre-funding prior to the self-certification of the bitcoin futures contract.  (*Id.* at 1-2.)  The Court should deny Defendant's request in its entirety.

*First*, there is no serious dispute about the meaning of pre-funding.  Every percipient witness deposed in this case who was familiar with the term "pre-funding" understood it to mean that the requirement was a protection against manipulative conduct because it increased a trader's cost of capital and prevented market participants from trading with margin or leverage. Take, for example, Cameron Winklevoss's definition:  the term "pre-funded" was "another way to describe full reserve or fully funded" and fully funded orders "make[] it harder to manipulate in the sense that people have to trade with physical assets as opposed to getting credit or . . . margin."  (C. Winklevoss Dep. Tr. at 552:22-553:20, ECF No. 100-1.)  There are other examples of the well-understood meaning of the term pre-funding as used by Defendant in the context of the product self-certification.  (A. Reinstein Dep. Tr. at 53:9-25, ECF No. 100-10 (Cboe witness Arthur Reinstein: pre-funded meant "there's no margining," and clarified that allowing margining would mean that traders were "being given credit or funding from another party in order to place the order"); N. Pursley Dep. Tr. at 33:14-23, ECF No. 100-23 (Nicole Pursley from Cboe confirmed her "understanding is the pre-funded element meant that the trades had to be 100 percent funded.  You weren't trading on margin or leverage").)

The CFTC witnesses also confirmed that Defendant used the term pre-funding to convey that there was no leverage or margin trading on the platform or in the auction.  (C. Goodman Dep. Tr. at 151:10-21, 152:1-14, ECF No. 59-4 (CFTC witness Christopher Goodman confirming that his "understanding [was] based on [Gemini and the CFE's] documents, and . . . their . . . discussions with us" and that the "point was made that . . . these are pre-funded, so there's not leverage concerns."); G. Kurserk Dep. Tr. at 211:16-212:18, ECF No. 59-3 (CFTC witness Greg Kuserk confirming that Defendant was "trying to argue" that "prefunding" meant that "you couldn't basically overleverage in the Gemini market because you have . . . to put up

the funds first.").)  This testimony, which was provided during discovery and not objected to as part of this motion, is perfectly acceptable for trial and in no way relies on previously withheld evidence.  *See SEC v. Sentinel Mgmt. Grp., Inc.*, 2010 WL 4977220, at *3 (N.D. Ill. Dec. 2, 2010) ("Discussion of objective facts, as opposed to opinions and recommendations, generally is not protected by the deliberative process privilege.").  Here, again, the context of the CFTC witness testimony is critical, which makes it imprudent to address before trial.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) ("[T]he Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context.").

*Second*, the Court should deny Defendant's request to preclude testimony about the relevance of Gemini's pre-funding and cost of capital statements to the CFTC's review of the self-certified bitcoin futures product for the reasons set forth in Section II.C above.  Moreover, Defendant made the pre-funding and cost of capital statements specifically to address the core requirement that the bitcoin futures contract, and the settlement price which Defendant's auction referenced, not be readily susceptible to manipulation.  It belies credulity to argue that the pre-funding feature was not relevant to the CFTC's review especially when Defendant presented pre-funding as a key business practice that deterred manipulative behavior.

*Third*, the Court should deny Defendant's request to preclude testimony about why the CFTC did not ask questions about pre-funding because it is unnecessary and premature.  The request is unnecessary because the reason why the CFTC did not ask follow-up questions about Gemini's pre-funding assertions, which as everyone understood plainly indicated that Defendant was not facilitating leverage or margin trading, does not make Defendant's statements about pre-funding and a trader's cost of capital any less material or otherwise immunize Defendant for

"fail[ing] to include all information necessary to give the recipient a complete and accurate picture of the state of affairs communicated." (*See* 11/18/2024 Order, ECF No. 182 (quoting *Gramalegui*, 2018 WL 4610953, at *24).) For this reason, it is Defendant that should be precluded from arguing or offering evidence suggesting that the CFTC never requested or asked for the specific information that Defendant withheld during the product certification. *See supra* at 10 n.5 (citing CFTC's Motion *In Limine* Number Five at 13-15, ECF No. 176).

The request is also premature because it fails to contend with the testimony that CFTC witnesses provided during discovery about the statements Defendant made to the CFTC and what message Defendant conveyed by those statements. *CFTC v. Rolando*, 589 F. Supp. 2d 159, 168 (D. Conn. 2008) ("Whether a misrepresentation has been made depends on the 'overall message' and the 'common understanding of the information conveyed.'"). This type of testimony and evidence from CFTC witnesses, which Defendant does not object to in its motion, is appropriate at trial because any CFTC witness's understanding of the term pre-funding flows directly from the overall message conveyed by Defendant's own statements and would not be based on any withheld or privileged information. Defendant's inability to identify discrete pieces of evidence that are "clearly inadmissible on all potential grounds" dooms Defendant's request for a blanket order covering unspecified evidence about why the CFTC did not pose a specific question about the meaning of the term pre-funding. *Paredes*, 176 F. Supp. 2d at 181; *see also Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 266 (S.D.N.Y. 2015) (denying *in limine* motion that was "framed at a conceptual level" and did not "appear to be addressed to specific evidence" or "present a crystallized dispute ripe for resolution").

24

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion *In Limine* No. 1 in its entirety.

Dated:  December 6, 2024

Respectfully submitted,

/s/ Andrew J. Rodgers
K. Brent Tomer, Chief Trial Attorney
Alejandra de Urioste, Chief Trial Attorney
Katherine Rasor, Trial Attorney
Peter Janowski, Trial Attorney
Diana Wang, Trial Attorney
Andrew J. Rodgers, Trial Attorney
Manal M. Sultan, Deputy Director

COMMODITY FUTURES
TRADING COMMISSION
Division of Enforcement
290 Broadway, Suite 600
New York, NY 10007
Phone: (646) 746-9700
Fax: (646) 746-9888