UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

            Plaintiff,

    v.

GEMINI TRUST COMPANY, LLC,

            Defendant.

22-cv-4563 (AKH)

Hon. Alvin K. Hellerstein

**PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S
OPPOSITION TO DEFENDANT'S OMNIBUS MOTION *IN LIMINE*** 

COMMODITY FUTURES TRADING
COMMISSION
Division of Enforcement
290 Broadway, 6th Floor
New York, NY 10007
(646) 746-9700

December 6, 2024

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.   Cameron and Tyler Winklevoss's Net Worth and Wealth Are Relevant to the Issues Set for Trial and Have Been Placed At Issue ...................................................... 3

    II.  Defendant Opened the Door for the CFTC to Present Evidence of Cameron and Tyler Winklevoss's Drug Use ........................................................................................ 7

    III. Defendant's Request to Exclude Evidence and Argument Regarding Other Events in the Cryptocurrency Industry Is Premature ............................................................ 8

    IV. Defendant's Request to Exclude Evidence and Argument Regarding Other Litigations or Government Investigations Is Premature ...................................................... 10

    V.  Defendant's Request to Preclude Cross Examination of Defendant's Witnesses About Instances of Wash Trading Is Meritless ............................................................ 10

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Stock Exchange, LLC v. Mopex, Inc.*,
  215 F.R.D. 87 (S.D.N.Y. 2002) .................................................................................... 13-14

*Arista Recs. LLC v. Lime Grp. LLC*,
  2011 WL 1542560 (S.D.N.Y. Apr. 21, 2011) ..................................................................... 4

*CFTC v. Gramalegui,*
  2018 WL 4610953 (D. Colo. Sept. 26, 2018) ..................................................................... 3

*CFTC v. Monex Credit Co.*,
  2021 WL 8776702 (C.D. Cal. Dec. 20, 2021) ..................................................................... 6

*Crigger v. Fahnestock & Co.,*
  443 F.3d 230 (2d Cir. 2006) ............................................................................................ 4-5

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006) ............................................................................................... 13

*Feighan v. Res. Sys. Grp. Inc.*,
  2023 WL 4623123 (D.D.C. July 19, 2023) .......................................................................... 8

*Gogol v. City of N.Y.*,
  2018 WL 4616047 (S.D.N.Y. Sept. 26, 2018) ..................................................................... 8

*Kinsey v. Cendant Corp.*,
  588 F. Supp. 2d 516 (S.D.N.Y. 2008) ................................................................................. 5

*Matsumura v. Benihana Nat. Corp.*,
  542 F. Supp. 2d 245 (S.D.N.Y. 2008) ................................................................................. 5

*McBeth v. Porges*,
  2018 WL 5997918 (S.D.N.Y. Nov. 15, 2018) ..................................................................... 5

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*,
  937 F. Supp. 276 (S.D.N.Y. 1996) ............................................................................... 9, 10

*Palmieri v. Defaria*,
  88 F.3d 136 (2d Cir. 1996) .................................................................................................. 2

*SEC v. Rajaratnam*,
  918 F.3d 36 (2d Cir. 2019) .................................................................................................. 6

*Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*,
  2004 WL 2367740 (N.D. Ill. Oct. 15, 2004) ..................................................................6

*Tesser v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*,
  370 F.3d 314 (2d Cir. 2004)..........................................................................................4

*United States v. Connolly*,
  2019 WL 2125044 (S.D.N.Y. May 2, 2019)..................................................................9

*United States v. Paredes*,
  176 F. Supp. 2d 179 (S.D.N.Y. 2001) ...........................................................................2

*United States v. Pugh*,
  162 F. Supp. 3d 97 (E.D.N.Y. 2016).............................................................................2

*United States v. Quattrone*,
  441 F.3d 153 (2d Cir. 2006) .........................................................................................4

*United States v. Tokash*,
  282 F.3d 962 (7th Cir. 2002).........................................................................................2

*Wechsler v. Hunt Health Sys., Ltd.*,
  2003 WL 21998980 (S.D.N.Y. Aug. 22, 2003) ............................................................8

**Statutes**

Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2) .............................................1, 3

**Rules**

Fed. R. Evid. 404(a).................................................................................................................7, 8

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Plaintiff") respectfully submits this Opposition to Defendant Gemini Trust Company, LLC's ("Gemini" or "Defendant") Omnibus Motion *In Limine*, ECF No. 165.[1]

## PRELIMINARY STATEMENT

The Court can swiftly deny Defendant's motion to exclude evidence or argument on five separate topics. Each topic fails to meet the requirements of exclusion at this stage, before trial, without the benefit of assessing the evidence in the appropriate factual context. Specifically:

- Defendant's motion to exclude evidence or argument about Cameron and Tyler Winklevoss's net worth ignores that Defendant's history and background are relevant considerations under a Section 6(c)(2) claim in assessing whether Defendant knew or reasonably should have known its statements were false or misleading. Moreover, Defendant has placed its wealth and sophistication, and that of its co-founders, apex employees, and benefactors, at issue in three ways: (i) by arguing that it lacked resources and experience to understand its disclosure obligations; (ii) by interposing a defense premised on a lack of sophistication and reliance on the listing exchange, Cboe Futures Exchange ("CFE"), to provide advice about the importance of the information relayed in, or omitted from, Defendant's statements to the CFTC; and (iii) by referencing the Winklevoss's wealth as a basis to justify the interest rates charged by Defendant's lending affiliate—Pearl Street Financial, LLC ("Pearl Street").

- Defendant's motion to exclude evidence of drug use ignores that Defendant has sought to defend against the charges in this case by invoking its good corporate character and culture of compliance. While this type of character evidence should be excluded outright, if allowed, drug use and obscene behavior by Defendant's high-ranking employees should be admitted to impeach Defendant's purported good corporate character.

- Defendant's motion to exclude other events in the cryptocurrency industry is premature and overbroad. For starters, Defendant only seeks to exclude reference to events that post-date the relevant time period. Defendant fails to address how events during the 2016-2017 time period might be relevant to the issues set for trial. Denying Defendant's request now, before trial, is especially prudent given that Defendant has sought to diminish its own culpability by reference to other industry bad actors and invoked its good corporate character. Given the lack of clarity surrounding the defenses Defendant may raise at trial, the Court would be better

---

[1] "Mot." refers to Defendant's Memorandum of Law in Support of Its Omnibus Motion *In Limine*, ECF No. 166. "Ex. __" refers to the exhibits attached to the contemporaneously filed Declaration of Christopher Giglio Pursuant to 28 U.S.C. § 1746 in Opposition to Defendant's Omnibus Motion *In Limine*.

1

positioned to address during trial the value and utility of any unidentified "other cryptocurrency events" from the 2016-2017 time period.

- Defendant's motion to exclude other litigations and government investigations involving Defendant is similarly misplaced. In the event Defendant invokes its putative good corporate character and culture, the CFTC should be permitted to impeach any such testimony.

- Defendant's motion to exclude certain evidence of abusive trading between its customers is frivolous. Evidence of coordinated trading in Defendant's auction to obtain rebates has always been available to Defendant *in its own trading data.* Additionally, at the outset of discovery, the CFTC produced hundreds of communications from third-party productions collected during its investigation that included evidence of coordinated trading between market makers. Then, the CFTC noticed the deposition of one trader potentially implicated in the coordinated trading activity and included a second trader on its revised preliminary witness list. Despite this wealth of information and ability to depose the traders, Defendant claims to have been sandbagged when the CFTC confronted Defendant's expert witness with evidence that showed possible wash trading in Gemini's auction. Defendant's expert was baffled and unable to explain why he could not locate such trading activity *using his own criteria for identifying wash trading*. This is not "sandbagging" or "trial by ambush," it is how discovery and impeachment work and is entirely appropriate.

## ARGUMENT

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted). *In limine* motions therefore serve the salutary goal of "streamlin[ing] trials and settl[ing] evidentiary disputes in advance." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Accordingly, "[e]vidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). For this reason, "[t]he movant has the burden of establishing that the evidence is not admissible for any purpose." *United States v. Pugh*, 162 F. Supp. 3d 97, 100 (E.D.N.Y. 2016) (citation omitted). Defendant has not met its burden for any of the topics identified in its motion.

I. **Cameron and Tyler Winklevoss's Net Worth and Wealth Are Relevant to the Issues Set for Trial and Have Been Placed At Issue**

Defendant claims that evidence and argument that Cameron and Tyler Winklevoss are "Harvard-educated bitcoin billionaires" is "just an envy-based, gratuitous cheap shot" meant to invoke "economic prejudices" among the jury. (Mot. at 3-4.) Defendant's dismissal of this evidence with rhetorical flare ignores the relevancy of Defendant's and its co-founders' sophistication to the charged offense, the defenses Defendant has raised in this case, and the use of the Winklevoss's bitcoin holdings to justify the below market rates charged by Defendant's lending affiliate—Pearl Street.

As a threshold matter, one of the elements of a Section 6(c)(2) charge is whether Defendant "'knew or reasonably should have known', at the time the statement was made, that it was false or misleading." (11/18/2024 Order at 7, ECF No. 182 (quoting 7 U.S.C. § 9(2)).) The answer to this question requires the jury to consider "Defendant's history and background" as well as "what a reasonable person would be expected to know in similar circumstances." *CFTC v. Gramalegui*, 2018 WL 4610953, at *24 (D. Colo. Sept. 26, 2018). Defendant's history and background are indistinguishable from its co-founders and apex executives, who co-founded Gemini in 2014 and remained the only investors at the time Defendant made false or misleading statements to the CFTC in connection with the self-certified bitcoin futures product. (*See generally* Ex. 1 at 22:20-35:25 (2/28/2024 C. Winklevoss Dep. Tr.); *see also id.* at 28:2-6 ("Q. And where did the money come from to create Gemini? A. Myself and Tyler, through -- via Winklevoss Capital Fund, we were the initial investors."); *id.* at 35:23-25 ("As I stated before, Winklevoss Capital Fund, I believe, was the only investor at that time.").)[2]

---

[2] Defendant's counsel inappropriately instructed Cameron Winklevoss at his deposition not to answer questions related to the ownership of Winklevoss Capital Fund, LLC on the frivolous basis that the information was not

Thus, while "[e]vidence of wealth . . . is generally inadmissible in trials not involving punitive damages," *Tesser v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 370 F.3d 314, 318 (2d Cir. 2004), evidence of wealth and sophistication are admissible where, as here, "certain evidence pertaining to [Defendant's] financial condition *is* relevant to Plaintiffs' effort to prove . . . their . . . claim." *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1542560, at *2 (S.D.N.Y. Apr. 21, 2011) (emphasis in original); *see also United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006) (upholding admission of evidence reflecting wealth because such evidence was relevant to Defendant's motive to commit the charged offense).

Even if Defendant's and its co-founders' wealth was not relevant to the elements of the charged offense, as the cases Defendant cites make plain, evidence of wealth may "be admitted to impeach the testimony of a witness who 'open[s] the door' to the subject." *Tesser*, 370 F.3d at 318. Defendant has opened the door on the issue of its co-founders' wealth in three distinct ways.

*First*, Defendant has, at times, invoked its status as a start-up in a nascent industry with limited employees and resources. (*See, e.g.*, Winklevoss Cap. Mgmt. Post-Hr'g Mem. at 4, ECF No. 100-82 ("[I]n 2016-2017, . . . Gemini . . . was a small startup with fewer than 50 employees who shared [Winklevoss Capital Management's] office space").) The CFTC should be able to impeach Defendant's cries of poverty if it tries to admit evidence or argue that its lack of resources meant that it was too unsophisticated to understand that its statements to the CFTC were false or misleading. Under binding precedent, evidence of wealth can be admissible to prove a person's sophistication. *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 236 (2d Cir. 2006)

---

relevant. (*Id.* at 28:19-31:9, 33:4-24.) Notwithstanding counsel's obstruction, other evidence clarifies that Cameron and Tyler Winklevoss are and were the sole beneficial owners of Winklevoss Capital Fund, LLC. (Ex. 2 (GEM_CFTC220062).)

4

(holding that evidence of the plaintiffs' status as sophisticated investors included that "the plaintiffs had substantial and varied experience with millions in investments"); *see also McBeth v. Porges*, 2018 WL 5997918, at *3 (S.D.N.Y. Nov. 15, 2018) (holding that, where plaintiff's "status as a sophisticated investor is a crucial issue, evidence that he is wealthy—including that he had 'millions' of dollars in investments . . . is admissible").

*Second*, Defendant has sought to deflect blame for its false or misleading statements by claiming that it relied on the listing exchange—CFE—to discharge its disclosure obligations because it lacked the sophistication and wherewithal to understand what information was important to the CFTC's review of the product self-certification. (*See* 6/7/2024 Decl. of Tyler Winklevoss ¶ 12, ECF No. 107 ("This was the first time that Gemini was involved in supporting the launch of a new product for listing and trading on a CFTC-regulated exchange. As a result, we relied on the CFE—which was much more experienced with the process—to guide us through the process and to tell us what information we gave them was important.").) Should Defendant's co-founders or other employees testify that Gemini was relying on CFE to provide advice and guidance regarding Defendant's statements and related omissions, the CFTC should be able to impeach that testimony to demonstrate that Defendant was a sophisticated, and well-financed, operation that retained able counsel and consultants. Indeed, even the cases Defendant cites recognize that "the sophistication of a party is relevant to the reasonableness of his asserted reliance." *Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008); *see also Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 257 (S.D.N.Y. 2008) (finding reliance on another party's representations was "unreasonable" where plaintiffs were "sophisticated entrepreneurs who built a successful restaurant franchise in one of the most challenging markets in the country and managed numerous other restaurant ventures").

5

*Third*, Defendant's expert, Angelo Chan, invoked Defendant's co-founders' wealth as a basis to justify the rates that Defendant's lending affiliate—Pearl Street—charged for bitcoin loans provided to Defendant's traders. (*See* ECF No. 174-3 ¶¶ 11-14 (5/15/2024 Expert Report of Angelo Chan).) During his deposition, Chan stated that Pearl Street was able to charge lower interest rates than other lenders because "Pearl Street's owners, Cameron and Tyler Winklevoss owns lots of Bitcoin . . . and can capitalize Pearl Street using Bitcoin that Cameron and Tyler Winklevoss owns." (Ex. 3 at 98:16-21 (5/30/2024 A. Chan Dep. Tr.).) Defendant cannot have it both ways, by using Defendant's co-founders' wealth as a basis to justify facially low interest rates charged by its lending affiliate and then do an about-face and seek to exclude wealth evidence when it is unfavorable and purportedly prejudicial in other contexts. *See Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, 2004 WL 2367740, at *8 (N.D. Ill. Oct. 15, 2004) ("To the extent that Defendant places its wealth and/or power at issue, it may open the door to evidence on the issue.").

*Finally*, an issue before the Court is whether the jury will determine what penalty to assess for Defendant's misconduct. Consistent with established precedent, "the assessment of civil penalties is not a decision for the jury." *CFTC v. Monex Credit Co.*, 2021 WL 8776702, at *2 (C.D. Cal. Dec. 20, 2021) (collecting cases). Should the Court deviate from this precedent and send the question of penalties to the jury, the CFTC should be permitted to present evidence of Defendant's and its co-founder's wealth. *See SEC v. Rajaratnam*, 918 F.3d 36, 45 (2d Cir. 2019) ("We thus have no hesitation in concluding that, in calculating the size of a penalty necessary to deter misconduct, the extent of a defendant's wealth is a relevant consideration.").

6

## II. Defendant Opened the Door for the CFTC to Present Evidence of Cameron and Tyler Winklevoss's Drug Use

Defendant seeks to exclude evidence of drug use on the grounds that it has "no bearing" on the parties' claims or defenses. (Mot. at 4.) This point is easily dispelled and the motion should be denied at this stage.

Throughout this case, Defendant has argued that it acted in good faith, and in doing so, placed its corporate culture and character of its co-founders at issue. (Ans. at 7, 8, ECF No. 13 (arguing that "the record is clear that [the statements at issue] were made in good faith" and that "Gemini at all times acted appropriately and in good faith").) Specifically, Defendant claims that it has distinguished itself in the cryptocurrency industry, which in Defendant's own words is "rife with overseas and domestic bad actors," by purporting to welcome regulation and living by a mantra of "asking *permission*, not forgiveness." (Ans. at 8, ECF No. 13 (emphasis in original).) Cameron Winklevoss confirmed that the statement that "the Company and senior management always strive to comply with the law" would encompass himself as well as "the ethos of our company as a whole." (Ex. 1 at 693:18-694:13 (2/29/2024 C. Winklevoss Dep. Tr.).) Cameron Winklevoss further explained that Defendant had "an ethos . . . of . . . trying to always follow the . . . law . . . and the spirit of the law." (*Id.* at 695:4-7.) Tyler Winklevoss also submitted a declaration in opposition to the CFTC's motion for summary judgment, which stated: "We founded Gemini with a mission to create a safe, secure, and compliant platform for individuals and institutions to buy, sell, and store bitcoin. At the time, the industry was dominated by unlicensed offshore exchanges and rife with failures and hacks that lead to large financial losses." (Decl. of Tyler Winklevoss ¶ 3, ECF No. 107.)

Under Fed. R. Evid. 404(a), Defendant should be precluded from offering evidence that it fostered an atmosphere of compliance, embraced regulation, or otherwise strived to comply with

7

the law. *See Feighan v. Res. Sys. Grp. Inc.*, 2023 WL 4623123, at *9 (D.D.C. July 19, 2023) ("[U]sing opinion testimony of defendant's general 'good' corporate character to show that it acted in accordance with that trait in th[is] case . . . is improper under Rule 404(a), which proscribes the use of character evidence 'for the purpose of proving action in conformity therewith[.]'"). But, if Defendant opens the door on the subject, the CFTC should be able to offer evidence—including drug use by Defendant's co-founders and most senior employees—to impeach Defendant's purportedly high-minded corporate ideals. As such, the issue of the drug use by Defendant's high-ranking employees is not ripe for adjudication through an *in limine* motion given that it is unclear whether, if permitted, Defendant will invoke its corporate character as a defense to the charged offense. *See Gogol v. City of N.Y.*, 2018 WL 4616047, at *1 (S.D.N.Y. Sept. 26, 2018) ("[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context.").

### III. Defendant's Request to Exclude Evidence and Argument Regarding Other Events in the Cryptocurrency Industry Is Premature

The CFTC intends to put Defendant's misconduct on trial, not the misconduct of the industry in which Defendant operates that is purportedly "rife" with bad actors. (Ans. at 8, ECF No. 13.) But Defendant only identifies "controversial events in the cryptocurrency industry *from 2022 to 2023*," which are plainly irrelevant. (Mot. at 6 (emphasis in original).) However, Defendant says nothing about events from the relevant time period, or how those events may impact the claims or defenses in this case. Thus, Defendant has offered no basis to exclude controversial events that may have occurred during the relevant time period. *Wechsler v. Hunt Health Sys., Ltd.*, 2003 WL 21998980, at *3 (S.D.N.Y. Aug. 22, 2003) ("A district court is well within its discretion to deny a motion *in limine* that fails to identify the evidence with particularity or to present arguments with specificity.") Exercising discretion to deny

Defendant's motion *in limine* to exclude unspecified "controversial events" is particularly appropriate here given that Defendant has invoked its putative good corporate character as a defense to the charge in this case and claims to have distinguished itself in an industry teeming with "overseas and domestic bad actors." (Ans. at 8, ECF No. 13.) Because Defendant has referenced domestic bad actors as a means to diminish the seriousness of its own misconduct, it is premature to issue an *in limine* order without the benefit of seeing what evidence or argument Defendant tries to introduce at trial. *But see United States v. Connolly*, 2019 WL 2125044, at *13 (S.D.N.Y. May 2, 2019) ("'[E]verybody is doing it' is not a defense . . . ; just as 'everybody speeds' is not a defense if your car happens to get picked up on the radar."). Should Defendant be permitted to advance a defense premised on its good corporate character and seek to contrast its conduct with other, unnamed bad actors, the CFTC should be permitted to impeach whatever evidence Defendant attempts to offer. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) ("[T]he Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context.").

Additionally, one of Defendant's experts, Angelo Chan, worked for a "now defunct" crypto asset lender. (*See* 5/15/2024 Expert Report of Angelo Chan ¶ 2, ECF No. 174-3.) Chan supports his opinion by referencing interest rates offered by other (also defunct) industry participants to opine on the interest rates for bitcoin loans offered to Gemini traders through Defendant's affiliate lending program. (*Id.* ¶¶ 18-19.) This further supports waiting until trial to address evidence related to other industry participants and bad actors.

9

IV.     **Defendant's Request to Exclude Evidence and Argument Regarding Other Litigations or Government Investigations Is Premature**

For the same reason—namely, that Defendant may invoke its good reputation and standing in an industry purportedly rife with bad actors to diminish its own culpability—the Court should defer ruling on Defendant's request to exclude reference to Defendant's settlement of, or active involvement in, other government investigations and legal proceedings. *Nat'l Union Fire Ins. Co.*, 937 F. Supp. 276 at 287. One *in limine* issue that is ripe for adjudication now is the issue of the parallel criminal investigation into the same subject matter underlying this case conducted by the United States Attorney's Office for the Southern District of New York. As discussed in the CFTC's Memorandum of Law in Support of Its Omnibus Motion *In Limine* to Exclude and Admit Certain Evidence, ECF No. 176 at 20-23, evidence or argument about the parallel investigation is irrelevant and unduly prejudicial, a point that Defendant would appear to implicitly concede based on its own *in limine* motion to preclude all evidence and arguments regarding other litigations and government investigations involving Gemini. (Mot. at 6-8.)

V.      **Defendant's Request to Preclude Cross Examination of Defendant's Witnesses About Instances of Wash Trading Is Meritless**

Defendant's accusations of "trial by ambush" and "sandbagging" are meritless. (Mot. at 8-9.) Defendant complains that it learned for the first time *during discovery* that two trading entities may have engaged in wash trading *in the Gemini auction* around the time the CFTC was reviewing the proposed bitcoin futures contract. (Mot. at 9.) Because Defendant purports to have been unaware of this additional instance of abusive trading, it seeks to exclude evidence and argument about the trading activity. This argument falls short for several reasons.

*First*, the information that Defendant claims to have learned about in the course of discovery was fully available to Defendant and in its possession since before the case began. Defendant always had access to its own trading data that could be analyzed to identify wash

10

trading. Further, once discovery in this case commenced, Defendant received the third-party productions from the CFTC investigation, which included numerous communications showing the trading entities in question—Circle and XBTO—coordinating trading activity. (Ex. 4 (10/20/22 CFTC Production Letter).) Then, during the CFTC's deposition of Defendant's expert Andrzej Skrzypacz, CFTC counsel asked Skrzypacz a series of questions about these customers—who were also two of Gemini's largest and were bidding and offering "through the mid"[3] during one particular Gemini auction. (Ex. 5 at 234:7-245:3 (6/4/2024 Skrzypacz Dep. Tr.).) The questions were based entirely on Gemini auction data that had been produced to the CFTC *by Gemini*. Gemini now claims to have been sandbagged by its own data—a nonsensical argument.

*Second*, Defendant has been on notice since the Complaint was filed that wash trading is a central part of the CFTC's allegations, and the issue of wash trading by Circle and XBTO already had been raised during the regular course of discovery. Indeed, it was Defendant, not the CFTC, who disclosed that Circle and XBTO may have engaged in self-trading and, potentially wash trading, by identifying both entities in response to the CFTC's November 10, 2022 interrogatory on this subject. (ECF No. 100-58 at 15-17 (Def.'s Am. Response to the CFTC's First Set of Interrogs., Resp. to Interrogatory 14).) CFTC's Interrogatory 14 asked Defendant to "[i]dentify all participants on the Gemini Exchange that engaged in self-trading, self-crossing, or wash trading, including the participants' names, the entities with which they are associated, and their account IDs." (*Id.*) While Defendant caveated its response, it specifically identified Circle and XBTO as self-traders. (*Id.*) Thus, Defendant has known since at least November 2022 that

---

[3] Orders "through the mid" are either bids to buy at higher prices than the midpoint of the market or offers to sell at lower prices than the midpoint of the market. Offers like these are inherently uneconomic as they imply a willingness to buy bitcoin for more than what the market says it is worth or sell bitcoin for less.

11

the CFTC was interested in instances of self-trading and wash trading on the Gemini exchange and in the auction, but Defendant was only able to determine that Circle and XBTO engaged in self-trading. Defendant's argument thus amounts to a claim that it was not able to identify the wash trading activity in a timely fashion to respond to the CFTC's interrogatories.

      *Third*, the line of questioning Defendant now complains about is perfectly appropriate in at least two respects. In one respect, the abuse of fee rebates by traders further undermines Defendant's statement that its fee rebates were an auction protection that encouraged participation and discouraged manipulative conduct. Yet another instance of market makers abusing the undisclosed bespoke fees to game the auction is powerful evidence that, contrary to claims of Defendant and its experts, bespoke rebates can foster abusive trading, including wash trading, which impacts the analysis under Core Principle 3 of the proposed product's susceptibility to manipulation.

      And, in a second respect, questions directed at potential wash trading in the auction are appropriate impeachment of Defendant's expert. Defendant's own expert, Skrzypacz, acknowledged that the CFTC "alleges that fee rebates and overrides could lead to wash trading or other 'abusive' trading activities." (ECF No. 181-1 ¶ 153 (5/15/2024 Expert Report of Andrzej Skrzypacz ("Skrzypacz Rpt.")).) Skrzypacz then "examined whether bespoke fee arrangements resulted in wash trading" and opined that "[i]f this were the case, then [he] would expect to see market participants engaging in both buy and sell trades in the same day at similar prices." (*Id.* ¶ 155.) As part of this analysis, Skrzypacz examined "ten traders that had the most volume on the Gemini continuous order book while they had the bespoke fee arrangement in place." (*Id.* ¶ 156.) Two such traders were *Circle* and *XBTO*. (*Id.* at 105, Figure 8.1.) Skrzypacz did not, however, analyze the Gemini auction to determine whether there were

12

possible instances of wash trading involving traders that received bespoke rebates. When CFTC counsel questioned Skrzypacz about certain Circle and XBTO trades in the auction that occurred during the precise time period when Defendant was representing to the CFTC that its fee rebates were a protection against manipulation, Skrzypacz was stumped. He could not explain why Circle and XBTO were bidding and offering through the mid for equal—and very large—quantities and, as a result, trading with each other at the midpoint of the auction notwithstanding the fact that this was the very criteria Skrzypacz said he "would expect to see" if parties were engaged in wash trading. (Ex. 5 at 234:7-245:3 (Skrzypacz Dep. Tr.).)

This is not "last minute sandbagging" (Mot. at 9), it is impeachment of an expert who made bogus claims that were readily dispelled by applying the criteria articulated by Defendant's expert to *Defendant's own* auction trade data. And not only is it not sandbagging, but nothing required the CFTC to question Skrzypacz about this data at his deposition. The CFTC could have waited to question Skrzypacz on this trading activity until Skrzypacz took the stand, and still would have fully complied with its discovery obligations.

*Finally*, the cases Defendant cites are way off-base and underscore the frivolity of Defendant's request to exclude evidence *revealed during discovery*. In *Design Strategy, Inc. v. Davis*, plaintiff disclosed "[w]ell after the close of discovery, in a proposed pretrial order submitted shortly before trial" that it intended to call an expert witness to testify about lost profits. 469 F.3d 284, 293 (2d Cir. 2006). This category of damages had not been disclosed in plaintiff's initial disclosures "*or at any point during discovery* . . . in violation of Rules 26(a)(1)(c) and (a)(2)." *Id.* (emphasis added and citation omitted). Likewise, in *American Stock Exchange, LLC v. Mopex, Inc.*, "[i]t was not until one month after fact discovery had closed" that the plaintiff included a previously undisclosed patent claim by amending its responses to

13

plaintiff's "discovery requests," which "specifically asked" Defendant to "identify the patent claims that it was asserting were being infringed." 215 F.R.D. 87, 94 (S.D.N.Y. 2002).

The situation here is vastly different primarily because the Circle/XBTO potential wash trading was available in Defendant's own trade data and revealed *during discovery*. Aside from Defendant's own data, the CFTC produced to Defendant hundreds of communications that related to coordinated trading between Circle and XBTO. (Ex. 4 (10/20/2022 CFTC Production Letter that included third-party productions from Circle and XBTO collected during the CFTC's investigation).) Thereafter, the CFTC provided an initial witness list that included "Circle Financial and/or Daniel Matuszewski," which was later updated to include another Circle trader, Daniel Kim. (Ex. 6 (4/14/2023 Preliminary Witness List); Ex. 7 (2/7/2024 Updated Preliminary Witness List).) Defendant had the opportunity to depose any and all Circle traders, including those disclosed on the CFTC's preliminary witness lists. And, despite cross-noticing the deposition of Daniel Matuszewski and having ample time to obtain testimony from him, Defendant never inquired about the coordinated trading that was evidenced in the documents provided during discovery.

Nonetheless, Defendant's motion lists the Complaint and various items of discovery that did not include the "concerns about trading between Circle and XBTO." (Mot. at 9.) But Defendant does not identify a single discovery request that would have called for the information it now claims was withheld. And, besides, Defendant's own expert acknowledged that the CFTC "allege[d] that fee rebates and overrides could lead to wash trading or other 'abusive' trading activities." (ECF No. 181-1 ¶ 148 (Skrzypacz Rpt.).) That Defendant declined to investigate instances of wash trading or abusive trading in its own data or documents produced during discovery (or that its purported expert lacked the expertise to identify wash trading in

14

Defendant's trade data), is no reason to preclude the CFTC from presenting this evidence to the jury, for impeachment or other purposes.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Omnibus Motion *In Limine* and grant any further relief as the Court deems appropriate.

Dated: New York, New York
December 6, 2024

Respectfully submitted,

By: */s/ Andrew J. Rodgers*

K. Brent Tomer, Chief Trial Attorney
Alejandra de Urioste, Chief Trial Attorney
Katherine Rasor, Trial Attorney
Diana Wang, Trial Attorney
Andrew J. Rodgers, Trial Attorney
Peter Janowski, Trial Attorney
Manal M. Sultan, Deputy Director

COMMODITY FUTURES
TRADING COMMISSION
Division of Enforcement
290 Broadway, Suite 600
New York, NY 10007
Phone: (646) 746-9700
Fax: (646) 746-9888