# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
COMMODITY FUTURES TRADING COMMISSION,

PLAINTIFF,

-against- Case No.:
22-cv-4563 (AKH)

GEMINI TRUST COMPANY, LLC,

DEFENDANT.

-----------------------------------------X

DATE: February 28, 2024

TIME: 9:32 A.M.

CONFIDENTIAL VIDEOTAPED REALTIME

DEPOSITION of the Defendant, CAMERON WINKLEVOSS, taken by the Plaintiff, pursuant to a Subpoena and to the Federal Rules of Civil Procedure, held at the offices of Commodity Futures Trading Commission (CFTC), 290 Broadway, 6th Floor, New York, New York 10007, before Karyn Chiusano, a Notary Public of the State of New York.

December 19, 2017.

Is that statement accurate, Mr. Winklevoss?

A. I -- I mean, it's been seven years since that statement.

I mean, I have no reason to believe that it's not, but I -- I don't know.

Q. And is this an article that you -- you -- does this --

MR. RODGERS: Withdrawn.

Q. Is this an article that you participated in -- in -- on December, 2017?

MR. BAUGHMAN: Object to the form of the question.

"Participated in?"

A. We -- we clearly provided quotes to the article.

Q. And on the -- on the second page, below the -- the picture, three paragraphs down, it says, in the last sentence of that paragraph:

"The brothers are also majority owners of the virtual currency exchange

they founded, Gemini, which most likely takes their joint holdings to a value of well over two billion, enough to make each of them a billionaire."

Do you agree with that statement, Mr. Winklevoss?

A. Which part of the statement?

Q. That the -- your joint holdings are well over $2 billion?

A. Because of ownership in -- in Gemini?

Q. Are your joint holdings, in addition to your bitcoin investments, along with your investment in Gemini, well over $2 billion?

A. I'd have to check.

Q. Is this in the ballpark, you think?

A. Again, it's been seven years, but I -- I -- I mean, I'd have to check.

I don't have a reason to believe it's necessarily wrong, I just --

Q. Yeah.

How about today, do you have a

ballpark of how much Gemini is worth today?

MR. BAUGHMAN: Objection; relevance?

Yet again, counsel hasn't offered any relevance.

MR. RODGERS: You can refrain from the speaking objections, Jack.

You know the process here. You understand that I'm asking the questions, I control the record.

MR. BAUGHMAN: No. You don't.

MR. RODGERS: You're not permitted to give speaking objections.

MR. BAUGHMAN: No. You don't.

MR. RODGERS: I understand your desire to grandstand in front of your client.

MR. BAUGHMAN: I'm not grandstanding.

MR. RODGERS: You get to sit there, and you get to object, and you get to provide the basis.

MR. BAUGHMAN: I am --

MR. RODGERS: If you don't -- if you continue to -- to engage in this, then we will raise this with the Judge.

MR. BAUGHMAN: That would -- I'd be happy to. Because it's abusive, it's irrelevant. And it's -- you're the one who's grandstanding.

And please stop.

Get to the point of this thing.

MR. RODGERS: This is background questions, Jack.

I'm not going to engage with you.

We can engage off the record.

Please refrain.

MR. BAUGHMAN: If you'd like to call the Judge, go ahead.

MR. RODGERS: Let's move on.

MR. BAUGHMAN: Go ahead.

Q. Do you know what Gemini is worth today, roughly?

A. I don't.

In the sense that we last raised funding, I think two or three years ago, and we're a privately-held company, so we'd have to look at -- look into that.

Q. What was the valuation two or three years ago?

A. It was $7.1 billion post-money valuation.

Q. Thank you.

So, let's turn to the -- the founding of Gemini.

You can put that exhibit away.

(Witness complies.)

Q. So, when did you found Gemini Trust Company, LLC?

A. The -- the initial sort of formulation and idea, I believe, was in 2013 -- late 2013, 2014, with myself and Tyler.

We then hired a founding team in the -- the fall of -- of 2014 and proceeded to build the -- the software and technology for Gemini, as well as pursue a license with the New York Department of

Financial Services, DFS.

And we engaged with them for, I think, 12 to 18 months, received our license, in October of 2015, and launched Gemini then.

Q. Do you know what day Gemini launched, by any chance?

A. The exact day? I think it would be probably the first Monday in October.

And -- and the license I was referring to was the New York Trust Company license. So, we're chartered as a New York Trust Company, under the New York banking law.

And I believe -- I believe -- I'm going to say October 5th, but, obviously, we can get you the exact date.

Q. Understand.

I'm not going to hold you to -- to that date.

Were there any other co-founders, besides you and your brother?

A. We're the two co-founders.

CONFIDENTIAL ~ CAMERON WINKLEVOSS

Q. And where did the money come from to create Gemini?

A. Myself and Tyler, through -- via Winklevoss Capital Fund, we were the initial investors.

Q. And what is Winklevoss Capital Fund?

A. It's a private investment fund.

Q. And is Gemini its only investment?

A. No.

We have many investments across technology, in various industries, including space and cryptocurrency.

Q. Are you the direct owner -- I guess --

MR. RODGERS: Withdrawn.

Q. Who is the beneficial owner of Winklevoss Capital Fund?

MR. BAUGHMAN: Objection.

There's no basis for these questions.

They are not relevant to the case.

CONFIDENTIAL ~ CAMERON WINKLEVOSS

If you want to -- I'm going to direct him not to answer.

Q. Who is the owner of Winklevoss Capital Fund?

MR. BAUGHMAN: You don't have to answer.

A. I'm going to follow Counsel's advice.

MR. ROGERS: And what's the basis for the objection: Relevance?

MR. BAUGHMAN: The basis is it is utterly irrelevant.

There's no issue in the case as to equity ownership of Winklevoss Capital Funds and it's personal information and it's invasive.

Q. Do you know why your Counsel doesn't want you to reveal the information about the ownership structure of Gemini?

MR. BAUGHMAN: Because it's none of your business.

A. Did you mean to say Winklevoss Capital? Or --

Q. Well, I -- I want to know who

owns Winklevoss Capital.

I think you said that you and your brothers are the beneficial owners.

A. I did not say that.

MR. BAUGHMAN: Let's move on.

Q. Who is the beneficial owner?

A. I'm going to follow Counsel's advice, and not -- not answer that question.

Q. And what's the basis for you not answering that question?

Are you under instruction not to answer, based on attorney-client privilege?

MR. BAUGHMAN: The answer is --

MR. RODGERS: Jack, the questions are directed at your witness, so you can object --

MR. BAUGHMAN: Don't -- stop pointing at me.

Stop that.

MR. RODGERS: You're being -- you're being inappropriate.

And as the elder statesmen in

the room, I would have thought that you would understand what the rules of the deposition are.

MR. BAUGHMAN: I do.

And I understand what abuse is, and I understand inappropriate conduct, and if you want to call the Judge, please do.

Q. So, you're not going to answer the question about who is the beneficial owner of Winklevoss Capital Fund?

A. I think I'm going to follow Counsel's advice.

Q. What is Gemini Spaceship LLC?

A. Gemini Spaceship LLC is a -- it is a holding company that holds companies in the Gemini universe.

Q. Is it the parent of Gemini?

MR. BAUGHMAN: Object to the form.

You should be specific about what Gemini you're referring to.

MR. RODGERS: I'm talking about Gemini Capital Trust LLC.

Q. Is Gemini Spaceship the parent of Gemini Trust Company, LLC?

A. It's the -- ultimate parent?

There is a LLC in between Gemini Space Station LLC and Gemini Trust Company, LLC.

Q. And what's the intermediate company?

A. Gemini Spaceship LLC.

Q. Okay. And you understand that your ownership in related companies is an issue in this litigation; correct?

A. By "issue," do -- what do you mean by that?

Q. You understand that PearlStreet Financial LLC is at issue in this matter; correct?

A. At issue?

I mean or, like, a topic that seems to be part of this matter? Sure.

Q. Yeah.

It's relevant to the claims in this case.

You understand that; right?

A. It's -- I guess, it's been mentioned as -- as part of the claims.

Q. Right.

And your Counsel's objecting to questions about the ownership structure of Gemini, even though -- the ownership struc- -- your ownership interest in a related company, called Gemini --

MR. RODGERS: Excuse me.

Q. PearlStreet Financial is at issue in this litigation?

MR. BAUGHMAN: You don't have to answer that.

Objection to the form of the question.

You don't have to answer that.

You don't have to answer it.

A. I guess I won't answer that.

Q. On the basis of attorney-client privilege?

MR. BAUGHMAN: On the basis that it's argumentative.

It's inaccurate.

And let's move on to something

relevant.

MR. RODGERS: Well, Jack, you wanted to know what the relevance was here, and I'm pointing out to your witness that the interrelatedness of entities that Mr. Winklevoss owns, operates, or is the beneficial owner is an issue in this litigation, as you're no doubt well aware.

So, do you still maintain a relevancy objection and you're going to instruct the witness not to answer, even though that's not permitted, under the Federal rules?

MR. BAUGHMAN: The questions about his personal wealth and his ownership of unrelated companies?

I think that's inappropriate.

MR. RODGERS: Well, his personal wealth, as we established here, was used to fund Gemini.

Q. Is that not right, Mr. Winklevoss?

A. Well, I -- I -- I would sort of

clarify that Winklevoss Capital Fund is an investor.

Gemini has many investors, dozens, if not more, that have, you know, invested in Gemini.

Winklevoss Capital Fund is one of many investors.

Q. In 2017, were there other investors in Gemini?

A. At that time, I don't believe there were. But there have been since, and there probably will be going forward.

Q. Understood.

So, let's just focus on 2017.

We can agree that you -- that Winklevoss Capital Fund was the only investor in Gemini -- and by "Gemini," we can agree, today, that I'm talking about Gemini Trust Company, LLC -- in 2017.

MR. BAUGHMAN: Object to the form of the question.

A. As I stated before, Winklevoss Capital Fund, I believe, was the only investor at that time.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
COMMODITY FUTURES TRADING COMMISSION,

PLAINTIFF,

-against- Case No.:
22-cv-4563 (AKH)

GEMINI TRUST COMPANY, LLC,

DEFENDANT.

-----------------------------------------X

DATE: February 29, 2024

TIME: 9:36 A.M.

CONTINUED CONFIDENTIAL VIDEOTAPED REALTIME DEPOSITION of the Defendant, CAMERON WINKLEVOSS, taken by the Plaintiff, pursuant to a Subpoena and to the Federal Rules of Civil Procedure, held at the offices of Commodity Futures Trading Commission (CFTC), 290 Broadway, 6th Floor, New York, New York 10007, before Karyn Chiusano, a Notary Public of the State of New York.

Job No. CS6346514

evidence -- it's a fact that his complaint, with the false PearlStreet allegations, was -- was submitted or conveyed to the CFTC in -- in/or around November of 2017.

So, the CFTC has had since then to ask us, and we had never gotten a question from the CFTC during that process, or for, you know, months afterwards about PearlStreet loans.

And we've never been told that they were illegal or improper.

Q. Well, the CFTC brought this enforcement action.

Does that answer your question?

MR. BAUGHMAN: Object to the form of the question.

Q. Going back to the exhibit that has the draft declaration, there's a paragraph, in Paragraph 5, that says:

"The company and Senior Management always strive to comply with the law."

Do you see that?

A. Which paragraph?

CONFIDENTIAL ~ CAMERON WINKLEVOSS

Q. Paragraph 5.

A. Yes.

Q. And you would agree with that statement; correct?

A. Yes.

Q. And Senior Management would refer to -- to yourself, in 2017, as a principal -- as a President of Gemini; correct?

A. I believe this would encompass me, but also the ethos of our company as a whole.

Q. Yeah.

Gemini tried to build a culture of compliance; is that correct?

A. Compliance with -- with what, in particular? I mean --

Q. Well, what distinguishes Gemini?

Is it -- is it that it's a highly-regulated exchange?

MR. BAUGHMAN: Object to the form of the question.

A. There's a lot of

differentiators or things that distinguish us.

But we -- we have an ethos of -- of, you know, trying to always follow the -- the law and -- and the spirit of the law.

Q. Did Gemini tolerate illegal drug use in the workplace?

MR. BAUGHMAN: Object to the form of the question.

A. No.

Q. Would you agree that illegal drug use would be inconsistent with an atmosphere of legal compliance?

A. I don't believe our policies permitted that in the workplace, yes.

Q. Did you do any illegal narcotics with Gemini employees?

A. I did not.

MR. RODGERS: So, I'm going to mark, as Exhibit 115 a document that's Bate Stamped SDNY_ several zeros 533.

(Whereupon, FBI 302 form that