**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COMMODITY FUTURES TRADING
COMMISSION,

                                    Plaintiff,

                    v.

GEMINI TRUST COMPANY, LLC,

                                    Defendant.

No. 22-CV-4563-AKH

**DEFENDANT GEMINI TRUST COMPANY, LLC'S**
**MEMORANDUM IN OPPOSITION TO THE**
**CFTC'S OMNIBUS MOTION *IN LIMINE***

TABLE OF CONTENTS

Preliminary Statement ........................................................................................................ 1

Controlling Legal Principles .............................................................................................. 2

    A.    Evidence Relevant to Proof of Falsity ................................................................ 3

    B.    Evidence Relevant to Proof of Materiality ....................................................... 4

    C.    Knowledge ............................................................................................................ 8

    D.    Relevant Factors Identified by the CFTC ......................................................... 9

Argument Regarding Specific CFTC Motions ................................................................ 9

I.    CFTC MIL #1 Should Be Denied: Evidence Relating to Gemini's State of Mind is Relevant to Gemini's Knowledge and Issues of Penalty ................................... 11

    A.    The Evidence Is Relevant to Gemini's Knowledge ...................................... 12

    B.    Gemini Did Not Block Any Relevant Inquiry ............................................... 13

    C.    The CFTC Has Put Gemini's State of Mind at Issue ................................... 13

    D.    The Evidence is Relevant to Penalty ............................................................... 14

II.    CFTC MIL #2 Should Be Denied: Evidence Regarding the Pearl Street Loans Is Relevant to Contested Issues of Knowledge and Materiality ............................... 14

    A.    The Evidence Is Admissible Under Rule 401 ................................................. 15

    B.    The Evidence Should Not Be Excluded Under Rule 403 ............................. 16

III.    CFTC MIL #3 Should Be Denied: Evidence of Lack of Harm Is Relevant Both to Liability and Damages ................................................................................................ 17

    A.    The Evidence Is Relevant to Falsity ............................................................... 17

    B.    The Evidence Is Relevant to Penalty .............................................................. 19

IV.    CFTC MIL #4 Should Be Denied: Evidence of Steps Gemini Took to Prevent Manipulation are Relevant to Knowledge, Materiality, and Penalty .................... 19

    A.    The CFTC's Straw Man Argument ................................................................ 20

    B.    The Evidence Is Relevant to Knowledge and Materiality ........................... 20

V.    CFTC MIL #5 Should Be Denied: The Fact That the CFTC Did Not Ask For Certain Information Goes to Knowledge and Materiality ..................................... 20

VI.    CFTC MIL #6 Should Be Denied: Gemini's Understanding of What Information It Was Required to Provide Goes Directly to Knowledge and Materiality ............ 22

VII.    CFTC MIL #7 Should Be Denied: Gemini is Entitled to Present Evidence of What it Actually Told the CFTC ...................................................................................... 23

    A.    The Trade Data ................................................................................................... 23

    B.    The Fee Schedule Information ......................................................................... 24

    C.    The CFTC's Arguments About a Different Statement Make no Sense ....... 25

VIII.  CFTC MIL #8 Should Be Denied: The CFTC's Decision Not to Bring Charges Against CFE Goes Directly to Materiality ..................................................................26

IX.    CFTC MIL #9 Should Be Denied: The CFTC Has Put Matters Relating to Benjamin Small at Issue ...............................................................................................27

       A.    Background ....................................................................................................27

       B.    The CFTC's Meetings With Small Are Relevant to Materiality.........................28

X.     CFTC MIL #10 Should Be Denied for Multiple Reasons ...................................28

       A.    WCM is Not Gemini's Agent and Therefore the Requirements of the Party Admission Rule are Not Satisfied ...........................................................29

       B.    If Any Statements are Admitted, the Entire Brief Should be Admitted Under the Rule of Completeness ....................................................................31

XI.    CFTC MIL #11 Should Be Denied as Premature ...............................................32

Conclusion..............................................................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baxter Diagnostics, Inc. v. Novatek Med., Inc.*,
    1998 WL 665138 (S.D.N.Y. Sept. 25, 1998) ......................................................... 10

*Catalyst Advisors, LP v. Catalyst Advisors Invs. Glob. Inc.*,
    2024 WL 522751 (S.D.N.Y. Feb. 9, 2024) ........................................................... 10

*CFTC v. Arista LLC*,
    2013 WL 6978529 (S.D.N.Y. Dec. 3, 2013) ........................................................... 9

*CFTC v. Donelson*,
    115 F.4th 791 (7th Cir. 2024) ........................................................................... 8

*CFTC v. Gramalegui*,
    2018 WL 4610953 (D. Colo. Sept 26, 2018 ........................................................... 9

*CFTC v. McDonnell,*
    332 F. Supp. 3d 641 (E.D.N.Y. 2018) ................................................................. 3

*Dial Corp. v. News Corp.*,
    2016 WL 690868 (S.D.N.Y. Feb. 17, 2016) ......................................................... 10

*Doe v. Elekra Ent. Group Inc.*,
    2023 WL 2744102 (S.D.N.Y. Mar. 31, 2023) ....................................................... 31

*Dreni v. PrinterOn Am. Corp.*,
    2022 WL 2828153 (S.D.N.Y. July 20, 2022) ....................................................... 10

*Dunham v. Lobello*,
    2023 WL 3004623 (S.D.N.Y. Apr. 19, 2023) ....................................................... 10

*Elgabri v. Lekas,*
    964 F.2d 1255 (1st Cir. 1992) ......................................................................... 32

*Excell Consumer Prods. Ltd. v. Smart Candle LLC*,
    2013 WL 4828581 (S.D.N.Y. Sept. 10, 2013) ..................................................... 31

*FDIC v. Fifth Third Bank*,
    2023 WL 7130553 (2d Cir. Oct. 30, 2023) ......................................................... 26

*George v. Celotex Corp.*,
    914 F.2d 26 (2d Cir. 1990) ............................................................................. 23

*Gogol v. City of New York*,
  2018 WL 4616047 (S.D.N.Y. Sept. 26, 2018) ................................................ 2, 10

*Highland Cap. Mgmt., L.P. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005) ............................................................... 9

*Hoodhu v. Holder*,
  558 F.3d 184 (2d Cir. 2009) ............................................................................ 21

*Kungys v. United States*,
  485 U.S. 759 (1988) .......................................................................................... 4

*Lugo v. City of New York*,
  2018 WL 11466167 (S.D.N.Y. July 13, 2018) ................................................ 10

*Maung Ng v. Merrill Lynch & Co.*,
  2000 WL 1159835 (S.D.N.Y. Aug. 15, 2000) ................................................. 29

*Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc.*,
  476 F. Supp. 2d 414 (S.D.N.Y. 2007) ............................................................. 29

*Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*,
  937 F. Supp. 276 (S.D.N.Y. 1996) ................................................................... 10

*News Am. Mktg. FSI LLC v. MGA Ent., Inc.*,
  187 F. Supp. 3d 476 (S.D.N.Y. 2016) ............................................................. 10

*Off. Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*,
  322 F.3d 147 (2d Cir. 2003) ............................................................................ 21

*Rodriguez v. Banco Cent. Corp.*,
  990 F.2d 7 (1st Cir. 1993) ............................................................................... 32

*Scenic Holding, LLC v. New Bd. of Trustees of Tabernacle Missionary Baptist Church, Inc.*,
  506 F.3d 656 (8th Cir. 2007) ........................................................................... 32

*SEC v. Ripple Labs, Inc.*,
  2021 WL 2323089 (S.D.N.Y. May 30, 2021) .................................................. 11

*United States v. Adekanbi*,
  675 F.3d 178 (2d Cir. 2012) ...................................................................... 4, 5, 8

*United States v. Finn*,
  375 F.3d 1033 (10th Cir. 2004) ........................................................................ 6

*United States v. Gerrans*,
  477 F. Supp. 3d 1035 (N.D. Cal. 2020) ....................................................... 5, 8

*United States v. Henderson*,
　318 F. Supp. 3d 1221 (E.D. Wa. 2018) ................................................................. 4

*United States v. Hoskins*,
　44 F.4th 140 (2d Cir. 2022) ................................................................................ 29

*United States v. Litvak*,
　808 F.3d 160 (2d Cir. 2015) ............................................................................6-7

*United States v. McLaughlin*,
　2018 WL 4854624 (D. Conn. Oct. 5, 2018) ......................................................... 6

*United States v. Paredes*,
　176 F. Supp. 2d 179 (S.D.N.Y. 2001) .................................................................. 9

*United States v. Raza*,
　876 F.3d 604 (4th Cir. 2017) ............................................................................... 4

*United States v. Rigas*,
　490 F.3d 208 (2d Cir. 2007) ................................................................................ 7

*United States v. Scali*,
　2018 WL 461441 (S.D.N.Y. Jan. 18, 2018) ....................................................... 16

*United States v. Strock*,
　982 F.3d 51 (2d Cir. 2020) .................................................................................. 7

*United States v. Weigand*,
　520 F. Supp. 3d 609 (S.D.N.Y. 2021) .................................................................. 5

*United States v. Whab*,
　355 F.3d 155 (2d Cir. 2004) ................................................................................ 6

*Universal Health Services, Inc. v. United States ex rel. Escobar*,
　579 U.S.176 (2016) ....................................................................................*passim*

*Viada v. Osaka Health Spa, Inc.*,
　2005 WL 3435111 (S.D.N.Y. Dec. 12, 2005)..................................................9-10

*Zafiro v. United States*,
　506 U.S. 534 (1993) ......................................................................................22-23

**Rules and Statutes**

7 U.S.C. § 9(2)...............................................................................................*passim*

Federal Rules of Evidence 106..............................................................................31

Federal Rules of Evidence 611.................................................................................................32

Federal Rules of Evidence 801...........................................................................................28-29

**Other Authorities**

Rest. (Third) of Agency § 7.03............................................................................................31

Gemini Trust Company, LLC ("Gemini") respectfully submits this memorandum of law in opposition to the Omnibus Motion *in Limine* (the "Motion") filed by plaintiff Commodity Futures Trading Commission ("CFTC").

**PRELIMINARY STATEMENT**

Throughout this case, the CFTC has sought to limit Gemini's ability to present a defense by seeking to limit the evidence at trial. Put simply, the CFTC wants to prevent the jury from hearing important, ***undisputedly true facts*** that bear on what happened. It wants to prevent the jury from understanding the full context of the communications between the parties—a context that is crucial to determine a central issue in this case and required under applicable precedent. At trial, the jury will be asked to decide whether anything Gemini said was misleading as to one specific topic: whether the proposed Bitcoin Futures Contract (the "BFC") was readily susceptible to manipulation. However, rather than being open with the jury, and letting it hear the whole story, the CFTC wants to block it from learning significant, uncontested facts, including that:[1]

- ***Gemini had no motive*** to provide false information to the CFTC.

- ***The CFTC never asked*** for information it claims was withheld.

- ***The CFTC never looked at*** important information that was provided.

- ***Gemini never refused to answer any question*** it was asked and would have answered any question that the CFTC could have asked.

- The ***CFTC never told Gemini*** that it had doubts about any of the information that Gemini had provided.

- ***Gemini did not believe*** that any information it provided to the CFTC was false.

- The CFTC's case is based on allegations from a so-called whistleblower who met with the CFTC before the self-certification of the BFC was submitted, but ***the CFTC took no action***.

---

[1]     Relevant evidence and record material is provided in the accompanying declaration of John F. Baughman, dated December 6, 2024 (the "Baughman Decl."). Citations to "Ex. __" are to exhibits to the Baughman Declaration.

- Notwithstanding that the product at issue was a Cboe Futures Exchange ("CFE") product, and the overwhelming majority of statements to the CFTC were made *by CFE*, for reasons unexplained the CFTC chose not to bring a claim against the CFE.

All of this information (and other items that the CFTC seeks to preclude) is relevant to key issues in the case, including: (i) the *falsity* of the 32 statements at issue;[2] (ii) the *materiality* of allegedly misleading statements and omissions made by Gemini; (iii) Gemini's *knowledge* as to whether the statements and omissions were materially misleading; and (iv) the amount of any *penalty* that might be imposed if Gemini were found to have violated Section 6(c)(2).[3] As set forth below, the information the CFTC seeks to preclude is admissible under the Federal Rules of Evidence and, in many instances, specifically identified as relevant in the CFTC's own Enforcement Manual.

Accordingly, the CFTC's various *in limine* motions should be denied.

In the alternative, the Court should defer ruling on the CFTC's motions.[4] Gemini is the defendant and has no burden of proof. The evidence Gemini will need to present depends on what the CFTC presents in its case in chief. Until that evidence is presented, it is premature to make decisions about what Gemini will or will not be permitted to present in opposition to a case that has not yet been presented.

## CONTROLLING LEGAL PRINCIPLES

The CFTC's sole claim in this case is brought under Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2). To prevail at trial, the CFTC has the burden of proving that: (i) a false or misleading statement; (ii) was made to the CFTC; (iii) the statement was material; and

---

[2]    The CFTC has identified 32 specific statements it claims were misleading. Ex. 1. The Complaint also alleges various "omissions" over a six month "Relevant Period." *E.g.* Dkt. 1 ¶ 1, 38, 40, 47, 62, 73, 88.

[3]    The CFTC seeks a "Civil Monetary Penalty" pursuant to 7 U.S.C. § 13a-1(d)(1). *See* Dkt. 1. "Relief Requested".

[4]    "[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Gogol v. City of New York*, 2018 WL 4616047, at *1 (S.D.N.Y. Sept. 26, 2018).

(iv) the author of the statement knew or should have known that the statement was false or misleading at the time it was made. Dkt. 182 at 6. These four requirements are separate elements of the CFTC's claim, and each must be established by a preponderance of the evidence. *See id.* at 6–7 (noting that various elements must be "established"). At trial, Gemini expects that three of the four elements at issue will be vigorously contested: falsity, materiality and knowledge.[5] Each issue is fact intensive.

### A.    Evidence Relevant to Proof of Falsity

"A statement is false or misleading 'when it is either literally untrue or when it fails to include all information necessary to give the recipient a complete and accurate picture of the state of affairs communicated.'" *Id.* at 7 (quoting *CFTC v. Gramalegui*, 2018 WL 4610953, at *24 (D. Colo. Sept 26, 2018).[6] "Whether a misrepresentation has been made depends on the overall message and the common understanding of the information conveyed. The representations should be viewed through the eyes of an objectively reasonable person who would interpret the overall message." *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 717–18 (E.D.N.Y. 2018)[7]. Thus, as the Court's prior holding reflects, the scope of evidence admissible on the question of falsity is very broad. Quite rightly, the jury is entitled to hear about "all information" that bears on the question of whether statements or omissions were materially false or misleading. This is necessary so that they can assess the "overall message."

---

[5]    Gemini acknowledges that the Court has ruled as a matter of law that Gemini is the "maker" of all 32 statements. *Id.* at 8–10. Gemini will challenge that ruling on appeal after trial.

[6]    Although the Court has cited *Gramalegui* several times, it is not binding precedent and has not been adopted by the Second Circuit. It is an outlier case.

[7]    Unless otherwise noted, citations and quotations are omitted, all quotes are cleaned up, and all emphasis is added. In addition, all objections are omitted from deposition testimony.

3

### B.    Evidence Relevant to Proof of Materiality

A statement is material if it is "capable of influencing the decision of the decisionmaking body to which it is addressed, or if it is capable of distracting government investigators' attention away from a critical matter." *United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012). In application to this case this means that the CFTC must demonstrate that any statements made to the CFTC had a "natural tendency to influence the decision[s] **of the CFTC**. *See Kungys v. United States*, 485 U.S. 759, 771 (1988); *United States v. Raza*, 876 F.3d 604, 617 (4th Cir. 2017) ("[W]hen the victim is the government, the prosecution must prove materiality by reference to the particular government agency or public officials that were targeted.").

Obviously, not all statements made to a government decision-maker are material. Indeed, as the Supreme Court has found, even admittedly false statements made in connection with a request for government action may not be material. *See Kungys*, 485 U.S. at 774 (false statements made on citizenship application were not material). Thus, as the Supreme Court held in *Kungys*, "for purposes of determining the natural tendency of a misrepresentation to affect a decision . . . what is relevant is what would have ensued from official knowledge of the misrepresented fact." *Id*. at 775.[8] This determination must be made on the basis of "the evidence" and the "burden of proof." *Kungys*, 485 U.S. at 776; *see also United States v. Henderson*, 318 F. Supp. 3d 1221, 1241 (E.D. Wa. 2018) (granting new trial in part because "the materiality element of the false statement offense also [was] not supported by sufficient evidence").

---

[8]    The *Kungys* case was a denaturalization proceeding brought under 8 U.S.C. § 1451(a), but there is no reason to believe the standard quoted would not apply to a case brought under the CEA. To the contrary, as the Fourth Circuit has observed, and as reflected in *Kungys*, there is a "uniform understanding of the materiality concept in the context of federal statutes criminalizing false statements to *public officials*." *Raza*, 876 F.3d at 617 (4th Cir. 2017).

At trial, the CFTC will have a positive obligation to present evidence of materiality, a basic principle illustrated by numerous cases. The most straightforward way to do this, of course, is to present evidence that a false statement **actually did influence** a government investigation or decision. For example, this was what the Government did in *United States v. Gerrans*, 477 F. Supp. 3d 1035, 1050 (N.D. Cal. 2020), where it called an FBI agent to explain what the Bureau did "as a result of the false documents and representations." Indeed, the CFTC has acknowledged that "actual evidence that misstatements influenced the product review would be dispositive." *See* Dkt. 118 at 19 n.8. Of course, in this case, **the CFTC has no such evidence**, thus it will have to attempt to prove materiality in other ways.

One indirect method of proof is for the Government to present evidence of how it typically evaluates statements of a particular type. For example, in *Adekanbi*, 675 F.3d at 183, the defendant was charged under 18 U.S.C. § 1001 with making false statements in a "safety-valve proffer."[9] The Government met its burden of proof when it "introduced testimony that the purpose of a safety-valve proffer is to determine eligibility for safety-valve relief and that both truthfulness and criminal history are elements to be considered in determining whether a defendant is safety-valve eligible." *Id.* ("This testimony was enough to support the jury's finding that a defendant's lies about his identity during a safety-valve proffer have a natural tendency to influence or are capable of distracting the government agents.").[10]

---

[9]    In arguing successfully for a ruling that Gemini is the "maker" of all of the statements at issue in this case, the CFTC argued vigorously and repeatedly that misrepresentation claims under CEA Section 6(c)(2) should be evaluated through precedent in Section 1001 cases. *See, e.g.*, Dkt. 90 at 9 ("Section 6(c)(2) should be interpreted similarly to 18 U.S.C. § 1001."). The Court has accepted that proposition. Dkt. 182 at 9 (holding that Section 1001 is the "relevant authority"). Accordingly, Gemini relies on Section 1001 jurisprudence for interpreting all aspects of Section 6(c)(2).

[10]    *See also United States v. Weigand*, 520 F. Supp. 3d 609, 614 (S.D.N.Y. 2021) (enforcing subpoena designed to obtain evidence of whether statements made to banks had a "reasonable likelihood of influencing a bank's decision" and were therefore material).

The Government offered similar evidence in *United States v. McLaughlin*, 2018 WL 4854624 (D. Conn. Oct. 5, 2018), which concerned a false statement made on an IRS form. The Government met its burden on materiality when it "presented the testimony of an IRS agent that a payment of such a large size would spur the agency to send a letter to the recipient of the income noting that the recipient owed a substantial sum in unpaid taxes." *Id.* at *8. Similarly, in *United States v. Whab*, 355 F.3d 155, 163 (2d Cir. 2004), the Government established the materiality of a forged baptismal certificate when "a fraud prevention manager employed by the Passport Agency testified at trial that it is the date of the applicant's baptism, rather than the date that the certificate was issued, that matters to the Passport Agency."

Once more, the CFTC has acknowledged the importance of this type of pattern and practice evidence. On summary judgment, it argued that "materiality can be established with evidence about the factors that are considered in connection with the product certification, the nature of the product review, and the purpose of the decision that was under consideration." Dkt. 118 at 19 n.8. In addition, the CFTC has argued that assessing materiality requires an "examination of the factors the decisionmaker would employ." *Id.* at 27.

Conversely, if the Government does not present evidence of how information is used, there can be a failure of proof. For example, in *United States v. Finn*, 375 F.3d 1033, 1040 (10th Cir. 2004), the Court of Appeals reversed a conviction where testimony from two government witnesses in a Section 1001 case was not sufficient "to allow a reasonable finder of fact to determine what decision, if any, HUD was trying to make in connection with the case expenditure form at issue." In particular, "the prosecution's evidence failed to address the purpose or use of case expenditure forms from the agency's perspective." *Id.* Similarly, in *United States v. Litvak*, the Second Circuit reversed a conviction for making false statements where—despite extensive

testimony from a Department of the Treasury official—"there was insufficient evidence for a rational jury to conclude that Litvak's misstatements were reasonably capable of influencing a *decision* of the *Treasury*." 808 F.3d 160, 172 (2d Cir. 2015). Likewise, in *United States v. Rigas*, the Second Circuit reversed defendants' conviction on bank fraud charges because it found that the government "did not call witnesses from the bank to testify" about how the misstatements "could influence the bank's decisions" and thus had not proven that the alleged misstatements were material. 490 F.3d 208, 235 (2d Cir. 2007).[11]

It follows that if evidence of what an investigator actually or typically does is relevant to materiality, evidence of what the investigator does not do is equally relevant. If evidence that an investigator inquired about X is evidence that X was material, the fact that the same investigator did not inquire about Y is evidence that Y was not material.[12]

Similarly, evidence of materiality includes what the defendant knows about how the Government uses particular types of information. In *Escobar*, the Supreme Court held:

> [W]hen evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government

---

[11]  The standard for materiality on the bank fraud count was identical to the standard here. *Id.* at 231 ("A false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed.").

[12]  How the government responds to information bears directly on the materiality standard and what is capable of influencing an agency's decision. Thus, in evaluating materiality under the False Claims Act, courts have stressed that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *United States v. Strock*, 982 F.3d 51, 59 (2d Cir. 2020) (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 (2016)). What the government chooses to ask and what information the government chooses to pursue similarly illuminates what is capable of influencing the government's decisions. Because of these standards, when a court assesses the materiality of a legal violation, courts "inquire into whether or not the 'noncompliance is minor or insubstantial.'" *Strock*, 982 F.3d at 59 (quoting *Escobar*, 579 U.S. at 194). Government actors tend not to seek out information deemed minor or insubstantial, and what agencies choose to *do* is informative about their priorities and what could influence their decisions. "Under any understanding of the concept, materiality 'look[s] to the effect on the likely *or actual behavior* of the recipient of the alleged misrepresentation." *Escobar*, 579 U.S. at 193 (quoting 26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003)).

> consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement.

579 U.S. at 194–95. This reasoning applies with equal force to claims under the CEA, which draws on the same underlying legal principles that the Supreme Court evaluated in *Escobar*.[13]

In the aggregate, these cases demonstrate that a broad range of evidence is relevant to materiality. Such evidence can include: (i) what the Government agency actually did with the information it was given in a particular case (as in *Gerrans*); (ii) what the Government typically does with the type of information at issue (as in *Adekanbi*); and (iii) the defendants' knowledge of what the Government does with the type of information at issue (as in *Escobar*). If the Government does not present evidence of this nature, its case will fail. Finally, if the Government is permitted to present evidence of those types, the Defendant may too. It is all relevant.

### C.    Knowledge

As to knowledge, the scope of potentially relevant evidence is wide. This is because there are two possible ways Gemini could be held liable: (i) if it had ***actual knowledge*** that statements or omissions were materially false or misleading; or (ii) lacking actual knowledge, it nevertheless ***reasonably should have known***. *See* Dkt. 182 at 6. These different standards call for different types of evidence.

As to actual knowledge the question is straightforward. Gemini denies actual knowledge so, presumably, the CFTC will present evidence of information actually given to Gemini that purportedly put it on notice that its statements were false. In response, Gemini will demonstrate gaps in that information or present other information available to Gemini that contradicts whatever information the CFTC chooses to highlight.

---

[13]  This Court relied on *Escobar* in defining a misstatement under the CEA. Dkt. 182 at 7; *see also CFTC v. Donelson*, 115 F.4th 791, 798–99 (7th Cir. 2024) (relying on *Escobar* to assess CEA claim).

Proof of what Gemini "reasonably should have known" is much more difficult. It remains unclear what evidence the CFTC intends to present on this subject. However, case law suggests that relevant evidence includes information in a defendant's internal records, its "history and background," as well as "what a reasonable person would be expected to know in similar circumstances." *CFTC v. Arista LLC*, 2013 WL 6978529, at *13 (S.D.N.Y. Dec. 3, 2013) (defendant's knowledge based on company's "account balances, asset values, and fee calculations"); *Gramalegui*, 2018 WL 4610953, at *24.

### D.    Relevant Factors Identified by the CFTC

Like many government agencies, the CFTC publishes an "Enforcement Manual." Ex. 2. It sets forth the "policies and procedures that guide" efforts to enforce the CEA. *Id.* at 1. In several places, that manual identifies information that is relevant to determining whether a violation of the CEA has occurred and, if so, what the appropriate penalty should be.

Gemini cites the Enforcement Manual several times in the discussion below. As will be shown in this case, contrary to official policy and precedent, the CFTC is seeking to exclude evidence that the Enforcement Manual specifically identifies as relevant. That is inappropriate. The Court should not permit this and should rely on the CFTC's own official manual for guidance on what is relevant to the CFTC's case.

### ARGUMENT REGARDING SPECIFIC CFTC MOTIONS

The CFTC's motions should be denied on several grounds. They are overbroad, premature, and not well grounded in the Federal Rules of Evidence (the "Rules").

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005); *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (evidence must be "clearly inadmissible on all potential grounds"). "Unless evidence meets this

high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Viada v. Osaka Health Spa, Inc.*, 2005 WL 3435111, at *1 (S.D.N.Y. Dec. 12, 2005); *see also News Am. Mktg. FSI LLC v. MGA Ent., Inc.*, 187 F. Supp. 3d 476, 481 (S.D.N.Y. 2016) (denying motion as "premature" as relevance would have to be determined "in the context of the facts presented at trial").

Further, the moving party must provide "the necessary specificity with respect to the evidence to be excluded, to carry its burden on the motion." *Catalyst Advisors, LP v. Catalyst Advisors Invs. Glob. Inc.,* 2024 WL 522751, at *8 (S.D.N.Y. Feb. 9, 2024); *see also Dreni v. PrinterOn Am. Corp.*, 2022 WL 2828153, at *1 (S.D.N.Y. July 20, 2022) (*in limine* motions are directed at "specific evidence"). Put simply, *in limine* motions "are meant for disputes over the admissibility of discrete items of evidence, not whole topics and sources of prospective evidence." *Lugo v. City of New York*, 2018 WL 11466167, at *1 (S.D.N.Y. July 13, 2018); *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (denying motion *in limine* that "lack[ed] the necessary specificity with respect to the evidence to be excluded"); *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998) (denying motions *in limine* that lacked "the necessary specificity" and were "too sweeping in scope"). These rules apply with particular force to the CFTC's motions, which seek to exclude broad categories of potential evidence, frequently without citation to anything specific.

To the extent the CFTC's motions are not denied outright, the appropriate course would be to reserve decision until trial so that the "appropriate factual context" can be presented. *See Gogol*, 2018 WL 4616047, at *1; *see also Dunham v. Lobello*, 2023 WL 3004623, at *1 (S.D.N.Y. Apr. 19, 2023); *Dial Corp. v. News Corp.*, 2016 WL 690868, at *1 (S.D.N.Y. Feb. 17, 2016); *Nat'l Union,* 937 F. Supp. at 287.

I.    **CFTC MIL #1 Should Be Denied: Evidence Relating to Gemini's State of Mind is Relevant to Gemini's Knowledge and Issues of Penalty**

In large part, the CFTC's MIL #1 is an attack on a straw man. As Gemini has previously advised the CFTC, it does "not intend to raise an advice of counsel defense or claim that it relied on the advice of counsel in formulating its good-faith belief with respect to information submitted to the CFTC." Ex. 3 at 25. Gemini stands by that statement. It does not intend to argue to the jury that it should be found not liable because it acted in "good faith."[14]

But that is not what the CFTC seeks to preclude. Instead, the only evidence it cites in connection with its motion is a few snippets of deposition testimony from Cameron Winklevoss to the effect that he believed that:

- All of Gemini's answers to questions asked by the CFTC during the self-certification process were "complete and accurate."

- Gemini was "always truthful."

- "[W]e answered every question that was asked of us."

- "I have no reason to believe that they [CFE] provided information that was also not accurate or complete."

*See* Dkt. 176 at 4 n.1 (citing deposition excerpts). These are all facts the jury should be entitled to evaluate, and the CFTC is of course free to present contrary evidence. There are no grounds, however, for excluding Mr. Winklevoss's testimony or similar evidence.

---

14    "A 'good faith' defense is grounded in a party's subjective belief that its behavior complied with the law, thus putting at issue any legal advice it received bearing on that question. In other words, a party cannot . . . affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *SEC v. Ripple Labs, Inc.*, 2021 WL 2323089, at *4 (S.D.N.Y. May 30, 2021). Gemini does not seek to do any of this. It does not intend to present evidence that it believed its "behavior complied with the law" or "rely on privileged communications." It merely seeks to present evidence that it believed the statements it made to the CFTC were true and explain why. The CFTC has no authority supporting the proposition that Gemini should be barred from doing that.

**A.    The Evidence Is Relevant to Gemini's Knowledge**

In order to prevail at trial, the CFTC must prove that Gemini knew or reasonably should have known that statements or omissions to the CFTC were materially false or misleading. It remains unclear how the CFTC intends to meet its burden on this element, but it is easy to envision how Gemini might present its defense. It would be natural for Mr. Winklevoss to testify on direct along the following lines:

Q.    When statement X was made, did Gemini believe it was true or false?

A.    We believed it was true.

Q.    Why did Gemini believe it was true?

A.    Because [explanation].

Q.    Are you aware of any information Gemini had at the time suggesting that the statement was false?

A.    No.

Q.    Prior to this lawsuit being filed, did anyone ever tell you that statement X was false?

A.    No.

Q.    Are you aware of any instance in which Gemini provided incorrect information to the CFTC?

A.    No.

Q.    To your knowledge, did Gemini ever knowingly withhold information you understood was relevant from the CFTC?

A.    No.

Q.    What if any instructions were given to people at Gemini regarding how to provide information to the CFTC?

A.    We told everyone to provide complete and accurate information.

It borders on inconceivable that such testimony would not be admissible. It goes directly to what Gemini actually knew, as well as to the question of what Gemini could have known based

on the information available to it. There would be no basis to preclude Gemini from offering evidence to directly rebut a central allegation in the case.

### B.    Gemini Did Not Block Any Relevant Inquiry

The CFTC also asserts that Gemini "refused to produce any evidence to support its claim." Dkt. 176 at 5. This is untrue, as a quick examination of the CFTC's citations demonstrates.

First, the CFTC complains about Gemini's response to one interrogatory. *Id*. But that answer was responsive to the question and, if the CFTC was dissatisfied, it had a remedy. It could have moved to compel under Federal Rule of Civil Procedure 37(a)(3)(B)(iii). The CFTC made no such motion. Gemini's unchallenged answer to one of dozens of interrogatories is not the basis for any relief.

Second, the CFTC complains that Gemini asserted the attorney-client privilege to *one* question at Cameron Winklevoss's deposition. Dkt. 176 at 6. In the first place, the question was blatantly designed to invade the privilege, and an objection was appropriate.[15] More importantly, Gemini does not intend to rely on any attorney-client privileged statements or any advice of counsel at trial. Thus, once more, there is no cause for any relief.

### C.    The CFTC Has Put Gemini's State of Mind at Issue

Further, the Court should reject any effort to block Gemini from presenting evidence of its state of mind on why it said particular things or took particular actions. The CFTC has put all of this at issue.

The CFTC's briefs on summary judgment made clear that it intends to paint Gemini as a bad actor who deliberately misled the CFTC. Thus, it has argued that Gemini adopted a "cynical approach" to the product certification and made false or misleading statements "in order to obtain

---

[15]    Specifically, counsel asked if "you're taking that position, based on advice of Counsel?" Ex. 4 at 255:8–21.

approval" of the BFC. Dkt. 99 at 10, 16. According to the CFTC, Gemini had a "strategy" and an "approach" designed to avoid "additional scrutiny." *Id.* at 17. Thus, supposedly, Gemini made various statements with the objective of "cutting off further inquiry." *Id.* at 3. Indeed, according to the CFTC, Gemini employed a "concealment" of certain information. *Id.* at 54.

Gemini of course rejects these assertions, but what is critical here is that ***Gemini is entitled to rebut the CFTC's arguments***. Put simply, the CFTC has opened the door to a full examination of Gemini's reasoning and motivations. If that includes evidence that Gemini was acting honestly, so be it. The CFTC has put that at issue.

### D.    The Evidence is Relevant to Penalty

If Gemini were to be found to have violated Section 6(c)(2), the next issue is what is the appropriate penalty. In the Complaint, the CFTC has sought a "civil monetary penalty." As the CFTC's ***own policy manual*** states, "the gravity of the violation is the primary consideration in determining the appropriate civil monetary penalty." Ex. 2 at 30.[16] One of the most prominent factors to consider cited in the Manual is "[t]he Respondents' state of mind, including whether the conduct was intentional or willful." *Id.* The evidence the CFTC seeks to exclude on this motion, however, goes directly to this question. In other words, the CFTC's own policy states that the evidence it seeks to exclude is a "primary consideration" at trial. That is a strong reason to reject the CFTC's litigation position and to deny its MIL #1.

### II.    CFTC MIL #2 Should Be Denied: Evidence Regarding the Pearl Street Loans Is Relevant to Contested Issues of Knowledge and Materiality

Pearl Street Financial, LLC ("Pearl Street") was a company owned by Cameron and Tyler Winklevoss. It was entirely separate from Gemini. Ex. 4 at 95:3–16. In 2016 and 2017, Pearl Street

---

[16]    This is not merely a statement of policy or preference. The Enforcement Manual states, "CEA and Commission precedent require that penalties be assessed in relation to the gravity of the violation." Ex. 2 at 30.

made a small number of loans to third parties. It is undisputed that the Pearl Street loans were lawful and that no regulator—including the CFTC—has ever raised any issue about the loans themselves.

It is also undisputed that during the self-certification process the CFTC ***never asked*** any questions that would have caused Gemini to provide information about Pearl Street. It is also undisputed that ***Gemini would have provided information about Pearl Street*** if the CFTC had inquired. Nevertheless, the CFTC claims it was a violation of Section 6(c)(2) for Gemini to not *sua sponte* discuss Pearl Street with the CFTC. In order to prove that claim, the CFTC will have to prove that the omission of information about Pearl Street (i) made other Gemini statements misleading; (ii) the omitted information was material; and (iii) Gemini knew that omitting information about Pearl Street made other statements to the CFTC materially false or misleading.

As part of its effort to prevent the jury from hearing all the facts, the CFTC asks this Court to preclude evidence that the Pearl Street loans were perfectly legal and that no regulator ever told Gemini otherwise. There is no reason to exclude this relevant evidence, and doing so would unfairly prejudice Gemini. Evidence that Gemini believed that the Pearl Street loans were lawful is directly relevant to issues of knowledge and materiality.

This is an important situation where the Court should defer ruling until trial. What Gemini will need to say about the Pearl Street loans depends on what the CFTC says. Nevertheless, we review the major points at issue below.

### A.    The Evidence Is Admissible Under Rule 401

At trial, the CFTC will have to prove that Gemini knew or reasonably should have known that it was materially misleading not to volunteer information about the Pearl Street loans. It is unclear what evidence the CFTC has on this point, but whatever it might be, Gemini will be entitled to rebut it. Put simply, if Gemini (correctly) believed that the loans were lawful it would have no

reason to believe that they needed to be disclosed to the CFTC. Thus, the jury could reasonably infer that Gemini did not know that any omission made other statements misleading.

Moreover, excluding this evidence would give the jury a false picture. The CFTC will probably attempt to present the Pearl Street loans as something nefarious, something that Gemini had a need to conceal. That would be unfair and improperly inflammatory. Gemini should be permitted to introduce evidence about the legality of Pearl Street and its loans to rebut what the CFTC seeks to do.

The only case the CFTC cites, *United States v. Scali*, 2018 WL 461441 (S.D.N.Y. Jan. 18, 2018), is readily distinguishable and, read in full, actually supports Gemini's position on this motion. In that case, the defendant faced a 10-count indictment, including charges of fraud and making false statements to the government. In a series of *in limine* rulings Judge Román granted numerous motions to admit evidence of other legal proceedings that went to the defendant's knowledge. *See, e.g.*, *id.* at *3 (admitting evidence "to prove the Defendant's knowledge of the nature of the New York grievance proceedings"). The portion the CFTC cites deals with a different issue and an argument Gemini does not seek to make in this case. In *Scali*, the defendant sought to argue that his compliance with state contract law was evidence that he did not intend to commit mail fraud. *Id.*, at *7. That is not analogous to what Gemini seeks to prove here. Indeed, whether or not Gemini *intended* to violate the CEA is not even at issue in this case. The CFTC has no on-point authority to support its motion.

### B.    The Evidence Should Not Be Excluded Under Rule 403

As a backup, the CFTC argues that evidence about the Pearl Street loans should be excluded because, it contends, "[w]hether the Pearl Street loans were illegal or legal would have zero probative value about whether Gemini disclosed those loans to the CFTC." Dkt. 176 at 9. This argument makes no sense. Gemini does not dispute that the Pearl Street loans were never

discussed with the CFTC—primarily because the CFTC never asked. Gemini would not be offering evidence about the loans to prove that they were "disclosed" but, as discussed above, for an entirely different purpose: to prove that Gemini reasonably believed that the information did not need to be disclosed and that any omission was not material. The CFTC's Rule 403 argument should be rejected because it is not based on the actual evidence and argument that Gemini seeks to offer.

## III.    CFTC MIL #3 Should Be Denied: Evidence of Lack of Harm Is Relevant Both to Liability and Damages

In MIL #3, the CFTC seeks to cover up one of the most glaring problems with its case. The CFTC has pursued Gemini for seven years, spending countless millions of taxpayer dollars, and employing numerous staff, over alleged misstatements that caused no harm to anyone. This bears emphasis. The CFTC has *no evidence* that after the BFC began trading there was a single instance in which the product was manipulated or that anyone was harmed in any way. This goes directly to two of the most fundamental issues in the case: (i) whether Gemini knowingly made any materially false statements, and (ii) if so, what the penalty should be.

### A.    The Evidence Is Relevant to Falsity

As part of the Self-Certification process, CFE was required to certify that the BFC was not "readily susceptible to manipulation," as required by Core Principle Number 3. Thus, the CFTC's complaint revolves around the question of evaluating this issue. For example, it alleges:

> 3.    Gemini officers, employees, and agents (collectively, "Gemini personnel") knew or reasonably should have known that the statements and information conveyed or omitted by Gemini directly and through others were false or misleading with respect to, among other things, facts relevant to understanding whether the proposed Bitcoin Futures Contract would be readily susceptible to manipulation.

> 4.    The false or misleading statements and information conveyed or omitted to Commission staff by Gemini directly and through others were material to evaluation of the Bitcoin Futures Contract, including compliance with core

17

> principles of the Commodity Exchange Act, including Core Principles 3 and
> 12, "Contracts Not Readily Subject to Manipulation" and "Protection of
> Market Participants" respectively. . . .

Dkt. 1 ¶¶ 3–4. There is extensive discussion of this concept throughout the Complaint, and the

CFTC specifically alleges that "[o]ne area under evaluation was whether the Gemini Bitcoin

Auction and the Bitcoin Futures Contract were readily susceptible to manipulation." *Id.* ¶ 41.

The CFTC has emphasized this point throughout the case. For example, in its Motion for

Partial Summary Judgment, the CFTC asserted that "the key question for the CFTC under the

statutory and regulatory framework was whether the contract was readily susceptible to

manipulation." Dkt. 99 at 2. It added that each of the 32 statements it challenges in this case "went

directly to the CFTC's inquiry into whether the proposed contract was readily susceptible to

manipulation." *Id.*

Accordingly, as a threshold matter, the CFTC is going to have to present evidence as to

what "readily susceptible to manipulation" means, and how this relates to the BFC. The Complaint

specifically alleges that the CFTC was actually analyzing whether manipulation was possible.

Evidence that there was never any manipulation, and no harm, goes directly to this question. And

here is where the CFTC's case has a major problem. It has ***no evidence*** that there ever was any

manipulation of the product, or indeed, any attempt to manipulate the product. That fact is very

strong evidence that the product was not "readily susceptible" to manipulation and nothing Gemini

ever did or did not say misled the CFTC in any way.

In its motion, the CFTC relies entirely on a prior ruling of the Court in connection with a

discovery matter. It quotes the Court's observation that "[t]here's not a free pass for making false

statements simply because something bad didn't happen afterwards." Dkt. 176 at 11. That is

obviously correct as a general proposition, but in quoting the Court the CFTC is missing the point.

The fact that there was no manipulation is evidence that Gemini's statements were neither false

nor material. Accordingly, the evidence is directly relevant to core elements of the CFTC's claim, and is admissible under Rule 401.

### B.    The Evidence Is Relevant to Penalty

As noted, if Gemini were to be found to have violated Section 6(c)(2), the next issue is what is the appropriate penalty. The CFTC's Enforcement Manual contains a section entitled "Gravity of the Violation," which lists "considerations" that are applicable in "most cases." These include:

- ***Whether the violations resulted in harm*** to victims and, if so, the number and type of victims;

- Nature and scope of ***any consequences flowing from the violations***, including any: ***harm*** (or risk of harm) ***to victims and market participants*** . . . [or] ***impact*** on market integrity.

Ex. 2 at 30–31. If the CFTC's own manual states that evidence of harm is relevant, it is hard to see the basis for any argument to the contrary. Accordingly, the CFTC's motion should be denied.

## IV.    CFTC MIL #4 Should Be Denied: Evidence of Steps Gemini Took to Prevent Manipulation are Relevant to Knowledge, Materiality, and Penalty

This motion is premature, because the CFTC has not cited any specific evidence it seeks to exclude. *See supra* 10 (collecting authority).

It is undisputed that Gemini took a wide variety of steps to prevent manipulation in the Gemini auction. It is also undisputed that Gemini provided extensive information to the CFTC about its efforts to prevent manipulation—statements the CFTC does not contend were false. *See, e.g.*, Ex. 5. This is important context. It demonstrates what the parties reasonably understood was material. Further, it is undisputed that in connection with discussions with the CFTC during the self-certification process Gemini instituted additional protections. *See, e.g.*, Ex. 6. These were significant steps that Gemini took based on what it believed was important and what it understood the CFTC thought was important. These were undisputably good things that Gemini did.

Nevertheless, the CFTC seeks to exclude unidentified statements about "steps taken by Gemini to prevent manipulation and disclosure to CFTC of such steps." Dkt. 176 at 11. The CFTC does not, however, identify any specific statements it seeks to exclude. Until it does so, there is nothing for the Court to rule on, and the motion should be denied.

### A.    The CFTC's Straw Man Argument

To the extent the Court does consider the CFTC's MIL #4, Gemini needs to point out that the CFTC is tilting at windmills. Its argument is based on a misunderstanding of Gemini's case. Contrary to what the CFTC argues, Gemini does not intend to argue that purported misstatements "were minor in comparison to other true statements." Dkt. 176 at 12. It is not even clear what this means. Whatever the CFTC is trying to say, it is not grounds for relief.

### B.    The Evidence Is Relevant to Knowledge and Materiality

Gemini does not dispute that it is important to prevent manipulation in the Gemini auction. Gemini has a strong incentive to prevent such manipulation, for a variety of reasons. And it has done so. As reflected in the self-certification itself and in other documents given to the CFTC, Gemini implemented a wide variety of mechanisms to prevent manipulation. *See, e.g.*, Exs. 6–11. This is important evidence that goes to both Gemini's knowledge and to materiality. The evidence shows what Gemini actually believed was relevant to preventing manipulation. It is also evidence by which a jury can assess whether Gemini reasonably should have believed something else.

## V.    CFTC MIL #5 Should Be Denied: The Fact That the CFTC Did Not Ask For Certain Information Goes to Knowledge and Materiality

In MIL #5, the CFTC seeks to bar the jury from hearing one of the most important facts in the case: that ***the CFTC never asked for any of the information it claims Gemini withheld***. In other words, it wants the jury to believe that Gemini has some sort of free-standing obligation to be a mind reader and know—without reference to what the CFTC says or does—what information

might be material.[17] The CFTC cites **no legal authority** in support of this proposition. What matters is whether the evidence is relevant, and, in this case, it clearly is.

It is an established fact that, "[i]n evaluating a new product, Commission staff also can require additional evidence, information or data." Dkt. 1 ¶ 21.[18] It is also undisputed that, on several occasions, the CFTC did just this. Indeed, on summary judgment, the CFTC emphasized that Gemini provided information in response to "the CFTC's request for more details" and "in response to an express question from the CFTC." Dkt. 99 at 3. The CFTC then argued repeatedly that the fact that it asked a question on a particular topic was evidence of both Gemini's knowledge and materiality. Here are specific assertions the CFTC made on summary judgment:

- "Defendant's own statements, CFTC guidance, and **the CFTC's follow-up questions** during the product certification dispel any doubt that Gemini's market marker trading fee rebates were a material part of the CFTC's inquiry into whether the proposed futures contract, and its cash market settlement price (the Gemini auction), were readily susceptible to manipulation." *Id.* at 43.

- "**The CFTC's direct inquiry** further substantiates the materiality of Gemini's rebate practices to the CFTC's review of the product certification." *Id.* at 44.

- "Gemini remained silent about the bespoke rebates in the face of **a direct question** about Gemini's market maker rebate practices, which further reinforces that Gemini knew or reasonably should have known that its statements about market maker trading rebates failed to provide a complete and accurate picture." *Id.* at 47.

- "**[T]he CFTC's follow-up questions during the product certification confirm the materiality of Gemini's statements and omissions** about self-trading and self-trade prevention." *Id.* at 50.

---

[17]   It is also apparent that the CFTC seeks to avoid all scrutiny of its own conduct, as it has throughout this case. That is not an appropriate way for a government agency to conduct itself. Government agencies should welcome transparency, not avoid it.

[18]   The CFTC cannot dispute statements in its Complaint. Allegations in a pleading are judicial admissions that are binding throughout the course of a case. *See Off. Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.3d 147, 167 (2d Cir. 2003) (citing *Belleforte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *see also Hoodhu v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) (a judicial admission is "conclusive in the case").

- "***The CFTC's direct inquiry further substantiates the materiality*** of self-trading to the CFTC's review of the product certification." *Id.* at 51.

If the CFTC wishes to make these arguments to the jury, Gemini should be permitted to argue the opposite. When the government chooses not to act on or follow up on information, the government's indifference to that information demonstrates its lack of materiality. *Escobar*, 579 U.S. at 195. Put simply, what is not said is often just as probative as what was said. Evidence that the CFTC did not ask about particular things is evidence those topics were not material. It is also evidence that Gemini had no way to know that omitting information about which the CFTC never inquired could make any other statements misleading.

## VI.    CFTC MIL #6 Should Be Denied: Gemini's Understanding of What Information It Was Required to Provide Goes Directly to Knowledge and Materiality

As just discussed, the CFTC intends to argue that the questions it asked are probative of materiality. And, as explained, the questions the CFTC did not ask are equally relevant. Gemini's knowledge of those questions goes to its knowledge of whether any information provided was somehow misleading to the CFTC.

Nevertheless, the CFTC moves under Rule 403 (not Rule 401) to exclude the undisputed fact that Gemini was willing to answer any questions asked. Clearly, the information is relevant because the CFTC itself argues that Gemini had an "obligation to provide a complete and accurate picture." Dkt. 176 at 17.

The CFTC's only argument for preclusion is that there is a risk of "jury confusion," but the CFTC does not explain how. It argues that evidence that Gemini would have made certain disclosures "misleadingly implies that it is only Defendant's statements that are in issue" when alleged omissions are "equally relevant." Dkt. 176 at 17–18. This seems quite unlikely. Gemini has no doubt that the CFTC will inform the jury repeatedly that it is pursuing an omissions case. If there is any doubt about that, the Court can cure any potential prejudice with a limiting

instruction. *See Zafiro v. United States*, 506 U.S. 534, 540–41 (1993) (emphasizing that prejudice "can be cured with proper instructions, and juries are presumed to follow their instructions"); *George v. Celotex Corp.*, 914 F.2d 26, 30–31 (2d Cir. 1990) ("[E]xclusion of probative evidence [is] an extraordinary remedy that must be used sparingly.").

## VII.    CFTC MIL #7 Should Be Denied: Gemini is Entitled to Present Evidence of What it Actually Told the CFTC

This motion should be filed under, "you've got to be kidding." The CFTC wants to prevent the jury from learning that ***Gemini actually provided information*** the CFTC claims was withheld. It wants to give the jury an entirely false picture of what happened, and this motion should be denied out of hand. It is contrary to the law, which requires presenting a "complete and accurate" picture of the "overall message" conveyed. *See supra* 3. The evidence the CFTC seeks to preclude is relevant to falsity, knowledge, and materiality.

### A.    The Trade Data

The CFTC's claims about so-called self-trading do not comport with the facts. The following is undisputed:

- In March 2017 Gemini instituted self-trade prevention in its continuous order book;

- In May 2017 Gemini instituted self-trade prevention in the auction.

Dkt. 109-12 at 330:19–331:8. The CFTC claims, however, that it was misleading for Gemini not to affirmatively disclose that self-trading was possible *before* it was prohibited. *See* Dkt. 1 ¶¶ 73–82; Dkt. 99 at 49 (Gemini "omitted that, prior to May 2017, it lacked any self-trade prevention in the auction"). The problem is, ***Gemini did disclose this*** fact.

Following a meeting on July 25, 2017, the CFTC requested data regarding the Gemini auction. Ex. 12. On August 1, the CFTC was sent a complete set of its trading data dating back to September 21, 2016. *Id.* It is undisputed that these data contain instances of self-trading. By

seeking to exclude this evidence, the CFTC wants to paint an entirely false picture. The trade data, and what it contains, goes directly to two key issues in the case: falsity and materiality.

First, the trade data shows that Gemini did not make a misleading omission.

Second, it is direct evidence of what happened in the case and why any purported omission was not material. As the Court has previously held, if an agency is "indifferent" to a misstatement, that is evidence of "immateriality." Dkt. 77 at 3; *see also Escobar*, 579 U.S. at 195. That is the case here.

The CFTC's witness, Christopher Goodman, testified that a "group of people" within "product review" would have examined the trade data. Ex. 13 at 197:6–12. Thus, the CFTC was *on notice* that there had been historical self-trading at Gemini. But the CFTC did nothing. It asked no follow up questions, and there is *no evidence* the details of the trade played any role at all in the CFTC's decision-making.

The trade data—and what shows—is strong, relevant evidence.

### B.    The Fee Schedule Information

In the complaint, the CFTC has an entire section titled, "Undisclosed Bespoke Fee Rebates and Overrides." Dkt. 1 ¶¶ 94–107. It alleges that during the "Relevant Period" (which is defined as "July 2017 through at least in or around December 2017") Gemini made omissions about "trading fee rebates." The fact that Gemini supposedly "omitted" during this six month period is that "Gemini at times before and during the Relevant Period entered into bespoke or custom fee arrangements with market participants." *Id*. ¶ 94.

The problem with the CFTC's omissions case is that ***Gemini did disclose this fact***. On September 12, 2017 Gemini gave the CFTC its Policies and Procedures Manual. Ex. 14. That document has an entire section entitled "Agreements Granting Preferential Terms." Here is how it begins:

> Our organization may provide certain high volume Users, market makers or other special-case users ("Priority Users") with terms different from those given under the standard User Agreement and fee schedule ("Fee Schedule").

*Id*. at 46. This is precisely the information that the CFTC claims was "omitted" during the Relevant Period. Gemini should be permitted to present this information to the jury because it directly refutes an allegation in the Complaint. It is also relevant because it demonstrates that ***the CFTC did not review information it was given***. The CFTC's "indifference" is strong evidence against that the information was not material. *See supra* 21–22.

### C.    The CFTC's Arguments About a Different Statement Make no Sense

The CFTC's motion ignores the allegations in the Complaint and constructs another straw man agreement. It suggests that Gemini seeks to argue that disclosure of the Policies and Procedures Manual was a "corrective disclosure" designed to fix another supposedly false statement, one made on August 25, 2017. Dkt. 176 at 18–19. There are numerous problems with this argument.

First, the August 25 statement, made in a written submission answering some CFTC questions, was not false. There was nothing to correct.

Second, the evidence the CFTC cited on Summary Judgment supposedly proving that the August 25 statement was false was the Policies and Procedures Manual. Dkt. 99 at 41–42. In other words, the CFTC is apparently seeking to exclude evidence it has previously relied on to prove its case. That makes no sense.

Given the CFTC's confusion, if the Court does not want to deny MIL #7 outright, it should defer ruling on it until trial.

## VIII.  CFTC MIL #8 Should Be Denied: The CFTC's Decision Not to Bring Charges Against CFE Goes Directly to Materiality

One of the most peculiar unsolved mysteries of this case is why the CFTC chose to bring claims against Gemini and not the CFE. The self-certification at issue was made by CFE, and CFE had the final say ("ultimate authority") as to what it would contain. *See* Ex. 15 at 157:15–22; Ex. 16 at 59:21–60:7. The CFTC's decision to give CFE a "pass" is particularly galling because Gemini told CFE about many things the CFTC claims were not disclosed, including information about rebates and self-trading. If the DCM thought these matters were insignificant—and not worth raising with the CFTC—that is strong evidence these things were not material.

Under this Court's prior ruling on materiality, and Second Circuit precedent, the CFTC's decision not to sue the CFE is relevant to materiality. In *FDIC v. Fifth Third Bank*, 2023 WL 7130553 (2d Cir. Oct. 30, 2023), the Second Circuit affirmed dismissal of a *qui tam* action against a bank which allegedly managed certain loans "in a manner that failed to minimize the FDIC's losses." *Id.* at *1. Judge Daniels dismissed the complaint and the Second Circuit affirmed, finding that the complaint did not adequately allege materiality. The Court of Appeals found it "significant" that the complaint did not "allege any facts suggesting that the FDIC has excluded similar loans from other SLAs or taken action against other banks who engaged in similar alleged conduct." *Id.*, at *4. In its January 4, 2024 "Order Regulating Proceedings" this Court cited *Fifth Third* for the proposition that whether an agency "took action against other entities who engaged in similar alleged conduct" is relevant to materiality. Dkt. 77 at 3. That ruling is directly applicable and is grounds to deny the CFTC's motion.

The fact that the CFTC took no action against CFE is relevant to materiality.

IX.    **CFTC MIL #9 Should Be Denied: The CFTC Has Put Matters Relating to Benjamin Small at Issue**

This motion should be denied as premature and insufficiently specific. It seeks to exclude supposedly "inflammatory evidence" about a man named Benjamin Small. But the CFTC does not explain exactly what it is seeking to exclude. There is nothing concrete for the Court to rule on.

A.    **Background**

To the extent the Court does consider this motion, a bit of context may be helpful. Mr. Small was Gemini's Chief Operating Officer until August 30, 2017, when he was suspended (and later terminated). He is referred to in the Complaint, and the CFTC has put him and his activities at issue. His actions are relevant in at least three ways.

First, Mr. Small was the author of several statements the CFTC contends are false. *See, e.g.*, Ex. 1 (CFTC Statements Nos. 23, 24, 26, 27, 28, 31).

Second, Mr. Small approved ill-advised "fee overrides" that resulted in Gemini losing millions of dollars. The CFTC itself has described this as a "multi-million-dollar rebate fraud" ***against Gemini*** and identified Mr. Small as one of the people responsible. Dkt. 99 at 21.

Third, Mr. Small is a self-styled "whistleblower" who made a complaint to the CFTC after he was suspended. It is a matter of public record, and the CFTC has never denied, that it had a series of meetings and other communications with Mr. Small "beginning on 1 November 2017." Ex. 17 ¶ 21. As the CFTC also well knows, Mr. Small made repeated false statements in his whistleblower submission and in numerous subsequent meetings. The CFTC also knows that Mr. Small is an admitted perjurer. Ex. 18 at 6–7, 17.

All of this is relevant to the key issues in the case, and the CFTC has put it at issue. The Complaint contains specific allegations about Mr. Small, and the CFTC referred to him repeatedly

in the briefing on summary judgment. *See* Dkt. 1 ¶¶ 100–108; Dkt. 99 at 21–22, 46–47; Dkt. 118 at 45.

### B.    The CFTC's Meetings With Small Are Relevant to Materiality

As noted, Mr. Small began meeting with the CFTC on November 1, 2017—a full month before the self-certification was filed. The centerpiece of Mr. Small's allegations is that there was something improper about the Pearl Street loans. *Supra* 15–16. Mr. Small has never been able to back up this claim, but the key thing is that he told the CFTC about the Pearl Street loans—and the CFTC did nothing. This inaction is strong evidence that nothing about the Pearl Street loans was material.

This bears emphasis. Through Mr. Small, the CFTC learned everything it claims Gemini failed to volunteer about the Pearl Street loans. But there is ***no evidence*** that obtaining this information affected the CFTC in any way. In other words, there is no evidence that information about the Pearl Street loans had any influence at all on any decision on potential decisions the CFTC did or could have made.

Gemini should be permitted to provide this information to the jury. It is relevant, important evidence contradicting the CFTC's claims. Yet again, the CFTC's "indifference" to information it now claims was important is strong evidence that in reality the information was not material.

### X.    CFTC MIL #10 Should Be Denied for Multiple Reasons

The CFTC seeks to admit statements made by a third party—Winklevoss Capital Management ("WCM")—against Gemini under Federal Rule of Evidence 801(d)(2)(D). Specifically, the CFTC wishes to offer a post-hearing brief filed by WCM (the "WCM Brief") in an arbitration against Mr. Small (the "Small Arbitration"). The motion should be denied because the CFTC cannot lay the necessary foundation for admissibility under Rule 801. Specifically, the

CFTC has no evidence that WCM made statements in the WCM Brief while acting as Gemini's agent.

### A.    WCM is Not Gemini's Agent and Therefore the Requirements of the Party Admission Rule are Not Satisfied

Rule 801(d)(2)(D) provides that statements are admissible as non-hearsay if they were "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." As the proponent of the statements at issue, the CFTC has the burden of proving (i) that WCM was Gemini's agent and (ii) the statements were made in the scope of that agency. The CFTC has no evidence of either necessary foundational element.

In applying Rule 801(d)(2)(D), the traditional approach is to apply "the usual test of agency." Fed. R. Evid. 801 advisory committee's note to 1972 proposed rules. Under New York law, that test is well-established. To establish actual agency a plaintiff must demonstrate: (i) manifestation by the principal that the agent shall act for him, (ii) the agent accepted the undertaking, and (iii) an understanding between the parties that the principal is to be in control of the undertaking. *United States v. Hoskins*, 44 F.4th 140, 149–50 (2d Cir. 2022). "The principal's power to control the agent is an essential element of an agency relationship." *Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 422 (S.D.N.Y. 2007). "The essence of control in an agency sense is in the *necessity* of the consent of the principal on a given matter." *Maung Ng v. Merrill Lynch & Co.*, 2000 WL 1159835, at *7 (S.D.N.Y. Aug. 15, 2000). In addition to control, the agent must be placed in a position to affect or alter the legal relations between the principal and third parties in matters within the scope of the agency. *See id.* at *9 n.3. The CFTC cites no evidence of any of this. In particular, the CFTC has no evidence:

- That Gemini asked WCM to act for it in connection with the arbitration;
- That Gemini had the ability to control what WCM did in the arbitration;

- That WCM was in any position to alter Gemini's legal relationships with anyone in connection with the arbitration.

In reality, the facts are to the contrary. When the arbitration began in December 2017, Gemini and WCM were both parties and each asserted their own claims against Mr. Small. Ex. 19 at 2, 12. In February 2018, however, the Arbitrator ruled that Gemini's claims against Mr. Small were not arbitrable and Gemini was dismissed from the case. Ex. 20 at 1. Thereafter, the only claims litigated in the arbitration were claims between Mr. Small and WCM. Ex. 19 at 2, 12. The CFTC has cited nothing in the extensive record of the Small Arbitration suggesting that WCM was litigating as Gemini's agent.

This is consistent with the limited scope of the relationship between WCM and Gemini. WCM is a management company that provides services to a wide variety of companies. At the relevant time, it had a Services Agreement with Gemini's parent company (then known as Winklevoss Exchange LLC). Ex. 21 at 1. The services provided were limited to certain "Employee Services." *Id.* There is nothing in the Services Agreement relating to providing services in litigation. Indeed, the Services Agreement specifically disclaims an agency relationship:

> 4.   <u>Relationship of the Parties</u>: The parties hereto are independent contractors and ***nothing in this agreement creates a*** joint venture, partnership or ***relationship of agency*** between the parties, and except as expressly authorized herein, neither party has any authority to act, make representations, or contract on behalf of the other party.

*Id.* This is conclusive evidence against a finding that WCM was Gemini's agent with respect to statements WCM made in the Arbitration.

Avoiding the applicable legal requirements, the CFTC argues instead that WCM's statements should be admitted because (i) the Winklevoss brothers are the "beneficial owners" of both WCM and Gemini; (ii) Cameron Winklevoss had a "dual role" as principal of WCM and president of Gemini; and (iii) certain individuals employed by WCM provided services to Gemini.

Dkt. 176 at 26. The CFTC cites no legal authority for the proposition that these circumstances (if true) would establish an agency relationship. They do not.

The Restatement of Agency, which is followed in New York,[19] addresses this situation precisely. Comment d(3) of Section 7.03 states:

> [C]ommon ownership of multiple entities does not create relationships of agency among them. See § 1.01, Comment *f(2)*. An entity becomes the agent of another entity, and an individual becomes an entity's agent, only when they are linked by the elements of an agency relationship as stated in § 1.01.

> Within a related group of corporations or other entities the same individuals may serve as officers or directors of more than one entity. An overlapping cast in multiple organizational roles does not in itself create relationships of agency that are not otherwise present.

Rest. (Third) of Agency § 7.03, comment d(3) (2006). This rule has been applied directly in this District. *See Excell Consumer Prods. Ltd. v. Smart Candle LLC*, 2013 WL 4828581, at *20 (S.D.N.Y. Sept. 10, 2013) (quoting restatement and holding fact that two companies had a common owner and shared "resources and contacts" was insufficient to establish an agency relationship).

In sum, the CFTC's motion fails on the law and on the facts. It has no facts demonstrating that WCM was acting as Gemini's agent when it made the statements at issue. And the arguments it makes do not satisfy the legal requirements for establishing agency.

The CFTC's motion should be denied.

### B.    If Any Statements are Admitted, the Entire Brief Should be Admitted Under the Rule of Completeness

For the reasons above, the Court should not permit the CFTC to introduce portions of the WCM Brief. If, however, the CFTC is permitted to offer some excerpts from the brief, the entire document should be admitted under the Rule of Completeness. *See* Fed. R. Evid. 106.

---

[19]    *Doe v. Elekra Ent. Group Inc.*, 2023 WL 2744102, at *5 (S.D.N.Y. Mar. 31, 2023) (noting that both New York Courts and the Second Circuit rely on the Restatement regarding "general principles of the common law of agency").

## XI.     CFTC MIL #11 Should Be Denied as Premature

Apparently, the CFTC intends to call Cameron Winklevoss as a witness in its case in chief. Why it would seek to do so is unclear, and in advance of any such testimony—and in the context of the trial—the CFTC should be required to make a proffer as to the nature of its intended examination.

Gemini does not dispute that Rule 611(c) provides that "ordinarily" it is permissible for a party to ask leading questions of a witness associated with an adverse party. However, "Rule 611(c) is permissive and must be read in context with the trial court's general authority and discretion to control the conduct of the trial." *Scenic Holding, LLC v. New Bd. of Trustees of Tabernacle Missionary Baptist Church, Inc.*, 506 F.3d 656, 664 (8th Cir. 2007). Put another way, Rule 611(c) is arguably subject to the more general requirement in Rule 611(a) that the court "exercise reasonable control over the mode" and order of examination of witnesses and presenting evidence. *Rodriguez v. Banco Cent. Corp.,* 990 F.2d 7, 13 (1st Cir. 1993).

One important consideration for the court is to "protect witnesses from harassment." Rule 611(a)(3). Indeed, "it's unfair sometimes for a Plaintiff to prove his case through the mouth of the Defendant." *Elgabri v. Lekas,* 964 F.2d 1255, 1259 (1st Cir. 1992). Thus, for example, it may be appropriate "to limit plaintiff's examination of defendants in [its] case-in-chief to subject matter that could not be obtained in any other fashion." *Id.*

Accordingly, the Court should defer ruling on this motion until it has a more complete record of the progress of the trial and the CFTC's intended purpose in calling Mr. Winklevoss (or any other Gemini representative) as a witness in its case in chief.

## CONCLUSION

For the reasons stated, the Court should either deny the CFTC's motions outright or defer

a ruling until trial.

Dated:  New York, New York
        December 6, 2024

                                        BAUGHMAN KROUP BOSSE PLLC

                                        By /s/ John F. Baughman

                                        John F. Baughman
                                        Daniel A. Schwartz
                                        Elizabeth J. Lee
                                        One Liberty Plaza – 46th Floor
                                        New York, NY 10006
                                        (212) 548-3212

                                        *Attorneys for Gemini Trust Company, LLC*