UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>                       Plaintiff,<br><br>         v.<br><br>GEMINI TRUST COMPANY, LLC<br><br>                 Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    22-CV-4563 (AKH)<br>)<br>)    Hon. Alvin K. Hellerstein |

**CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY
AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT
<u>GEMINI TRUST COMPANY, LLC</u>**

## I.     INTRODUCTION

On June 6, 2022, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendant Gemini Trust Company, LLC ("Gemini Trust" or "Defendant") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2024).

## II.     CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant without a trial on the merits or any further judicial proceedings, Defendant:

1.     Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant ("Consent Order");

2.     Affirms that it has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission

or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.    Acknowledges service of the summons and Complaint;

4.    Admits the jurisdiction of this Court over it and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5.    Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act;

6.    Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7.    Waives:

(a)    Any and all claims that it may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2024), relating to, or arising from, this action;

(b)    Any and all claims that it may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(c)    Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)    Any and all rights of appeal from this action;

8.    Agrees for purposes of the waiver of any and all rights under the Equal Access to Justice Act specified in paragraph 7(a) above that Defendant is not the prevailing party in this action;

9.    Consents to the continued jurisdiction of this Court over it for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other

purpose relevant to this action, even if Defendant now or in the future resides outside the jurisdiction of this Court;

10.     Agrees that it will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

11.     Agrees that neither it nor any of its agents or employees under its authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect its: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party;

12.     Consents to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which it admits;

13.     Consents to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

14.     Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than a:  statutory disqualification proceeding; proceeding in bankruptcy, or receivership; or proceeding to enforce the terms of this Order;

15.     Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendant in any other proceeding.  Except as expressly set forth herein, this Consent Order does not preclude Defendant from presenting any argument or defense in such other proceeding.

### III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

**THE COURT HEREBY FINDS:**

**A.     Findings of Fact**

**1. The Parties to this Consent Order**

16.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

17.     Defendant Gemini Trust is a New York-chartered limited liability trust company based in New York, New York, whose business during the Relevant Period (defined below) was to operate a virtual currency trading platform ("Gemini Trust Exchange") and offer custodial and related services.  Gemini Trust has not been registered with the Commission.

**2. Overview**

18.     From at least in or around July 2017 through at least in or around December 2017 (the "Relevant Period"), Gemini Trust, through certain employees, officers, or agents ("Gemini Trust Representatives"), made certain statements to Commission staff in connection with

Commission staff's evaluation of the potential self-certification by a designated contract market (the "DCM") of a bitcoin futures contract (the "Bitcoin Futures Contract").

19.    Section 5(c) of the Act permits a DCM to list a new futures contract for trading by providing the Commission a written certification that the new contract complies with the Act and Regulations.  7 U.S.C. § 7a-2(c).  The written certification must include, among other things, an explanation and analysis of the product's compliance with the core principles for contract markets set forth in the Act and Regulations, including Core Principle 3.  *See* Regulation 40.2(a), 17 C.F.R. § 40.2(a) (2024).  Core Principle 3 requires that a DCM shall list only contracts that are not readily susceptible to manipulation.  *See* Section 5(d)(3) of the Act, 7 U.S.C. § 7(d)(3); Regulation 38.200, 17 C.F.R. § 38.200 (2024).  Unless the Commission finds that certification of the new product would be inconsistent with the Act or Commission regulations, the DCM may list the new product no sooner than one full business day following the self-certification.  *See* Section 5c(c) of the Act, 7 U.S.C. § 7a-2(c); Regulation 40.2(a), 17 C.F.R. § 38.200 (2024).  The Commission can request "additional evidence, information or data that demonstrates that the contract meets, initially or on a continuing basis, the requirements of the Act or the Commission's regulations or policies thereunder."  *See* 17 C.F.R. § 40.2(b).

20.    Because the Bitcoin Futures Contract was to be settled by reference to the spot bitcoin price on the relevant day as determined by an auction (the "Gemini Trust Auction") held on the Gemini Trust Exchange, Commission staff reviewed, among other things, whether the Gemini Trust Auction would be readily susceptible to manipulation.  In connection with this review, Gemini Trust through Gemini Trust Representatives and through the DCM, made statements to Commission staff about, among other things, facts relevant to understanding whether the Bitcoin Futures Contract would be readily susceptible to manipulation.

21.     As described below, Gemini Trust Representatives made certain statements to Commission staff that Gemini Trust reasonably should have known were false or misleading, and Gemini Trust also failed to disclose certain facts needed to make its statements not false or misleading.  These statements (and facts omitted from disclosure) were material to Commission staff's evaluation of the Bitcoin Futures Contract, including compliance with Core Principle 3.

22.     These false or misleading statements and omissions were made within the scope of the Gemini Trust Representatives' employment or office at Gemini Trust.

### 3. Gemini Trust's Statements

#### a.  Statements Concerning "Prefunding"

23.     During the Relevant Period, Gemini Trust made statements to Commission staff regarding Gemini Trust's purported "prefunding requirement" and the cost of capital to trade in the Gemini Trust Auction.

24.      Gemini Trust represented that it was a "full reserve" exchange that required all transactions to be fully "prefunded."  In particular, on July 25, 2017, Gemini Trust and the DCM presented a slide deck to Commission staff authored, in relevant part, by a then Gemini Trust Representative ("Employee A") and reviewed by other Gemini Trust Representatives that included a statement that trading on the Gemini Trust Exchange was "fully (pre-) funded."  Gemini Trust later stated that a Gemini Trust market participant was "not permitted to place an order unless they had enough funds in their account to place [the] order."  Gemini Trust also represented that the "prefunding" requirement made its exchange and auction less susceptible to manipulation because it increased traders' cost of capital and made it costly for a malicious market participant to engage in manipulative tactics.

25.     Gemini Trust did not, however, disclose to Commission staff that certain market

maker Gemini Trust customers could and did obtain loans of digital assets from a Gemini Trust affiliate.  One purpose of these loans was to facilitate and increase trading on the Gemini Trust exchange and in Gemini Trust Auctions.  While lending arrangements do not necessarily violate the Act or Regulations, the loans effectively allowed Gemini Trust customers to place orders on the Gemini Trust Exchange and in the Gemini Trust Auction without fully prefunding their accounts with their own funds.

26.     Gemini Trust also did not disclose to Commission staff that before and during the Relevant Period, a then Gemini Trust Representative ("Employee B") gave "advances" or "credits" of U.S. dollars or digital assets to certain customers in violation of a Gemini Trust policy.  These advances or credits could immediately be used for trading and Gemini Trust gave such advances by directly crediting the customer's account.  These were made in order to induce, facilitate, or fund trading in the Gemini Trust Auction.  Similar to the loans from the Gemini Trust affiliate, these advances and credits effectively allowed Gemini Trust customers to place orders on the Gemini Trust Exchange and in the Gemini Trust Auction without fully prefunding their accounts with their own funds. Gemini has represented that there were no policy violations following Employee B's suspension.

27.     In light of these facts, Gemini Trust reasonably should have known that statements to the Commission staff concerning prefunding were inaccurate.

### b.  Statements Concerning "Self-Trading"

28.     During the Relevant Period, Gemini Trust made statements to Commission staff regarding the extent and possibility of self-trading on the Gemini Trust Exchange.

29.     Gemini Trust represented that self-trading on its exchange was "prohibited;" that it had a technological means to prevent self-trading from occurring; that self-trading on its exchange

was not possible; and that this served as an auction protection against manipulation.  For example, in one written submission on September 12, 2017, Gemini Trust represented under a section titled "Self-Trade Prevention" that it "prohibit[ed] the same market participant from crossing with himself or herself (either intentionally or unintentionally) . . . in a [Gemini Trust] Auction."

30.     Gemini Trust did not, however, disclose that before around May 2017, Gemini Trust did not have any technological means to prevent self-trading from occurring in Gemini Trust Auctions.  Gemini Trust also did not disclose that there were instances of self-trading in Gemini Trust Auctions prior to May 2017.   Gemini Trust also did not disclose that, even after implementing a technological mechanism to prevent self-trading in Gemini Trust Auctions in or around May 2017, there were instances in which a single market participant was on both sides of a trade in a Gemini Trust Auction.

31.     In light of these facts, Gemini Trust reasonably should have known that statements to Commission staff concerning self-trading were inaccurate.

### c.  Statements Concerning "Rebates"

32.     During the Relevant Period, Gemini Trust made statements to Commission staff regarding trading fee rebates available to participants on the Gemini Trust Exchange and in the Gemini Trust Auction.

33.     Gemini Trust represented that its market maker trading fee rebates served as an auction protection against manipulation by increasing participation.  After Commission staff requested details concerning Gemini Trust's market maker fee rebate program generally, and, specifically, as it pertained to market makers participating in Gemini Trust Auctions, in an August 25, 2017 written response in relevant part authored by Employee A and reviewed by other Gemini Trust Representatives, Gemini Trust represented that (a) it had no specifically defined market

maker program; (b) it had implemented a trading fee program that was available to all Gemini Trust market participants; and (c) the public fee schedule on Gemini Trust's website at the time reflected the details of the program available to all Gemini Trust customers.

34.     Gemini Trust, however, did not disclose that from 2016 through the Relevant Period, Gemini Trust at times entered into bespoke fee arrangements not available to all customers with certain market participants, including market makers, that were not disclosed on Gemini Trust's website, at more favorable terms than those listed on the website and designed to promote trading in the Gemini Trust Auction.  While Gemini Trust later provided Commission staff with a policy document that included the policy for these special incentives, Gemini Trust did not highlight the provision as relevant to the Commission's staff evaluation of the Bitcoin Futures Contract.

35.     Gemini Trust also did not disclose that, in and around June through August 2017, two Gemini Trust customers engaged in fraudulent or collusive trading that took advantage of bespoke fee arrangements not identified on Gemini Trust's website and not disclosed to the CFTC, in order to earn rebates from Gemini Trust.  Gemini Trust further did not disclose to Commission staff that it suspended those customer accounts after the trading scheme was discovered and that it had reported the trading scheme to law enforcement.

36.     In or around August 30, 2017 Gemini Trust suspended (and later terminated) Employee A and Employee B, who were involved in arranging or approving the fee rebates given to the customers who engaged in the fraudulent or collusive trading.

37.     Gemini Trust's most senior management had come to believe that Employee A and Employee B were not trustworthy.

38.     Employee A was closely involved in the engagement with the Commission staff

concerning the Bitcoin Futures Contract. This person had been a principal speaker on behalf of Gemini Trust during in-person meetings with Commission staff on July 25, 2017 and August 28, 2017 that were also attended by other Gemini Trust Representatives.

39.     Gemini Trust did not inform Commission staff involved in evaluating the Bitcoin Futures Contract that it had suspended (and later terminated) Employee A and Employee B or that Gemini Trust senior management had formed the belief that these employees were not trustworthy.

40.     In light of these facts, Gemini Trust reasonably should have known that statements to Commission staff concerning its market maker fee rebate programs were inaccurate.

### d.  Statements Concerning "Volume"

41.     During the Relevant Period, Gemini Trust Representatives made statements to Commission staff regarding the Gemini Trust Exchange's trading volume and liquidity.

42.     Gemini Trust made a series of statements concerning trading volume and liquidity on the Gemini Trust Exchange, including in written submissions where Gemini Trust presented auction and trading information, including auction trading volume information; and a submission of data including its historical auction trading data.

43.     Gemini Trust, however, did not disclose that a portion of its historical trading volume reflected trading that was executed by recipients of the loans and advances referenced in paragraphs 25-26 herein and bespoke rebates referenced in paragraph 34 herein, included self-trading referenced in paragraph 30 herein, and included certain fraudulent or collusive trading that had occurred as referenced in paragraph 35 herein.

44.     In light of these facts, Gemini Trust reasonably should have known that statements to Commission staff concerning historic trading volume were inaccurate.

### 4.  Materiality

10

45.     The statements and omissions to Commission staff described above were material, including to Commission staff's evaluation of the Bitcoin Futures Contract.

**B.    Conclusions of Law**

**Jurisdiction and Venue**

46.     This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

47.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because Defendant resides in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

48.     Section 6(c)(2) of the Act, 7 U.S.C. § 9(2), states:

It shall be unlawful for any person to make any false or misleading statement of a material fact to the Commission, including in any registration application or any report filed with the Commission under this chapter, or any other information relating to a swap, or a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or to omit to state in any such statement any material fact that is necessary to make any statement of a material fact made not misleading in any material respect, if the person knew, or reasonably should have known, the statement to be false or misleading.

By the conduct described in paragraphs 1 through 45 above, Gemini Trust violated Section 6(c)(2) of the Act. The Gemini Trust Representatives' acts, omissions, and failures described above were

made within the scope of their office, employment or agency at Gemini Trust, and therefore, the violations are deemed the acts, omissions, and failures of Gemini Trust pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2024).

49.    Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendant will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

50.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant is permanently restrained, enjoined and prohibited from making false or misleading statements or omitting to state material facts to the Commission, in violation of Section 6(c)(2) of the Act, 7 U.S.C. § 9(2).

## V.    CIVIL MONETARY PENALTY

51.    Defendant shall pay a civil monetary penalty in the amount of five million dollars ($5,000,000) ("CMP Obligation"), within ten days of the date of the entry of this Consent Order.  If the CMP Obligation is not paid in full within ten days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the unpaid portion of the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

52.    Defendant shall pay its CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment

shall be made payable to the Commodity Futures Trading Commission and sent to the address

below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Defendant shall contact the Federal Aviation

Administration at the email address above to receive payment instructions and shall fully comply

with those instructions.  Defendant shall accompany payment of the CMP Obligation with a cover

letter that identifies Defendant and the name and docket number of this proceeding.  Defendant

shall simultaneously transmit copies of the cover letter and the form of payment to the Chief

Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st

Street, NW, Washington, D.C. 20581.

      53.    Partial Satisfaction:  Acceptance by the Commission of any partial payment of

Defendant's CMP Obligation shall not be deemed a waiver its obligation to make further payments

pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment

of any remaining balance.

## VI.    MISCELLANEOUS PROVISIONS

      54.    Until such time as Defendant satisfies in full its CMP obligation under this Consent

Order, upon the commencement by or against Defendant of insolvency, receivership or bankruptcy

proceedings or any other proceedings for the settlement of Defendant's debts, all notices to creditors

required to be furnished to the Commission under Title 11 of the United States Code or other

applicable law with respect to such insolvency, receivership bankruptcy or other proceedings, shall

be sent to the address below:

Secretary of the Commission
Office of General Counsel
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street N.W.
Washington, DC 20581

55.    Notice:  All notices required to be given by any provision in this Consent Order, except as set forth in paragraphs 52 and 54, above, shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

Manal M. Sultan
Deputy Director
Commodity Futures Trading Commission
Division of Enforcement
290 Broadway, Suite 600
New York, NY 10007

Notice to Defendant Gemini Trust:

William Costello
General Counsel
Gemini Trust Company, LLC
600 Third Avenue, 2d Floor
New York NY 10016

All such notices to the Commission shall reference the name and docket number of this action.

56.    Change of Address/Phone:  Until such time as Defendant satisfies in full its CMP Obligation as set forth in this Consent Order, Defendant shall provide written notice to the Commission by certified mail of any change to its telephone number and mailing address within ten calendar days of the change.

57.    Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to

amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

58.     Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

59.     Waiver: The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

60.     Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant to modify or for relief from the terms of this Consent Order.

61.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon the following persons who receive actual notice of this Consent Order, by personal service or otherwise: (1) Defendant; (2) any officer, agent, servant, employee, or attorney of the Defendant; and (3) any other persons who are in active concert or participation with any persons described in subsections (1) and (2) above.

62.    Authority:  William Costello hereby warrants that he is the General Counsel of Gemini Trust, and that this Consent Order has been duly authorized by Gemini Trust, and he has been duly empowered to sign and submit this Consent Order on behalf of Gemini Trust.

63.    Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

64.    Contempt:  Defendant understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings it may not challenge the validity of this Consent Order.

65.    Agreements and Undertakings:  Defendant shall comply with all the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Gemini Trust Company, LLC* forthwith and without further notice.


**IT IS SO ORDERED** on this _____day of _____, 2024.

_____
**UNITED STATES DISTRICT JUDGE**

CONSENTED TO AND APPROVED BY:

*William Costello*
DC06DB0563494DA...
Gemini Trust Company LLC                          Commodity Futures Trading Commission
William Costello, General Counsel                 Division of Enforcement
                                                  290 Broadway, Suite 600
Date: 26 December 2024                            New York, NY 10007
                                                  Phone:  (646) 746-9700


_____                  Date: _____


Approved as to form:

9ABF6DECA8C43E...
John F. Baughman
Baughman Kroup Bosse PLLC
One Liberty Plaza – 46th Floor
New York, NY 10006
(212) 548-3212
Attorney for Gemini Trust Company, LLC