# Exhibit F

**Dissenting Statement of Commissioner Summer K. Mersinger Regarding Enforcement Action Against Gemini Trust Company, LLC – Seriatim 22-0097**

I respectfully dissent from the recommendation that the Commission file an injunctive enforcement action against Gemini Trust Company, LLC ("Gemini Trust") for allegedly making false or misleading statements or omissions to the Staff of the Commission's Division of Market Oversight ("DMO") in violation of Commodity Exchange Act ("CEA") Section 6(c)(2).

Congress expanded the Commission's authority to prosecute and punish those who make false statements to the Commission or its Staff in the Dodd-Frank Act,[1] and the Commission has not hesitated to exercise that authority in the years since then – bringing (based on our research) 17 enforcement actions charging violations of CEA Section 6(c)(2) since 2013. I support appropriate enforcement in this area, since such false statements undermine the Commission's ability to fulfill its mission.

However, I do not believe that this case represents an appropriate use of the Section 6(c)(2) enforcement authority given that:

1) Litigating this case will divert DMO Staff away from their responsibilities addressing market issues of today to engage in litigation activities;

2) Those litigation activities relate to the certification of a futures contract 5 years ago where—

a) The contract appears to have traded in an orderly fashion;

b) There is no indication that the contract, during the time it was traded, violated any Core Principle or other requirement of the CEA or the Commission's rules; and

c) The contract was de-listed in mid-2019; and

3) The criminal authorities that investigated this matter have declined to press charges and, even with the lower burden of proof for a civil enforcement action, the Memorandum from DOE recognizes that the Wells submissions from Gemini Trust "identify some significant litigation risks."[2]

Further, the proposed charges against Gemini Trust differ in kind from the false statement charges the Commission has brought before. The Commission has historically wielded the false

---

[1] *See* Section 753 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Title VII, Public Law 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank Act").

[2] DOE Memorandum at p. 22. In particular, DOE's Memorandum acknowledges significant litigation risk with respect to the issues of whether Gemini Trust's statements regarding pre-funding and cost of capital were: 1) materially false in light of the Pearl Street loans (DOE Memorandum at pp. 32, 35); and 2) materially false and made with the requisite *mens rea* in light of the advance credits (DOE Memorandum at pp. 38, 40, 41).

1

25.002800007426

statement authority granted by the Dodd-Frank Act to bring charges against those who have blatantly lied about or concealed objective, readily provable facts.

While a complete analysis of all 17 of those cases is beyond the scope of this Statement, a few examples will suffice.  Illustrative cases of affirmatively false statements include:

> 1) *In re Susan Butterfield,* CFTC Docket No. 13-33 (Sept. 16, 2013), cited repeatedly in DOE's Memorandum, where an employee of a registered introducing broker gave sworn testimony during a DOE investigation that she never pre-stamped any order tickets but, after being shown documents that contradicted this, she changed her testimony and admitted that, in fact, it was her daily practice to pre-stamp order tickets (amounting to dozens of order tickets every day);

> 2) *In re Korea Exchange Inc.,* CFTC Docket No. 19-10 (July 12, 2019), in which a non-US clearinghouse falsely certified that it was in compliance with a Commission exemptive order requiring that it observe certain international financial management standards, although it already had discovered that its practices were inconsistent with those standards; and

> 3) *In re Marcus Schultz,* CFTC Docket No. 20-76 (Sept. 30, 2020), in which the respondent made false statements during an interview with DOE concerning his knowledge of, and authorization for, brokers taking the other side of his orders.

Similarly, illustrative cases of material omissions include:

> 1) *In re Sean R. Stropp,* CFTC Docket No. 14-09 (March 18, 2014), in which the subject of a DOE investigation provided a financial disclosure statement that omitted his control of, and his spouse's ownership interest in, another entity and his beneficial ownership and control of two of that other entity's bank accounts;

> 2) *In re Nord Capital Advisors, LLC, et al.,* CFTC Docket No. 15-35 (Sept. 24, 2015), in which a registered commodity trading advisor failed to disclose its principal in its registration filings; and

> 3) *In re Commerzbank, AG,* CFTC Docket No.19-03 (Nov. 8, 2018), in which a registered swap dealer's annual Chief Compliance Officer Report stated that the swap dealer had conducted an eight-week long review of Dodd-Frank Act compliance but did not disclose that it had hired an external compliance consultant that found 72 compliance gaps in the swap dealer's policies and processes.

The proposed case, in contrast, is based primarily on the "messages conveyed" by Gemini Trust to DMO Staff, which are claimed to have been misleading.  As a result, whereas the Commission's prior false statement cases charged lies and concealment regarding readily provable facts, these charges based on the "messages conveyed" by Gemini Trust will require

25.002800007427

litigating the unstated expectations of DMO Staff, as well as conflicting interpretations, possible confusion or misunderstandings, and differences of opinion between DMO Staff and Gemini Trust.[3]  I do not believe this is the type of case that Congress intended us to bring when it enacted the false statement prohibition in CEA Section 6(c)(2).

Accordingly, I respectfully dissent.

---

[3] Other notable distinctions between this case and many of those that have gone before include the following:  1) in 13 of the 17 prior false statement cases, the false statement was made directly to DOE, and thus did not require the time of Staff from the Commission's oversight divisions; and 2) in 14 of the 17 prior false statement cases, the charges were settled without the filing of a Complaint, and thus did not require the expenditure of limited Commission resources for litigation (and in the three cases where a Complaint was filed, the false statement was made directly to DOE).

3

25.002800007428