UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, Plaintiff, -against- GEMINI TRUST COMPANY, LLC, Defendant. | : | **ORDER AND OPINION DENYING MOTION FOR RELIEF FROM JUDGMENT** 22 Civ. 4563 (AKH) |

ALVIN K. HELLERSTEIN, U.S.D.J.:

On June 2, 2022, the Commodity Futures Trading Commission ("CFTC") brought this action alleging that Gemini Trust Company, LLC ("Gemini"), a U.S. cryptocurrency exchange, made false or misleading statements of material fact during the CFTC's review of a proposed Bitcoin futures contract. *See* ECF No. 1 ¶ 1. After substantial discovery and motion practice, including summary judgment proceedings, and three weeks before trial, the parties resolved the action through a Consent Order entered on January 6, 2025. *See* ECF Nos. 182, 211. The Consent Order imposed a $5 million civil monetary penalty and continuing injunctive and related relief. *See* ECF No. 211. Gemini has paid the penalty. *See* ECF No. 219 at 2.

On May 28, 2026, the parties jointly moved this Court pursuant to Federal Rule of Civil Procedure 60(b)(5) to vacate the Consent Order and, in the alternative, pursuant to Rule 60(b)(6), to vacate its prospective provisions. *See id.* at 1–2. They rely on the CFTC's current enforcement policies, driven in part by Exec. Order No. 14178, 90 Fed. Reg. 8647 (Jan. 23, 2025), as well as its post-settlement review of internal materials, which led the agency to conclude that the Complaint would not have been filed under its present standards and that its Division of Enforcement ("DOE") used inappropriate tactics, including relying on a questionable whistleblower, engaging in regulatory pressures, and invoking deliberative process privilege to

prevent the revelation of evidence, in bringing and resolving the case. *See id.* The parties contend that continued enforcement of the remaining provisions is therefore inequitable. *See id.* at 2. For the reasons below, the motion is denied.

**THE CONSENT ORDER**

The dispute resolved by the Consent Order was not a disagreement over Commission policy or over whether the CFTC should have permitted the Bitcoin Futures Contract to be listed. Section 5c(c) of the Act allows a designated contract market to self-certify a new futures contract, but Core Principle 3 forbids listing a contract that is "readily susceptible to manipulation." ECF No. 211 ¶ 19. Because the proposed contract was to settle against an auction price set on Gemini's own exchange, Commission staff's Core Principle 3 review necessarily turned on representations that Gemini itself made about how that auction operated. *Id.* ¶ 20. The Consent Order found that, in the course of that review, Gemini Trust Representatives made statements to Commission staff that Gemini reasonably should have known were false or misleading, and omitted facts necessary to make other statements not misleading. *Id.* ¶ 21.

Those misrepresentations and omissions spanned four subjects. Gemini represented that its exchange was "fully (pre-)funded," without disclosing that customers could and did trade using loans from a Gemini affiliate or undisclosed "advances" and "credits" from a Gemini employee. *Id.* ¶¶ 24–27. Gemini represented that self-trading was technologically prevented and "prohibited," without disclosing that no such safeguard existed before around May 2017, that self-trading had occurred, and that instances continued even after the safeguard was implemented. *Id.* ¶¶ 29–31. Gemini represented that its market-maker rebate program was uniform and publicly disclosed, without disclosing bespoke fee arrangements that two customers exploited to engage in fraudulent or collusive trading, or that Gemini had suspended and later terminated the two employees responsible for those arrangements after concluding they were

untrustworthy. *Id.* ¶¶ 33–40. And Gemini submitted historical trading-volume data without disclosing that a portion of that volume reflected the undisclosed loans, self-trading, bespoke rebates, and fraudulent or collusive trading described above. *Id.* ¶¶ 42–44. The Consent Order found each of these misrepresentations and omissions material to Commission staff's evaluation of the Bitcoin Futures Contract. *Id.* ¶ 45.

On that record, the Consent Order concluded that Gemini violated Section 6(c)(2) of the Act, which prohibits knowingly or recklessly making a false or misleading material statement to the Commission, or omitting a material fact necessary to make a statement not misleading. *Id.* ¶¶ 46–49. The relief tracked that violation: a permanent injunction barring Gemini from making false or misleading statements or omissions to the Commission, and a $5 million civil monetary penalty. *Id.* ¶¶ 50–51. Gemini did not admit or deny the Complaint's allegations, but it did agree not to take any action or make any public statement denying them. *Id.* ¶¶ 11–12. The theory of liability was based on misrepresentation, and not on a change of policy, any overreaching by the CFTC, or a merits disagreement over whether a contract susceptible to manipulation should have been listed.

## LEGAL STANDARD

Rule 60(b) identifies the grounds on which a court may relieve a party from a final judgment, order, or proceeding. *See* Fed. R. Civ. P. 60(b). Among those grounds, a court may grant relief where "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[,]" Fed. R. Civ. P. 60(b)(5), or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Although Rule 60(b) "should be broadly construed to do substantial justice[,]" final judgments "should not be lightly reopened." *Tapper v. Hearn*, 833 F.3d 166, 170 (2d Cir. 2016) (internal quotation marks and citation omitted). The parties' agreement that relief is warranted

does not itself establish that relief is warranted under Rule 60(b). *See, e.g.*, *Murillo v. A Better Way Wholesale Autos, Inc.*, 613 F. Supp. 3d 649, 653 (D. Conn. 2020).

Under Rule 60(b)(5), a party seeking modification of a consent decree because applying it prospectively is no longer equitable "may meet its initial burden by showing either a significant change … in factual conditions or in law." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383–84 (1992). "If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383. A "final judgment or order has prospective application for purposes of Rule 60(b)(5) only where it is executory or involves the supervision of changing conduct or conditions[.]" *Tapper*, 833 F.3d at 170–71 (citations and internal quotation marks omitted). A change in a party's "perception and knowledge" of facts existing when a consent decree was entered does not constitute a changed circumstance. *United States v. Dist. Council of N.Y.C.*, 2005 WL 1137877, at *6–7 (S.D.N.Y. May 11, 2005); *see also Giles v. Coughlin*, 1997 WL 433437, at *3–5 (S.D.N.Y. Aug. 1, 1997) (known pre-existing risk that later materialized is not a changed circumstance warranting modification of a consent decree).

Rule 60(b)(6) "applies only when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule and there are extraordinary circumstances justifying relief." *Tapper*, 833 F.3d at 172 (internal quotation marks and citations omitted). "[M]ere change[s] in decisional law" do not constitute extraordinary circumstances under 60(b)(6) and "the interest in finality outweighs the losing party's concern that justice was not done[.]" *Id.* (internal quotation marks and citations omitted).

## Discussion

The parties principally rely on two arguments: first, that their post-Consent Order review uncovered evidence of inappropriate tactics by DOE before and during the litigation; and

second, that the CFTC's current enforcement policies would not have led the agency to file a Complaint. *See* ECF No. 219 at 1–2. Neither of these arguments provides sufficient grounds for relief under Rule 60(b)(5) or 60(b)(6).

The underlying facts on which the parties rely are not post-judgment developments. They concern the merits – the misrepresentations of Gemini, the Winklevoss brothers, and the whistleblower, and the Commission's internal deliberations, and not the Division's conduct before and during the litigation. *See id.* at 13–19. Although Gemini states that it did not obtain many of the internal materials until after entry of the Consent Order, they have not shown how the later disclosure prejudiced them, which Rule 60(b) relief requires. They complain about new facts, but their complaints were made and rejected in the pretrial phase of the case. Newly acquired knowledge of facts that existed at the time the Consent Order was entered does not constitute a significant change in factual circumstances. *See Dist. Council of N.Y.C.*, 2005 WL 1137877, at *6–7; *see also Giles*, 1997 WL 433437, at *3–5.

Continued application of the Consent Order is not inequitable. Gemini was aware of facts that supported them but made the affirmative choice to settle anyway. Gemini knew as early as August 2017 that it was "the victim of a sophisticated fraud scheme enabled by its own Chief Operating Officer ("COO") and a subordinate." ECF No. 219 at 4. But Gemini's highest officials willingly misrepresented material facts. Gemini knew that the COO had threatened to interfere with the CFTC's review. *See id.* at 5.

Moreover, I previously ruled on the scope of discovery liberally on the merits, strictly on the CFTC's internal processes. I held that Gemini was entitled to depose CFTC witnesses and obtain documents relevant to their testimony, but not to obtain the CFTC's internal account of what it had learned from those witnesses. *See* ECF No. 38 at 33–34. I later sustained objections to similar inquiries into the CFTC's internal understanding, work product, and agency state of mind. *See* ECF No. 71 at 53–59.

Gemini litigated the case for approximately three years, and then, despite the preceding facts, made the calculated decision to settle the case shortly before trial. Gemini alleges that, "[f]acing indefinite regulatory paralysis, mounting litigation costs, and the stigma of the pending Complaint, and without the ability to defend itself due to DOE's privilege assertions and objections, Gemini agreed to settle on December 24, 2024, fewer than three weeks before trial was set to begin." ECF No. 219 at 12–13

The Consent Order contained findings that Gemini made statements it "reasonably should have known were false or misleading," and also "failed to disclose certain facts needed to make" its statements not false or misleading, concerning prefunding, self-trading, rebates, and volume. ECF No. 211 ¶¶ 21, 27, 31, 40, 44. The statements pertained to Gemini's representations to the CFTC's Division of Market Oversight ("DMO"), during its review of a proposed Bitcoin futures contract, that auction orders were fully prefunded, that its market-maker rebates were available under a published schedule, that self-trading was prohibited, and that the auction's trading volume was as reported, which the CFTC alleged were misleading because Gemini did not disclose certain customer loans and operational advances, bespoke fee arrangements, earlier and residual self-trading, or how the reported volume was generated. *See* ECF No. 219 at 6–11. Those allegations were the basis of the false-statement claim that the Consent Order resolved, and the resulting findings support the injunction, the bar on denying them, and the other continuing terms that the parties now seek to vacate. *See id.* at 15, 23–24. Gemini agreed it would not take any action or make any public statement denying those findings. *See id.* ¶ 11.

Gemini's receipt of additional materials after the fact may have caused it to regret that it settled, but it did not create a post-judgment change in factual circumstances making continued application of the Consent Order inequitable.

President Trump's Executive Order was issued to "support the responsible growth and use of digital assets, blockchain technology, and related technologies[,]" and included a provision directing the "protect[ion] and promot[ion] [of] the ability of individual citizens and private-sector entities alike to access and use for lawful purposes open public blockchain networks without persecution." Exec. Order No. 14178, 90 Fed. Reg. 8647 (Jan. 23, 2025). That order, the Deputy Attorney General's memorandum titled "Ending Regulation by Prosecution," and the CFTC's enforcement approach, *see* ECF No. 219 at 20, collectively constitute a change in enforcement priorities and policies, not a "significant change … in law." *Rufo*, 502 U.S. at 384; *see also Benjamin v. Malcolm*, 156 F.R.D. 561, 565 (S.D.N.Y. 1994) (rejecting consent decree modification where the "new administration simply disagreed with the old administration's view of the merits" of a plan and found it "no longer convenient to live with the terms of the consent decree") (internal quotation marks and citation omitted).

Relief is also unavailable under Rule 60(b)(6). The parties' allegations of additional evidence and misconduct fall within Rules 60(b)(2) and (3), motions under which must be made within one year after entry of judgment. *See* Fed. R. Civ. P. 60(b)(2)–(3), (c)(1). The parties may not use the 60(b)(6) catchall provision to "swallow the preceding paragraphs" and "circumvent their time bars." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025) (internal citation and quotation marks omitted).

The parties themselves recognize that "'misconduct' typically falls under Rule 60(b)(3) such that it is not a basis for Rule 60(b)(6) relief[.]" ECF No. 219 at 30. They argue instead that the regulatory pressure on Gemini was so coercive that Gemini's consent was not meaningfully voluntary and that extraordinary relief is warranted. *See id.* The parties' assertion that Gemini settled under regulatory pressure does not establish that its consent was involuntary. Gemini was represented by counsel, litigating the action vigorously for over three years. It nevertheless affirmatively chose to settle fewer than three weeks before trial. Gemini affirmed

that it had "read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order[.]" ECF No. 211 ¶ 2.

In settling, Gemini made a "free, calculated, [and] deliberate choice[.]" *Ackermann v. United States*, 340 U.S. 193, 198 (1950). Such "deliberate choices are not to be relieved from." *Id.*

Finally, the CFTC's present assessment that this action should not have been brought does not require vacatur or other relief. The CFTC retains discretion over its enforcement priorities and remains free to account for its current policies in deciding whether to seek enforcement of the Consent Order. *See Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985).

## CONCLUSION

For the reasons stated above, the parties' motion is denied. The Clerk shall terminate ECF Nos. 215 and 219.

SO ORDERED.

Dated: October 15, 2026
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge